UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

EMHART INDUSTRIES, INC.,

Plaintiff,

v.

NEW ENGLAND CONTAINER COMPANY, INC., PROVIDENCE WASHINGTON INSURANCE COMPANY and TRAVELERS CASUALTY & SURETY COMPANY,

Defendants.

CA 06 218

Civil Action No.

**Jury Trial Demanded**

COMPLAINT

The Parties

1. Plaintiff, Emhart Industries, Inc. ("Emhart"), is a Connecticut corporation, having its principal place of business in Towson, Maryland.

2. Emhart is informed and believes, and therefore avers, that defendant, New England Container Company, Inc. ("NECC"), is a corporation organized under the laws of the State of Rhode Island, with its current principal place of business in Richboro, Pennsylvania. At pertinent times, NECC has had its principal place of business in Providence, Rhode Island.

3. Emhart is informed and believes, and therefore avers, that defendant Travelers Casualty & Surety Company, formerly known as Aetna Casualty and Surety Company ("Travelers"), is an insurance company organized under the laws of the State of Connecticut, with its principal place of business in Hartford, Connecticut. At all times pertinent, Travelers was licensed to do business, and was doing and transacting business, in the State of Rhode Island.

4. Emhart is informed and believes, and therefore avers, that defendant Providence Washington Insurance Company ("Providence Washington"), is an insurance company organized under the laws of the State of Rhode Island, with its principal place of business in Providence, Rhode Island. At all times pertinent, Providence Washington was licensed to do business, and was doing and transacting business, in the State of Rhode Island.

Jurisdiction and Venue

5. This Court has subject matter jurisdiction of the claims asserted in Counts I, II and VI pursuant to 42 U.S.C. § 9613(b) in that those counts involve controversies arising under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA") and pursuant to 28 U.S.C. § 1331 in that said claims arise under the laws of the United States.

6. This Court has supplemental jurisdiction of the claims alleged in the remaining counts pursuant to 28 U.S.C. § 1367 in that such claims are so related to the claims within this Court's original jurisdiction that they form a part of the same case or controversy under Article III of the United States Constitution.

7. This Court has subject matter of the claims for declaratory relief pursuant to 28 U.S.C. § 2201 and/or 42 U.S.C. § 9613(g)(2).

8. Venue lies in this Court pursuant to 28 U.S.C. § 1391(b) and 42 U.S.C. § 9613(b) in that a substantial part of the events or omissions giving rise to the claims occurred in this District, the releases or threatened releases of hazardous substances occurred in this District, and defendants reside or have done business in this District.

Facts

A. The Insurance Policies

9. Emhart is informed and believes, and therefore avers, that Travelers issued liability insurance policies to NECC between at least 1969 and 1982 ("Travelers Policies"). The Travelers Policies include the following:

| Policy Number | Policy Period |
|---|---|
| 43PC29861CC | 10/2/69 – 10/2/70 |
| Unavailable | 11/15/70 – 11/15/71 |
| 43AL140755CCA | 11/15/71 – 11/15/72 |
| 43AL143048CCA | 11/15/72 – 11/15/73 |
| 43AL264195CCA | 11/15/73 – 11/15/74 |
| 43AL266935CCA | 11/15/74 – 11/15/75 |
| 43AL269294CMA | 11/15/75 – 11/15/76 |
| 43AL271243 | 11/15/76 – 11/15/77 |
| 43AL273795CCA | 11/15/77 – 11/15/78 |
| 43GL00001061 | 11/15/78 – 11/15/79 |
| 43GL9983CCA | 11/15/79 – 11/15/80 |
| 43GL1061CCA | 11/15/79 – 11/15/80 |
| 43XS3583 | 11/15/79 – 11/15/80 |
| 94C206921CCA | 11/15/80 – 11/15/81 |
| Unavailable | 11/15/80 – 11/15/81 |
| 43GL332007CCA | 11/15/81 – 11/15/82 |
| Unavailable | 11/15/81 – 11/15/82 |

