UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| EMHART INDUSTRIES, INC.,<br><br>Plaintiff,<br><br>v.<br><br>NEW ENGLAND CONTAINER COMPANY, INC., PROVIDENCE WASHINGTON INSURANCE COMPANY and TRAVELERS CASUALTY & SURETY COMPANY,<br><br>Defendants. | Civil Action No 06-218S |

**PLAINTIFF'S OBJECTION TO MOTION OF THE DEFENDANT PROVIDENCE WASHINGTON INSURANCE COMPANY FOR JUDGMENT ON THE PLEADINGS PURSUANT TO RULE 12(c)**

Defendant Providence Washington Insurance Company ("PWIC") has moved pursuant to Fed. R. Civ. P. 12(c) for judgment on the pleadings as to Counts VIII, X, and XII of the Complaint brought by Emhart Industries, Inc. ("Emhart"). PWIC bases its motion solely on the argument that Emhart is neither a party to nor an intended beneficiary of the insurance policies issued to defendant New England Container Company, Inc. ("NECC") by PWIC. However, Counts X and XII, which seek declaratory relief and an injunction, are not dependent on Emhart being a party to or intended beneficiary of the insurance policies. Thus, PWIC not asserted any basis for judgment on those Counts.

Standing and the right to declaratory relief under the Declaratory Judgment Act, 28 U.S.C. § 2201, are governed by federal law. Federal Kemper Ins. Co. v. Rauscher, 807 F.2d 345, 352 (3d Cir. 1986). A plaintiff has standing, and declaratory relief is appropriate, when it "has suffered some … threatened injury" caused by the defendant that can "be redressed by a

favorable decision." See McInnis-Misenor v. Maine Medical Center, 319 F.3d 63, 67 (1st Cir. 2003). Here, Emhart has suffered "threatened injury" by PWIC's failure to acknowledge its obligation to provide coverage of NECC's liability to Emhart. A determination of coverage now will ensure that the proceeds of the policies will remain available until Emhart's claim against NECC is adjudicated. Without the insurance proceeds, NECC would be unable to satisfy a judgment against it. Emhart therefore has standing to seek declaratory relief against PWIC. See Bankers Trust Co. v. Old Republic Ins. Co., 959 F.2d 677, 682 (7th Cir. 1992) (claimant who was not yet a judgment creditor permitted to sue insurer without regard to whether claimant was third party beneficiary of policy).

As to Count VIII, there are issues of fact that must be resolved to determine whether Emhart is a third party beneficiary of the policies under Rhode Island substantive law. The question of whether Emhart is an intended beneficiary revolves largely upon intent, as demonstrated by the insurance policies themselves, and those policies are not yet before the Court. At this time and on this record, PWIC cannot establish that Emhart will be unable to prove that it is a third party beneficiary of the policies. Fischer v. United States Fidelity and Guaranty Co., 144 F. Supp. 315, 316 (D.R.I. 1956). A motion for judgment on the pleadings is therefore not appropriate. Furthermore, Emhart may establish several bases for demonstrating that it is a third party beneficiary: a provision typically found in liability policies giving a claimant the right to sue the insurer directly, the Rhode Island statute permitting a direct action against an insurer (R.I. Gen. Laws § 27-7-1) and the principle that "injured members of the general public are beneficiaries of liability insurance policies." Reagor v. Travelers Ins. Co., 415 N.E.2d 512, 514 (Ill. App. Ct. 1981).

In further support of this Objection, Emhart relies upon the Memorandum of Law filed herewith.

Emhart Industries, Inc.
By Its Attorneys,

Craig M. Scott (#4237)
Duffy Sweeney & Scott, Ltd.
One Turks Head Place, Suite 1200
Providence, RI 02903
(401) 455-0700
(401) 455-0701 (facsimile)
cscott@duffysweeney.com

Of Counsel:
Jack R. Pirozzolo
Richard L. Binder
Willcox, Pirozzolo & McCarthy
Professional Corporation
50 Federal Street
Boston, MA 02110
(617) 482-5470
(617) 423-1572 (facsimile)
jpirozzolo@wpmlaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that on the 5th day of July, 2006, a copy of the within document was served by first class mail, postage prepaid, upon the following counsel of record:

Todd D. White, Esq.
Jaime LaPorte, Esq.
Adler, Pollock & Sheehan, P.C.
One Citizens Plaza, 8th Floor
Providence, Rhode Island 02093-1345

R. Kelly Sheridan, Esq.
Jason C. Preciphs, Esq.
Roberts Carroll Feldstein & Peirce
10 Weybosset Street
Providence, RI 02903

Theresa Benson

H:\Clients\Wilcox, Pirozzolo & McCarthy\Pleadings\Objection to PWIC Motion.doc

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

EMHART INDUSTRIES, INC.,

Plaintiff,

v.

NEW ENGLAND CONTAINER COMPANY, INC., PROVIDENCE WASHINGTON INSURANCE COMPANY and TRAVELERS CASUALTY & SURETY COMPANY,

Defendants.

Civil Action No 06-218S

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS OBJECTION TO MOTION OF THE DEFENDANT PROVIDENCE WASHINGTON INSURANCE COMPANY FOR JUDGMENT ON THE PLEADINGS PURSUANT TO RULE 12(c)**

## I. INTRODUCTION AND SUMMARY

This is an action by Emhart Industries, Inc. ("Emhart") against New England Container Company, Inc. ("NECC") and two of NECC's insurers, including the movant, Providence Washington Insurance Company ("PWIC"), arising out of environmental contamination at the Centredale Manor Superfund Site ("Centredale Site"). Emhart seeks cost recovery, contribution and other relief from NECC in connection with the EPA claim against Emhart relating to the Centredale Site. Counts VIII, X, and XII, which pertain to PWIC, seek declaratory and injunctive relief. Emhart alleges that the proceeds of the PWIC policies will be necessary to pay the judgment that Emhart expects to obtain against NECC and that there is a risk that those insurance proceeds will become unavailable while Emhart's action against NECC is pending. Accordingly, Emhart seeks a coverage determination at this time.

PWIC moved for judgment on the pleadings under Fed. R. Civ. P. 12(c) and, apparently, also seeks dismissal pursuant to Fed. R. Civ. P. 12(b)(6),[1] claiming that Emhart lacks standing because it is not a third party beneficiary of the PWIC policies. As will be shown, Emhart's claims against PWIC should be allowed to stand.

