**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

**EMHART INDUSTRIES, INC.,**

**Plaintiff,**
v.

**NEW ENGLAND CONTAINER COMPANY, INC., PROVIDENCE WASHINGTON INSURANCE COMPANY and TRAVELERS CASUALTY & SURETY COMPANY**

**Defendants.**

**CIVIL ACTION NO. 06-218 S-LDA**

# MEMORANDUM IN SUPPORT OF DEFENDANT NEW ENGLAND CONTAINER COMPANY, INC.'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(6) AND MOTION TO STAY

Defendant New England Container Company, Inc. ("NECC") respectfully submits this memorandum of law in support of its motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) and its motion to stay these proceedings.

In its complaint, plaintiff Emhart Industries, Inc. ("Emhart") alleges that it has incurred response costs at the Centredale Manor Superfund Site pursuant to three administrative orders issued by the U.S. Environmental Protection Agency ("EPA"). Emhart claims it is entitled to recover these costs directly from NECC and to indemnification from Providence Washington Insurance Company ("PWIC") and Travelers Casualty & Surety Company ("Travelers") under NECC's insurance policies with PWIC and Travelers.

The Court should dismiss Counts I and II of this action pursuant to Federal Rule of Civil Procedure 12(b)(6) for Emhart's failure to state a claim upon which relief may be granted because: (1) as a potentially responsible party ("PRP") under the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. Section 9601 *et seq.,* Emhart cannot bring a cost recovery action against NECC under 42 U.S.C. Section 9607(a), and

(2) Emhart is not authorized to bring a contribution claim against NECC under 42 U.S.C. Section 9613(f)(1) in the absence of a civil action under 42 U.S.C. Sections 9606 or 9607(a).

The Court should also dismiss Counts III, IV, V and VI, seeking relief under Rhode Island statutory and common law because, having dismissed Emhart's federal claims, there is no longer a jurisdictional basis for plaintiff's pendent state-law claims. Finally, the Court should dismiss or, in the alternative, stay Counts VII, VIII, IX, X, XI, and XII because the insurance policies that are the subject of these counts are currently the subject of litigation pending in the Rhode Island Superior Court.

## FACTS AND PROCEDURAL HISTORY

The parties to this action are two PRPs involved in a Superfund site in Rhode Island (Emhart and NECC) and the insurance providers (Travelers and PWIC) for one of those PRPs (NECC). Plaintiff Emhart is the successor to Metro-Atlantic Inc., a chemical manufacturer who operated a manufacturing facility from approximately 1940 to 1968 on a portion of what is now known as the Centredale Manor Superfund Site (the "Site") in North Providence, Rhode Island. Complaint, ¶30. The Site was placed on the National Priorities List on March 6, 2000. Complaint, ¶14. EPA identified Emhart as a PRP at the Site on February 28, 2000, when EPA sent Emhart a Notice of Potential Liability, demanding that Emhart remediate the Site and reimburse EPA for response costs it incurred at the Site. Complaint ¶13.

NECC is also a PRP at the Site. NECC operated a drum reconditioning facility on a portion of the Site from approximately 1952 until 1971. Complaint, ¶25. NECC learned that EPA had identified it as a PRP when it received a Notice of Potential Liability dated September 15, 1999. Complaint, ¶11. Through that notice, EPA demanded that NECC remediate the Site and reimburse EPA for its response costs incurred at the Site. Complaint, ¶11.

On June 4, 2004, NECC ceased all operations and sold all of its assets. Currently NECC retains only cash assets, which are managed to resolve NECC's liabilities, including liability associated with the Site.

The other two defendants in this action are PWIC and Travelers. NECC purchased various insurance policies from both of these companies and, with respect to the Site, is currently seeking enforcement of those policies in Rhode Island Superior Court. See *New England Container, Inc. v. Travelers Casualty & Surety Company and Providence Washington Insurance Company*, Sup. Ct. County of Providence, Rhode Island (C.A. No. 06-2274), attached as Exhibit 1.

Prior to this lawsuit, Emhart and NECC had a very different relationship. In response to being named as PRPs by the EPA, 2001, Emhart and NECC entered into a joint defense agreement, retained an environmental consultant to conduct the removal actions ordered by EPA, and shared costs associated with implementing removal actions ordered under EPA's Unilateral Administrative Order ("UAO") dated April 12, 2000, a second UAO dated March 26, 2001, and an Administrative Order on Consent ("AOC") dated September 11, 2003. Complaint, ¶¶ 15, 16, and 17. Emhart and NECC also engaged an environmental consultant to review EPA's ecological risk assessment, baseline human health risk assessment, and the remedial investigation of the Site and to develop and propose an alternative remedy for the Site.

