STATE OF RHODE ISLAND
PROVIDENCE COUNTY

SUPERIOR COURT

NEW ENGLAND CONTAINER COMPANY, INC.,
Plaintiff,

-v-

TRAVELERS CASUALTY & SURETY COMPANY and PROVIDENCE WASHINGTON INSURANCE COMPANY,
Defendants.

C.A. No. ________

## COMPLAINT AND JURY DEMAND

Plaintiff New England Container Company, Inc. ("NEC"), for its complaint against the defendants Travelers Casualty & Surety Company ("Travelers") and Providence Washington Insurance Company ("PWIC") (collectively "defendants"), alleges as follows:

## INTRODUCTION

1. This is an action by NEC against defendants for breach of contract, breach of the implied covenant of good faith and fair dealing, and bad faith in violation of Rhode Island General Laws ("R.I.G.L.") chapter 9-1-33. NEC also seeks a declaratory judgment pursuant to R.I.G.L. 9-30, *et seq.*, with respect to NEC's rights under primary and umbrella general liability insurance policies issued by the defendants to NEC with respect to various actions commenced against NEC by the United States of America and others alleging covered damages due to damage and injury in, at, around and in the vicinity of the Centredale Manor Restoration Superfund Site located in North Providence, Rhode Island. NEC has paid and incurred, and will be required to continue to pay and incur, expenses in defending against, investigating, and paying damages because of alleged damage and/or injury to the person or property of others. In

COPY

addition, based on the defendants' wrongful refusal to defend NEC, the United States of America and others have advanced defense and investigation costs on behalf of NEC that should have otherwise been paid by defendants under the primary general liability policies. As a result of defendants' unlawful conduct, NEC has been and continues to be damaged, and NEC seeks compensatory, statutory and exemplary damages, as well as attorneys' fees, costs and expenses.

## THE PARTIES, JURISDICTION AND VENUE

2. Plaintiff New England Container Company, Inc. is a Rhode Island corporation with its current principal place of business in Richboro, Pennsylvania. At all times pertinent, NEC's principal place of business was in Providence, Rhode Island.

3. Defendant Travelers Casualty & Surety Company, formerly known as Aetna Casualty and Surety Company, is an insurance company organized under the laws of the State of Connecticut, with its principal place of business in Hartford, Connecticut. At all times pertinent, Travelers was licensed to do business, and was doing and transacting business, in the State of Rhode Island.

4. Defendant Providence Washington Insurance Company is an insurance company organized under the laws of the State of Rhode Island, with its principal place of business in Providence, Rhode Island. At all times pertinent, PWIC was licensed to do business, and was doing and transacting business, in the State of Rhode Island.

5. Jurisdiction and venue are proper in as much as (i) the domicile of two of the parties is in Rhode Island, (ii) the principal place of business of one of the two defendants is in the State of Rhode Island and this county, (iii) the defendants are licensed to do, and have in fact conducted, business in Rhode Island, (iv) performance under defendants' Liability Insurance Policies is sought in this jurisdiction, and (v) the Centredale Manor Superfund Site is located in

Providence, Rhode Island.

## FACTUAL BACKGROUND

6. The United States Environmental Protection Agency ("USEPA") and others have commenced various actions against NEC seeking covered damages because of alleged damage and injury. The Centredale Manor Restoration Project Superfund Site (the "Centredale Site") is located in North Providence, Rhode Island and is known and identified as 2072 and 2074 Smith Street (Plat 14, Lots 200 and 250, encompassing approximately 9.7 acres), and includes the sediment and floodplain areas of the Woonasquatucket River from Route 44 southerly to the Allendale Dam and further to an area just below the Lyman Mill Dam. The actions commenced by the USEPA and others against NEC seeking damages because of alleged damage and/or injury to the person or property of others at the Centredale Site are referred to herein as the "Environmental Suits."

7. From beginning at least in 1936, various entities, including NEC, have conducted business operations in Rhode Island, including in the vicinity of the Centredale Site.

