UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| EMHART INDUSTRIES, INC., Plaintiff, v. HOME INSURANCE COMPANY, INSURANCE COMPANY OF NORTH AMERICA, LIBERTY MUTUAL INSURANCE COMPANY, NORTH RIVER INSURANCE COMPANY, ONEBEACON AMERICA INSURANCE COMPANY, and UNITED STATES FIRE INSURANCE COMPANY, Defendants. | CIVIL ACTION NO. CA 02 059 ML |

# COMPLAINT

## The Parties

1. Plaintiff, Emhart Industries, Inc. ("Emhart"), is a corporation organized under the laws of the State of Connecticut, having its principal place of business in Towson, Maryland.

2. Defendant, Home Insurance Company ("Home"), is a corporation organized under the laws of the State of New Hampshire, having its principal place of business in New York, New York. It is engaged in the business of issuing contracts of liability insurance, and is a successor to, or has done business as, Home Indemnity Company. It has been registered to do business in, and/or has transacted business in, the State of Rhode Island.

3. Defendant, Insurance Company of North America ("INA"), is a corporation organized under the laws of the Commonwealth of Pennsylvania, having its principal place of business in Philadelphia, Pennsylvania. It is engaged in the business of issuing contracts

of liability insurance. It has been registered to do business in, and/or has transacted business in, the State of Rhode Island.

4. Defendant, Liberty Mutual Insurance Company ("Liberty Mutual"), is a corporation organized under the laws of the Commonwealth of Massachusetts, having its principal place of business in Boston, Massachusetts. It is engaged in the business of issuing contracts of liability insurance. It has been registered to do business in, and/or has transacted business in, the State of Rhode Island.

5. Defendant, North River Insurance Company ("North River"), is a corporation organized under the laws of the State of New Jersey, having its principal place of business in Morristown, New Jersey. It is engaged in the business of issuing contracts of liability insurance. It has been registered to do business in, and/or has transacted business in, the State of Rhode Island.

6. Defendant, OneBeacon America Insurance Company ("One Beacon"), is a corporation organized under the laws of the Commonwealth of Massachusetts, having its principal place of business in Boston, Massachusetts. One Beacon is engaged in the business of issuing contracts of liability insurance and is a successor to, or has done business as, Employers' Surplus Lines Insurance Company. It has been registered to do business in, and/or has transacted business in, the State of Rhode Island under its former name, Commercial Union Insurance Company.

7. Defendant, United States Fire Insurance Company ("US Fire"), is a corporation organized under the laws of the State of Illinois, having its principal place of business in Chicago, Illinois. It is engaged in the business of issuing contracts of liability

insurance. It has been registered to do business in, and/or has transacted business in, the State of Rhode Island.

Jurisdiction

8. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 in that plaintiff and defendants are citizens of different states and the amount in controversy, exclusive of costs and interest, exceeds the sum or value of $75,000.

Venue

9. Venue lies in this Court pursuant to 28 U.S.C. §1391(a).

Factual Background

10. Emhart incorporates the allegations of paragraphs 1-9, as if set forth in full herein.

11. Plaintiff is informed and believes, and therefore avers, that from the 1940's through 1969, Crown Metro, Inc. and predecessors of Crown Metro, Inc., including without limitation Metro Atlantic, Inc. (Crown Metro, Inc. and its predecessors will collectively be referred to as "Crown Metro"), were corporations engaged in the manufacture of chemicals, primarily for use in the textile industry.

12. Plaintiff is informed and believes, and therefore avers, that from the 1940's until in or about the mid 1960's, Crown Metro conducted manufacturing operations at a number of locations, including 2072 Smith Street, North Providence, Rhode Island ("Smith Street Facility").

13. In or about 1969 USM Corporation ("USM") acquired the business of Crown Metro. By that time, the manufacturing activities of Crown Metro at the Smith Street Facility had ceased. Manufacturing activities were not thereafter resumed.

14. In or about 1976, USM merged with a subsidiary of Emhart Corporation and the surviving entity kept the name USM. In or about 1987, USM was merged with and into Emhart.

