UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

EMHART INDUSTRIES, INC.,

Plaintiff,

v.

NEW ENGLAND CONTAINER COMPANY, INC., PROVIDENCE WASHINGTON INSURANCE COMPANY and TRAVELERS CASUALTY & SURETY COMPANY,

Defendants.

Civil Action No 06-218S

**PLAINTIFF'S OBJECTION TO MOTION TO DISMISS PURSUANT TO FED.R.CIV. P. 12(b)(6) AND MOTION TO STAY OF NEW ENGLAND CONTAINER COMPANY, INC.**

Emhart Industries, Inc. ("Emhart") opposes the motion of New England Container Company, Inc. ("NECC") to dismiss the complaint pursuant to Fed.R. Civ. P. 12(b)(6) and, in the alternative, to stay Counts VII-XII.

In Counts I and II, Emhart has asserted claims for cost recovery and contribution under the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. § 9601 et seq. ("CERCLA"). The portion of the CERCLA cost recovery claim seeking reimbursement of all of Emhart's response costs may not be dismissed. The allegations of the complaint are consistent with Emhart establishing, in accordance with 42 U.S.C. § 9607(b)(3), that it has no liability under CERCLA as the contamination was solely caused by acts or omissions of another, i.e., NECC. In the context of a motion to dismiss, those allegations must be accepted as true and all reasonable inferences from the allegations must be drawn in favor of

Emhart. Clorox Co. Puerto Rico v. Proctor & Gamble Commercial Co., 282 F.3d 24, 30 (1st Cir. 2000).

Emhart's claim for contribution raises issues that were recognized, but not resolved, in Cooper Industries, Inc. v. Aviall Services, Inc., 543 U.S. 157 (2004). Emhart's express claim for contribution should not be dismissed as the orders pursuant to which it has incurred response costs are "civil actions" within the meaning of 42 U.S.C. § 9613(f). See Carrier Corp. v. Piper, 2006 WL 3025842 *9 (W.D. Tenn. Sept. 30, 2006). If Emhart were not entitled to contribution pursuant to 42 U.S.C. § 9613(f) due to the absence of a "civil action", the better reasoned post-Aviall decisions, including the one decision of a district court in this Circuit, hold that, in those circumstances, there is an implied right to contribution under 42 U.S.C. § 9607 or the common law. E.g., Atlantic Research Corp. v. United States, 459 F.3d 827 (8th Cir. 2006), pet. cert. filed, October 24, 2006; Consolidated Edison Co. v. UGI Utilities, Inc., 423 F.3d 90 (2d Cir. 2005), pet. cert. filed, April 14, 2006; City of Bangor v. Citizens Communications Co., 437 F.Supp. 2d 180, 221 (D. Me. 2006).

The portion of the NECC motion that seeks dismissal of the common law and state law claims asserted in counts III-VI is predicated on the assumption that the CERCLA claims will be dismissed and the Court will no longer have a basis for subject matter jurisdiction. That issue becomes moot if the motion to dismiss the CERCLA claims is denied.

The portion of the NECC motion that seeks to dismiss or stay the claims in counts VII-XII is based on both an incorrect premise and a misstatement of the applicable standard. The claims in those counts seek more than a determination of whether the insurance policies provide coverage to NECC for indemnification costs in connection with the Centredale Site. They seek remedies to ensure that the proceeds of the insurance policies are available to Emhart if Emhart

prevails on its claims against NECC. This Court has considerable discretion as to whether to hear claims for declaratory relief. Wilton v. Seven Falls Co., 515 U.S. 277, 283 (1995). However, where there are claims not involving declaratory relief, it must exercise its jurisdiction absent "exceptional circumstances." Colorado River Water Conservation District v. United States, 424 U.S. 800, 817 (1976). Where, as here, the complaint involves both declaratory and non-declaratory claims, the "exceptional circumstances" standard applies. E.g., Great American Insurance Co. v. Gross, ___ F.3d ____, 2006 WL 3059884 (4th Cir. Oct. 30, 2006) *9.

The claims in this action are broader than the claims in the insurance coverage action that NECC brought against the insurers in state court. Thus, the state court proceeding is not a parallel action; it will not resolve the claims asserted in those counts and would not be a basis for dismissing or staying the claims asserted in those counts even if the Wilton standard were applicable. This Court offers a forum that will address all disputes among Emhart, NECC and the NECC insurers regarding the Centredale Site.

In support of its opposition, Emhart relies upon the Memorandum of Law, filed herewith and incorporated herein.

Respectfully submitted,

Emhart Industries, Inc.
By its attorneys

/s/ Craig M. Scott

Craig M. Scott (#4237)
Duffy Sweeney & Scott, Ltd.
One Turks Head Place, Suite 1200
Providence, RI 02903
(401) 455-0700
(401) 455-0701 (facsimile)
cscott@duffysweeney.com

Of Counsel:
Jack R. Pirozzolo
Richard L. Binder
Foley Hoag LLP
155 Seaport Boulevard
Boston, Massachusetts 02210
(617) 832-1000
(617) 832-7000 (facsimile)
jpirozzolo@foleyhoag.com

**CERTIFICATE OF SERVICE**

Todd D. White, Esq.
Jaime Lepore, Esq.
Adler, Pollock & Sheehan, P.C.
One Citizens Plaza, 8th Floor
Providence, Rhode Island 02093-1345

R. Kelly Sheridan, Esq.
Jason C. Preciphs, Esq.
Roberts Carroll Feldstein & Peirce
10 Weybosset Street
Providence, RI 02903

James W. Ryan, Esq.
Partridge Snow & Hahn, LLP
180 South Main Street
Providence, RI 02903

I hereby certify that the within Memorandum of Law was filed through the ECF system on the 7th day of November, 2006, and will be sent electronically to the above-named counsel who are registered participants identified on the Notice of Electronic Filing.

/s/ Craig M. Scott

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

EMHART INDUSTRIES, INC.,

Plaintiff,

v.

NEW ENGLAND CONTAINER COMPANY, INC., PROVIDENCE WASHINGTON INSURANCE COMPANY and TRAVELERS CASUALTY & SURETY COMPANY,

Defendants.

Civil Action No 06-218S

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS OBJECTION TO MOTION TO DISMISS PURSUANT TO FED.R.CIV. P. 12(b)(6) AND MOTION TO STAY OF NEW ENGLAND CONTAINER COMPANY, INC.**

## INTRODUCTION

This is an action by Emhart Industries, Inc. ("Emhart") against New England Container Company, Inc. ("NECC") and two of NECC's insurers arising out of environmental contamination at the Centredale Manor Restoration Project Superfund Site ("Centredale Site"). Emhart has asserted claims for cost recovery and contribution under the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. § 9601 et seq. ("CERCLA"), as well as claims under Rhode Island statutes and the common law. The NECC motion to dismiss those claims is not well-founded.

