UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| EMHART INDUSTRIES, INC.,<br><br>Plaintiff,<br><br>v.<br><br>NEW ENGLAND CONTAINER COMPANY, INC., PROVIDENCE WASHINGTON INSURANCE COMPANY and TRAVELERS CASUALTY & SURETY COMPANY,<br>Defendants. | C.A. No. 06-218S |

MEMORANDUM OPINION AND ORDER

New England Container Company, Inc. ("NECC") brings this motion to dismiss Emhart Industries, Inc.'s claims for cost recovery and contribution under the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. § 9601 et seq. ("CERCLA") in connection with environmental contamination that occurred at the Centredale Manor Restoration Project Superfund Site ("Centredale Site" or "Site"). Dismissing Counts I and II would necessarily result in the dismissal of the pendent state-law claims (Counts III, IV, V, and VI) because the Court would no longer have jurisdiction. NECC suggests further that if Counts I and II are dismissed, Counts VII, VIII, IX, X, XI, and XII should either be dismissed or, in the alternative, stayed pending the outcome of concurrent litigation ongoing in the Rhode Island Superior Court. For the foregoing reasons, the Court will deny the motion to

dismiss Count I, but will grant the motion as to Count II. Because Count I remains, the motion to dismiss Counts III-VI will likewise be denied. Additionally, because Count I remains and the state court proceeding is not parallel, the motion to dismiss or stay Counts VII-XII will also be denied.

I.

The Court will briefly sketch the relevant facts, taking them in a light most favorable to the plaintiff. Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir. 1996). Both Emhart[1] and NECC[2] have been designated "potentially responsible parties"[3] ("PRPs") by the United States Environmental Protection Agency ("EPA") in connection with the Centredale Site, a Superfund site in North Providence, Rhode Island that was contaminated with various hazardous substances, including 2,3,7,8-Tetrachlorodibenzo-*p*-Dioxin, PCBs,

---

[1] Emhart is the successor to Metro-Atlantic, Inc., a chemical manufacturer which operated a manufacturing facility on a portion of the Site from 1940 to 1968.

[2] NECC operated a drum reconditioning facility on a portion of the Site from 1952 to 1971.

[3] Use of the term potentially responsible party in connection with CERCLA actions is the subject of some debate. Compare Consol. Edison Co. of N.Y., Inc. v. UGI Utils., Inc., 423 F.3d 90, 97 n.8 (2d Cir. 2005) ("eschew[ing]" the term because it "do[es] not appear anywhere in the text of [] CERCLA" and is "vague and imprecise because . . . *any* person is *conceivably* a responsible party under CERCLA"), with E.I. Dupont de Nemours & Co., Inc. v. United States, 460 F.3d 515, 519 n.2 (3d Cir. 2006) (embracing the term as one of "art used by courts and the [EPA] to refer to parties that potentially bear some liability for the contamination").

volatile organic compounds, semi-volatile organic compounds, and metals. See Unilateral Administrative Order for Removal Action, April 12, 2000 [hereinafter "AO I"] ¶ 4.

In September 1999 and February 2000, the EPA sent notices of potential liability to NECC and Emhart, respectively, identifying them as PRPs and requesting the payment of certain costs related to the cleanup of the Site. On March 6, 2000, the Site was placed on the National Priorities List. Beginning on April 12, 2000, the EPA issued the first of three Administrative Orders[4] to a number of parties, including NECC and Emhart, requiring the PRPs to undertake certain removal activities at the Site.[5]

Beginning in 2001, Emhart and NECC entered into a joint defense agreement, retained an environmental consultant to address the removal actions, and shared costs associated in complying with the Administrative Orders. However, in June 2004, NECC ceased all operations and sold all of its assets, and, to date, retains only cash assets which are managed to resolve its liabilities in connection with the Centredale Site.

---

[4] AO I was issued on April 12, 2000, a Second Administrative Order for Removal Action ("AO II") was issued on March 26, 2001, and a Third Administrative Order on Consent for Removal Action ("AO III") was issued on September 11, 2003.

[5] At this date, no Record of Decision has been filed and no final consent decrees or agreements have been reached.

In its Complaint, Emhart asserts that it has to-date fully complied with all of the requirements in the Administrative Orders and incurred substantial costs associated with compliance. Emhart anticipates that response costs for the remedy of the Centredale Site may run to $15,000,000.