10. Emhart is informed and believes, and therefore avers, that Providence Washington issued liability insurance policies to NECC between at least 1982 and 1985 ("Providence Washington Insurance Policies"). The Providence Washington Policies include the following:

| Policy Number | Policy Period |
|---|---|
| CL721852 | 11/15/82 – 8/1/83 |
| Unavailable | 11/15/82 – 8/1/83 |
| CL722660 | 8/1/83 – 8/1/84 |
| CU731459 | 8/1/83 – 8/1/84 |
| CU733312 | 8/1/84 – 9/27/85 |
| CU723887 | 8/1/84 – 9/27/85 |

B. The Centredale Manor Superfund Site

11. On September 15, 1999, the Environmental Protection Agency ("EPA") issued to NECC a Notice of Potential Liability pursuant to Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), relating to the Centredale Manor Superfund Site in North Providence, Rhode Island ("Site").

12. The EPA defined the Site as consisting of two parcels of land, 2072 and 2074 Smith Street, and portions of the Woonasquatucket River and its floodplain that are adjacent to the two parcels on Smith Street, including but not limited to two ponds, Allendale Pond and Lyman Mill Pond.

13. On February 28, 2000, the EPA issued to Emhart a Notice of Potential Liability with respect to the Site. In said Notice of Potential Liability, the EPA demanded, inter alia, that Emhart remediate the Site and reimburse the EPA for the "response" costs, within the meaning of 42 U.S.C. § 9601(25), that the EPA incurred in connection with the Site.

14. On March 6, 2000, the Site was placed on the National Priorities List, pursuant to Section 105(a) of CERCLA, 42 U.S.C. § 9605(a).

15. On April 12, 2000, the EPA issued a Unilateral Administrative Order for Removal Action ("First Order") to NECC, Emhart and other respondents, ordering the

respondents to undertake certain time-critical removal activities with respect to environmental conditions at the Site.

16. On March 26, 2001, the EPA issued a Second Administrative Order for Removal Action ("Second Order") to NECC, Emhart and other respondents, ordering the respondents to implement certain non-time-critical removal actions with respect to the Site.

17. On September 11, 2003, the EPA executed a Third Administrative Order on Consent for Removal Action ("Third Order") with a number of respondents, including Emhart and NECC, requiring the respondents to implement additional time-critical removal activities at the Site.

18. Emhart has complied with the requirements of the First, Second and Third Orders.

19. Emhart has incurred substantial costs as a result of the EPA proceedings, including the costs of complying with the First, Second and Third Orders and other costs in connection with the EPA proceedings.

20. The EPA has asserted that the response costs which it will seek to recover from Emhart and other PRPs are approximately $15 million before interest.

21. The ultimate remedy at the Site will be determined after the EPA completes a Remedial Investigation to characterize the nature and extent of contamination at the Site and a Feasibility Study to develop and analyze alternative remedial actions and issues a Record of Decision.

22. The EPA is in the process of conducting a Remedial Investigation of the Site. An EPA contractor issued an Interim Final Remedial Investigation report concerning the Site that was dated June 30, 2005.

23. Emhart is informed and believes, and therefore avers, that once the Feasibility Study is completed and the Record of Decision is issued, Emhart will be required to undertake remedial work at the Site costing millions of dollars.

24. Emhart is informed and believes, and therefore avers, that NECC provided notice of the EPA claim concerning the Site, and other information concerning proceedings in connection with the Site, to Travelers and Providence Washington.

C. Operations at the Site

25. From approximately 1952 until the early 1970s, NECC operated a facility for reconditioning steel drums on a portion of the Site. In the course of those operations, NECC received drums from many sources, reconditioned the drums and then sold the reconditioned drums. The drums that NECC received were substantially, but not completely, empty. Those drums often contained small amounts of residue.

26. Emhart is informed and believes, and therefore avers, that the customers of NECC who provided drums for reconditioning included entities that sold trichlorophenol or products in which trichlorophenol was an ingredient. Emhart is informed and believes, and therefore avers, that the residue in drums that NECC received from those customers included trichlorophenol.

27. In the course of reconditioning drums for future sale, NECC incinerated the drums that it received. In the course of bringing the drums to the incinerator, there were spills and leaks of the residual contents of the drums.