Count VIII of Emhart's complaint relies upon Emhart's status as a third party beneficiary of the insurance policies PWIC issued to NECC. Counts X and XII are not dependent upon Emhart being a third party beneficiary. Count X seeks a declaratory judgment, based upon Emhart's allegations that, if it is not permitted to go forward now, there is a risk that the proceeds of the PWIC policies, which will be needed to satisfy a judgment in Emhart's action against NECC, will not be available at the time judgment enters. Count XII, based upon the same facts, seeks an injunction.

While PWIC refers to all three counts, it argues only that Emhart does not have third party beneficiary status. See PWIC Memorandum ("PWIC Mem.") at 2. If that argument were meritorious, it would apply only to Count VIII. The other counts should stand regardless of this Court's ruling on the third party beneficiary issue. In view of the narrow scope of PWIC's argument, it is not necessary for the Court to consider Emhart's standing to bring Counts X and XII. However, Emhart shows affirmatively that it has standing to assert those two counts even if it were not a third party beneficiary of the policies.

Standing and the right to declaratory relief under the Declaratory Judgment Act, 28 U.S.C. § 2201, are governed by federal law. Federal Kemper Ins. Co. v. Rauscher, 807 F.2d 345, 352 (3d Cir. 1986). PWIC does not dispute Emhart's right to declaratory relief under

---

[1] The caption to PWIC's motion and memorandum refers only to Fed. R. Civ. P. 12(c). However, PWIC also references Fed. R. Civ. P. 12(b)(6) in the body of both documents.

federal law. A party has standing and declaratory relief is appropriate where there is a "case or controversy" within the meaning of Article III of the Constitution. This requirement is met when the plaintiff "has suffered some ... threatened injury" caused by the defendant that can "be redressed by a favorable decision." See McInnis-Misenor v. Maine Medical Center, 319 F.3d 63, 67 (1st Cir. 2003). Here, Emhart has suffered "threatened injury" by PWIC's failure to acknowledge its obligation to provide coverage of NECC's liability relating to the Centredale Site. A determination of coverage now will ensure that the proceeds of the policies will remain available until Emhart's claim against NECC is adjudicated. Without the insurance proceeds, NECC would be unable to satisfy a judgment against it.

In Maryland Casualty Co. v. Pacific Coal & Oil Co., 312 U.S. 270 (1941), the Supreme Court found that a dispute between an insurer and a claimant was an "actual controversy," appropriate for resolution by declaratory judgment, even though no judgment had entered in the underlying action between the insurer and the claimant. Other federal courts applying federal law, as well as state courts applying the Uniform Declaratory Judgments Act, have followed suit. See, e.g., Bankers Trust Co. v. Old Republic Ins. Co., 959 F.2d 677 (7th Cir. 1992) (claimant who was not yet a judgment creditor permitted to sue insurer without regard to whether claimant was third party beneficiary of policy).

As to Count VIII, Emhart shows that PWIC's argument regarding third party beneficiary status should be rejected. There are issues of fact that must be resolved to determine whether, under Rhode Island substantive law, Emhart is a third party beneficiary of the policies. A motion to dismiss is not appropriate. The parties agree that Rhode Island follows the principles set down in Section 301 et seq. of the Restatement (Second) of Contracts (1981). This question revolves largely upon intent, as demonstrated by the insurance policies themselves. To

show it is a third party beneficiary, Emhart intends to rely upon Rhode Island's direct action statute (R.I. Gen. Laws § 27-7-1), a provision typically found in liability policies giving a claimant the right to sue the insurer directly[2] and the principle that "injured members of the general public are beneficiaries of liability insurance policies." Reagor v. Travelers Ins. Co., 415 N.E.2d 512, 514 (Ill. App. Ct. 1981).

The policies at issue are not before the Court at this early stage of the litigation. Intent cannot be discerned without reviewing the policy terms. At this time and on this record, PWIC is unable to establish that Emhart will be unable to prove that it is a third party beneficiary of the policies. Fischer v. United States Fidelity and Guaranty Co., 144 F. Supp. 315 (D.R.I. 1956).

## II. BACKGROUND

The Environmental Protection Agency ("EPA") has issued Notices of Potential Liability and a series of administrative orders to NECC, Emhart and other respondents (Complaint, ¶¶ 11-17). The notices to Emhart are based upon the alleged activities of Metro-Atlantic, Inc. ("Metro-Atlantic") (Complaint, ¶ 30). The EPA is expected to issue additional orders in the future (Complaint, ¶¶ 20-23). Emhart has incurred substantial expense in complying with these orders and expects to incur additional expense, particularly since the EPA estimates that it will seek to recover response costs of approximately $15 million, plus interest, from Emhart and other Potentially Responsible Parties (Complaint, ¶¶ 18-20). In Counts I-VI, Emhart seeks relief against NECC, including declaratory relief, under the "cost recovery" and "contribution" provisions of the Comprehensive Environmental Response, Compensation, and

---

2 At present, Emhart does not have complete copies of the policies PWIC issued to NECC.

Liability Act ("CERCLA"), 42 U.S.C. §§ 9607(a) and 9313, as well as Rhode Island statutes similar to CERCLA and Rhode Island common law.

Emhart also seeks declaratory and injunctive relief against PWIC. PWIC issued liability insurance policies to NECC for a period "between at least 1982 and 1985" (Complaint, ¶ 10). Emhart's claims against PWIC are asserted in Counts VIII, X, and XII. Based on information and belief, Emhart alleges that NECC notified PWIC of the EPA claim concerning the Centredale Site (Complaint, ¶ 24). Emhart also alleges that its claims against NECC in this action, which derive from the EPA proceedings regarding the Centredale Site, are covered by PWIC's policies and that PWIC "has an obligation ... to satisfy NECC's obligations to Emhart with respect to the damages that Emhart will recover if it prevails against NECC...." (Complaint, ¶¶ 80-81).

In Count VIII, Emhart seeks a declaratory judgment based upon its status as a third party beneficiary of the insurance policies issued to NECC by PWIC (Complaint, ¶ 83). Counts X and XII are grounded in Emhart's allegations that its claims against NECC "are considerably in excess" of NECC's assets plus the combined limits of the insurance policies issued by PWIC and by NECC's other insurer, defendant Travelers Casualty & Surety Co. ("Travelers") (Complaint ¶ 93). Emhart further alleges that the PWIC policies provide coverage for the Emhart claim against NECC, that the proceeds of the PWIC policies will be required to satisfy a judgment against NECC in favor of Emhart in this action and that "there is a risk that NECC and [PWIC] will take action, other than in the ordinary course of business for full and adequate consideration, to reduce the indemnification benefits" available under the policies so that such a judgment could not be satisfied (Complaint, ¶¶ 94-95). The additional allegations in Count XII concern the requirements for injunctive relief (Complaint, ¶¶105-109).