On August 19, 2005, NECC's parent company and sole shareholder, Russell-Stanley Holdings, Inc. ("RSH"), filed a voluntary petition with the United States District Court for the District of Delaware for reorganization relief under Chapter 11 of the Bankruptcy Code. See Russell-Stanley Holdings, Inc. Voluntary Petition, United States Bankruptcy Court,

District of Delaware (August 19, 2005).[1] On September 23, 2005, Emhart filed proof of claim number 350 on behalf of itself, and proof of claim number 351 on behalf of EPA, against the RSH estate, alleging that RSH was liable for cleanup costs at the Site on the theory that RSH was the alter-ego of NECC, which was not a debtor in the bankruptcy action. During discovery in that action, Emhart subpoenaed and obtained copies of NECC's insurance records. See Subpoena, *In Re Russell-Stanley Holdings, Inc.*, Case No. 05-12339 (Bankr. D. Del.) (subpoena filed in the United States Bankruptcy Court for the District of New Jersey on October 10, 2005). On October 24, 2005, the Bankruptcy Court rejected Emhart's claim after determining that RSH was not the alter-ego of NECC. See *In re: Russell-Stanley Holdings, Inc.*, Findings of Fact, Conclusions of Law, and Order Under 11 ISC §§ 363, 365, and 1129(a) and (b) and Fed. R. Bankr. P. 3020 (I) Confirming Joint Prepackaged Plan of Reorganization of Russell-Stanley Holdings, Inc. and Its Affiliate Debtors, (II) Approving Adequacy of disclosure Statement, and (III) Approving Solicitation Procedures, Case No. 05-12339 (MFW) (Bankr. D. Del. Oct. 24, 2005) at 7. RSH's reorganization plan was confirmed on October 25, 2005, and consummated on November 9, 2005. See Notice of (A) Entry of Order Confirming Joint Prepackaged Plan of Reorganization of Russell-Stanley Holdings, Inc. and its Affiliated Debtors, (B) Occurrence of Effective Date, and (C) Bar Dates for Filing Administrative Claims and Professional Fee Claims, *In re: Russell-Stanley Holdings, Inc.*, Case No. 05-12339 (MFW) (Bnkr. D. Del., Nov. 10, 2005).

In order to administer RSH's estate and resolve any remaining liabilities under the reorganization plan, RSH's bankruptcy plan administrator determined that NECC must settle its liabilities, including its liabilities associated with the Site, by allocating its remaining assets

---

[1] This petition became *In Re: Russell-Stanley Holdings, Inc.*, Case No. 05-12339 (MFW) (Bnkr. D. Del.). All of the documents related to this petition and cited within this paragraph are matters of public record. NECC will supply copies of any of the documents to the Court, should the Court so desire.

among its creditors rather than expending any of those resources through a bankruptcy. To that end, in February 2006, NECC discontinued its participation in cost-sharing activities with Emhart related to developing and proposing an alternative remedy for the Site. On or about February 17, 2006, counsel for RSH sent a letter to the United States Department of Justice ("DOJ") offering to resolve NECC's liability to EPA for past and future response costs associated with the Site by, in part, ensuring that EPA would receive 100% of any proceeds recovered against NECC's insurance policies. On or about March 8, 2006, Emhart contacted RSH, stating that DOJ had told Emhart of RSH's letter and asked RSH to commence settlement discussions. RSH and NECC agreed to begin those discussions.

During the course of settlement discussions, RSH and NECC supplied Emhart with a complete list of NECC's insurance policies and a synopsis of corresponding information, including policy numbers. Counsel prepared this list to assist it in tracking the policies in conjunction with a lawsuit NECC filed in Rhode Island Superior Court against its insurers to seek enforcement of the policies. Shortly after Emhart was provided with this information, it filed this action.

Despite the lawsuit, the parties have continued to negotiate. Because settlement discussions have been ongoing, Emhart verbally agreed with NECC to two extensions of time to respond to this Complaint, first to July 19, 2006, the date on which the parties met to discuss the form of settlement, and again to August 16, 2006, to afford the parties time to draft and review a settlement agreement. Emhart and NECC stipulated to a third expansion of time, filed with this Court on August 25, 2006, requiring NECC to file a response on September 15, 2006. On September 15, 2006, NECC moved this Court for an additional extension of time to respond until September 22, 2006, which the Court granted.

## ARGUMENT

### I. THE COURT SHOULD DISMISS COUNTS I AND II BECAUSE THERE ARE NO FACTS THAT ENTITLE EMHART TO RELIEF AGAINST NECC FOR COST RECOVERY UNDER 42 U.S.C. § 9607(A) OR CONTRIBUTION UNDER 42 U.S.C. § 9613(f)(1).