8. On September 15, 1999, USEPA issued a Notice of Potential Liability demand to NEC relating to the Centredale Site. On February 3, 2000, USEPA issued another demand to NEC regarding investigation activities at the Centredale Site. On April 12, 2000, USEPA issued a Unilateral Administrative Order ("UAO") to NEC ordering the completion of time-critical activities at the Centredale Site. On April 27, 2000, USEPA issued a demand to NEC regarding the undertaking of investigation activities at the Centredale Site. On March 26, 2002, USEPA issued a Second UAO to NEC regarding the undertaking of certain activities necessary to mitigate human health threats posed by the Centredale Site. On May 5, 2003, USEPA demanded that NEC participate in an Administrative Order on Consent ("AOC") regarding certain time

critical activities in the tailrace portion of the Centredale Site. On September 10, 2003, USEPA issued a final AOC regarding the performance of certain time critical activities at the Centredale Site.

9. The USEPA actions seek damages because of damage and/or injury to the person or property of others allegedly arising from operations conducted by NEC. While NEC denies these allegations, NEC has been forced to defend itself and investigate the Centredale Site.

10. Travelers and PWIC issued primary and comprehensive general liability insurance policies to NEC between at least 1969 and 1985 (the "Liability Insurance Policies").

11. Travelers issued at least the following known Liability Insurance Policies to NEC:

| Policy Number | Policy Period |
|---|---|
| 43PC29861CC | 10/02/69 -- 10/02/70 |
| Unavailable | 11/15/70 -- 11/15/71 |
| 43AL140755CCA | 11/15/71 -- 11/15/72 |
| 43AL143048CCA | 11/15/72 -- 11/15/73 |
| 43AL264195CCA | 11/15/73 -- 11/15/74 |
| 43AL266935CCA | 11/15/74 -- 11/15/75 |
| 43AL269294CMA | 11/15/75 -- 11/15/76 |
| 43AL271243 | 11/15/76 -- 11/15/77 |
| 43AL273795CCA | 11/15/77 -- 11/15/78 |
| 43GL00001061 | 11/15/78 -- 11/15/79 |
| 43GL9983CCA | 11/15/79 -- 11/15/80 |
| 43GL1061CCA | 11/15/79 -- 11/15/80 |
| 43XS3583 | 11/15/79 -- 11/15/80 |
| 94C206921CCA | 11/15/80 -- 11/15/81 |
| Unavailable | 11/15/80 -- 11/15/81 |
| 43GL332007CCA | 11/15/81 -- 11/15/82 |
| Unavailable | 11/15/81 -- 11/15/82 |

12. PWIC issued at least the following known Liability Insurance Policies to NEC:

| Policy Number | Policy Period |
|---|---|
| CL721852 | 11/15/82 -- 08/01/83 |
| Unavailable | 11/15/82 -- 08/01/83 |
| CL722660 | 08/01/83 -- 08/01/84 |
| CU731459 | 08/01/83 -- 08/01/84 |
| CU733312 | 08/01/84 -- 09/27/85 |
| CL723887 | 08/01/84 -- 09/27/85 |

13. The Liability Insurance Policies provide comprehensive liability insurance coverage for all sums, including "all sums" or "ultimate net loss," or similar verbiage, for which NEC is legally obligated to pay as damages, or which are imposed by law upon NEC because of property damage and other injury. The Liability Insurance Policies also contain an unlimited, supplemental duty to defend, requiring a defense of NEC, even if the allegations are groundless, false or fraudulent.

14. Travelers and PWIC are obligated to investigate, to defend, and to pay or reimburse in full all defense and investigation costs incurred by, or advanced on behalf of, NEC in connection with the Environmental Suits pursuant to a duty to defend, duty to pay defense and investigation costs, ultimate net loss or other similar provisions contained in the Liability Insurance Policies. Travelers' and PWIC's duty to defend is supplemental and unlimited. For example the Liability Insurance Policies provide that, "[Travelers and PWIC] will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury or property damage to which this insurance applies, caused by an occurrence, and [Travelers and PWIC] shall have the right and duty to defend any suit against the

insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent ... ."

15. The Liability Insurance Policies define property damage as "(1) physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom, or (2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period."

16. The Liability Insurance Policies define an "occurrence" as "an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured."

17. The Environmental Suits against NEC seek damages because of damage and/or injury which took place during the policy periods of the Liability Insurance Policies issued by Travelers and PWIC, thereby triggering the supplemental and unlimited duty to defend of Travelers and PWIC in connection with all defense and investigations incurred by or on behalf of NEC, including all defense and investigation costs advanced by USEPA.

18. Each of Travelers and PWIC is obligated to pay in full NEC's costs of investigation and defense and NEC's legal liabilities, including all sums spent in settlement, in connection with the Environmental Suits.