15. One Beacon issued Excess Umbrella General Liability Policy No. S-16-07084 to Crown Metro ("One Beacon Policy").

16. The term of the One Beacon Policy was April 24, 1969 to February 15, 1972. The One Beacon Policy provided coverage through January 1, 1970, at which time further benefits were canceled.

17. Emhart is entitled to the benefits of Crown Metro under the One Beacon Policy.

18. INA issued Excess Blanket Catastrophe Liability Policy No. XBC 46961 to Crown Metro ("INA Crown Metro Policy"). The term of the INA Crown Metro Policy was December 1, 1968 to February 15, 1970.

19. Emhart is entitled to the benefits of Crown Metro under the INA Crown Metro Policy.

20. INA issued Policy XCP 4506 to USM ("INA USM Policy"). The term of the INA USM Policy was January 5, 1970 – January 1, 1971.

21. Emhart is entitled to the benefits of USM under the INA USM Policy.

22. Liberty Mutual issued comprehensive general liability insurance policies and excess general liability insurance policies to USM that were in effect long before USM acquired the business of Crown Metro. Thereafter, Liberty Mutual issued other comprehensive general liability insurance ("CGL") policies and excess general liability insurance ("Excess")

policies to USM ("Liberty Mutual Policies"). The Liberty Mutual Policies were in effect during the period November 1, 1971 through November 1, 1979. Those policies are the following:

| Term | Policy Number | Type |
|---|---|---|
| 11/1/71-11/1/72 | LG1-612-004059-211 | CGL |
| 1/1/72-1/1/73 | LE1-612-004059-242 | Excess |
| 11/1/72-11/1/73 | LG1-612-004059-212 | CGL |
| 1/1/73-1/1/74 | LE1-612-004059-243 | Excess |
| 11/1/73-11/1/74 | LG1-612-004059-213 | CGL |
| 1/1/74-1/1/75 | LE1-612-004059-244 | Excess |
| 11/1/74-11/1/75 | LG1-612-004059-214 | CGL |
| 1/1/75-11/1/75 | LE1-612-004059-245 | Excess |
| 11/1/75-11/1/76 | LG1-612-004059-215 | CGL |
| 11/1/75-11/1/76 | LE1-612-004059-435 | Excess |
| 11/1/76-11/1/77 | LG1-612-004059-216 | CGL |
| 11/1/76-11/1/77 | LE1-612-004059-436 | Excess |
| 11/1/77-1/1/78 | LG1-612-004059-217 | CGL |
| 11/1/77-1/1/78 | LE1-612-004059-437 | Excess |
| 1/1/78-1/1/79 | LG1-612-004059-548 | CGL |
| 1/1/78-1/1/79 | LE1-612-004059-578 | Excess |

23. Emhart is entitled to the benefits of USM under the Liberty Mutual Policies.

24. Home issued excess liability insurance policies to USM that were in effect at pertinent times ("Home USM Policies"). The Home USM Policies are the following:

| Term | Policy Number |
|---|---|
| 1/1/70-1/1/71 | HEC9791288 |
| 1/1/71-1/1/72 | HEC9919551 |
| 1/1/72-1/1/73 | HEC4165802 |

25. Emhart is entitled to the benefits of USM under the Home USM Policies.

26. Home issued excess liability policy No. HXL-15-743-05 ("Home Emhart Policy") to plaintiff. The Home Emhart Policy was in effect during the period January 1, 1984-January 1, 1985 and Emhart is entitled to the benefits of that policy.

27. US Fire issued excess liability insurance policy No. JU007 to USM ("US Fire USM Policy"). The US Fire USM Policy was in effect during the period January 1, 1973-November 1, 1975.

28. Emhart is entitled to the benefits of USM under the US Fire USM Policy.

29. North River issued excess liability insurance policy No. JUO123 to USM ("North River USM Policy"). The North River USM Policy was in effect during the period November 1, 1975-January 1, 1979.