NECC has moved to dismiss Counts I and II of Emhart's complaint on the ground that Emhart has failed to state a claim upon which relief can be granted. Emhart's complaint, however, alleges facts sufficient to establish that (a) Emhart may pursue a claim

for cost recovery under CERCLA § 107; (b) Emhart is entitled to bring a claim for contribution pursuant to CERCLA § 113(f) since it has been subject to a "civil action" under CERCLA § 106; and (c) if Emhart has not meet the statutory requirements of CERCLA § 113(f), CERCLA § 107 provides Emhart with an implied right to contribution. NECC has simply not satisfied its burden of demonstrating that the allegations of Emhart's complaint, if accepted as true, fail to state claims upon which relief can be granted. Accordingly, NECC's motion to dismiss Counts I and II should be denied.

The portion of the CERCLA cost recovery claim seeking reimbursement of all of Emhart's response costs may not be dismissed. The allegations of the complaint are consistent with Emhart establishing, in accordance with 42 U.S.C. § 9607(b)(3), that it has no liability under CERCLA as the contamination was solely caused by acts or omissions of another party, i.e., NECC. In the context of a motion to dismiss, those allegations must be accepted as true and all reasonable inferences from the allegations must be drawn in favor of Emhart. Clorox Co. Puerto Rico v. Proctor & Gamble Commercial Co., 282 F.3d 24, 30 (1st Cir. 2000).

Emhart's claim for contribution raises issues that were recognized, but not resolved, in Cooper Industries, Inc. v. Aviall Services, Inc., 543 U.S. 157 (2004). Emhart's express claim for contribution should not be dismissed as the orders pursuant to which it has incurred response costs are "civil actions" within the meaning of 42 U.S.C. § 9613(f). See Carrier Corp. v. Piper, 2006 WL 3025842 *9 (W.D. Tenn. Sept. 30, 2006). If Emhart were not entitled to contribution pursuant to 42 U.S.C. § 9613(f) due to the absence of a "civil action", the better reasoned post-Aviall decisions, including the one decision of a district court in this Circuit, hold that in those circumstances, there is an implied right to contribution under 42

U.S.C. § 9607 or the common law. E.g., Atlantic Research Corp. v. United States, 459 F.3d 827 (8th Cir. 2006), pet. cert. filed, October 24, 2006; Consolidated Edison Co. v. UGI Utilities, Inc., 423 F.3d 90 (2d Cir. 2005), pet. cert. filed, April 14, 2006; City of Bangor v. Citizens Communications Co., 437 F.Supp. 2d 180, 221 (D. Me. 2006).

The portion of the NECC motion that seeks dismissal of the common law and state law claims asserted in Counts III-VI is predicated on the assumption that the CERCLA claims will be dismissed and the Court will no longer have a basis for subject matter jurisdiction. That issue becomes moot if the motion to dismiss the CERCLA claims is denied.

The portion of the NECC motion that seeks to dismiss or stay the claims in counts VII-XII against the insurers[1] is based on both an incorrect premise and a misstatement of the applicable standard. The claims in those counts seek more than a determination of whether the insurance policies provide coverage to NECC for indemnification costs in connection with the Centredale Site. They seek remedies to ensure that the proceeds of the insurance policies are available to Emhart if Emhart prevails on its claims against NECC. This Court has considerable discretion as to whether to hear claims for declaratory relief. Wilton v. Seven Falls Co., 515 U.S. 277, 283 (1995). However, where there are claims not involving declaratory relief, it must exercise its jurisdiction absent "exceptional circumstances." Colorado River Water Conservation District v. United States, 424 U.S. 800, 817 (1976). Where, as here, the complaint involves both declaratory and non-declaratory claims, the "exceptional circumstances" standard applies. E.g., Great American Insurance Co. v. Gross, ___ F.3d ____, 2006 WL 3059884 (4th Cir. Oct. 30, 2006) *9.

1 The insurers have sought dismissal of those counts. Their motions are scheduled for hearing together with the NECC motion.

The claims in this action are broader than the claims in the insurance coverage action that NECC brought against the insurers in state court. Thus, the state court proceeding is not a parallel action; it will not resolve the claims asserted in the counts in Emhart's complaint and would not be a basis for dismissing or staying the claims asserted in those counts even if the Wilton standard were applicable. This Court offers a forum that will address all disputes among Emhart, NECC and the NECC insurers regarding the Centredale Site. Accordingly, the NECC motion to dismiss and to stay should be denied in its entirety.

## ARGUMENT

### I. The Emhart Claims Under CERCLA Should Not Be Dismissed

#### A. The Statutory Framework

In Counts I and II of its complaint, Emhart seeks recovery of response costs under CERCLA. CERCLA provides remedies for cost recovery, pursuant to Section 107, 42 U.S.C. § 9607,[2] and for contribution, pursuant to Section 113, 42 U.S.C. § 9613. NECC does not dispute that Emhart would be entitled to recover all its costs under Section 107 if it establishes that it is an innocent party within the meaning of Section 107(b)(3): that the contamination was "caused solely by" the acts or omissions of others. NECC also does not dispute that if Emhart is unable to establish a defense enumerated in Section 107, it would be entitled to contribution pursuant to Section 113(f) if it meets the statutory conditions. The focus of the dispute is whether CERCLA affords an implied right of contribution where the statutory remedy of contribution codified in Section 113 is unavailable. As is shown, infra, in those circumstances, CERCLA affords such a remedy, either as part of the cost recovery remedy codified in Section 107 or as an implied right of contribution.

---

[2] For convenience, this memorandum will refer to provisions of CERCLA by section number.

Section 107, entitled "Liability", identifies the persons subject to CERCLA liability, the persons entitled to seek recovery, the extent of liability and the available defenses. Section 107(a) identifies four categories of "covered persons" who are liable under CERCLA. The extent of their liability is set forth in Section 107(a)(4), which provides, in pertinent part, that "covered persons":

> ... shall be liable for--
>
> (A) all costs of removal or remedial action incurred by the United States Government or a State or an Indian tribe not inconsistent with the national contingency plan;
> (B) any other necessary costs of response incurred by any other person consistent with the national contingency plan; ...
>
> ****

The defenses available to a covered party are set forth in Section 107(b), which provides in pertinent part:

> There shall be no liability under subsection (a) of this section for a person otherwise liable who can establish by a preponderance of the evidence that the release or threat of release of a hazardous substance and the damages resulting therefrom were caused solely by --
>
> *****
>
> (3) an act or omission of a third party other than an employee or agent of the defendant, or than one whose act or omission occurs in connection with a contractual relationship, existing directly or indirectly, with the defendant ....

The statutory right to contribution is codified in Section 113(f). That section provides in pertinent part:

> Any person may seek contribution from any other person who is liable or potentially liable under section 9607(a) of this title, during or following any civil action under section 9606 of this title or under section 9607(a) of this title. ... Nothing in this subsection shall diminish the right of any person to bring an

action for contribution in the absence of a civil action under section 9606 of this title or section 9607 of this title.

Section 113 was added to CERCLA by the Superfund Amendments and Reauthorization Act of 1986 ("SARA"). See Key Tronic Corp. v. United States, 511 U.S. 809, 816 (1994). Key Tronic explained that prior to SARA, "CERCLA contained no express provision authorizing a private party that had incurred cleanup costs to seek contributions from other PRP's," but the statute was interpreted "to impliedly authorize such a cause of action". Id. The Court then stated that following the enactment of Section 113, CERCLA "expressly authorizes a cause of action for contribution in § 113 and impliedly authorizes a similar and somewhat overlapping remedy in § 107". Id.