Emhart now seeks to recover from NECC all or some portion of the costs that Emhart has incurred under the Administrative Orders.

II.

Count I of Emhart's Complaint seeks cost recovery from NECC pursuant to CERCLA § 107(a), 42 U.S.C. § 9607(a) while Count II seeks contribution from NECC pursuant to CERCLA § 113(f)(1), 42 U.S.C. § 9613(f)(1). To the first Count, NECC asserts that because Emhart is not an "innocent party," and consequently liable for Site cleanup, it is prohibited from pursuing cost recovery under § 107(a). To the second Count, NECC argues that the absence of any civil action in connection with the Centredale Site precludes Emhart from stating a claim for contribution under § 113(f)(1). In this posture, Emhart's claims, and NECC's motion to dismiss, present a version of the paradigmatic "post-Aviall" quandary. See, e.g., Atl. Research Corp. v. United States, 459 F.3d 827 (8th Cir. 2006), cert. granted, __ S. Ct. __, 2007 WL 124673 (Jan. 19, 2007); Metro. Water Reclamation Dist. of Greater Chicago v. N. Am. Galvanizing & Coatings, Inc., 473 F.3d 824, 830 (7th Cir. 2007);

Dupont, 460 F.3d at 518; Consol. Edison, 423 F.3d at 94; Carrier Corp. v. Piper, 460 F. Supp. 2d 827, 840 (W.D. Tenn. 2006).

In Cooper Indus., Inc. v. Aviall Servs., Inc., 543 U.S. 157 (2004), the Supreme Court addressed the scope and meaning of §§ 107(a) and 113(f)(1) for parties seeking contribution for recovery of cleanup costs. The party seeking reimbursement, Aviall, purchased an aircraft engine maintenance business from Cooper. After discovering that both it and Cooper had contaminated the site, Aviall informed the Texas Natural Resource Commission. The Commission (but not the EPA or any private party) directed Aviall to clean up the site. After voluntarily cleaning up the properties, Aviall sought cost recovery under § 107 and contribution under § 113 from Cooper. The Court held that contribution under § 113 was unavailable for Aviall because the claim was not brought "during or following any civil action" as contemplated under § 106 or § 107 of CERCLA. Id. at 167. Although Aviall also sought a ruling on whether it could, in the alternative, bring an action for cost recovery under § 107(a), the Court declined to decide the question. Id. at 168.

The effect of Aviall, then, has been to clearly foreclose contribution actions under § 113 where there has been no underlying civil action. But, because the Court refused to resolve whether §

107 is a viable avenue for recovery actions by PRPs,[6] see id. at 170, and further, because the Court refused to decide what exactly could constitute a "civil action," for purposes of § 113 contribution actions,[7] the decision has, not surprisingly, provoked a number of divergent lower court decisions. Compare Atl. Research, 459 F.3d at 834-836 (holding that § 107 continues to offer a distinct cause of action for direct recovery and, additionally, an implied right to contribution for PRPs), with DuPont, 460 F.3d at 543 (finding that § 107 does not contain an "implied" cause of action for contribution brought by PRPs); compare Carrier Corp., 460 F. Supp. 2d at 840 (concluding that an EPA Unilateral Administrative Order is a "civil action" within the meaning of § 106, thereby authorizing a suit for contribution under § 113), with Raytheon Aircraft Co. v. United States, 435 F. Supp. 2d 1136, 1142-43 (D. Kan. 2006) (holding that a § 106 administrative order does not qualify as a "civil action" and therefore does not authorize suit under § 113(f)(1)), and Pharmacia Corp. v. Clayton Chem. Acquisition LLC, 382 F. Supp. 2d 1079, 1086-

---

[6] The question whether § 107(a) provides a cause of action at all was definitively answered in Key Tronic Corp. v. United States. 511 U.S. 809, 818 (1994) ("§ 107(a) unquestionably provides a cause of action for private parties to seek recovery of cleanup costs").

[7] The Court specifically stated that "[n]either has Aviall been subject to an administrative order under § 106; thus, we need not decide whether such an order would qualify as a 'civil action under section 9606 . . . or under section 9607(a)' of CERCLA." Aviall, 543 U.S. at 168 n.5.