28. Emhart is informed and believes, and therefore avers, that the actions of NECC in incinerating drums, as part of the reconditioning process, resulted in the "release" into

the "environment," within the meaning of 42 U.S.C. §§ 9601(8) and 9601(22), of various cogeners of dioxin.

29. In addition to the releases of dioxin, the operations of NECC resulted in the "release" into the "environment," within the meaning of 42 U.S.C. §§ 9601(8) and 9601(22), of other "hazardous substances," within the meaning of 42 U.S.C. §§ 9601(14).

30. The EPA has alleged that the liability of Emhart is based on the activities of Metro-Atlantic, Inc. ("Metro-Atlantic"). Metro-Atlantic was a chemical manufacturing company that conducted business operations on a portion of the Site from the 1940's through in or about 1968.

**COUNT I**
**<u>Cost Recovery Under CERCLA – NECC</u>**

31. Emhart incorporates the allegations contained in paragraphs 1 through 30 of the Complaint, as if set forth in full herein.

32. Emhart is informed and believes, and therefore avers, that the Site constitutes a "facility" or facilities within the meaning of 42 U.S.C. § 9601(9).

33. Emhart is informed and believes, and therefore avers, that NECC was an "operator," within the meaning of 42 U.S.C. § 9601(20)(A), of a portion of the Site.

34. Emhart is informed and believes, and therefore avers, that during the period in which NECC was an operator of a portion of the Site, there was "disposal," within the meaning of 42 U.S.C. § 9601(29), of "hazardous substances," within the meaning of 42 U.S.C. §§ 9601(14), at the Site as a result of the activities of NECC.

35. Emhart is informed and believes, and therefore avers, that as a result of activities conducted at the Site by NECC, there have been "releases" or threatened "releases,"

within the meaning of 42 U.S.C. §§ 9601(8) and 9601(22), of "hazardous substances," within the meaning of 42 U.S.C. §§ 9601(14), at and from the Site.

36. The aforesaid releases or threatened releases of hazardous substances at the Site have caused Emhart to incur necessary "response" costs, within the meaning of 42 U.S.C. § 9601(25), which are consistent with the national contingency plan.

37. Emhart is informed and believes, and therefore avers, that it will incur additional such necessary response costs as a result of the aforesaid release or threatened release of hazardous substances at the Site.

38. Emhart is informed and believes, and therefore avers, that, pursuant to 42 U.S.C. § 9607(a), Emhart is entitled to recover from NECC the response costs that Emhart has incurred in connection with the Site, plus interest.

**COUNT II**
**Contribution Under CERCLA – NECC**

39. Emhart incorporates the allegations contained in paragraphs 1 through 38 of the Complaint, as if set forth in full herein.

40. Emhart is informed and believes, and therefore avers, that an administrative civil action, pursuant to 42 U.S.C. § 9606, is presently pending against Emhart.

41. Emhart is informed and believes, and therefore avers, that NECC operated a "facility" or "facilities," within the meaning of 42 U.S.C. § 9601(9), during the time period in which there was "disposal," within the meaning of 42 U.S.C. § 9601(29), of "hazardous substances," within the meaning of 42 U.S.C. §§ 9601 (22), at the Site.

42. Emhart is informed and believes, and therefore avers, that as a result of activities conducted at the Site by NECC, there have been "releases" or threatened "releases,"

within the meaning of 42 U.S.C. §§ 9601(8) and 9601(22), of "hazardous substances," within the meaning of 42 U.S.C. §§ 9601(14), at and from the Site.

43. The aforesaid releases or threatened releases of hazardous substances at the Site have caused Emhart to incur necessary "response" costs, within the meaning of 42 U.S.C. § 9601(25), which are consistent with the national contingency plan.

44. Emhart is informed and believes, and therefore avers, that it will incur additional such necessary response costs as a result of the aforesaid release or threatened release of hazardous substances at the Site.

45. Emhart is informed and believes, and therefore avers, that, pursuant to 42 U.S.C. § 9613(f)(1), NECC is liable to Emhart for its proportionate share of all response costs incurred or to be incurred by Emhart in connection with the Site, plus interest.