## III. ARGUMENT

### A. PWIC Cannot Satisfy Its Heavy Burden As A Party Seeking Dismissal

PWIC asserts that it is entitled to dismissal pursuant to Fed. R. Civ. P. 12(c) and, possibly, Fed. R. Civ. P. 12(b)(6).[3] The burden upon a party seeking dismissal at this early stage of litigation is a heavy one. As the First Circuit noted in remanding an action that had been dismissed, "rendition of judgment [under Rule 12(c)] in such an abrupt fashion represents an extremely early assessment of the merits of the case." Rivera-Gomez v. de Castro, 843 F.2d 631, 635 (1st Cir 1988). That statement is even more applicable to a Rule 12(b)(6) motion, which is filed at an earlier stage in the litigation. The dangers posed by a premature ruling are particularly evident here. PWIC asks the Court to rule on whether parties to insurance contracts intended that entities, such as Emhart, be third party beneficiaries to those contracts. However, the contracts at issue, i.e., the PWIC insurance policies, are not even before the Court.

As PWIC acknowledges, the Court must accept as true "the well-pleaded factual allegations of the complaint, draw all reasonable inferences therefrom in the plaintiff's favor and determine whether the complaint, so read, sets forth facts sufficient to justify recovery on any cognizable theory." Martin v. Applied Cellular Tech., Inc., 284 F.3d 1, 6 (1st Cir. 2002); see PWIC Mem. at 3. As PWIC also acknowledges, its motion should be denied if Emhart "might be able to prove additional facts sufficient to support its claim." In the alternative, PWIC must show that "it is clear from the facts alleged that [Emhart] cannot prevail." PWIC Mem. at 3. Based upon these standards, PWIC is not entitled to dismissal.

---

3 See note 1, supra. Under Fed. R. Civ. P. 12(b), a motion to dismiss "for failure to state a claim upon which relief can be granted" is to be made "before pleading if a further pleading is permitted." However, Fed. R. Civ. P. 12(c) provides that "[a]fter the pleadings are closed ..., any party may move for judgment on the pleadings." Because PWIC has not filed its answer and the pleadings have not been closed, PWIC's invocation of Fed. R. Civ. P. 12(c) is premature.

**B. Under Counts X And XII, Emhart Has Standing Regardless Of Its Third Party Beneficiary Status**

**1. Standing Is A Matter Of Federal Law, Not State Law**

PWIC assumes, without discussion, that standing is controlled by state law. In Count VIII, which is based upon an allegation that Emhart is a third party beneficiary, it is appropriate for the Court to look to state law to resolve that underlying substantive issue. See Section C, infra. The same is not true of Counts X and XII, which do not rest upon third party beneficiary status. Even if Emhart were not a third party beneficiary, it would be entitled to relief under applicable federal law.

In Maryland Casualty Co. v. Pacific Coal & Oil Co., 312 U.S. 270 (1941), the Supreme Court looked to federal law to determine whether a claimant had standing to litigate coverage issues in an action brought by an insurer under the Declaratory Judgment Act. Citing Maryland Casualty, the First Circuit looked to federal law in Lizza and Sons, Inc. v. Hartford Accident & Indemnity Co., 247 F.2d 262 (1st Cir. 1957), and, more recently, this Court looked to federal law in Standard Fire Ins. Co. v. Gordon, 376 F. Supp. 2d 218 (D.R.I. 2005), both cases dealing with the scope of the court's declaratory judgment jurisdiction.

The Fourth Circuit recently noted, in the context of an insurance case, that "whether a plaintiff in federal court has standing to maintain an action is a question of federal, not state law." Miller v. Augusta Mut. Ins. Co., 157 Fed. Appx. 632, 636 (4th Cir. 2005). It added that "even if Virginia courts would conclude that Miller lacked standing to pursue a declaratory judgment action against Augusta Mutual, it does not follow from that conclusion that Miller lacks standing to pursue a declaratory judgment action in federal court." Id. at 636-37. Earlier, the Third Circuit described as "settled law" that "a federal court decides for itself

whether a party has standing to raise a particular issue, or that a particular matter is justiciable or that it is not." Federal Kemper Ins. Co. v. Rauscher, 807 F.2d 345, 352 (3d Cir. 1987).

Once the allegations of the complaint are viewed in light of the applicable federal principles, it becomes clear that third party beneficiary status is not required for a claimant to have standing to bring a declaratory judgment in a federal court against an insurer.

**2. Standards For Determining Standing In The First Circuit**

Where, as here, a plaintiff seeks declaratory relief under 28 U.S.C. § 2201, it satisfies the "case or controversy" requirement of Article III of the Constitution by showing "that [it] personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant, and that the injury fairly can be traced to the challenged action and is likely to be redressed by a favorable decision." McInnis-Misenor v. Maine Medical Center, 319 F.3d 63, 67 (1st Cir. 2003) (citing Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc., 454 U.S. 464, 472 (1982)). While, in McInnis-Misenor, the issue was whether the defendant was in violation of a federal statute, the same principles apply where the actions of a private party, such as an insurer, are being challenged. "Article III standing is largely – albeit not entirely – a practical jurisprudence." 319 F.3d at 67. In sum, there must be actual threatened redressable injury linked to the defendant.[4]

**3. Under Maryland Casualty And Its Progeny, There Is Declaratory Judgment Jurisdiction In The Absence Of An Underlying Judgment**

In Maryland Casualty, where an insurer sued an insured and a claimant, the Supreme Court rejected the claimant's argument that the action should not be allowed to go forward as to him, holding that, under Article III of the Constitution, "there is an actual

---

[4] While NECC's liability to Emhart is not resolved, there is nothing contingent about the EPA claim except the precise scope and cost of the cleanup the EPA ultimately mandates.

controversy between" the insurer and the claimant. 312 U.S. at 274. This was true even though the claimant had not yet obtained a judgment against the insured. Id. at 271, 274. After Maryland Casualty was handed down, Professor Edwin Borchard, one of the draftsmen of both the Uniform Declaratory Judgments Act and the federal Declaratory Judgment Act and one of the principal pioneers in promoting declaratory judgment practice in the United States, wrote:[5]

> [Some courts have assumed,] contrary to overwhelming authority, that the issue between the company and the injured person is not ripe for adjudication because no judgment has yet been obtained by or against the insured.... This is to defeat one of the main purposes of the declaratory judgment.... *** It seems clear that the probable, practically inevitable claims of an injured person under the usual casualty policy can never be deemed merely hypothetical or insufficiently ripe for an adjudication of the question of insurer's liability. Probably the decision of the United States Supreme Court in Maryland Casualty Co. v. Pacific Coal and Oil Co., may be deemed to have settled this issue, even when the company is a defendant.