A court may dismiss an action for failure to state a claim "if it clearly appears that, on the facts alleged, the plaintiffs cannot recover on any viable theory." *Wagner v. Devine,* 122 F.3d 53, 55 (1st Cir. 1997), *cert. denied,* 522 U.S. 1090 (1998). In deciding whether to grant a Rule 12(b)(6) motion, a court may consider not only the facts alleged in the complaint, but also key documents referred to in the complaint (whether or not attached thereto), and matters of public record. *Boateng v. InterAmerican University, Inc.,* 210 F.3d 56, 60 (1st Cir. 2000), *cert. denied,* 531 U.S. 904 (2000); *Beddall v. State Street Bank & Trust Co.,* 137 F.3d 12, 17 (1st Cir. 1998); *Fudge v. Penthouse Int'l, Ltd.,* 840 F.2d 1012, 1015 (1st Cir. 1988), *cert. denied,* 488 U.S. 821 (1988).

#### A. Emhart is Not an "Innocent Party" and Therefore Cannot Seek Cost Recovery under 42 U.S.C. § 9607(a)

It is established law in the First Circuit that a party who is itself a PRP may not pursue a cost recovery action against another PRP under Section 9607(a) of CERCLA. *See United Technologies Corp. v. Browning-Ferris Indus., Inc.,* 33 F.3d 96, 100 (1st Cir. 1994), *cert. denied,* 513 U.S. 1183 (1995); *see also Hydro-Manufacturing, Inc. v. Kayser-Roth Corp.,* 903 F. Supp. 273, 277 (D.R.I. 1995). Cost recovery actions under Section 9607(a) are available to only innocent parties, and a contribution action under Section 9613(f)(1) is a remedy that PRPs may pursue against each other *only in specific circumstances, see infra. See United Technologies,* 33 F.3d at 100; *Hydro-Manufacturing,* 903 F. Supp. at 275.

In *United Technologies Corporation,* the Court of Appeals for the First Circuit concluded that "it is evident that CERCLA differentiates between `actions for recovery of...

costs' and `actions for contribution."' *United Technologies,* 33 F.3d at 99. Applying the canons of statutory interpretation, the Court found that while the traditional meaning of the term *contribution* "refers to a claim 'by and between jointly and severally liable parties for an appropriate division of the payment one of them has been compelled to make,"' a cost recovery action "suggests full recovery; and it is sensible to assume that Congress intended only innocent parties - not parties who were themselves liable - to be permitted to recoup the whole of their expenditures." *United Technologies,* 33 F.3d at 99-100, *quoting Akzo Coatings, Inc. v. Aigner Corp.,* 30 F.3d 761, 764 (7th Cir. 1994).[2] The Court then concluded that since the appellants conceded they were liable parties, "their claim... must be classified as an action for contribution." *United Technologies,* 33 F.3d at 101. Thus, the statute precluded a PRP from bringing a cost recovery action under Section 9607(a).

Following the rationale and holding in *United Technologies Corporation,* this Court held in *Hydro-Manufacturing, Inc.* that the plaintiff could not proceed with its cost recovery claim under Section 9607(a) of CERCLA because it was a liable party. *Hydro-Manufacturing,* 903 F. Supp. at 277.

In this case, EPA notified Emhart that it was a PRP liable for Site cleanup costs by issuing Emhart a Notice of Potential Liability on February 28, 2000. Complaint, ¶13. Like the plaintiffs in both *United Technologies Corporation* and *Hydro-Manufacturing, Inc.,* because

---

[2] The Court further stated that: "It is possible that, although falling outside the statutory parameters established for an express cause of action for contribution... a PRP who spontaneously initiates a cleanup without governmental prodding might be able to pursue an implied right of action for contribution under [Section 107]." (citations omitted). *United Technologies,* 33 F.3d at 99, note 8. The Court refused to decide whether such a cause of action existed. In this case, even if the Court decides that an implied right of action for contribution could be maintained, Emhart at no time voluntarily and spontaneously initiated a cleanup at the Site. It, along with the other PRPs, was ordered to do so by EPA. Therefore, the circumstances giving rise to the implied cause of action contemplated in the Court's footnote do not apply to Emhart.

Emhart is a PRP, it cannot seek, as a matter of law, recovery of its costs from another PRP. Therefore, this Court should dismiss Count I.