19. The damages sought in the Environmental Suits are covered by the Liability Insurance Policies issued by Travelers and PWIC, and do not come within any exception to or exclusion from coverage, or all exceptions or exclusions are deemed waived as a result of the breach of the duty to defend by Travelers and PWIC.

20. NEC timely notified the defendants of the Environmental Suits and tendered the defense and indemnity obligations of the actions to them pursuant to the terms of the Liability Insurance Policies and applicable law.

21. Each of Travelers and PWIC has denied its independent duty to defend NEC from the Environmental Suits and has refused to defend or investigate NEC, or pay NEC's costs of defense or NEC's legal liabilities, in connection with the Environmental Suits.

22. As a result of Travelers' and PWIC's material breaches of their duty to defend, NEC has paid and incurred more than $14,000,0000 in defense and investigation costs to date, including defense and investigation costs advanced by USEPA on behalf of NEC, in connection with the actions relating to the Centredale Site. These costs are continuing and increasing.

**COUNT I**
**(Breach Of Contract – Duty To Defend)**

23. NEC incorporates the allegations contained in paragraphs 1 through 22 as if expressly set forth, and further alleges as follows:

24. Each of Travelers and PWIC has an affirmative duty to investigate and to defend NEC from and against the Environmental Suits pursuant to the terms of their Liability Insurance Policies and applicable law.

25. Each of Travelers and PWIC has failed and refused to investigate, defend, reimburse NEC's defense and investigation costs, to pay or reimburse the defense and investigation costs advanced on behalf of NEC, or to fully acknowledge its insuring obligations to NEC.

26. By their failure and refusal to investigate, to defend, to reimburse NEC's defense and investigation costs, to pay or reimburse the defense and investigation costs advanced on behalf of NEC, or fully to acknowledge their respective defense obligations to NEC, Travelers

and PWIC have materially breached their Liability Insurance Policies with NEC.

27. As a direct result of Travelers' and PWIC's material breaches of contract, NEC has suffered, and is entitled to recover, direct and consequential damages in an amount to be determined at trial.

**COUNT II**
**(Breach Of Contract -- Avoidance Of Contractual Limitations And Exclusions)**

28. NEC incorporates the allegations contained in paragraphs 1 through 27 as if expressly set forth, and further alleges as follows:

29. NEC notified Travelers and PWIC of the Environmental Suits and has tendered the defense and indemnity obligations of the actions to them pursuant to the terms of their Liability Insurance Policies and applicable law.

30. Each of Travelers and PWIC has failed and refused to investigate, to defend, to reimburse all defense and investigation costs incurred by or advanced on behalf of NEC, to reimburse NEC for amounts incurred as damages as a result of the Environmental Suits, or to fully acknowledge their insuring obligations to NEC.

31. By their failure and refusal to investigate, to defend, to reimburse NEC's defense and investigation costs, to reimburse NEC for amounts incurred as damages as a result of the Environmental Suits, or fully to acknowledge their respective obligations to NEC, Travelers and PWIC have breached their Liability Insurance Policies with NEC.

32. As a result of Travelers' and PWIC's refusal to defend NEC from the Environmental Suits, Travelers and PWIC have waived any right to enforce any purported limitation or exclusion in the Liability Insurance Policies, including any applicable limit of liability, and any such limitation or exclusion is void and unenforceable in connection with the

Environmental Suits.

**COUNT III**
**(Breach of Contract --Duty To Indemnify)**

33. NEC incorporates the allegations contained in paragraphs 1 through 32 as if expressly set forth, and further alleges as follows:

34. NEC notified Travelers and PWIC of the Environmental Suits and requested that Travelers and PWIC pay NEC for amounts incurred as damages as a result of the Environmental Suits pursuant to the terms of their Liability Insurance Policies and applicable law.

35. Travelers and PWIC have failed and refused to pay NEC for amounts incurred as damages as a result of the Environmental Suits.

36. By their failure and refusal to pay NEC for amounts incurred as damages as a result of the Environmental Suits, Travelers and PWIC have materially breached their Liability Insurance Policies with NEC.

37. As a direct result of Travelers' and PWIC's material breaches of contract, NEC has suffered, and is entitled to recover, direct and consequential damages in an amount to be determined at trial.