30. Emhart is entitled to the benefits of USM under the North River USM Policy.

31. North River issued excess liability policy No. 5233131099 ("North River Emhart Policy") to plaintiff. The North River Emhart Policy was in effect during the period January 1, 1984-January 1, 1985 and Emhart is entitled to the benefits of that policy.

32. Pursuant to the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. § 9601 et seq ("CERCLA"), the Environmental Protection Agency ("EPA") commenced a proceeding against Emhart (and others), asserting that Emhart is a potentially responsible party ("PRP") with respect to alleged contamination at the so-called Centredale Manor Superfund Site in North Providence, Rhode Island ("Site"). The Site includes the Smith Street Facility as well as property abutting and/or in proximity to the Smith Street Facility.

33. In the course of the proceeding against Emhart concerning the Site, the EPA issued a Request for Information to Emhart, pursuant to Section 104 of CERCLA, 42 U.S.C. § 9604; and a Notice of Potential Liability, to Emhart, pursuant to Section 107 of

CERCLA, 42 U.S.C. § 9607. The EPA also issued two Unilateral Administrative Orders for Removal Actions, pursuant to Section 106 of CERCLA, 42 U.S.C. § 9606, to Emhart and other PRPs.

34. The claim that the EPA asserted against Emhart concerning the Site ("Claim") is based on Emhart allegedly being "a successor to liability of several chemical companies [Crown Metro] which operated at the Site from approximately 1943 to approximately 1971", an allegation which Emhart denies. The EPA has determined that "[n]umerous hazardous substances", including dioxin, PCB's, volatile organic compounds, semi-volatile organic compounds and metals have been found on the Site and in off-site locations and that those "substances were disposed of at the Site as a part of former operations of several chemical companies [Crown Metro]" and that there have been releases of such hazardous materials that have continued until at or about the time of the first Unilateral Administrative Order.

<u>Count I – Breach of Contract - INA</u>

35. Emhart incorporates the allegations of paragraphs 1-34, as if set forth in full herein.

36. The Claim is within the scope of the coverage afforded by the terms of the INA Crown Metro Policy and the INA USM Policy.

37. Pursuant to the provisions of the INA Crown Metro Policy, INA is obligated to defend and indemnify Emhart with respect to the Claim and, pursuant to the provisions of the INA USM Policy, if and to the extent that, the underlying primary insurance coverage is exhausted, INA is obligated to defend and/or indemnify Emhart with respect to the Claim.

38. Emhart has provided notice of the Claim to INA and has complied with all applicable terms and conditions of the INA Crown Metro Policy and the INA USM Policy.

39. INA, after receiving notice of the Claim, has refused to discharge its obligations to defend and/or indemnify Emhart and has denied that its policies provide coverage with respect to the Claim.

40. Emhart has incurred costs and damages, within the meaning of the INA Crown Metro Policy and the INA USM Policy, with respect to the Claim.

41. The denial of coverage by INA and the failure of INA to indemnify and/or defend Emhart with respect to the Claim are in breach of its obligations under the INA Crown Metro Policy.

42. Emhart has suffered damage as a result of the conduct of INA in breach of its obligations under the INA Crown Metro Policy.

Count II – Declaratory Judgment – INA

43. Emhart incorporates the allegations of paragraphs 1-42, as if set forth in full herein.

44. An actual controversy exists between Emhart and INA with respect to the obligation of INA, pursuant to the INA Crown Metro Policy and the INA USM Policy, to defend and/or indemnify Emhart with respect to the Claim.

45. Emhart is entitled to a declaration that INA is required to defend and/or indemnify Emhart with respect to the Claim.

Count III – Breach of Contract – Liberty Mutual

46. Emhart incorporates the allegations of paragraphs 1-54, as if set forth in full herein.

47. The Claim is within the scope of the coverage afforded by the terms of the Liberty Mutual Policies.

48. Pursuant to the provisions of the Liberty Mutual Policies, Liberty Mutual is obligated to defend and/or indemnify Emhart with respect to the Claim.