B. The Claim Under Section 107 May Not Be Dismissed As Emhart Has Alleged That It Is Not A Liable Party

NECC recognizes that if Emhart establishes that it is an "innocent party", it is entitled to relief under Section 107. See the memorandum in support of the NECC motion to dismiss ("NECC Mem.") at 6-7. NECC assumes, without citation or argument, that Emhart is not an innocent party. Emhart expects to establish that it is. Nothing in Emhart's complaint precludes the possibility of Emhart being able to prove it is not liable for the contamination. Instead, the complaint alleges that NECC caused the dioxin contamination at the Site (Comp.¶¶ 26-29) and that Emhart has complied with two Unilateral Administrative Orders and an Administrative Order On Consent (Id., ¶¶ 15-17).

While Emhart has potential liability, it will avoid that liability if it "can establish by a preponderance of the evidence that the release or threat of release of a hazardous substance and the damages resulting therefrom were caused solely by" the acts or omissions of others. 42 U.S.C. § 9607(b)(3). See also Acushnet Co. v. Mohasco Corp., 191 F.3d 69, 75 (1st Cir.

1999) (CERCLA liability is "subject to the opportunity to prove (i) that the harm was solely caused by someone (or something) else..."); In re Hemingway Transport, Inc., 993 F.2d 915, 932 (1st Cir. 1993) ("Of course, not all 'covered persons' are strictly liable for response costs ... Section 9607(b) expressly provides that 'there shall be no liability under section [9607] (a) ...for a person otherwise liable who can establish by a preponderance of the evidence ..." [the defense that the contamination was caused solely by another set forth in Section 9607(b)(3)] ...(emphasis in original). While this stage of the proceedings is not the occasion to determine whether Emhart will prove that it has no CERCLA liability, Emhart expects to adduce scientific evidence to prove that its predecessor was not responsible for any of the dioxin at the Site.

The NECC assumption that Emhart will be found liable under CERCLA is impermissible in the context of a motion to dismiss, where the Court must "accept[] all well-pleaded facts as true and draw[] all reasonable inferences in favor of the plaintiff" and thereafter, dismissal is inappropriate unless "the plaintiff can prove no set of facts to support [the] claim for relief". Clorox Co. Puerto Rico v. Proctor & Gamble Commercial Co., 282 F.3d 24, 30 (1st Cir. 2000) (citing Bedall v. State Street Bank & Trust Co., 137 F.3d 12, 16 (1st Cir. 1998) and Rockwell v. Cape Cod Hosp., 26 F.3d 254, 260 (1st Cir. 1994)).

NECC ignores the difference between potential liability and actual liability. It cites United Technologies Corp. v. Browning-Ferris Industries, Inc., 33 F.3d 96 (1st Cir. 1994), for the proposition that "a PRP[3] may not pursue a cost recovery action against another PRP"

[3] Presumably, NECC does not mean to equate a PRP with a liable party. As one court noted, the term "PRP" is "vague and imprecise because when no action has been filed, nor fact-finding conducted, any person is conceivably a responsible party under CERCLA. Moreover, we believe the term may be read to confer on a party that has not been held liable a legal status that it should not bear". Consolidated Edison Co. v. UGI Utilities, Inc., 423 F.3d 90, 98 n.8 (2d Cir. 2005), pet. cert. filed, April 14, 2006.

(NECC Mem. at 6). That citation is incorrect. United Technologies actually stated that "... Congress intended only innocent parties - not parties who were themselves liable - to recoup the whole of their expenditures"[4] under CERCLA. Id., at 100. In United Technologies, the parties seeking to assert the cost recovery claim were "by their own admission liable parties" (33 F.3d at 101) as a consent decree had been entered in an action that the government commenced in district court (33 F.3d at 97). Here, this is not the case as there has not been an action in district court, much less a consent decree in such an action.

As there has been no adjudication that Emhart is liable, Emhart is entitled to recover all of its response costs pursuant to Section 107. The portion of Count I of the complaint seeking complete recovery of Emhart's costs may not be dismissed. Moreover, as will be shown, infra, the portion of Count I seeking contribution also should not be dismissed.

C. Emhart Has A Right To Contribution Even If It Is A Liable Party

1. Introduction

A party that is liable under CERCLA is entitled to contribution, i.e., "to seek recoupment of that portion of his expenditures which exceeds his pro rata share of the overall liability". United Technologies, 33 F.3d at 100. The parameters of that remedy must be considered in view of the language of Sections 107 and 113, as well as the discussion of the statutory provisions in Cooper Industries, Inc. v. Aviall Services, Inc., 543 U.S. 157 (2004), and Key Tronic, supra. As will be shown, a liable party has a right to contribution under Section 113 and, to the extent the statutory conditions in Section 113 are not met, an implied right to contribution, pursuant to Section 107.

---

4 As is discussed, infra, and as NECC concedes (NECC Mem. at 7, n.2), United Technologies left open the possibility that CERCLA provided an implied right of contribution, under Section 107. 33 F.3d at 99, n.8. An action for contribution permits recovery of a portion of expenditures, not the whole of the expenditures.

2. The Aviall Decision

Aviall addressed the extent of the statutory remedy for contribution under Section 113(f)(1). There, a party that had remediated a contaminated site sought contribution under Section 113(f)(1) although neither a state environmental agency "nor the EPA, however, took judicial or administrative measures to compel cleanup." 543 U.S. at 164. While the Court held that the claim was barred as the action was not commenced "during or following a[] civil action" as required by Section 113, it stated that a claim for contribution under CERCLA was not limited to the statutory claim. The Court noted that the saving clause in the last sentence of Section 113(f)(1), provides that "[n]othing in this subsection shall diminish the right of any person to bring an action for contribution in the absence of a civil action under section 9606 ... or under section 9607...." 543 U.S. at 166. It then explained that the saving clause "rebuts any presumption that the express right of contribution provided by the enabling clause is the exclusive cause of action for contribution available to a PRP," but "does not itself establish a cause of action." Id., at 167. As the plaintiff had not invoked Section 107, the Aviall Court declined to decide whether that statute provided the plaintiff either "cost recovery" or "an implied right to contribution." Id., at 170. The Court did note that "[t]he cost recovery remedy of 107(a)(4)(B) and the contribution remedy of 113(f)(1) are similar at a general level in that they both allow private parties to recoup costs from other private parties. But the two remedies are clearly distinct." Id., at 163, n.3.

3. Emhart Is Entitled To Contribution Pursuant To Section 113 (f)

NECC correctly notes that Emhart's entitlement to contribution pursuant to Section 113(f) turns on whether any of the orders that the EPA issued to Emhart and others constitute "civil actions" within the meaning of the statute. Aviall expressly did not reach the issue as

the Court noted: "Neither has Aviall been subject to an administrative order under § 106; thus, we need not decide whether such an order would qualify as a 'civil action under section 9606 … or under section 9607(a)' of CERCLA." 543 U.S. at 168, n. 5.