87 (S.D. Ill. 2005) (same). To complicate matters slightly, the Supreme Court recently granted certiorari in Atl. Research, presumably to decide whether a party who is ineligible to sue for contribution under § 113(f) may bring an action under § 107(a). See __ S. Ct. __, 2007 WL 124673 (Jan. 19, 2007).

Despite the unsettled waters created by Aviall and its recent progeny, it nevertheless remains for this court to decide whether Emhart, as a PRP subject to an EPA administrative order, may (1) pursue a claim for contribution under § 113(f) and (2) pursue an action for recovery (or contribution) under § 107(a) against another PRP.

With respect to the first question, this court concludes that because the balance of decisional authority suggests that the type of administrative order to which Emhart is subject is not a "civil action" within the meaning of § 113(f)(1), Emhart is precluded from bringing a claim for contribution under § 113(f)(1).[8] See Raytheon Aircraft, 435 F. Supp. 2d at 1142 (holding that a "section 106 administrative order" would not qualify as a "civil action" under § 113(f)(1)); Pharmacia, 382 F. Supp. 2d at 1086-87 (concluding

---

[8] § 113(f)(1) states that:

> Any person may seek contribution from any other person who is liable or potentially liable under section 9607(a) of this title, during or following any civil action under section 9606 of this title or under section 9607(a) of this title.

that EPA issued administrative orders do not qualify as civil actions under § 113(f)(1)); Blue Tee Corp. v. ASARCO, Inc., 2005 WL 1532955 at *3-4 (W.D. Mo. June 27, 2005) (same); but see Carrier Corp., 460 F. Supp. 2d at 841 (concluding that a unilateral administrative order "is similar to a judgment issued pursuant to a court proceeding" and that therefore it should qualify as a civil action for purposes of § 113(f)(1)). As noted earlier, the Supreme Court has expressly reserved judgment on this question, Aviall, 543 U.S. at 168 n.5, and because there is no evidence to support the contention that the plain meaning of "civil action" includes EPA-issued administrative orders, this court will follow the majority of courts in concluding that 113(f)(1) is unavailable for parties who are merely subject to administrative orders, as opposed to final consent decrees, judgments, or apportionments of liability. Count II will accordingly be dismissed.

As to the second question, although Emhart has advanced a claim for cost recovery, it really seeks an implied right of contribution, under § 107, from NECC. As some circuits -including the First Circuit - have held, cost of recovery actions are reserved only for "innocent" parties. See United Techs. Corp. v. Browning-Ferris Indus., Inc., 33 F.3d 96, 100 (1st Cir. 1994) (concluding that Congress intended only "innocent parties - not parties who [are] themselves liable," to pursue cost recovery actions); Young v. United States, 394 F.3d 858, 862-63 (10th Cir.

2005). Even those circuits that have relaxed this requirement have done so only for parties who have voluntarily initiated cleanup - without having been subject to any kind of EPA administrative order. See Metro. Water 473 F.3d at 836 (allowing a PRP to sue under § 107(a) where that PRP neither settled any liability with the government, nor had been subject to a CERCLA suit, and had also not been the subject of an EPA administrative order under § 106); Consol. Edison, 423 F.3d at 99 (allowing the suing party to bring a claim under § 107(a) for incurring response costs, in part because "those costs were not imposed on Con Ed as the result of an administrative or court order or judgment"); Atl. Research, 459 F.3d at 829 (noting that the suing party "voluntarily investigated and cleaned up the contamination, incurring costs in the process," but was never subject to an EPA administrative order).

Thus the question is whether Emhart may permissibly seek an implied right of contribution under § 107. While the conclusion is not free from doubt, this Court believes that it can. A right of contribution, as opposed to a cost recovery action, is a "claim 'by and between jointly and severally liable parties for an appropriate division of the payment one of them has been compelled to make.'" United Techs., 33 F.3d at 99 (quoting Akzo Coatings, Inc. v. Aigner Corp., 30 F.3d 761, 764 (7th Cir. 1994)). As an initial matter, although NECC cites United Techs. for the proposition that only "a PRP who spontaneously initiates a cleanup without governmental

prodding" may be entitled to pursue an implied action for contribution, the First Circuit has never in fact held this explicitly. Id. at 99 n.8. In United Techs., the First Circuit merely suggested that this might be the case, citing Key Tronic, but refused to take a position on the matter. Id. There is, therefore, no clear controlling precedent as to whether, if an implied right to contribution exists, a PRP in Emhart's position may take advantage of it.