**COUNT III**
**INDUSTRIAL PROPERTY REMEDIATION AND REUSE ACT**
**(R.I. GEN. LAWS § 23-19.14-1 *et seq.*) – NECC**

46. Emhart incorporates the allegations contained in paragraphs 1 through 45 of the Complaint, as if set forth in full herein.

47. Emhart is informed and believes, and therefore avers, that NECC is a "person" within the meaning of R.I. Gen. Laws § 23-19.14-3(h).

48. Emhart is informed and believes, and therefore avers, that NECC is an "operator" within the meaning of R.I. Gen. Laws § 23-19.14-3(f), of the Site.

49. Emhart is informed and believes, and therefore avers, that the Site is a "site" within the meaning of R.I. Gen. Laws § 23-19.14-3(n).

50. Emhart is informed and believes, and therefore avers, that there were disposals at the Site by NECC of "hazardous materials" within the meaning of R.I. Gen. Laws § 23-19.14-3(c).

51. Emhart is informed and believes, and therefore avers, that there was contamination at the Site by "hazardous substances" within the meaning of R.I. Gen. Laws § 23-19.14-3(d).

52. Emhart is informed and believes, and therefore avers, that there have been actual releases, within the meaning of R.I. Gen. Laws § 23-19.14-3(j), and/or potential threats of release, of hazardous materials at the Site.

53. Emhart is informed and believes, and therefore avers, that NECC is a "responsible party" within the meaning of R.I. Gen. Laws § 23-19.14-6(b).

54. Emhart has incurred costs of necessary "removal or remedial actions," within the meaning of R.I. Gen. Laws § 23-19.14-3(k), with respect to the Site. Said removal or remedial actions were necessary to rectify the effects of releases of hazardous material at the Site so as to prevent a substantial danger to present or future public health or welfare or the environment.

55. Emhart is informed and believes, and therefore avers, that NECC is liable to Emhart, pursuant to R.I. Gen. Laws § 23-19.14-6, for the necessary costs of removal or remedial actions with respect to the Site that Emhart has incurred, plus interest.

**COUNT IV**
**HAZARDOUS WASTE MANAGEMENT ACT**
**(R.I. Gen. Laws § 23-19.1) – NEEC**

56. Emhart incorporates the allegations contained in paragraphs 1 through 55 of the Complaint, as if set forth in full herein.

57. Emhart is informed and believes, and therefore avers, that NECC is a "person" within the meaning of R.I. Gen. Laws § 23-19.1-4(10).

58. Emhart is informed and believes, and therefore avers, that there was "disposal," within the meaning of R.I. Gen. Laws § 12-19.1-4(3), by NECC at the Site of "hazardous waste" within the meaning of R.I. Gen. Laws § 23-19.1-4(4).

59. Emhart is informed and believes, and therefore avers, that NECC has engaged in the disposal of hazardous wastes in a manner or location not authorized by R.I. Gen. Laws § 23-19.1-1, et seq., or the rules and regulations promulgated thereunder.

60. Emhart is informed and believes, and therefore avers, that NECC has caused the unauthorized transportation, storage or disposal of hazardous wastes in violation of R.I. Gen. Laws § 23-19.1-1, et seq.

61. Emhart has incurred damage, injury or loss, including costs of containment, cleanup, restoration and removal of hazardous wastes, which result directly or indirectly from the discharges by NECC.

62. Emhart is informed and believes, and therefore avers, that pursuant to R.I. Gen. Laws § 23-19.1-22(a), NECC is liable to Emhart for all cost of containment, cleanup, restoration and removal of hazardous wastes, and for all damages, losses or injuries, including environmental, which result directly or indirectly from the discharges by NECC at the Site.

**COUNT V**
**Equitable Indemnity - NECC**

63. Emhart incorporates the allegations contained in paragraphs 1 through 62 of the Complaint, as if set forth in full herein.

64. Emhart is informed and believes, and therefore avers, that there was disposal of hazardous materials at the Site during the time that NECC operated at a portion of the Site.

65. The EPA issued orders concluding that Emhart is a "liable party," within the meaning of 42 U.S.C. § 9607, and, as result of said orders, Emhart has paid "response" costs within the meaning of 42 U.S.C. § 9601(25).