Edwin Borchard, Declaratory Judgments 636-37 (2d ed. 1941) (emphasis supplied, footnotes omitted).

As discussed below, federal courts, as well as state courts applying the analogous Uniform Declaratory Judgments Act, generally have considered that the question was settled by Maryland Casualty. This Court recognized as much when, in quoting Hawkeye-Security Ins. Co. v. Schulte, 302 F.2d 174, 177 (7th Cir. 1962), it stated that "[i]t would be anomalous to hold ... that an actual controversy exists between [the injured third party] and [the insurer] and yet deny [the injured third party] the right to participate in the controversy." Gordon, 376 F. Supp. 2d at 222 (ellipses and bracketed material in original). In Gordon, this Court permitted an insurer to

[5] See 10B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2752 at n.4 (3d ed. 1998). Professor Borchard's views continue to be authoritative. See, e.g., Steffel v. Thompson, 415 U.S. 452, 468 n.18 (1974); Capital Properties, Inc. v. State of Rhode Island, 749 A.2d 1069, 1081 (R.I. 1999).

require a claimant to litigate coverage issues. Here, the claimant should be permitted to require the insurer to do the same.

The question of whether a claimant has standing to litigate coverage issues with the tortfeasor's insurer in federal court was thoroughly explored in Federal Kemper. There, the insurer sued both its insured and the claimants, and after the insured defaulted, the claimants were allowed to pursue the coverage issues in their own right. At the time, the claimants' tort action against the insured was pending in district court. The Third Circuit found there was a "case or controversy" between the insurance company and the claimants which was justiciable under the federal Declaratory Judgment Act.

Although the claimants in Federal Kemper were defendants, the court analyzed the case as if they were plaintiffs, stating that "[s]tanding requires that the plaintiff allege personal injury fairly traceable to the defendant's allegedly unlawful conduct' which is 'likely to be redressed by the requested relief.'" 807 F.2d at 351 (quoting Allen v Wright, 468 U.S. 737, 751 (1984)). These principles, which are derived from Supreme Court jurisprudence, are consistent with those set down by the First Circuit in McInnis-Misenor. The question is whether the dispute between the parties is "concrete and ripe" rather than "hypothetical or abstract." Federal Kemper, 807 F.2d at 350. A judgment against the insured is not required.

Sunrise Shipping, Ltd. v. M/V American Chemist, 1998 WL 914263 (E.D. La. Dec. 30, 1998), discusses the same issues but with emphasis on the Declaratory Judgment Act[6] rather than on Article III. Exercising its admiralty jurisdiction, the court held that a claimant could bring a declaratory judgment action against the tortfeasor's insurer while his underlying

---

[6] The federal Declaratory Judgment Act, 28 U.S.C. § 2201, requires an "actual controversy" between the parties and permits the courts to "declare the rights and other legal relations of any interested party."

action was still pending. Id. at *2, 8. The court described "[d]eclaratory relief as an all-purpose remedy designed to permit an adjudication whenever the court has jurisdiction, an adjudication will serve a useful purpose, and there is an actual case or controversy." Id. at *3. It is clear from the court's opinion that the "actual controversy" requirement of the Declaratory Judgment Act has the same parameters as the "case or controversy" requirement of Article III. The issue is "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Id.

### 4. **Bankers Trust Is Directly On Point**

The Seventh Circuit applied these principles in Bankers Trust Co. v. Old Republic Ins. Co., 959 F.2d 677 (7th Cir. 1992),[7] which bears a striking resemblance to the case at bar. The plaintiff made a large loan, allegedly in reliance on faulty appraisals given by the insured, and brought a declaratory judgment action seeking a determination of the amount of coverage available under the policy issued by the defendant insurer. At the time suit was filed, both the insurer's declaratory judgment action against its insured and the bank's tort action against the insured were pending.[8] The district court dismissed the action "on the ground that until Bankers Trust obtained a judgment against [the insured] it would have no actual 'controversy' with [the

---

[7] The Rhode Island Supreme Court cited Bankers Trust in dicta when it briefly discussed whether there was a distinction between a declaratory judgment action and a direct action against the insurer. Mendez v. Brites, 849 A.2d 329, 332 n.2 (R.I. 2004). A decade earlier, the court permitted a declaratory judgment action by a claimant under circumstances where a direct action would not have been permitted. Morrow v. Norfolk & Dedham Mut. Fire Ins. Co., 661 A.2d 967 (R.I. 1995).

[8] During the pendency of the action by the bank, the separate action between the insurer and the insured settled. The bank then amended its complaint to allege that the settlement was fraudulent. Under the settlement, the insurer was liable for only $425,000, considerably less than the bank's $30 million tort claim against the insured. 959 F.2d at 679-80.

insurer] within the meaning of Article III." Id. at 680. The Seventh Circuit reversed, holding that the suit was not "premature."

While the Seventh Circuit recognized that the bank might not prevail in the underlying action or might only establish entitlement to recovery of an amount less than the attachment point of the applicable policy, it also pointed out that the insured did not have the resources to pay a large judgment. Id. at 680-81. The court then considered a hypothetical:

> [S]uppose that ... before [the injured party] could feasibly bring a tort suit, let alone obtain a judgment, the insurer declared the liability insurance policy void; and ... the insured had no other assets. Then a tort suit would be worthless unless the insured's victim could obtain a declaration that the policy was valid after all.

Id. at 682. The court then applied that reasoning to the case before it, holding that "the victim of an insured's tort, even though he is not a third-party beneficiary of his insurer's insurance policy, has a legally protectable interest in that policy before he has reduced his tort claim to judgment (but only after he has been injured.)" Id.[9] The threat to the "legally protectable interest" found in Bankers Trust fits within the category of "threatened injury" – the type of injury that supports standing under cases in the First Circuit. See McInnis-Misenor, 319 F.3d at 70-71.