**B. Emhart's Contribution Claim Fails because there are No Pending or Prior Civil Actions against Emhart under 42 U.S.C. §§ 9606 or 9607(a), and therefore Emhart May Not Maintain an Action for Contribution under 42 U.S.C. § 9613(f)(1)**

In its complaint Emhart alleges it incurred response costs in complying with an April 12, 2000 Unilateral Administrative Order ("UAO"), a March 26, 2001 UAO, and a September 11, 2003 Administrative Order on Consent ("AOC") issued by EPA. Emhart now seeks contribution from NECC under 42 U.S.C. Section 9613(f)(1). Although Emhart alleges that "an administrative civil action, pursuant to 42 U.S.C. § 9606, is presently pending against Emhart," no proceedings other than the three administrative orders are cited in the complaint. Complaint, ¶40. A search in the PACER system on August 18, 2006 failed to reveal any additional actions pending against Emhart with regard to the Site. See affidavit attached as Exhibit 2.

In *Cooper Industries, Inc. v. Aviall Services, Inc.*, 543 U.S. 157 (2004), the United States Supreme Court ruled that 42 U.S.C. Section 9613(f)(1) authorizes contribution claims only "during or following" a civil action under 42 U.S.C. Section 9606 or 42 U.S.C. Section 9607(a). *Aviall,* 543 U.S. at 168. While the Court declined to decide whether an administrative order would qualify as a "civil action" under Section 9606, the reasoning used by the Court in reaching its decision indicates that an administrative order is not a civil action.

First, the Court based its holding in part on the natural meaning of the terms used in the statute. *See Aviall,* 543 U.S. at 166. When interpreting a statute, "courts must presume that a legislature says in a statute what it means and means in a statute what it says there." *Connecticut Nat'l Bank v. Germain,* 503 U.S. 249, 253-4 (1992), *citing United States v. Ron Pair*

*Enterprises, Inc.,* 489 U.S. 235, 241-2 (1989). In this regard, section 9613(f)(1) provides that: "[a]ny person may seek contribution... during or following any civil action under section 9606 of this title or under 9607(a) of this title." 42 U.S.C. § 9613(f)(1). The Court found that the "natural meaning of this sentence is that contribution may only be sought subject to the specified conditions, namely, 'during or following' a specified civil action." *Aviall,* 543 U.S. at 166. While the Court did not address the "natural meaning" of the specific term "civil action," as discussed below, it is consistent with the methodology the Court employed to reach its holding to determine that a civil action means a non-criminal judicial proceeding, not the issuance of an administrative order.

The Federal Rules of Civil Procedure and Black's Law Dictionary provide further guidance. Federal Rule of Civil Procedure 2 states, "there shall be one form of action to be known as '"civil action."' Federal Rule of Civil Procedure 3 provides, "a civil action is commenced by filing a complaint with the court." Black's Law Dictionary defines "civil action" as an "action brought to enforce, redress, or protect private rights," while the definition of "action" it explains "is defined to be any judicial proceeding, which, if concluded to a determination, will result in a judgment or decree." BLACK'S LAW DICTIONARY, 7th ed. 1999. It is clear that a civil action is first and foremost a judicial proceeding.

An administrative order is defined much differently. Black's Law Dictionary defines an administrative order as "an order issued by a government agency after an adjudicatory hearing", and as "an agency regulation that interprets or applies a statutory provision." BLACK'S LAW DICTIONARY, 7th ed. 1999.

It is a rule of statutory construction in the First Circuit that "legal terms used in framing a statute are ordinarily presumed to have been intended to convey their customary legal

meaning." *United Technologies* Corp., 33 F.3d at 99, *citing Bradley v. United States,* 410 U.S. 605, 609 (1973) (holding that "the law uses familiar legal expressions in their familiar legal sense"). Based on the foregoing, the natural meaning of the term "civil action" in Section 9613(f)(1) is a judicial proceeding. Nothing in the definitions of "civil action" and "administrative order" and nothing in the statute suggest that these two terms are interchangeable or that an administrative order is a civil action. The filing of a complaint in court does not precede an administrative order, no court renders a judgment to compel issuance of an administrative order, and a court does not enter an administrative order. An administrative order is just that: it is initiated and issued by the authorized agency. See 42 U.S.C. § 9606(a).

Second, the Supreme Court in *Aviall* reasoned that if Section 9613(f)(1) allowed "contribution actions at any time" rather than only during or following a civil action, Section 9613(f)(3)(B), which authorizes contribution actions after an administrative or judicially approved settlement, would be superfluous. *Aviall,* 543 U.S. at 166. It is evident that in drafting these two sections, Congress intended to create a distinction between a civil action and an administrative order. To interpret Section 9613(f)(1) as including administrative orders in the term "civil action" would lead to the untenable conclusion that Congress chose not to distinguish between civil actions and administrative orders in one paragraph, and then did distinguish them two paragraphs later in the same section. "There is no reason why Congress would bother to specify conditions under which a person may bring a contribution claim, and at the same time allow contribution action absent those conditions." *Aviall,* 543 U.S. at 166.