**COUNT IV**
**(Declaratory Judgment)**

38. NEC incorporates the allegations contained in paragraphs 1 through 22 as if expressly set forth, and further alleges as follows:

39. Travelers and PWIC are obligated, under their Liability Insurance Policies and applicable law, to immediately investigate, defend, reimburse and indemnify NEC completely against the Environmental Suits, including reimbursing the USEPA and others for all defense and investigation costs paid by or on behalf of NEC. Travelers and PWIC disagree with these

assertions. An actual and justifiable controversy exists between NEC and each of Travelers and PWIC concerning defendants' obligations under their Liability Insurance Policies.

40. A judicial declaration is necessary and appropriate at this time, and under the circumstances alleged above, so that NEC may ascertain its rights under the Liability Insurance Policies.

**COUNT V**
**(Breach Of Implied**
**Covenant Of Good Faith And Fair Dealing)**

41. NEC repeats and incorporates by reference the allegations contained in paragraphs 1 through 37 above as if expressly set forth, and further alleges as follows:

42. At all times relevant, Travelers and PWIC have been engaged in the trade or business of issuing comprehensive general liability policies, including (without limitation) the Liability Insurance Policies which are the subject of this action, and in administering and handling claims thereunder.

43. The Liability Insurance Policies issued by the defendants to NEC are contracts and, as such, contain an implied covenant of good faith and fair dealing.

44. Travelers and PWIC have failed and refused to honor their contractual obligations to NEC and otherwise to acknowledge, accept and undertake their insuring obligations with respect to the Environmental Suits.

45. Travelers and PWIC have willfully and knowingly breached the implied covenant of good faith and fair dealing.

46. As a direct and proximate result of the defendants' purposeful breach of the implied covenant of good faith and fair dealing, NEC has suffered, and is entitled to recover, direct and consequential damages in an amount to be determined at trial.

**COUNT VI**
**(R.I.G.L. 9-1-33 --Bad Faith)**

47. NEC incorporates the allegations contained in paragraphs 1 through 37 and 41 through 46 as if expressly set forth, and further alleges as follows:

48. At all times relevant, Travelers and PWIC have been engaged in the trade or business of insurance in the State of Rhode Island.

49. Defendants' conduct in denying NEC's coverage claims and refusing to defend NEC from the Environmental Suits constitutes a bad faith refusal to pay insurance claims in violation of R.I.G.L. 9-1-33.

50. Defendants' conduct has been a knowing and willful violation of R.I.G.L. 9-1-33.

51. As a direct and proximate result of these unlawful actions, NEC has suffered, and continues to suffer, direct and consequential damages. NEC is entitled to compensatory damages, punitive damages, and reasonable attorneys' fees in an amount to be determined at trial.

**PRAYER FOR RELIEF**

**WHEREFORE**, NEC demands judgment as follows:

1. On Counts I, III, and V, an award to NEC of direct and consequential damages, with interest in the maximum amount allowed by law, according to proof at trial;

2. On Count II, a declaration and order that Travelers and PWIC have waived the right to enforce any limitation or exclusion contained in the Liability Insurance Policies, including any applicable limit of liability, and that any such limitation or exclusion is void and unenforceable in connection with the Environmental Suits;

3. On Count IV, a declaration and order that Travelers and PWIC are obligated to defend and/or reimburse defense and investigatory expenses and to pay in full NEC's legal

liabilities, including all sums advanced on behalf of NEC, in connection with the Environmental Suits;

4. On Count VI, an award of multiple damages against each of Travelers and PWIC in the maximum amount allowed by law and attorneys' fees, in an amount to be determined at trial for violations of R.I.G.L. 9-1-33; and

5. On all Counts, any and all further and other relief to which NEC may be entitled at law or in equity.

**JURY DEMAND**

NEC demands a trial by jury on all issues so triable.

NEW ENGLAND CONTAINER
COMPANY, INC.

By its Attorneys,

Joseph V. Cavanagh, Jr. /slk

Joseph V. Cavanagh, Jr. #1139
Staci L. Kolb #5451
Blish & Cavanagh, LLP
Commerce Center
30 Exchange Terrace
Providence, Rhode Island 02903-1765
Tel: 401.831.8900

***Of Counsel:***

Jeffrey W. Moss
Daniel E. Chefitz
Morgan, Lewis & Bockius LLP
225 Franklin Street, Suite 1705
Boston, Massachusetts 02110
Tel: 617.451.9700

Dated: April 24, 2006