49. Emhart has provided notice of the Claim to_Liberty Mutual and has complied with all applicable terms and conditions of the Liberty Mutual Policies.

50. Liberty Mutual, after receiving notice of the Claim, has refused to discharge its obligations to defend and/or indemnify Emhart and has denied that the Liberty Mutual Policies provide coverage with respect to the Claim.

51. Emhart has incurred costs and damages, within the meaning of the Liberty Mutual Policies, with respect to the Claim.

52. The denial of coverage by Liberty Mutual and the failure of Liberty Mutual to defend and/or indemnify Emhart with respect to the Claim are in breach of its obligations under the Liberty Mutual Policies.

53. Emhart has suffered damage as a result of the conduct of Liberty Mutual in breach of its obligations under the Liberty Mutual Policies.

Count IV – Declaratory Judgment – Liberty Mutual

54. Emhart incorporates the allegations of paragraphs 1-53, as if set forth in full herein.

55. An actual controversy exists between Emhart and Liberty Mutual with respect to the obligation of Liberty Mutual, pursuant to the Liberty Mutual Policies, to defend and/or indemnify Emhart with respect to the Claim.

56. Emhart is entitled to a declaration that Liberty Mutual is required to defend and/or indemnify Emhart with respect to the Claim.

Count V – Declaratory Judgment – One Beacon

57. Emhart incorporates the allegations of paragraphs 1-56, as if set forth in full herein.

58. The Claim is within the scope of the coverage afforded by the terms of the One Beacon Policy.

59. Pursuant to the provisions of the One Beacon Policy, if and to the extent that, the underlying primary insurance coverage is exhausted, One Beacon is obligated to defend and/or indemnify Emhart with respect to the Claim.

60. Emhart has provided notice of the Claim to One Beacon and has complied with all applicable terms and conditions of the One Beacon Policy.

61. One Beacon, after receiving notice of the Claim, has refused to defend and/or indemnify Emhart and has denied that the One Beacon Policy provides coverage with respect to the Claim.

62. Emhart has incurred costs and damages, within the meaning of the One Beacon Policy, with respect to the Claim.

63. An actual controversy exists between Emhart and One Beacon with respect to the obligation of One Beacon, pursuant to the One Beacon Policy, to defend and/or

indemnify Emhart with respect to the Claim, following exhaustion of the underlying primary insurance coverage.

64. Emhart is informed and believes, and therefore avers, that One Beacon may claim that it has an interest in this action such that if this action were resolved in its absence, One Beacon would be impaired or impeded from protecting its interest.

65. Emhart is entitled to a declaration that, following exhaustion of the underlying primary insurance coverage, One Beacon is required to defend and/or indemnify Emhart with respect to the Claim.

Count VI – Declaratory Judgment - Home

66. Emhart incorporates the allegations of paragraphs 1-65, as if set forth in full herein.

67. The Claim is within the scope of the coverage afforded by the terms of the Home USM Policies and the Home Emhart Policy.

68. Pursuant to the provisions of the Home USM Policies and the Home Emhart Policy, if and to the extent that, the underlying primary insurance coverage is exhausted, Home is obligated to defend and/or indemnify Emhart with respect to the Claim.

69. Emhart has provided notice of the Claim to Home and has complied with all applicable terms and conditions of the Home USM Policies and the Home Emhart Policy.

70. Home, after receiving notice of the Claim, has refused to defend and/or indemnify Emhart and has denied that its policies provide coverage with respect to the Claim.

71. Emhart has incurred costs and damages, within the meaning of the Home USM Policies and the Home Emhart Policy, with respect to the Claim.

72. An actual controversy exists between Emhart and Home with respect to the obligation of Home, pursuant to the Home USM Policies and the Home Emhart Policy, to defend and/or indemnify Emhart with respect to the Claim, following exhaustion of the underlying primary insurance coverage.

73. Emhart is informed and believes, and therefore avers, that Home may claim that it has an interest in this action such that if this action were resolved in its absence, Home would be impaired or impeded from protecting its interest.