Few cases have considered this issue after Aviall. Most recently, Carrier Corp. v. Piper, 2006 WL 3025842 (W.D. Tenn. Sept. 30, 2006), expressly found "that a UAO falls within the requirement of a 'civil action' under § 113(f)(1)." Id., at *10. Carrier noted the practical effect of EPA orders:

> In terms of the burden it places on a party, a UAO is similar to a judgment issued pursuant to a court proceeding. As the Seventh Circuit observed in Akzo [Coatings, Inc v. Aigner Corp., 30 F.3d 761 (7th Cir. 1994)]: "A Party served with a unilateral order under section 106 has little choice but to comply." Akzo, [30] F.3d at 769. Under a UAO, there is a penalty for noncompliance of up to $25,000 "for each day in which such violation occurs or such failure to comply continues." 42 U.S.C. § 9607(b)(1). In addition, under 42 U.S.C. § 9607(c)(3), failure to comply with the UAO can result in the imposition of punitive damages, "in an amount at least equal to, and not more than three times, the amount of any costs incurred by the Fund as a result of such failure to take proper action." 42 U.S.C. § 9607(c)(3). For these reasons, the Court finds that a UAO falls within the requirement of a "civil action" under § 113(f)(1) ….

2006 WL 3025842 at *10.

The reasoning of Carrier is comparable to that in numerous decisions finding that the involuntary and coercive nature of EPA orders renders them "suits" within the meaning of insurance policies E.g., Ryan v. Royal Insurance Co., 916 F.2d 731, 741 (1st Cir. 1990). The penalties for non-compliance are severe, more so than those of even an ordinary court judgment.

NECC relies primarily on Pharmacia Corp. v. Clayton Chemical Acquisition LLC, 382 F.Supp. 2d 1079 (S.D. Ill. 2005).[5] Pharmacia bases its analysis of the meaning of "civil action" on an application of the Federal Rules of Civil Procedure. 382 F.Supp. 2d at 1087. NECC adopts this argument in an unattributed paraphrasing. Compare, NECC Mem. at 9. However, there is an anomaly in the Pharmacia analysis. By its terms, Section 113(f)(1) does not use the Federal Rules of Civil Procedure to define a "civil action." The relevant sentences in § 113(f)(1) state:

> Any person may seek contribution from any other person who is liable or potentially liable under section 9607(a) of this title, during or following any civil action under section 9606 of this title or under section 9607(a) of this title. Such claims shall be brought in accordance with this section and the Federal Rules of Civil Procedure, and shall be governed by Federal law. ...

The reference to the Federal Rules of Civil Procedure is in the sentence after the sentence that sets forth the "civil action" requirement. If the reference to "civil action" in the prior sentence was to a "civil action" as defined by the Federal Rules of Civil Procedure, then either the reference to those rules should have preceded the use of the term "civil action" or the section should contain a subsequent express provision that "civil action" was to be defined pursuant to the Federal Rules of Civil Procedure. Instead, by making express reference to the Federal Rules of Civil Procedure in the subsequent sentence, which addresses the mechanics of bringing a CERCLA contribution action, the inference is that the reference to a "civil action" in the prior sentence is not solely to a proceeding defined by Fed. R. Civ. P. 2 and 3. Accordingly, "civil action", as referred to in Section 113(f), must be interpreted as being different from "civil action", as used in the Federal Rules of Civil Procedure. The term as

5 The two other cases it cites on the issue follow Pharmacia. Raytheon Aircraft Co. v. United States, 435 F.Supp. 2d 1136, 1142-43 (D.Kan. 2006); Blue Tee Corp. v. Asarco, Inc., 2005 WL 1532955 (W.D.Mo. Jun. 25, 2005).

used in the statute has a broader and more expansive meaning that encompasses the coercive and punitive effects of EPA orders. Pharmacia simply does not address this issue, and its analysis of the meaning of "civil action" thus is flawed from the outset.

In the absence of binding precedent on this issue, the Court should adopt the reasoning of Carrier.

4. Emhart Has A Right To Contribution Under CERCLA If A Remedy Under Section 113 Is Not Available To It

In the aftermath of Aviall, numerous trial court opinions and three appellate opinions have addressed the unresolved issues of whether a party having CERCLA liability that is barred from proceeding with a contribution claim under Section 113(f) due to the absence of a "civil action" has a right to contribution under Section 107, either as a form of cost recovery or as an implied right. As is discussed, infra, two of the three appellate decisions to address this issue[6], and a majority of the trial court decisions, have found there is such a right of action. Despite the considerable authority concerning this issue that has arisen since Aviall, NECC addresses this issue only in a cryptic footnote that does not discuss either Aviall or the language of Sections 107 and 113 (NECC Mem. at 7, n.2). NECC also fails to discuss the one decision in this Circuit that addressed the issue, City of Bangor v. Citizens Communications Co., 437 F.Supp. 2d 180, 220-22 (D. Me. 2006).

a. The Only Authority In This Circuit Recognizes The Implied Right To Contribution

The one decision of a court in this Circuit to address the availability of contribution to a liable party after Aviall noted that "[t]he impact of Aviall on section 107 claims by

6 Compare Atlantic Research Corp. v. United States, 459 F.3d 827 (8th Cir. 2006), pet. cert. filed, October 24, 2006, and Consolidated Edison Co. v. UGI Utilities, Inc., 423 F.3d 90 (2d Cir. 2005), pet. cert. filed, April 14, 2006, both finding a cause of action, and E.I. DuPont De Nemours & Co. v. United States, 460 F.3d 515 (3d Cir. 2006), finding no such cause of action.

responsible parties is a question of first impression within the First Circuit".[7] Bangor, supra, 437 F.Supp. at 220-22. The court then analyzed the issue, found that section 107 claims for contribution remained viable after Aviall and cogently stated that the result it reached was based on the statutory language, the statutory purpose and principles of justice. 437 F.Supp. 2d at 220-223. The key statutory language was that Section 107(a)(4)(B) permits recovery "by any other person." The court stated that "nothing in this text clearly forecloses a responsible party from being considered 'any other person'". 437 F.Supp. 2d at 222. It then noted that "allowing responsible parties to seek contribution from 'any other person' via section 107 appears to be in line with the explicit saving clause found in section 113(f)(1)". Id. (quoting Aviall regarding the saving clause).