Authority in other circuits, although not directly on point, is conflicting. Compare Atl. Research, 459 F.3d at 834-836 (holding that such an implied right exists, at minimum, for innocent parties), with Metro. Water, 473 F.3d at 836 (declining to revisit or overrule Akzo Coatings' holding that a PRP who is subject to an EPA administrative order requiring it to conduct certain removal activities must bring its suit for contribution (against another PRP) under § 113(f)(1)); see also Consol. Edison, 423 F.3d at 100-102 (refusing to revisit its holding in Bedford Affiliates that § 107(a) was unavailable because there the plaintiff "had entered into two consent orders . . . pursuant to which the plaintiff began cleanup and remedial action").[9]

---

[9] In Akzo Coatings, a party that had been subject to an EPA administrative order under § 106 sought a cost recovery action under § 107(a). The Seventh Circuit held that because the party was liable for some part of the cleanup and its claim was actually that "the costs it [had] incurred should be apportioned equitably amongst itself and the others responsible," the claim was

However, whatever vitality cases like Akzo Coatings may still possess in light of Aviall, they do not address the situation in which Emhart finds itself: a PRP subject to an administrative order that is neither a consent decree, a final adjudication, or an apportionment of liability, but who is not entitled to pursue an action for contribution under § 113(f)(1).[10] See Raytheon Aircraft, 435 F. Supp. 2d at 1141-42. In such a situation, where 113(f)(1) is foreclosed, this court concludes that § 107(a) provides a cause of action for a PRP to seek contribution from another PRP. See Aviall, 543 U.S. at 172 ("§ 107 . . . enable[s] a PRP to sue [another PRP] for reimbursement, in whole or part, of cleanup costs the PRP legitimately incurred." (Ginsburg, J., dissenting); Raytheon Aircraft, 435 F. Supp. 2d at 1149 ("[A] PRP who is precluded from seeking relief under section 113(f) maintains an implied right to contribution under section 107(a)."); City of Bangor v. Citizens Commc'ns Co., 437 F. Supp. 2d 180, 223 (D. Me. 2006). The implied right of contribution under § 107 provides an

---

"quintessentially" one for contribution under § 113(f)(1). Akzo Coatings, 30 F.3d at 764 ("Whatever label Akzo may wish to use, its claim remains one by and between jointly and severally liable parties for an appropriate division of the payment one of them has been compelled to make. Akzo's suit accordingly is governed by section 113(f).").

[10] In both Akzo Coatings, 30 F.3d at 765, and Bedford Affiliates v. Sills, 156 F.3d 416, 427 (2d Cir. 1998), there was no reason to assume that either of the PRPs would have been precluded from pursuing a contribution action under § 113(f).

avenue for recoupment of legitimate cleanup costs where other avenues, either cost recovery under § 107 or contribution under § 113(f), are foreclosed. See Atl. Research, 459 F.3d at 836-37. To hold otherwise here because Emhart is either a PRP or may not have "voluntarily" initiated cleanup would be to effectively eviscerate § 113(f)'s savings clause[11] and would countenance an inequitable result: Emhart would be precluded from seeking any reimbursement for its cleanup costs. The post-Aviall cases reaffirming the existence of an implied right of contribution under § 107 stand broadly for the proposition that the right exists where § 113 is unavailable; this is the case here, and the court is unwilling to limit this right unless and until there is more explicit guidance to the contrary. Emhart is entitled to recoup the portion of costs exceeding its equitable share of the total costs; and because it is unable to do so under § 113(f), it may proceed under § 107. See Raytheon Aircraft, 435 F. Supp. 2d at 1145. Consequently, NECC's motion to dismiss Count I will be denied.

Accordingly, because Count I will go forward, NECC's motion to dismiss Counts III-VI will be denied. NECC's motion to dismiss or

---

[11] This clause states:

> Nothing in this subsection shall diminish the right of any person to bring an action for contribution in the absence of a civil action under section 9606 of this title or section 9607 of this title.

§ 113(f)(1).

stay Counts VII-XII will also be denied inasmuch as Emhart seeks more than just declaratory relief and the concurrent state proceeding is not parallel. See Great Am. Ins. Co. v. Gross, 468 F.3d 199, 210-11 (4th Cir. 2006).

It is so ordered.

WESmith

William E. Smith
United States District Judge
Date: 3/20/07