66. The EPA issued orders concluding that NECC is a "liable party," within the meaning of 42 U.S.C. § 9607, and that NECC is liable for "response" costs within the meaning of 42 U.S.C. § 9601(25).

67. Emhart is informed and believes, and therefore avers, that, as between Emhart and NECC, the response costs incurred by Emhart ought to be reimbursed by NECC.

68. Emhart is informed and believes, and therefore avers, that it is entitled to indemnification from NECC.

**COUNT VI**
**Declaratory Judgment – NECC**

69. Emhart incorporates the allegations contained in paragraphs 1 through 68 of the Complaint, as if set forth in full herein.

70. Emhart is informed and believes, and therefore avers, that there is a controversy between Emhart and NECC concerning the nature and extent of the obligation of NECC to pay for anticipated future response costs with respect to the Site.

71. Emhart is entitled to a declaration that NECC is liable to Emhart for the costs that Emhart will incur with respect to the Site.

**COUNT VII**
**Declaratory Judgment As To Emhart's Rights Under Travelers Policies**

72. Emhart incorporates the allegations contained in paragraphs 1 through 71 of the Complaint, as if set forth in full herein.

73. The claims that Emhart has asserted against NECC herein are within the scope of the coverage afforded by the Travelers Policies.

74. Emhart is informed and believes, and therefore avers, that Travelers has an obligation, under the Travelers Policies, to satisfy NECC's obligations to Emhart with respect to the damages that Emhart will recover if it prevails against NECC with respect to the claims asserted herein.

75. Emhart is informed and believes, and therefore avers, that Travelers denies that it has an obligation to satisfy NECC's obligations to Emhart with respect to the damages that Emhart will recover if it prevails against NECC with respect to the claims asserted herein.

76. Emhart is informed and believes, and therefore avers, that Emhart, as a result of its claims against NECC, is an intended beneficiary of the Travelers Policies and, as such, that it is a third party beneficiary of the Travelers Policies.

77. There is an actual controversy between Emhart, as a third party beneficiary of the Travelers Policies, and Travelers as to the obligations of Travelers to Emhart if Emhart prevails against NECC with respect to the claims asserted herein.

78. Emhart is informed and believes, and therefore avers, that it is entitled to a declaration that Travelers is obligated to pay to Emhart the amount of damages, up to the indemnification limits of the Travelers Policies, for which NECC will be liable if Emhart prevails against NECC with respect to the claims asserted herein.

## COUNT VIII
## Declaratory Judgment As To Emhart's Rights Under Providence Washington Policies

79. Emhart incorporates the allegations contained in paragraphs 1 through 78 of the Complaint, as if set forth in full herein.

80. The claims that Emhart has asserted against NECC herein are within the scope of the coverage afforded by the Providence Washington Policies.

81. Emhart is informed and believes, and therefore avers, that Providence Washington has an obligation, under the Providence Washington Policies, to satisfy NECC's obligations to Emhart with respect to the damages that Emhart will recover if it prevails against NECC with respect to the claims asserted herein.

82. Emhart is informed and believes, and therefore avers, that Providence Washington denies that it has an obligation to satisfy NECC's obligations to Emhart with respect to the damages that Emhart will recover if it prevails against NECC with respect to the claims asserted herein.

83. Emhart is informed and believes, and therefore avers, that Emhart, as a result of its claims against NECC, is an intended beneficiary of the Providence Washington Policies and, as such, that it is a third party beneficiary of the Providence Washington Policies.

84. There is an actual controversy between Emhart, as a third party beneficiary of the Providence Washington Policies, and Providence Washington as to the obligations of Providence Washington to Emhart if Emhart prevails against NECC with respect to the claims asserted herein.

85. Emhart is informed and believes, and therefore avers, that it is entitled to a declaration that Providence Washington is obligated to pay to Emhart the amount of damages, up to the indemnification limits of the Providence Washington Policies, for which NECC will be liable if Emhart prevails against NECC with respect to the claims asserted herein.

## COUNT IX
## Declaration As To Indemnification Benefits Under The Travelers Policies

86. Emhart incorporates the allegations contained in paragraphs 1 through 85 of the Complaint, as if set forth in full herein.

87. Emhart is informed and believes, and therefore avers, that NECC has ceased its business operations and sold its business assets.