Bankers Trust also is based upon just the sort of "practical" considerations that the First Circuit deems relevant. When the First Circuit, in McInnis-Misenor, addressed the question of "ripeness" after considering the standing issue, it noted the substantial overlap between the two, and then explained that one of the issues raised by ripeness involves "the hardship to the parties of withholding court consideration." 319 F.3d at 70 (quoting Abbott

---

9 There is a conflict of authority within and among jurisdictions regarding the third party beneficiary status of a claimant prior to entry of a favorable underlying judgment. While Bankers Trust relied upon Illinois law, Illinois courts have held that claimants have third party beneficiary status while the underlying suit is pending. See, e.g., Reagor v. Travelers Ins. Co., 415 N.E.2d 512, 513-15 (Ill. App. Ct. 1981) (discussed in Section C, infra).

Labs. v. Gardner, 387 U.S. 136, 149 (1967)). A claimant who waits until the underlying action is resolved risks the loss of the insurance proceeds in the interim. The insured has an incentive to settle, rather than litigate, with its insurer since the party with the primary interest in the insurance proceeds is the claimant. That is precisely what happened in Bankers Trust. See note 8, supra. Moreover, as the Bankers Trust court pointed out, a claimant's decision whether to prosecute the underlying tort action is dependent upon the availability of insurance proceeds when the insured does not have sufficient assets to satisfy the claim. 959 F.2d at 682.

The allegations of Emhart's complaint, which must be taken as true for the purpose of the PWIC motion, raise the "hardship" issues present in Bankers Trust. Emhart alleges in Count X that the proceeds of the PWIC policies will be required to satisfy a judgment Emhart obtains against NECC. It also alleges that "there is a risk that NECC and [PWIC] will take action, other than in the ordinary course of business for full and adequate consideration, to reduce the indemnification benefits" available under the policies so that such a judgment could not be satisfied (Complaint, ¶¶ 94-95). As in Bankers Trust, Emhart's declaratory judgment action is not premature even though the underlying claim has not been resolved.

This Court recognizes the right of a party seeking recovery under a liability policy to prosecute a declaratory judgment action against the tortfeasor's insurer, particularly where, as here, the party's recovery depends upon the availability of the insurance proceeds. In Peerless Ins. Co. v. Rivera, 208 B.R. 313 (D.R.I. 1997), an insurer sought relief from an automatic stay so as to proceed with a declaratory judgment action against the bankrupt insured. At the time, suits by several claimants were also pending against the bankrupt insured. Id. at 314. This Court lifted the stay because it assumed that the claimants, who "have a vital interest in resisting [the insurer's] bid for a declaratory judgment because it is apparent that any judgment they obtain can

be satisfied only from the policy proceeds," would be permitted to intervene. Id. at 317.[10] Whether a claimant seeks to protect its interest by bringing its own declaratory judgment action or by moving to intervene in an action between the insurer and the insured, the interest to be protected is the same.

**5. The Result Is The Same Under The Uniform Declaratory Judgments Act**

While it is clear that standing is controlled by federal law, federal courts sometimes look to state law to buttress their conclusions. A claimant has standing to seek a declaratory judgment against the tortfeasor's insurer under the Uniform Declaratory Judgments Act ("UDJA") before judgment has entered in the underling case. The analysis under the UDJA is the same as under the federal Declaratory Judgment Act. Community Action of Greater Indianapolis, Inc. v. Indiana Farmers Mut. Ins. Co., 708 N.E.2d 882, 885 n.3 (Ind. Ct. App. 1999) (standing requirement of the UDJA is "the functional equivalent" of federal Article III "case or controversy" requirement.).

The UDJA, which is in effect in Rhode Island, provides that "[a]ny person interested under a ...written contract ... or whose rights, status, or other legal relations are affected by a ... contract ... may have determined any question of construction or validity arising under the ... contract ... and obtain a declaration of rights, status, or other legal relations thereunder." R.I. Gen. Laws § 9-30-2. The purpose of the statute is to "to settle and to afford relief from uncertainty and insecurity;" it is to be "liberally construed," and it is to be

---

10 This Court's assumption was based soundly in the applicable law. See Continental Ins. Co. v. Law Office of Thomas J. Walker, 171 F.R.D. 183, 184-86 (D. Md. 1987) (intervention permitted as being preferable to the claimant's filing of a separate suit); Indiana Ins. Co. v. Murphy, 2006 WL 687625 at *2-4 (Ohio Ct. App. Mar. 20, 2006) (intervention permitted while claimant's underlying actions against the insured were still pending, based upon their claim of "an interest" in the insurance policy and the claimant's allegation "that participation in the lawsuit is necessary to the protection of that interest").

"interpreted and construed so as to effectuate its general purpose to make uniform the law of those states which enact it, and to harmonize, as far as possible, with federal laws and regulations on the subject of declaratory judgments and decrees." R.I. Gen Laws §§ 9-30-12 and 9-30-15. Thus, Rhode Island would look to federal principles, which have already been discussed, as well as the case law in other states that have enacted the UDJA. As Rhode Island's highest court has recognized, "[t]he purpose of this Act 'is to facilitate the termination of controversies.'" Capital Properties, Inc. v. State of Rhode Island, 749 A.2d 1069, 1080 (R.I. 1999) (citing Fireman's Fund Ins. Co. v. E. W. Burman, Inc., 391 A.2d 99, 101 (R.I. 1978)).

In Community Action, the court held that a claimant, whose business had been damaged by the allegedly faulty work of a roofing contractor, had "a legally protectable interest in the insurance policy before he has reduced his tort claim to judgment." 708 N.E.2d at 885. In doing so, it found Bankers Trust "persuasive" and noted that its "decision ... is consistent with decisions from other jurisdictions." Id. at 885-86.

The court reached the same result in Titan Indem. Co. v. Williams, 743 So.2d 1020 (Miss. 1999), where the claimant was held to be a "person ... whose rights, status, or other legal relations are affected" under such a contract within the meaning of its local rule, which is identical to R.I. Gen. Laws § 9-30-2. Id. at 1023 (emphasis in original). In Christian v. Sizemore, 383 S.E.2d 810, 814 (W.Va. 1989), the claimant's suit against the insurer was "consistent with the remedial purposes of the Uniform Declaratory Judgments Act." The Christian court also discerned "an actual controversy between the insurance carrier and the injured plaintiff because of the very real possibility that the plaintiff will look to the insurer for payment." Id. As another court noted, "allowing such declaratory actions [under the UDJA] will

prevent the waste of parties' and judicial resources." Wilson v. Continental Cas. Co., 778 N.E.2d 849, 852 (Ind. Ct. App. 2002).