Further clarification of the Court's reasoning can be found in the Court's reference to Section 9613's statute of limitations provisions in support of its finding that a contribution claim only arises during or following a civil action. *Aviall* at 166-67. Section

9613(g)(3) provides two 3-year limitations periods for contribution actions that correspond to Sections 9613(f)(1) and 9613(f)(3)(B), the two sections that provide a right of contribution. For claims under Section 9613(f)(1), the limitations period begins on the date of *judgment.* For claims under Section 9613(f)(3)(B), the limitations period begins on the date of *settlement.* By establishing the limitations period from the date of "judgment," Congress reinforced the natural and plain meaning of "civil action" as a judicial proceeding. The Court found it telling that there was no provision "for starting the limitations period if a judgment or settlement never occurs." *Aviall,* 543 U.S. at 167.

The absence of a judgment or settlement is evident in the instant case, where Emhart has been subject only to UAOs and an ACC. Emhart does not have a right of contribution under Section 9613(f)(1) because no judgment has been entered against it with respect to the Site. Emhart does not have a right of contribution under Section 9613(f)(3)(B), nor does it claim that it does, because it has not entered into a settlement agreement following an administrative order or a civil action. The Supreme Court's analysis of Section 9613's statute of limitations provisions clearly supports the conclusion that an administrative order is not a civil action, and since no judgment exists against Emhart to begin the limitations period, Emhart does not have an action under Section 9613(f)(1).

Since the *Aviall* decision, the three district courts that have directly addressed the issue of whether an AOC or UAO qualifies as a "civil action," have each concluded that such administrative orders are not civil actions. *See Pharmacia Corp. v. Clayton Chem. Acquisition LLC,* 382 F. Supp. 2d 1079 (S.D. Ill. 2005), *Blue Tee Corp. v. ASARCO, Inc.,* 2005 U.S. Dist. LEXIS 15360 (W.D. Mo. 2005), and *Raytheon Aircraft Co. v. United States,* 2006 U.S. Dist. LEXIS 34316 (D. Kan. 2006).

Based on all of the foregoing, NECC submits that an administrative order does not qualify as a civil action under Section 9613(f)(1). As such, Emhart has no right of contribution under CERCLA, and this Court should dismiss Count II of the complaint because Emhart fails to state a claim upon which relief can be granted.

## II. THE COURT SHOULD DISMISS COUNTS III, IV, V AND VI BECAUSE DISMISSAL OF EMHART'S CLAIMS ELIMINATES THE JURISDICTIONAL BASIS FOR PLAINTIFF'S PENDENT STATE CLAIMS

Emhart alleges violations of state law in Counts III and IV, and pleads common law causes of action in Counts V and VI. Specifically, in Count III, Emhart alleges that NECC is liable for removal or remedial costs under the Industrial Property Remediation and Reuse Act (R.I. GEN. LAWS § 23-19.14-1 *et seq.).* In Count IV, Emhart alleges that NECC is liable for costs and damages under the Hazardous Waste Management Act (R. I. GEN. LAWS § 23-19.1). In Count V, Emhart alleges equitable indemnification, alleging that common law requires NECC to indemnify Emhart for costs it has incurred under CERCLA. In Count VI, Emhart seeks declaratory judgment of NECC's alleged liability to Emhart. However, because Emhart has no viable CERCLA claims, these pendent state-law claims should be dismissed.

Emhart's state law claims arise from the same set of facts as its CERCLA claims, specifically liability for costs incurred for removal actions conducted at the Site subject to two UAOs and one AOC issued under CERCLA. Under 28 U.S.C. § 1367(a), a district court has supplemental jurisdiction over pendent state claims included in an action that contains claims over which the district court has original jurisdiction only when those state-law claims are so related to the federal claims that they "form part of the same case or controversy[.]" If the district court dismisses those federal claims, the district court has the discretion to dismiss the pendent state claims. 28 U.S.C. § 1367(c)(3). *Roche v. John Hancock Mutual Life Ins. Co.,* 81 F.3d 249,

257 (1st Cir. 1996); *Martinez v. Colon,* 54 F.3d 980, 980-81 (1st Cir. 1995), *cert. denied* 516 U.S. 987 (1995).