74. Emhart is entitled to a declaration that, following exhaustion of the underlying primary insurance coverage, Home is required to defend and/or indemnify Emhart with respect to the Claim.

Count VII – Declaratory Judgment – US Fire

75. Emhart incorporates the allegations of paragraphs 1-74, as if set forth in full herein.

76. The Claim is within the scope of the coverage afforded by the terms of the US Fire Policy.

77. Pursuant to the provisions of the US Fire Policy, if and to the extent that, the underlying primary insurance coverage is exhausted, US Fire is obligated to defend and/or indemnify Emhart with respect to the Claim.

78. Emhart has provided notice of the Claim to US Fire and has complied with all applicable terms and conditions of the US Fire Policy.

79. US Fire, after receiving notice of the Claim, has refused to defend and/or indemnify Emhart and has denied that its policy provides coverage with respect to the Claim.

80. Emhart has incurred costs and damages, within the meaning of the US Fire Policy, with respect to the Claim.

81. An actual controversy exists between Emhart and US Fire with respect to the obligation of US Fire, pursuant to the US Fire Policy, to defend and/or indemnify Emhart with respect to the Claim, following exhaustion of the underlying primary insurance coverage.

82. Emhart is informed and believes, and therefore avers, that US Fire may claim that it has an interest in this action such that if this action were resolved in its absence, US Fire would be impaired or impeded from protecting its interest.

83. Emhart is entitled to a declaration that, following exhaustion of the underlying primary insurance coverage, US Fire is required to defend and/or indemnify Emhart with respect to the Claim.

Count VIII – Declaratory Judgment – North River

84. Emhart incorporates the allegations of paragraphs 1-83, as if set forth in full herein.

85. The Claim is within the scope of the coverage afforded by the terms of the North River USM Policy and the North River Emhart Policy.

86. Pursuant to the provisions of the North River USM Policy and the North River Emhart Policy, if and to the extent that, the underlying primary insurance coverage is exhausted, North River is obligated to defend and/or indemnify Emhart with respect to the Claim.

87. Emhart has provided notice of the Claim to North River and has complied with all applicable terms and conditions of the North River USM Policy and the North River Emhart Policy.

88. North River, after receiving notice of the Claim, has refused to defend and/or indemnify Emhart and has denied that its policies provide coverage with respect to the Claim.

89. Emhart has incurred costs and damages, within the meaning of the North River USM Policy and the North River Emhart Policy, with respect to the Claim.

90. An actual controversy exists between Emhart and North River with respect to the obligation of North River, pursuant to the North River USM Policies and the North River Emhart Policy, to defend and/or indemnify Emhart with respect to the Claim, following exhaustion of the underlying primary insurance coverage.

91. Emhart is informed and believes, and therefore avers, that North River may claim that it has an interest in this action such that if this action were resolved in its absence, North River would be impaired or impeded from protecting its interest.

92. Emhart is entitled to a declaration that, following exhaustion of the underlying primary insurance coverage, North River is required to defend and/or indemnify Emhart with respect to the Claim.

WHEREFORE, plaintiff, Emhart Industries, Inc., prays that this Court:

1. award it such damages as it has suffered as a result of the conduct of defendants, plus interest and costs;

2. declare that each of the defendants is obligated to defend and indemnify Emhart with respect to the proceeding that the Environmental Protection Agency asserted against Emhart Industries, Inc. with respect to the so-called Centredale Manor Superfund Site;

3. award plaintiff attorney's fees; and

4. grant plaintiff such other and further relief as this Court deems just and proper.

By its attorneys,

Gerald J. Petros
Hinckley, Allen & Snyder LLP
1500 Fleet Center
Providence, Rhode Island 02903
(401) 274-2000

Of Counsel
Jack R. Pirozzolo
Richard L. Binder
Willcox, Pirozzolo & McCarthy
Professional Corporation
50 Federal Street
Boston, Massachusetts 02110
(617) 482-5470

PLAINTIFF CLAIMS TRIAL BY JURY