The Bangor court then found that a contrary result would be inconsistent with the purposes of CERCLA. It explained that "interpreting section 107 to forbid current owners and other responsible parties from seeking reimbursement for voluntary cleanups would encourage these parties to wait for a governmental entity or an innocent party to take decisive action before initiating any investigation or remediation," a result "contrary to CERCLA's clear goals of encouraging voluntary remediations." 437 F.Supp. 2d at 223. The court also noted the anomaly of making a right of contribution available to "responsible parties who are forced to incur remediation costs beyond their pro rata share," while denying such recovery to "responsible parties who voluntarily incur" such costs. It found there was "no basis for treating responsible parties so differently based solely on what prompted them to incur

---

7 As noted in Bangor, Esso Standard Oil Co. (Puerto Rico) v. Rodriguez-Perez, 455 F.3d 1, 3 (1st Cir. 2006), cited Aviall for the proposition that a claim under Section 113(f)(1) does not lie for a party that "had not been sued under § 106 or § 107(a) of CERCLA," but had no reason to address, and not did not address, whether nonetheless such a party was entitled to contribution.

remediation costs". Id., at 222-23. Here, as is discussed, infra, the meaning of "voluntarily" is without a "civil action" within the meaning of Section 113(f)(1),

The only possible guidance from the First Circuit concerning whether Section 107 provides a right of contribution is a pre-Aviall decision, United Technologies, supra. There, the court stated in a footnote that we "take no view" on whether such a cause of action exists. 33 F.3d at 99, n.8. Other courts have viewed that footnote as indicating that this Circuit would recognize such a cause of action in the post-Aviall era. Atlantic Research Corp. v. United States, 459 F.3d 827, 836 (8th Cir. 2006) (finding an implied right to contribution and citing United Technologies as a decision that recognized "that the broad language of 107 supports not only a right of cost recovery but also an implied right to contribution."); Bangor, 437 F.Supp. 2d at 221 (noting that United Technologies acknowledged the possibility of an implied cause of action for contribution under Section 107, but did not decide the issue).

NECC errs, in asserting in a footnote, that United Technologies limited the implied contribution action to a PRP who "voluntarily and spontaneously initiates a clean-up" (NECC Mem. at 7, n.2). The court of appeals recognized that an implied cause of action for contribution may exist, but did not attempt to define the parameters of such a cause of action. Moreover, United Technologies cited Key Tronic, supra, 511 U.S. 809 (1994), as support for the possible existence of the cause of action. Key Tronic did nothing to limit the implied right of action to responsible parties who "voluntarily" initiate cleanup. Rather, it stated that Section 107 "implies but does not expressly command that [a PRP] may have a claim for contribution against those treated as joint tortfeasors," without addressing whether the PRP acted voluntarily or incurred response costs after some governmental action. 511 U.S. at 818 & n.11. Further, as is discussed, infra, it is questionable whether any such limitation would

remain viable in the post-Aviall world if the effect of that limitation were to deprive the liable party of any right to contribution under CERCLA. As is also discussed, infra, contribution is not limited to a party that incurred costs without any governmental involvement.

b. Appellate Courts In Other Circuits Have Recognized The Necessity And Viability Of The Implied Contribution Claim

Two appellate courts have found that a party having CERCLA liability, but that has not been subject to a "civil action" within the meaning of Section 113 is entitled to obtain contribution through Section 107. Atlantic Research Corp. v. United States, 459 F.3d 827 (8th Cir. 2006), pet. cert. filed, October 24, 2006; Consolidated Edison Co. v. UGI Utilities, Inc., 423 F.3d 90 (2d Cir. 2005), pet. cert. filed, April 14, 2006. Those courts, like the City of Bangor court, found that conclusion was necessary when the language of Section 107 and the purpose of CERCLA were considered in view of the statement in Aviall that Sections 107 and 113 are "distinct" remedies.

Atlantic Research concluded that both of the possible bases for finding a right to contribution under Section 107 that were left unresolved by Aviall did provide such a cause of action. First, it ruled that a party with CERCLA liability had a right to cost recovery under Section 107. In so ruling, it held: "a liable party may, under appropriate procedural circumstances, bring a cost recovery action under 107. This right is available to parties who have incurred necessary costs of response, but have neither been sued nor settled their liability under 106 or 107." 459 F.3d at 835. The court also held "that a right to contribution may be fairly implied from the text of § 107(a)(4)(B)." In so ruling, it concluded that contribution was "crucial to CERCLA's regulatory scheme" and that "if Congress intended § 113 to completely replace § 107 in all circumstances even where a plaintiff was not eligible to use

§ 113, it would have done so explicitly". Id., at 835-36.

In concluding that liable parties were entitled to contribution under Section 107, Atlantic Research recognized that, in view of Aviall, "it no longer makes sense" to follow precedent limiting the scope of remedies available under Section 107. 459 F.3d at 834. The pre-Aviall precedent "dramatically narrowed § 107 by judicial fiat", rather than on the basis of the statutory language, because it was believed that "§ 113 was presumed to be available to all liable parties, including those who had not faced a" civil action under CERCLA. 459 F.3d at 832. As Aviall had limited the scope of Section 113, the court concluded that "it no longer makes sense to view § 113 as a liable party's exclusive remedy" (Id. at 834). It then stated that its prior decisions limiting the scope of relief under Section 107, were no longer applicable in view of Aviall.

> The Supreme Court emphasized that §§ 107 and 113 are "distinct". Accordingly, it is no longer appropriate to view §107's remedies exclusively through a §113 prism, as we did in Dico[8] .... We reject an approach which categorically deprives a liable party of a § 107 remedy. Like the Second Circuit, we return to the text of CERCLA, and find no such limitation in Congress's words.

459 F.3d at 835. After "return[ing] to the text of CERCLA," the court noted that the language of Section 107 expressly stated the statutory remedies were available to "any other person," and that "any other person" included persons who had CERCLA liability. Id. at 835.

Consolidated Edison, which was cited with approval in Atlantic Research, noted that the holding in Aviall that Sections 107 and 113 were distinct "impels us to conclude that it no longer makes sense to view section 113(f)(1) as the means by which the section 107(a) cost recovery remedy is effected by parties that would themselves be liable if sued under section 107(a). Each

---

8 Dico, Inc. v. Amoco Oil Co., 340 F.3d 525 (8th Cir. 2003), a pre-Aviall decision finding that a party liable under CERCLA was limited to a contribution action under Section 113.

of these sections, § 107(a) and § 113(f)(1), embodies a mechanism for cost recovery available to persons in different procedural circumstances." 423 F.3d at 99.

Consolidated Edison, like Atlantic Research, emphasized the "any person" language in section 107. It explained that "Section 107(a) makes its cost recovery remedy available, in quite simple language, to any person that has incurred necessary costs of response, and nowhere does the plain language of section 107(a) require that the party seeking necessary costs of response be innocent of wrongdoing." 423 F.3d at 100 (emphasis in original). The court also noted that the public policy underlying CERCLA required permitting liable parties to assert claims under CERCLA: "Moreover, we believe we would be impermissibly discouraging voluntary cleanup were we to read section 107(a) to preclude parties that, if sued, would be held liable under section 107(a) from recovering necessary response costs". Id. Rather, it found that a contrary result would create a "perverse disincentive" to remediation. Id.