88. Emhart is informed and believes, and therefore avers, that damages to which it will be entitled if it prevails on its claims against NECC are considerably in excess of the amount of NECC's assets plus the combined indemnification benefits of the Travelers Policies and the Providence Washington Policies.

89. Emhart is informed and believes, and therefore avers, that, in the absence of the indemnification benefits available to NECC under the Travelers Policies, NECC will be unable to satisfy a judgment for the money damages that Emhart will recover if it prevails against NECC with respect to the claims asserted herein.

90. Emhart is informed and believes, and therefore avers, that there is a risk that NECC and Travelers will take action, other than in the ordinary course of business for full and adequate consideration, to reduce the indemnification benefits under the Travelers Policies, with the result that NECC will be unable to satisfy a judgment on Emhart's claims against NECC in this action.

91. There is an actual controversy between Emhart and Travelers as to the obligation of Travelers to preserve the indemnification benefits under the Travelers Policies to satisfy the damages which Emhart will recover if it prevails against NECC with respect to the claims asserted herein.

**COUNT X**

**Declaration As To Indemnification Benefits Under The Providence Washington Policies**

92. Emhart incorporates the allegations contained in paragraphs 1 through 91 of the Complaint, as if set forth in full herein.

93. Emhart is informed and believes, and therefore avers, that damages to which it will be entitled if it prevails on its claims against NECC are considerably in excess of the amount of NECC's assets plus the combined indemnification benefits of the Travelers Policies and the Providence Washington Policies.

94. Emhart is informed and believes, and therefore avers, that, in the absence of the indemnification benefits available to NECC under the Providence Washington Policies, NECC will be unable to satisfy a judgment for the money damages that Emhart will recover if it prevails against NECC with respect to the claims asserted herein.

95. Emhart is informed and believes, and therefore avers, that there is a risk that NECC and Providence Washington will take action, other than in the ordinary course of business for full and adequate consideration, to reduce the indemnification benefits under the Providence Washington Policies, with the result that NECC will be unable to satisfy a judgment on Emhart's claims against NECC in this action.

96. There is an actual controversy between Emhart and Providence Washington as to the obligation of Providence Washington to preserve the indemnification benefits under the Providence Washington Policies to satisfy the damages which Emhart will recover if it prevails against NECC with respect to the claims asserted herein.

**COUNT XI**

**Injunctive Relief – Preserving Indemnification Limits Of Travelers Policies**

97. Emhart incorporates the allegations contained in paragraphs 1 through 96 of the Complaint, as if set forth in full herein.

98. Emhart is informed and believes, and therefore avers, that it is likely to succeed on the merits of its claim against NECC.

99. Emhart is informed and believes, and therefore avers, that, in the absence of injunctive relief, it would suffer irreparable harm.

100. Emhart is informed and believes, and therefore avers, that defendants would suffer little, if any, hardship if injunctive relief is granted to Emhart. When the absence of hardship to defendants is contrasted with the irreparable harm that Emhart would suffer if injunctive relief were denied, the balance of hardship favors affording Emhart the injunctive relief that it seeks.

101. Emhart is informed and believes, and therefore avers, that granting injunctive relief would be in accordance with the public interest, including the public policies underlying CERCLA.

102. Emhart is suffering irreparable injury and, in the absence of injunctive relief, Emhart has no plain and adequate remedy at law.

103. Emhart is entitled to a preliminary injunction, and thereafter a permanent injunction, enjoining and restraining NECC and Travelers from entering into any agreement, other than in the ordinary course of business and for full and adequate consideration, that would reduce the indemnification benefits of the Travelers Policies.

**COUNT XII**
**Injunctive Relief – Preserving Indemnification Limits Of Providence Washington Policies**

104. Emhart incorporates the allegations contained in paragraphs 1 through 103 of the Complaint, as if set forth in full herein.

105. Emhart is informed and believes, and therefore avers, that it is likely to succeed on the merits of its claim against NECC.

106. Emhart is informed and believes, and therefore avers, that, in the absence of injunctive relief, it would suffer irreparable harm.