Thus, even if Emhart's declaratory judgment action against PWIC had been filed in state court under state law, Emhart would have standing to obtain a declaration under the UDJA regarding PWIC's coverage obligations under the relevant policies. Accordingly, Emhart is entitled to an adjudication on the merits of the claims for declaratory relief asserted in Counts X and XII.

### C. As To Count VIII, Third Party Beneficiary Status Cannot Be Denied On This Record

#### 1. Issues Of Fact Require Denial Of The Motion

As has been shown, Counts X and XII, which do not depend upon third party beneficiary status, are not at issue in the motion and must be permitted to go forward. As to Count VIII, which does depend upon third party beneficiary status, PWIC's motion should be denied due to issues of fact as to whether Emhart, as a claimant against NECC, is an intended beneficiary of the PWIC liability insurance policies.

PWIC correctly asserts that Rhode Island has been guided by the Restatement (Second) of Contracts ("Restatement") in determining whether a person or entity has the status of a "third party beneficiary" or "intended beneficiary"[11] to a contract. Forcier v. Cardello, 173 B.R. 973, 985 (D.R.I. 1994); see PWIC Mem. at 5. That issue turns on the "intent" of the contracting parties, an issue which may be resolved in Emhart's favor either on the basis of the PWIC policies or on the basis of a more detailed analysis of factors concerning intent. The

---

[11] For purposes of the PWIC motion, there is no difference between the terms "intended beneficiary" and "third party beneficiary."

PWIC policies are not before the Court, and PWIC has not provided the Court with information that is essential to determining whether Emhart is a third party beneficiary of the PWIC policies.

This Court's decision in Fischer v. United States Fid. & Guar. Co., 144 F. Supp. 315 (D.R.I. 1956), is directly on point. There, this Court denied a Rule 12(b)(6) motion, where a claim was asserted by an employee "as a third-party beneficiary of the contract of insurance made between the defendant [insurer] and his said employer." Id. at 316. The plaintiff alleged that "he is a member of a class for whose benefit the alleged contract between his employer and the defendant was made and as one of the beneficiaries of said contract he seeks to recover the benefit thereof." Id. The Court refused "to speculate as to the nature of the proof which he may present" and permitted the action to proceed. This Court should do the same in the case at bar.

### 2. The Restatement (Second) Of Contracts Requires An Analysis Of "Intent"

Under Section 302(1)(b) of the Restatement, a beneficiary is an "intended beneficiary" where "recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and ... the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance."[12] These principles "are applicable to both conditional and unconditional promises...." Restatement § 303. Thus, while

---

[12] Section 302 of the Restatement provides:

(1) Unless otherwise agreed between promisor and promisee, a beneficiary of a promisee is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and either

(a) the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary; or

(b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.

(2) An incidental beneficiary is a beneficiary who is not an intended beneficiary.

the right to performance must await the fulfillment of the condition, the status of "intended beneficiary" is fixed before the promise becomes absolute.

Clearly, the status of "intended beneficiary" turns on "intent." [13] However, "[i]t is not essential to the creation of a right in an intended beneficiary that he be identified when a contract containing the promise is made." Restatement § 308; see also Flattery v. Gregory, 489 N.E.2d 1257, 1262 (Mass. 1986). Moreover, it is not "necessary that the promisee's obligation to pay the beneficiary be in existence when the contract is made." Flattery, 489 N.E.2d at 1261 (citing Illustration 3 to Restatement § 302). PWIC acknowledges that, so long as Emhart is an "intended beneficiary" of the insurance policies it issued to NECC, Emhart has standing as a third party beneficiary to assert claims against PWIC. PWIC Mem. at 4.

Evidence of the intent to benefit a claimant flows from applicable Rhode Island statutes. Rhode Island requires that "[e]very policy written insuring against liability for property damage ... shall contain provisions to the effect that the insurer shall be directly liable to the injured party ... to pay that party the amount of damages for which the insured is liable." R.I. Gen. Laws § 27-7-1. Under certain circumstances, the claimant may assert its claim directly against the insurer before its underlying claim has been resolved. See, e.g., R.I. Gen. Laws § 27-7-2 (where the insured dies during the underlying proceedings or process in the underlying action

---

13 Rhode Island also has looked to Section 133 of the Restatement (First) of Contracts. See Finch v. Rhode Island Grocers Ass'n, 175 A.2d 177, 181 (R.I. 1961) (utilizing the concept of "creditor" beneficiaries). The concept of creditor beneficiaries was carried over into Section 302(1)(a) of the Restatement. See Restatement § 302, Comment b. Professor Corbin explains that creditor beneficiary status arises "[i]f the promisee in a contract contemplates the present or future existence of a duty or liability to a third party and enters into the contract with the expressed intent that the performance contracted for is to satisfy and discharge that duty or liability...." See Corbin on Contracts, § 787 at 749 (single volume ed. 1952) (emphasis added). This is consistent with Section 303 of the Restatement, which pertains to conditional promises. The purpose of a liability insurance policy is to discharge such a liability, and it is common knowledge that payments of the proceeds of liability insurance policies are most often made, not to the insured, but to the claimant. As shown in the text, the "intent" requirement of Section 302(1)(b) is met. However, Subsection (a), which does not require intent, also applies. See Restatement § 302, Comment b.

is returned "non est inventus"); R.I. Gen. Laws § 27-7-2.4 ("whenever the alleged tortfeasor files for bankruptcy"). Thus, the insurer's direct liability is fixed before the underlying claim has been resolved even though the right to claim insurance proceeds directly from the insurer may not always accrue until a later time. As the Court, when considering Rule 12(b)(6) and Rule 12(c), is required to draw all inferences in favor of Emhart, it must infer that PWIC has complied with this statute.

Separate and apart from any impact of state law, evidence of intent to benefit a claimant is demonstrated by a clause contained in general liability policies written during the relevant period (the early to mid-1980's). These policies incorporate the following provision:

> Any person or organization ... who has secured such judgment or written agreement shall thereafter be entitled to recover under this policy to the extent of the insurance afforded by this policy.