In the First Circuit, courts determine whether to retain jurisdiction over pendent state law claims after dismissing the federal claims by taking into account "concerns of comity, judicial economy, convenience, fairness, and the like." *Roche v. John Hancock Mutual Life Ins.* Co., 81 F.3d 249, 257 (1st Cir. 1996), *citing Rodriguez v. Doral Mortgage Corp.,* 57 F.3d 1168, 1177 (1st Cir. 1995); *Vera-Lozano v. Int'l. Broadcasting,* 50 F.3d 67, 70 (1st Cir. 1995); *Newman v. Burgin,* 930 F.2d 955, 963-64 (1st Cir. 1991). For example, a district court's decision to retain jurisdiction over pendent state claims may be appropriate where the litigation has advanced well beyond its initial stages. *See Roche* at 257 (finding district court appropriately exercised its discretion to retain jurisdiction over state claims because substantive proceedings had taken place, including discovery and a summary judgment ruling). The district court may determine that fairness requires it to retain jurisdiction over the state claims because, for example, the statute of limitations is about to run. *See Newman* at 963-64; *see also Rodriguez* at 1177. However, when dismissing the federal claims, the court's analysis of comity, convenience, judicial economy, and fairness will usually indicate that dismissing the remaining pendent state claims is appropriate, particularly because the factual and legal analysis of the federal claims is no longer available to inform the court in its evaluation of the state claims. *Newman,* 930 F.2d at 964, *citing Carnegie-Mellon Univ. v. Cohill,* 484 U.S. 343, 350 (1988). Further, at the outset of litigation, once the court determines that no federal claims exist, "the jurisdictional basis for [a plaintiff's] pendent claims ... evaporate[s]." *Martinez v. Colon,* 54 F.3d 980, 980-81 (1st Cir. 1995).

In this case, it is appropriate for the Court to decline jurisdiction and dismiss the pendent state law claims. The state law claims rely on the same set of facts as the federal claims and form part of the same controversy between the parties, namely NECC's alleged liability to Emhart for removal costs incurred at the Site. There are no issues of fairness dictating that jurisdiction is appropriate, and the issues of comity, convenience and judicial economy indicate that it would be more appropriate for a state court to adjudicate these claims. In addition, this litigation is at the initial stage. Once the federal claims are dismissed, the jurisdictional basis for this Court to hear Emhart's claims under Rhode Island statutory and common law no longer exists. As such, this Court should dismiss Counts III, IV, V and VI.

## III. THE COURT SHOULD DISMISS OR STAY THE REMAINDER OF EMHART'S ACTION IN FAVOR OF A PRIOR PENDING STATE COURT ACTION THAT INVOLVES THE SAME CLAIMS, THE SAME FACTS, AND THE SAME STATE LAW

The Court should dismiss or stay Emhart's remaining causes of action (Counts VII through XII) because there is a prior-pending,[3] parallel proceeding that will determine the same factual issues and questions of state insurance law presented in this case. *See Wilton v. Seven* Falls Co., 515 U.S. 277, 289-90 (1995); *Employers Mut.* Cas. Co. v. *PIC Contrs.,* 24 F. Supp. 2d 212, 215 (D.R.I. 1998).

In Counts VII through XII of the complaint Emhart asserts claims for coverage against NECC's insurers (even though Emhart is not an insured under NECC's policies) in connection with environmental claims at the Site (the "Underlying Environmental Claims"). EPA has asserted the Underlying Environmental Claims against both Emhart and NECC. Both

[3] Where two suits involve the same issues, creating duplicative litigation, the first-filed suit is generally preferred. *Nortek, Inc. v. Molnar,* 36 F. Supp. 2d 63, 69 (D.R.I.1999) (citing *TPM Holdings, Inc. v. Intra-Gold Industries, Inc.,* 91 F.3d 1, 4 (1st Cir.1996); SW *Indus., Inc. v. Aetna Cas. & Sur. Co.,* 653 F. Supp. 631, 634 (D.R.I. 1987)). "[T]he forum where an action is first filed is given priority over subsequent actions, unless there is 'a showing of balance of convenience in favor of the second action' or there are special circumstances which justify giving priority to the second." SW Indus., 653 F. Supp. at 634.

NECC and Emhart in turn have filed lawsuits against their respective insurers seeking coverage for the Underlying Environmental Claims. See NECC's Insurance Complaint attached as Exhibit 1 and Emhart's Insurance Complaint attached as Exhibit 3.

On April 24, 2006, NECC sued Travelers and PWIC for coverage for the Underlying Environmental Claims under insurance policies issued by Travelers and PWIC (the "NECC Policies") in *New England Container, Inc. v. Travelers Casualty & Surety Company and Providence Washington Insurance Company, Sup.* Ct. County of Providence, Rhode Island (C.A. No. 06-2274) ("NECC Action").