Shortly after Atlantic Research, another court of appeals, in a 2-1 decision, disagreed with Consolidated Edison and Atlantic Research and concluded that "no implied cause of action for contribution for PRPs-under either § 107 or the common law-survived the passage of § 113". E.I. DuPont De Nemours & Co. v. United States, 460 F.3d 515, 529 (3d Cir. 2006). The majority opinion failed to address the "any person" language of Section 107. It failed adequately to consider the impact of Aviall on its prior decisions regarding the scope of relief available under Section 107. Unlike Consolidated Edison and Atlantic Research, the DuPont court concluded that it should not consider the impact of a significant Supreme Court decision on its precedent. 460 F.3d at 531-32. DuPont also failed adequately to recognize that the saving clause in Section 113 indicated the viability of an action for contribution for parties unable to meet the "civil action" requirement of Section 113. 460 F.3d at 532-33.

The DuPont majority placed undue reliance on ambiguous legislative history. While it recognized that the legislative history "contains no express statement that parties that cleanup their own sites voluntarily, without having settled their liability or having been sued, cannot seek contribution," 460 F.3d at 538, it nevertheless sought to impose such a requirement. In so doing, the majority failed to recognize that the purpose of CERCLA was ensuring the cleanup of contaminated sites, rather than ensuring that the cleanup be supervised through the mechanism of a civil action. Compare id., at 538-42 and id., at 549-50 (Sloviter, J, dissenting). The majority failed to consider that, in denying contribution to parties that cleaned sites under extensive governmental supervision that did not come within the meaning of "civil action,"[9] its holding would conflict with the purposes of CERCLA.

When the reasoning of the majority opinion in DuPont is compared with Consolidated Edison, Atlantic Research and the dissenting opinion (460 F.3d at 545-550 (Sloviter, J, dissenting)), DuPont is not persuasive. A district court that was not bound by Consolidated Edison, Atlantic Research or DuPont, considered the merits of the three appellate decisions and found that DuPont was not persuasive. Glidden Co. v. FV Steel & Wire Co., 2006 WL 2724049 (E.D. Wis. Sept. 21, 2006) *4 (finding Atlantic Research and Consolidated Edison more persuasive than DuPont and holding "that under Aviall, when PRPs may not bring contribution actions under §113(f)(1), they may do so under §107(a)" in view of the saving clause of Section 113 and the "any person" language of Section 107).

[9] This issue would be less of a concern in the event "civil action" is construed to include administrative proceedings of environmental agencies.

c. District Courts In Other Circuits Have Also Recognized The Necessity And Viability Of The Implied Contribution Claim

In analyzing the trial court decisions concerning a right to contribution under Section 107, the courts that viewed the issue as one of first impression and addressed it on the merits generally found that there is such a cause of action. As stated in Bangor, supra, 437 F.Supp. 2d at 222:

> most, if not all, of the decisions finding that Aviall has closed the section 107 sluiceway for responsible parties found themselves bound by pre-Aviall case law in their circuit declaring that responsible parties could only pursue contribution via section 113(f). Courts that were not limited by such precedent have generally found that responsible parties that do not meet the requirements of a claim under section 113(f) may seek relief via section 107. This Court fits within this latter camp and thus similarly finds that the City may pursue a claim under section 107.

See also Raytheon Aircraft Co. v. United States, 435 F.Supp. 2d 1136, 1146-47 (D. Kan. 2006) ("vast majority" of courts finding no right of action under Section 107 "expressly felt bound by the pre-[Aviall] precedent at their particular Circuits rejecting section 107 claims by PRPs and offered very little substantive analysis of the issue"); Viacom, Inc. v. United States, 404 F.Supp. 2d 3, 6 (D. D.C. 2005) ("Many of the district court rulings rejecting PRPs' § 107(a) cost recovery actions rest on pre-Aviall circuit court decisions that earlier rejected such suits").

Many of the district courts noted, in accordance with Atlantic Research and Consolidated Edison, that pre-Aviall decisions concerning the scope of relief under Section 107 were inapplicable in view of Aviall. In Viacom the court found "that in light of Aviall, a PRP that cannot sue for contribution for voluntary cleanup costs under §113(f) may still seek to recover its costs in a §107(a) proceeding". 404 F.Supp. 2d at 7. In so doing, it concluded

that "in light of the sea change currently in progress as a result of the Supreme Court's recent [Aviall] decision, this Court declines to follow the precedents that rejected a PRP's right to bring a § 107(a) action prior to Aviall" and, after an analysis of the issue, determined that "a plain reading of Section 107(a) shows that anyone-whether a PRP or not- may sue under it to recover its response costs …."

Similarly, in Vine Street LLC v. Keeling, 362 F.Supp. 2d 754, 762-63 (N.D. Tex. 2005), the court explained that pre-Aviall decisions were inapposite and that a right of contribution was appropriate, stating:

> the issue [in pre-Aviall cases] was whether a potentially responsible party with a claim under Section 113(f) could concurrently bring a claim under Section 107(a). Those courts ruled that because the potentially responsible party could bring a claim under Section 113(f), it could not bring a claim under Section 107(a). Those courts though did not rule that a potentially responsible party without a claim under Section 113(f) cannot bring a claim under Section 107(a)…

Similarly, in Raytheon Aircraft Co. v. United States, 435 F.Supp. 2d 1136, 1145-46 (D. Kan. 2006), the court found that prior decisions of the appellate court did not address the issue that was posed after Aviall. It explained that in each of those decisions

> the PRPs had viable claims under section 113(f) but nonetheless were attempting to pursue cost recovery or contribution claims under Section 107(a) as well … Significantly, then, the Circuit has not been faced with the issue of whether a PRP who cannot state a claim under section 113(f) may proceed with a claim for contribution under section 107(a).

It then turned to the merits and found that "a PRP who, like Raytheon is barred from seeking recovery under section 113(f) maintains an implied right to contribution under section 107(a)." 435 F.Supp. 2d at 1149. It based its decision on the "any person" language, the saving clause and the purpose of CERCLA.

In Metropolitan Water Reclamation District v. Lake River Corp., 365 F.Supp. 2d 913, 917 (N.D. Ill. 2005), the court noted that "[t]he Seventh Circuit has yet to allow a claim made by a PRP to go forward on the basis of an implied right to contribution under 107(a)". Nevertheless, it recognized that such a cause of action was available in view of Aviall foreclosing contribution under Section 113, as "there seems to be no reason why [PRPs] would be excluded from the provision that allows recovery for any person, unless that right was provided for elsewhere in the statute". 365 F.Supp. 2d at 918. It concluded that "[a]ny other outcome would seem to lie contrary to the general purposes of CERCLA." Id.

Courts that considered themselves bound by pre-Aviall decisions in their circuits recognized that following those decisions would create an inapposite and unjust result in view of Aviall. A trial court decision denying such a right noted that "the result reached in this Order is patently unfair to ARC, because it has voluntarily cleaned up environmental contamination, yet is left without a CERCLA remedy against the United States, another PRP. Perhaps, the Eighth Circuit will give attention to these consequences…." Atlantic Research Corp. v. United States, 2005 U.S. Dist Lexis 20484 (W.D. Ark. May 31, 2005) *10. The court of appeals did give attention to [the "patently unfair"] consequences by reversing the decision. Atlantic Research, 459 F.3d 827.[10] See also Mercury Mall Associates, Inc. v. Nick's Market Inc., 368 F.Supp. 2d 513, 520 (E.D. Va. 2005) (noting that it would be "quixotic" and to "leave[e] a PRP that has not been subject to a cost recovery action devoid of any remedy against other PRPs under CERCLA seems to undermine the twin purposes of the statute").