107. Emhart is informed and believes, and therefore avers, that defendants would suffer little, if any, hardship if injunctive relief is granted to Emhart. When the absence of hardship to defendants is contrasted with the irreparable harm that Emhart would suffer if injunctive relief were denied, the balance of hardship favors affording Emhart the injunctive relief that it seeks.

108. Emhart is informed and believes, and therefore avers, that granting injunctive relief would be in accordance with the public interest, including the public policies underlying CERCLA.

109. Emhart is suffering irreparable injury and, in the absence of injunctive relief, Emhart has no plain and adequate remedy at law.

110. Emhart is entitled to a preliminary injunction, and thereafter a permanent injunction, enjoining and restraining NECC and Providence Washington from entering into any agreement, other than in the ordinary course of business and for full and adequate consideration, that would reduce the indemnification benefits of the Providence Washington Policies.

WHEREFORE, plaintiff, Emhart Industries, Inc., prays that this Court:

A. Award Emhart Industries, Inc. the damages to which it is entitled as a result of the conduct of New England Container Company, Inc., including but not limited to response costs, costs of remedial or removal actions, costs of containment, cleanup, restoration, and removal of the hazardous wastes and attorneys' fees, that Emhart Industries, Inc. has incurred to date and will incur through the date of trial in connection with the Centredale Manor Superfund Site, plus interest, costs and attorney's fees;

B. Enter a declaratory judgment that New England Container Company, Inc. is liable for all costs, including but not limited to, response costs, costs of remedial or removal

actions, costs of containment, cleanup, restoration, and removal of the hazardous wastes and attorneys' fees, that Emhart Industries, Inc. shall incur in connection with the Centredale Manor Superfund Site;

C. Enter a declaratory judgment in favor of Emhart Industries, Inc. that Travelers Casualty & Surety Company is obligated to pay to Emhart Industries, Inc. the amount of damages, up to the indemnification limits of the insurance policies that Travelers Casualty & Surety Company issued to New England Container Company, Inc., for which New England Container Company is found liable to Emhart Industries, Inc. in this action;

D. Enter a declaratory judgment in favor of Emhart Industries, Inc. that Providence Washington Insurance Company is obligated to pay to Emhart Industries, Inc. the amount of damages, up to the indemnification limits of the insurance policies that Providence Washington Insurance Company issued to New England Container Company, Inc., for which New England Container Company is found liable to Emhart Industries, Inc. in this action;

E. Enter a preliminary injunction, and thereafter a permanent injunction, enjoining and restraining defendants New England Container Company, Inc. and Travelers Casualty & Surety Company and each of their agents, servants, employees, attorneys, successors, assigns and consignees, and all those acting under their authority or in privity with them from taking any action, other than in the ordinary course of business for full and adequate consideration, to reduce the indemnification benefits under the insurance policies that Travelers Casualty & Surety Company issued to New England Container Company, Inc.;

F. Enter a preliminary injunction, and thereafter a permanent injunction, enjoining and restraining defendants New England Container Company, Inc. and Providence Washington Insurance Company and each of their agents, servants, employees, attorneys,

successors, assigns and consignees, and all those acting under their authority or in privity with them from taking any action, other than in the ordinary course of business for full and adequate consideration, to reduce the indemnification benefits under the insurance policies that Providence Washington Insurance Company issued to New England Container Company, Inc.; and

G. Award Emhart Industries, Inc. such other and further relief as the Court deems just and proper.

DEMAND FOR TRIAL BY JURY

Plaintiff respectfully requests trial by jury on all claims so triable.

Respectfully submitted,

EMHART INDUSTRIES, INC.

By its attorneys,

Craig M. Scott, Esq. (#4237) 5/11/06
Duffy Sweeney & Scott, Ltd.
One Turks Head Place, Suite 1200
Providence, RI 02903
(401) 455-0700
(401) 455-0701 (facsimile)
cscott@duffysweeney.com

OF COUNSEL:
Jack R. Pirozzolo, Esq.
Richard L. Binder, Esq.
Willcox, Pirozzolo & McCarthy
Professional Corporation
50 Federal Street
Boston, MA 02110
(617) 482-5470
(617) 423-1572 (facsimile)
jpirozzolo@wpmlaw.com