See, e.g., Indiana Lumbermen's Mutual Ins. Co. v. Champion, 343 S.E.2d 15, 18 (N.C. Ct. App. 1986) (language from policy issued in 1981); Clark v. Simon, 1992 WL 354098, at *1-2 (Del. Super. Ct. Nov. 9, 1992) (language from policy covering incident in 1984); see also Clougherty v. Royal Ins. Co., 232 A.2d 610, 613 (R.I. 1967) (quoting from earlier policy). Such a clause, which recognizes the claimant's right to proceed directly against the insurer, would satisfy Rhode Island's statutory requirement.[14]

Count VIII may not be dismissed or terminated by judgment on the pleadings without giving Emhart the opportunity to obtain discovery to establish that the policies at issue contained this language or other similar language. The statute and the typical policy language are independent bases of demonstrating a clear intention that the class of persons who assert a potentially covered claim against the insured have a right to proceed directly against the insurer

---

[14] This provision may even broaden the class of persons with a right of direct action against an insurer.

for a determination as to whether the policy covers the claim. Intent to benefit a claimant injured by the insured is inherent in a liability policy. There may be a question as to when the right to assert a direct claim accrues. There is no question as to the right to proceed with such a claim.

3. **Cases Finding Third Party Beneficiary Status**

Massachusetts,[15] like Rhode Island, follows the Restatement in determining whether a party is a third party beneficiary under a contract. Flattery, 489 N.E.2d at 1260-61. Massachusetts courts hold that a claimant is a third party beneficiary of a contract between a tortfeasor and an insurance agent to procure insurance which would have covered the torfeasor's liability to the claimant. In Flattery, the agent allegedly erred by failing to obtain the higher limits that the insured had directed it to procure. The court relied upon a Massachusetts direct action statute similar to that in effect in Rhode Island.[16] That statute "display[ed] the Legislature's view that injured highway travelers are intended beneficiaries of optional automobile liability insurance." Id. at 1262.

The court then turned to the "more important question" of "whether the contracting parties intended the injured party to be a beneficiary of their contract." It also answered that question in the affirmative:

> Applying the Restatement (Second) of Contracts principles discussed above, we conclude that the plaintiff was clearly an intended beneficiary of the alleged contract between [the agent] and the [insureds]. Logic alone argues to the same result. Although the owner of a motor vehicle may be motivated to obtain optional liability insurance coverage solely by a selfish interest to protect his assets, rather than by concern for the needs of parties

15 This Court will look to Massachusetts law where Rhode Island cases do not furnish precedent and the two states have a similar statutory scheme. See Paul Revere Life Ins. Co. v. Fish, 910 F. Supp. 58, 65 (D.R.I. 1996).

16 That statute was narrower in scope than the Rhode Island statute as it addressed only injured highway travelers, while the Rhode Island statute is of more general application.

> negligently injured by him, the fact is that a motor vehicle owner achieves that protection by entering into a contract the very object of which is the payment, in whole or in part, of judgments against him.

Id. Thus, the claimant was an intended beneficiary of the policy.

The principles set forth in Flattery are not limited to the rights of those injured in motor vehicles. The same court reached the same result in Rae v. Air-Speed, Inc., 435 N.E.2d 628 (Mass. 1982), which involved worker's compensation coverage. Applying Section 302 of the Restatement, it set forth the principle that

> when one person, for a valuable consideration, engages with another, by simple contract, to do some act for the benefit of a third, the latter, who would enjoy the benefit of the act, may maintain an action for the breach of such engagement.

Id. at 632-33 (quoting Brewer v. Dyer, 61 Mass. 337, 340 (1851)). The rationale that a claimant is a third party beneficiary of a contract to procure insurance applies with equal force to a claimant under an insurance policy that has been procured.

More recently, in O'Connell v. Reliance Ins. Co., 737 N.E.2d 13 (Mass. App. Ct. 2000), the court held that a person who fell at a construction site was a third party beneficiary under the certificate of insurance issued to a government contractor. Although the court pointed out that the insured had a contractual obligation to procure the insurance, Flattery had previously held that, for third party beneficiary purposes, it did not matter whether the insurance was optional or required.

Other courts applying the Restatement have held that a claimant has third party beneficiary status. Reagor v. Travelers Ins. Co., 415 N.E.2d 512, 514 (Ill. App. Ct. 1981), holds that "an injured person has rights under the policy which vest at the time of the occurrence giving rise to his injuries." In Reagor, which involved a diving accident, the court emphasized that "liability insurance is no longer considered merely a private matter between an insured and

an insurer" and therefore "adopted[ed] the position that injured members of the general public are beneficiaries of liability insurance policies." Id. Similarly, in United Services Automobile Ass'n v. Simpson, 485 S.E.2d 337, 338, 340-41 (N.C. 1997), the court held that the claimants were third party beneficiaries of the insurance policies between the tortfeasor and its insurer. In Werrmann v. Aratusa, Ltd., 630 A.2d 302, 305-06 (N.J. Super. Ct. App. Div. 1993), the court cited Flattery, looked to the Restatement, and held that a restaurant patron was a third party beneficiary of the restaurant's insurance policy. In the court's view, a general liability policy "is intended to provide a source of recovery for an innocent injured party who, because of the insolvency of the inured, would otherwise have no means of redress." Id. at 306. See also Allied Products Corp. v. ITT Industries, Inc., 2004 WL 635212, at *7 (N.D.Ill. March 31, 2004) (relying upon a policy provision permitting a person to "sue us to recover on ... a final judgment against an insured," which "give[s] injured .... claimants an interest in the policies").[17]

Atlantic Crane Service, Inc. v. S.G. Marino Crane Service, Inc., 2000 WL 1828270 (D. Md. Nov. 29, 2000), is similar to the case at bar in that the claimant sought insurance coverage of its contribution or indemnification claim against the insured. The underlying liability had not yet been determined and Marino, the claimant, sought a declaration for such sums as "may be adjudged against it" for damages caused by a crane it leased to the

---

[17] Third party beneficiary status under insurance policies is not confined to policies covering liability. Even where a policy provides first party coverage to a named insured, third parties may have direct rights against the insurer. The court in Dyess v. American Hardware Ins. Group, Inc. 709 So. 2d 447, 450-451 (Ala. 1998), held that the driver test-driving a vehicle owned by an automobile dealership was a third party beneficiary under the uninsured motorist provisions of the dealership's policy. Although the insured and the insurer "did not intend for Dyess in particular to benefit from the policy, they did intend to benefit people in Dyess' situation." Id. at 452. See also Jones v. Poole, 579 N.W.2d 739 (Wis. Ct. App. 1998). Although the policy in Hickman v. Safeco Ins. Co. of America, 695 N.W.2d 365 (Minn. 2005), was between a lender and its insurer, the borrower was a third party beneficiary where the policy provided for certain payments to the borrower. Relying on Restatement principles, the court found the requisite "intent." Id. at 369-71. As discussed above, the policies at issue here also are likely to include a clause providing for direct payments to a claimant, such as Emhart, of any judgment that enters in its favor against NECC, PWIC's insured.