NECC is the sole holder of coverage claims for the Underlying Environmental Claims under the NECC Policies issued by Travelers and PWIC. Emhart is not an insured or an intended beneficiary under the NECC Policies and thus has no standing to assert any coverage claim against the NECC Policies.[4] In effect, Emhart is using this action to try to steal coverage issued to NECC for the *identical* coverage claim for the *identical* Underlying Environmental Claims and under the *identical* insurance policies that are being litigated in the prior pending NECC Action. Because the NECC Action will resolve the same factual issues and questions of state insurance law (i.e. whether Travelers and PWIC owe its insured a duty to defend and indemnify the Underlying Environmental Claims), this action should be dismissed or stayed in *pendente lite* of the NECC Action.

---

[4] *See* Memorandum of Law In Support Of Motion to Dismiss Complaint Against Travelers Casualty And Surety Company, filed July 6, 2006, at 4-7, for explanation of why Emhart is not properly a party to this coverage dispute under R.I. Gen. Laws § 27-7-2; and Memorandum Of Law In Support Of The Motion Of The Defendant Providence Washington Insurance Company To Dismiss Pursuant To Rule 12(c), filed May 30, 2006, at 4-8 for an explanation of why Emhart is not a third-party beneficiary under the Travelers or PWIC policies. NECC joins in the portions of the Travelers and PWIC motions to the extent that they argue that Emhart lacks standing to assert a coverage claim against policies issued to NECC and incorporates those arguments herein by reference.

The Court has broad discretion in determining whether to hear a declaratory judgment action. "Since its inception, the Declaratory Judgment Act has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." *Wilton v. Seven Falls Co.,* 515 U.S. 277, 287 (1995). The Declaratory Judgment Act is "'an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant.'" *Id., quoting Public Serv. Comm'n of Utah v. Wycoff Co.,* 344 U.S. 237 (1952); *see also El Dia, Inc. v. Hernandez Colon,* 963 F.2d 488, 493 (1st Cit. 1992).

If a federal court decides not to hear a declaratory judgment action, it may either stay the action or dismiss it entirely. "Consistent with the nonobligatory nature of the remedy, a district court is authorized, in the sound exercise of its discretion, to stay or to dismiss an action seeking a declaratory judgment before trial or after all arguments have drawn to a close." *Wilton,* 515 U.S. at 288.

In deciding whether to dismiss or stay a federal declaratory judgment action in favor of a state proceeding, courts look to a number of factors including (i) whether resolution of the federal action turns on the same factual and legal questions that will be litigated in the state proceeding, (ii) whether the claims of all parties in interest can be settled in the state court proceeding, and (iii) whether the issues presented are governed by state or federal law. *See Wilton,* 515 U.S. at 283; *Standard Fire Ins. Co. v. Gordon,* 376 F. Supp. 2d 218, 225 & n.8 (D.R.I. 2005); *Employers Mut. Cas.,* 24 F. Supp. 2d at 215. Here, the factors weigh in favor of staying or dismissing Emhart's declaratory judgment action.

**A. Stay in This Case Promotes Judicial Economy.**

Courts must consider judicial economy in exercising their discretion to hear declaratory judgment actions. "In the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of

practicality and wise judicial administration." *Wilton, 515* U.S. at 288; *see also Warner v. Frontier Ins. Co.,* 288 F. Supp. 2d 127, 130 (D.N.H. 2003). Courts have refused to grant declaratory relief to a nonparty to an insurance contract where such relief would not resolve the ultimate coverage issue. *See Warner,* 288 F. Supp. 2d at 130, 132. Courts have found it appropriate to grant an insured's motion to stay where the identical questions of coverage are raised in a pending state action. *See, e.g., Firemans's Fund Ins. v. Chris-Craft Indus. Inc.,* 932 F. Supp. 618, 618-19 (S.D.N.Y. 1996) (granting insured's motion to stay insurers' declaratory judgment action in federal court seeking declaration that it had no duty to defend and indemnify insured in two CERLCA lawsuits because of a pending state court action on the same issues).

Here, the extent of coverage to which NECC is entitled under the policies issued by PWIC and Travelers will be determined in the state action. The resolution of these issues will have a direct bearing on Emhart's claim in the instant action. In fact, depending on the outcome of the state action, it is possible that Emhart's claims against NECC's insurance policies will be moot. Staying the instant action until conclusion of the state action will allow for judicial efficiency by conserving valuable time and resources.

### B. Proceeding With the Insurance Coverage Counts in Emhart's Complaint Could Lead to Inconsistent Results as the Exact Same Issues Are Being Litigated in the Prior Pending NECC State Court Action

A court should not proceed with a declaratory judgment action that may result in piecemeal litigation, duplication of effort, or inconsistent results. *See Employers Mut. Cos.,* 24 F. Supp. 2d at 214. Here, resolution of Emhart's declaratory judgment action turns on essentially the same factual issues and legal questions that will be decided in the prior pending NECC Action.