---

10 In view of the Eighth Circuit's decision in Atlantic Research, the portion of the decision in Blue Tee Corp v. Asarco, Inc., 2005 WL 1532955 (W.D. Mo. June 27, 2005), finding there was no implied right of contribution is no longer good law.

d. Contribution Is Not Limited To A Party That Incurred Costs Without Any Governmental Involvement

In certain decisions holding that a liable party has a right to contribution, the courts mentioned that the plaintiff voluntarily incurred remediation costs, without defining "voluntary". The logic of Atlantic Research, Consolidated Edison and similar cases discussed, supra, is that "voluntary" means as a result of any circumstance other than a "civil action" within the meaning of Section 113. This point was articulated in Raytheon, where the court noted that while decisions recognizing the implied right of contribution "dealt with PRPs who had voluntarily incurred response costs, the court discerns no pertinent distinction between those PRPs and one who, like Raytheon, incurs costs subject to a UAO." 435 F.Supp. 2d at 1149, n.10. It "conclude[d] that a PRP who cannot state a claim under section 113(f) nonetheless has an implied right to contribution under section 107(a)." Id., at 1149.

The overriding concern of those cases was that a party that paid more than its pro rata share should not be deprived of the opportunity to recoup the excess costs. E.g., Glidden, 2006 WL 2724049 at *4 ("under Aviall, when PRPs may not bring contribution actions under §113(f)(1), they may do so under §107(a)" in view of the saving clause of §113 and the "any person" language of Section 107); McDonald v. Sun Oil Co., 423 F.Supp. 2d 1114, 1133 (D. Or. 2006) ("When a plaintiff falls outside the technical requirements of § 113, the contribution claim is allowed under § 107"); Viacom, 404 F.Supp. 2d at 7 ("a PRP that cannot sue for contribution for voluntary cleanup costs under § 113(f) may still seek to recover its costs in a § 107(a) proceeding.")

Neither the language of Section 107 that makes recovery available to "any other person", the saving clause of section 113 that clarifies that contribution is available for persons who are not able to meet the statutory requirement of a "civil action," nor the purpose

of CERCLA is altered by whether the party seeking contribution incurred responses costs on its own initiative or due to some type of governmental impetus that fell short of a "civil action". In each situation, the party has some CERCLA liability and was entitled to contribution to ensure that its liability did not exceed its allocable share. Indeed, both Atlantic Research (459 F.3d at 835) and Consolidated Edison (423 F.3d at 100, n.9) noted that providing a remedy under Section 107 would not result in the plaintiff recovering more than it was entitled to recover in contribution, as the court could fashion the remedy to ensure that the PRP would recover only the amount by which its costs exceeded its allocated share.

These conclusions are not altered by the statement in Consolidated Edison that "we hold that section 107(a) permits a party that has not been sued or made to participate in an administrative proceeding, but that, if sued, would be held liable under section 107(a) to recover necessary responses costs incurred voluntarily, not under a court or administrative order or judgment". 423 F.3d at 100. As discussed, supra, the reasoning of Consolidated Edison indicated that all liable parties who are ineligible for relief under Section 113(f) have recourse to Section 107. The court tailored its holding narrowly so as to afford the implied right of contribution to the plaintiff without conflicting with a pre-Aviall decision, Bedford Affiliates v. Sills, 156 F.3d 416 (2d Cir. 1998), but left little doubt that, if necessary, it would overrule Bedford. 423 F.3d at 100-102 & n.12. See also Schaefer v. Town of Victor, 457 F.3d 188, 200-201 (2d Cir. 2006) (finding that "we need not revisit the holding of Bedford" as it deemed the remediation "voluntary" although the plaintiff "did enter into two consent orders"); Seneca Meadows, Inc. v. ECI Liquidating, Inc., 427 F.Supp. 2d 279, 290 (W.D.N.Y. 2006) (although bound by Consolidated Edison, finding that remediation conducted under consent orders was sufficiently "voluntary" as plaintiff "may not have acted entirely out of

altruistic motives, but neither had it been found liable, or even sued" when it entered into the orders).

e. Emhart Should Have An Opportunity To More Fully Articulate Its Claims

As demonstrated in the preceding sections, Emhart has rights of cost recovery or contribution under CERCLA. To the extent that the Court should find that, in view of the evolving law following Aviall, the allegations of the complaint do not clearly articulate the statutory bases of these claims, it should provide Emhart an opportunity to more fully articulate a claim that is permitted by the applicable statutes. See Raytheon, supra, 435 F.Supp. 2d at 1145 (granting leave to amend complaint to more fully articulate basis of entitlement to contribution under CERCLA). See also Ballou v. General Electric Co., 393 F.2d 398, 399 (1st Cir. 1968)(reversing dismissal without leave to replead).

II. The Pendent State Claims Should Not Be Dismissed

Counts III-VI of the complaint seeks recovery from NECC under Rhode Island statutes and the common law. The Court has supplemental jurisdiction of those claims pursuant to 28 U.S.C. § 1367. The only argument that NECC asserts for dismissal is the contention that the claims under federal law, asserted in Counts I and II, should be dismissed. As Emhart has demonstrated that its CERCLA claims should not be dismissed, there is no basis for dismissal of the pendent state law claims. Moreover, as NECC recognizes, even if the Court were to dismiss the CERCLA claims, it would have the authority to retain jurisdiction over the state law claims (NECC Mem. at 12-13).

III. The Counts Against The Insurers Should Not Be Dismissed Or Stayed

The final NECC argument is that this action should be dismissed or stayed in favor of the state court action to which Emhart is not a party. NECC bases its argument upon a

selective reading of Emhart's complaint and Wilton v. Seven Falls Co., 515 U.S. 277 (1995). The Wilton standard, that a court has considerable discretion as to whether to exercise jurisdiction in a claim for declaratory relief where there is a parallel proceeding in state court, does not apply here, as the complaint also contains claims for non-declaratory relief. Where, the action in federal court contains non-declaratory relief, notwithstanding the state court proceeding, the Court must exercise jurisdiction over the non-declaratory claims absent "exceptional circumstances." Colorado River Water Conservation District v. United States, 424 U.S. 800, 817 (1976).

The claims against the insurers include claims for injunctive relief. These are in addition to the declaratory judgment claims. Counts XI and XII expressly seek injunctive relief against both NECC and its insurers to prevent them from reducing by agreement the amount of coverage available under the policies issued to NECC (¶¶ 98-103 and 95-110). As stated above, Emhart's claims against NECC (Counts I-VI) also survive, including substantive non-declaratory judgment claims (Counts I-V).

Wilton concluded in the context of a declaratory judgment action only, that the standard for abstention and/or granting a stay was one of discretion. In so doing, the Court specifically relied upon "[d]istinct features of the Declaratory Judgment Act." 515 U.S. at 286. Wilton recognized that when claims did not involve declaratory relief, the court was bound to exercise its jurisdiction absent "exceptional circumstances" and did not address the issue presented here, where a case has declaratory and non-declaratory judgment claims.