insured. Id. at *3. While here, contribution or indemnification is controlled by statute or by common law, in Atlantic Crane contribution or indemnification was contractual. However, the contractual right was set forth in an agreement between Marino and its lessee to which the insurer was not a party. Id. The insurance contract did not name Marino as an additional insured nor did it refer to Marino, either by name or by classification. It only provided coverage to the insured for "an insured contract." Id. The court held that Marino was a third party beneficiary of the contract and was entitled to seek declaratory relief, finding an "intent to make the promise to the third party in fact if not in form." Id. at *5.

Emhart has alleged in Count VIII that it is a third party beneficiary of the insurance policies between PWIC and NECC and, as the cases discussed here show, it is entitled to the opportunity to proceed with that count.

### 4. The Cases Cited By PWIC Are Inapposite

PWIC errs in suggesting that under Rhode Island law, a claimant cannot be a third party beneficiary of an insurance contract. None of the Rhode Island cases it cites suggest such a rule. It relies primarily on cases that do not even involve insurance policies. In Sousa v. Town of Coventry, 774 A.2d 812 (R.I. 2001) and Meyer v. City of Newport, 844 A.2d 148 (R.I. 2004), the court simply held that a member of the general public does not have standing to challenge a government contract. The Meyer plaintiffs, who sought to void Newport's agreement to limit access to a certain wharf, "failed to demonstrate a personalized injury distinct from that of the community as a whole." Id. at 151. Where the Sousa plaintiffs missed the deadline for challenging a building permit, the court held that "there is no support for the proposition that, in the circumstances that existed here, an individual who is not a party to a contract" may seek to void it or have it declared unenforceable. 774 A.2d at 815 n.4 (emphasis supplied). Standing of a member of the public to void a governmental contract is far different from standing of a

claimant to seek a determination concerning the scope of coverage of insurance policies that will provide funds to satisfy its claim.

Forcier raises the question of when third parties may claim damages from an accountant. The court held that the debenture holders were not third party beneficiaries because the record failed to show that the accountant and its client intended that the third parties would receive the accountant's work. 173 B.R. at 986-87. Here, in contrast, a primary purpose of a liability insurance policy is to pay a claimant damages for which the insured is liable. Unlike the accountant's work product, which was delivered to its client, an insurer is not called upon to perform at all until someone makes a claim against an insured. A claimant seeking coverage under an insurance policy is neither remote to the purposes of the policy nor a surprise to the insurer. The standing issue in each of these Rhode Island cases cited by PWIC is readily distinguishable.

PWIC also cites Employers Mut. Cas. Co. v. Pires, 723 A.2d 295 (R.I. 1999), a declaratory judgment action by an insurer against its insured, for the proposition that "third-party standing to enforce a contract extends equally to circumstances involving insurance agreements." See PWIC Mem. at 5. PWIC's reliance upon this case is misplaced. Although the insurer in Pires also named the claimant (id. at 297), no issue regarding the claimant's standing arose. The insured filed counterclaims and opposed the insurer's summary judgment motion while the claimant apparently remained passive, and the claimant's standing was unchallenged. Pires, at least implicitly, stands for the proposition that the claimant has standing in an insurance coverage case.

The out-of-state cases cited by PWIC are easily distinguishable as well. In Klamath Water Users Protective Ass'n v. Patterson, 204 F.3d 1206 (9th Cir. 2000), the court

relied upon a Restatement provision pertaining specifically to government contracts and pointed to contract language making clear that irrigators did not have enforceable rights to water impounded by a multipurpose dam over which the federal government had ultimate control. Id. at 1211-12. Denman v. Peoples Heritage Bank, Inc., 704 A.2d 411 (Me. 1998), which denied a pedestrian standing to claim under a snow removal contract, and Anderson v. Regents of the University of California, 554 N.W.2d 509 (Wis. 1996), which involved tourists claiming the right to Rose Bowl tickets under a ticket-distribution agreement intended to prevent scalping, are simply examples of plaintiffs too remote to be entitled to standing. St. Paul Fire Marine v. Med. Protective Co., 675 S.W.2d 665, 667 (Mo. Ct. App. 1984), which involved a dispute between two insurers who issued policies to the same party, does not discuss whether a claimant is an intended beneficiary of a liability insurance policy. It does not even address either the Restatement or intent. In Farmers Ins. Co. v. Miller, 926 S.W.2d 104, 107 (Mo. Ct. App. 1996), the claimants asserted that they were in privity with the insureds, not that they were third party beneficiaries under the insurance policies. None of these cases assist the Court in dealing with the narrow standing issue raised here.

## IV. CONCLUSION

For the foregoing reasons, the Motion of the Defendant Providence Washington Insurance Company for Judgment on the Pleadings Pursuant to Rule 12(c) should be denied.

Emhart Industries, Inc.
By Its Attorneys,

Craig M. Scott (CMS)

Craig M. Scott (#4237)
Duffy Sweeney & Scott, Ltd.
One Turks Head Place, Suite 1200
Providence, RI 02903
(401) 455-0700
(401) 455-0701 (facsimile)
cscott@duffysweeney.com

Of Counsel:
Jack R. Pirozzolo
Richard L. Binder
Willcox, Pirozzolo & McCarthy
Professional Corporation
50 Federal Street
Boston, MA 02110
(617) 482-5470
(617) 423-1572 (facsimile)
jpirozzolo@wpmlaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that on the 5th day of July, 2006, a copy of the within document was served by first class mail, postage prepaid, upon the following counsel of record:

Todd D. White, Esq.
Jaime LaPorte, Esq.
Adler, Pollock & Sheehan, P.C.
One Citizens Plaza, 8th Floor
Providence, Rhode Island 02093-1345

R. Kelly Sheridan, Esq.
Jason C. Preciphs, Esq.
Roberts Carroll Feldstein & Peirce
10 Weybosset Street
Providence, RI 02903

Theresa Benson

H:\Clients\Wilcox, Pirozzolo & McCarthy\Pleadings\Mem re Opposition to PWIC Motion to Dismiss.doc