Counts VII through XII involve the exact same NECC Policies as NECC's state case,[5] and both cases involve the same state law issue, namely, the extent to which the Travelers and PWIC policies provide coverage for the same Underlying Environmental Claims. *Compare* Emhart Complaint ¶¶ 73-75, 80-82 (seeking a declaration that Travelers and PWIC have an obligation under their policies to satisfy potential obligations incurred by NECC in connection with the Underlying Environmental Claims), *with* NECC Complaint ¶ 39 (seeking a declaration that Travelers and PWIC are obligated under their policies to investigate, defend, reimburse and indemnify NECC completely against the Underlying Environmental Claims). Because both cases involve coverage under the *same* policies for the *same* liability incurred by the *same* insured, proceeding with Emhart's declaratory judgment case would be duplicative of the state proceeding and could create inconsistent results.

### C. All Coverage Claims Under the NECC Policies Can Be Resolved in the State Court Action

The claims of all parties with a cognizable interest in the NECC Policies can be settled in the prior pending NECC Action. Emhart's present absence from the NECC Action does not affect the propriety of dismissing the federal action because Emhart is (i) not an insured under the Travelers or PWIC policies, (ii) statutorily barred from bringing direct action claims under Rhode Island law, and (iii) not an intended third-party beneficiary under the Travelers or PWIC policies. Rather, Emhart is simply, and improperly, seeking recovery for NECC's claims for coverage for the Underlying Environmental Claims under the NECC Policies. *See* Emhart Complaint, ¶¶ 74 & 81. This exact same issue, NECC's rights to full coverage for the Underlying

[5] Compare Emhart Complaint ¶ 9, at 3 (listing policies), with NECC Complaint ¶¶ 11 12, at 4 5 (listing the exact same policies)

Environmental Claims from its insurers Travelers and PWIC, is being litigated in the prior pending NECC Action between NECC and its insurers.[6]

### D. NECC's Prior Pending State Court Action is the Appropriate Forum to Decide Issues Governed by State Law

To the extent that Emhart maintains that is has a claim for coverage under the NECC Policies, Emhart is essentially claiming that it stands in the shoes of NECC, and is entitled to the *same* coverage being litigated in the prior pending NECC Action. Any claim to coverage under the NECC Policies is a matter of state contract law, not federal law. *See Employers Mut. Cas.,* 24 F. Supp. 2d at 215 (finding state court is the more appropriate forum in which to resolve coverage questions governed by state law). Emhart can and should assert any cognizable state law claim that it believes it possesses with respect to the NECC Policies in the prior pending state court action filed by NECC. Accordingly, the Court should dismiss or stay Counts VII through XII of Emhart's declaratory judgment action in favor of the prior pending NECC Action because that case will decide the same legal and factual issues concerning the same NECC Policies as related to the same Underlying Environmental Claims that Emhart has attempted to place at issue here.

## CONCLUSION

For the reasons explained herein, NECC respectfully requests that the Court dismiss Counts I and II with prejudice because Emhart can prove no set of facts that would entitle it to relief. As a result, the pendent state-law claims asserted in Counts III through VI should also be dismissed, without prejudice, as there is no independent basis for jurisdiction.

---

[6] If Emhart continues to believe that it somehow has a separate cognizable legal interest in NECC's Policies separate from the interest asserted by the actual insured, Emhart has the ability to intervene in the prior pending NECC Action.

Counts VII through XII should be dismissed or stayed pending a state court action addressing the identical issues raised in these counts.

**NEW ENGLAND CONTAINER COMPANY, INC.,**
By Its Attorneys

PARTRIDGE SNOW & HAHN LLP

/s/ James W. Ryan
James W. Ryan (#4042)
180 South Main Street
Providence, RI 02903
(401) 861-8200
(401) 861-8210 FAX
jwr@psh.com

DATED: September 22, 2006

OF COUNSEL:
John F.X. Peloso, Jr., Esq.
Robinson & Cole LLP
Financial Centre
695 East Main Street
P.O. Box 10305
Stamford, CT 06904-2305
(203) 462-7500
(203) 462-7599 (Fax)

**CERTIFICATE OF SERVICE**

I hereby certify that on the 22nd day of September, 2006, I electronically filed the MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS and MOTION TO STAY with the Clerk of the United States District Court for the District of Rhode Island using the CM/ECF System. The following participant has received notice electronically:

Craig M. Scott, Esq.

/s/ James W. Ryan