Most recently, the Fourth Circuit addressed the issue of whether the Wilton standard or the Colorado River standard applied when the claim in federal court included counts for both declaratory relief and non-declaratory relief. Great American Insurance Co. v. Gross,

___ F.3d ____, 2006 WL 3059884 (4th Cir. Oct. 30, 2006) *9. There the court, citing the predecessor case to Wilton, Brillhart v. Excess Insurance Co., 316 U.S. 491 (1942), and its own prior decision in Chase Brexton Health Services, Inc. v. Maryland, 411 F.3d 457 (4th Cir. 2005), held that the Wilton "standard does not apply when a declaratory judgment claim is joined with a nondeclaratory claim, such as a claim for damages or injunctive relief." [Citation omitted]. Because a court is required to address nondeclaratory claims, per Colorado River, we observed that the benefit derived from exercising discretion not to grant declaratory relief is frustrated." Id. It also noted the views of other courts on this issue:

> Some courts have held that the Brillhart/Wilton discretionary standard is per se supplanted by the harsher Colorado River standard whenever an action includes both declaratory and non-frivolous nondeclaratory claims. See Kelly Inv., Inc. v. Continental Common Corp., 315 F.3d 494, 497 n. 4 (5th Cir. 2003); Village of Westfield v. Welch's, 170 F.3d 116, 124 n. 5 (2d Cir. 1999). Other courts hold that jurisdiction is mandatory (subject only to Colorado River constraints) if the nondeclaratory claims can exist independently of the declaratory claims, such that they could survive even if the declaratory claims vanished. See United Nat'l Ins. Co. v. R & D Latex Corp., 242 F.3d 1102, 1112-13 (9th Cir. 2001). Another view, embraced by some district courts, looks to the "heart of the action" to determine if the Colorado River or the Brillhart/Wilton standard should apply. See, e.g. ITT Indus., Inc. v. Pacific Employers Ins. Co., 427 F.Supp.2d 552, 555-56 (E.D. Pa. 2006). Under this standard, if the outcome of the nondeclaratory claims hinges on the outcome of the declaratory ones, the Brillhart/Wilton standard governs; conversely, if the opposite applies, the Colorado River standard controls. See Lexington Ins. Co. v. Rolison, 434 F.Supp.2d 1228, 1326 (S.D.Ala. 2006).

Id., at *9.

Here, as in Great American, the case presents a mixture of declaratory and non-declaratory claims and the discretion standard of Wilton does not apply. Rather, the standard of Colorado River applies, that this Court may refuse jurisdiction only in "exceptional circumstances." This Court, in Standard Fire Insurance Co. v. Gordon, 376 F.Supp.2d 218,

223 (D.R.I. 2005), recognized this distinction in a case where the claim was solely for a declaratory judgment.

The "exceptional circumstances" for this Court to decline jurisdiction under Colorado River are not present. This suit is not parallel with the state court action between NECC and its insurers. Emhart is not a party to that action. NECC and its insurers are the adverse parties in that action, not co-defendants as here. This Court is an appropriate and convenient forum for the prompt resolution of these disputes. Further, as alleged in Emhart's complaint, the pending state court proceeding does not protect the rights of Emhart adequately.

Even if the more lenient test of Wilton incorrectly were held to apply, dismissal or a stay remains inappropriate here. In Standard Fire, this Court listed at least five factors that could be pertinent to the determination, 376 F.Supp.2d at 225, n. 8, further noting that the first three are relevant to a determination as to whether the cases are parallel. Id. Here, the same parties are not involved in both cases. Emhart is not a party to the state court action and its claims will not be adjudicated in the state court action. This resembles Standard Fire, where the insurer was not a party in the state court action, and the motion to dismiss was denied. Id., at 226-27.

Here, as in Standard Fire, the resolution of this action and the underlying declaratory judgment action do not involve the same questions. This action involves the distinct questions of fact of claims by Emhart against NECC and the resulting rights of Emhart against the insurers of NECC under the policies issued by those insurers to NECC. Even with respect to the claims by Emhart against the insurers, Emhart seeks more than the mere determination of whether the insurance policies provide coverage that is at issue in the state court proceeding. Counts IX-XII seek relief to prevent conduct of NECC and the insurers that

could prevent the policies from being available to satisfy Emhart's claim against NECC. Those issues would not be reached in an action solely between NECC and its insurers. A similar lack of parallelism was a reason for denying dismissal in Standard Fire. 376 F.Supp. 2d at 229-30. Further, if the claims in Counts I and II are not dismissed, this action includes claims against NECC under CERCLA, issues of federal law. Otherwise, this action involves issues of Rhode Island state law similar to those considered by this Court in Standard Fire. Id., at 231. As this Court noted, "the judges of this District have routinely addressed the issues raised by Standard's declaratory judgment action, including an insurer's duty to defend and indemnify under Rhode Island law." Id.

Contrary to NECC's argument, there would be no judicial economy if this action were dismissed or stayed. Again, Emhart's claims will not be adjudicated in the action solely between NECC and its insurers. While coverage claims may be addressed in the state court action, it is in this action that the scope and limits of Emhart's claims against NECC and NECC's insurers can be determined with certainty. A determination of coverage would not be sufficient to address Emhart's claims against the insurers to ensure that the proceeds of the policies are available to satisfy the underlying Emhart claim against NECC. This Court is the appropriate forum for a determination of all issues.

CONCLUSION

For the foregoing reasons, the Motion to Dismiss Pursuant to Fed.R.Civ.P. 12(b)(6) And Motion To Stay filed by New England Container Company, Inc. should be denied.

Respectfully submitted,

Emhart Industries, Inc.
By its attorneys

/s/ Craig M. Scott
Craig M. Scott (#4237)
Duffy Sweeney & Scott, Ltd.
One Turks Head Place, Suite 1200
Providence, RI 02903
(401) 455-0700
(401) 455-0701 (facsimile)
cscott@duffysweeney.com

Of Counsel:
Jack R. Pirozzolo
Richard L. Binder
Foley Hoag LLP
155 Seaport Boulevard
Boston, Massachusetts 02210
(617) 832-1000
(617) 832-7000 (facsimile)
jpirozzolo@foleyhoag.com

**CERTIFICATE OF SERVICE**

Todd D. White, Esq.
Jaime Lepore, Esq.
Adler, Pollock & Sheehan, P.C.
One Citizens Plaza, 8th Floor
Providence, Rhode Island 02093-1345

R. Kelly Sheridan, Esq.
Jason C. Preciphs, Esq.
Roberts Carroll Feldstein & Peirce
10 Weybosset Street
Providence, RI 02903

James W. Ryan, Esq.
Partridge Snow & Hahn, LLP
180 South Main Street
Providence, RI 02903

I hereby certify that the within Memorandum of Law was filed through the ECF system on the 7th day of November, 2006, and will be sent electronically to the above-named counsel who are registered participants identified on the Notice of Electronic Filing.

/s/ Craig M. Scott