**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| **EMHART INDUSTRIES, INC.,**<br>**Plaintiff,**<br>**v.**<br>**NEW ENGLAND CONTAINER COMPANY, INC., PROVIDENCE WASHINGTON INSURANCE COMPANY and TRAVELERS CASUALTY & SURETY COMPANY**<br>**Defendants.** | **CIVIL ACTION NO. 06-218** |

**ANSWER, AFFIMRATIVE DEFENSES, AND COUNTERCLAIM OF NEW ENGLAND CONTAINER COMPANY, INC.**

The Defendant New England Container Company, Inc. ("NECC"), by and through it attorneys Partridge Snow & Hahn LLP, answers the Complaint as follows:

1. Upon information and belief, admits the allegations contained in Paragraph 1 of the Complaint.

2. NECC admits that it is organized under the laws of the State of Rhode Island, with its principal place of business in Richboro, Pennsylvania. NECC denies knowledge or information sufficient to respond to what Plaintiff refers to as "pertinent times."

3. Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 3 of the Complaint.

4. Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 4 of the Complaint.

5. Admits allegations contained in Paragraph 5 of the Complaint.

6. Admits the allegations contained in Paragraph 6 of the Complaint.

7. Admits the allegations contained in Paragraph 7 of the Complaint.

8. Admits the allegations contained in Paragraph 8 of the Complaint.

9. Admits the allegations contained in Paragraph 9 of the Complaint.

10. Admits the allegations contained in Paragraph 10 of the Complaint.

11. Admits the allegations contained in Paragraph 11 of the Complaint.

12. Admits the allegations contained in Paragraph 12 of the Complaint.

13. Upon information and belief, admits the allegations contained in Paragraph 13.

14. Admits the allegations contained in Paragraph 14.

15. Admits the allegation set forth in Paragraph 15.

16. Admits the allegation set forth in Paragraph 16.

17. Admits the allegation set forth in Paragraph 17.

18. Admits that Emhart participated in implementing actions required under the Orders, but, except as admitted, denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 18.

19. Admits that Emhart incurred costs, but denies knowledge or information sufficient to form a belief as to what Emhart considers "substantial."

20. Upon information and belief, admits the allegations contained in Paragraph 20.

21. Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 21 of the Complaint.

22. Upon information and belief, admits the allegations contained in Paragraph 22.

23. Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 23 of the Complaint.

24. Admits that defendant notified Travelers and Providence Washington concerning proceedings in connection with the Site, but otherwise denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 24 of the Complaint.

25. NECC admits that it operated a drum reconditioning facility on a portion of the Site from approximately 1952 to 1971, whereby it accepted from various industries and companies, including Emhart's predecessor Metro-Atlantic, drums that may have contained a small amount of residue for reconditioning and resale, but, except as otherwise admitted, denies sufficient knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 25 of the Complaint.

26. Upon information and belief, NECC admits that Metro-Atlantic provided drums for reconditioning that contained trichlorophenol or products in which trichlorophenol was an ingredient, but except as otherwise admitted, denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 26.

27. Admits that some, but not all drums, were incinerated when reconditioned at the Site but, except as otherwise admitted, denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 27.

28. Denies the allegations contained in Paragraph 28.

29. Denies the allegations contained in Paragraph 29.

30. Upon information and belief, admits the allegations contained in Paragraph 30.

**Count 1**
**Cost Recovery under CERCLA**

31. Repeats its responses to Paragraphs 1-30 above as if set forth in full herein.

32. Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 32 of the Complaint.

33. Denies the allegations contained in Paragraph 33.

34. Denies the allegations contained in Paragraph 34.

35. Denies the allegations contained in Paragraph 35.

36. Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 36.

37. Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 37.

38. Denies the allegation set forth in Paragraph 38 of the Complaint.

**Count 2**
**Contribution under CERCLA**

NECC declines to respond to Paragraphs 39-45 as Count 2 was dismissed by Order of the Court dated March 20, 2007.

**Count 3**
**Industrial Property Remediation and Reuse Act**

46. Repeats its responses to Paragraphs 1-45 above as if set forth in full herein.

47. Denies the allegations contained in Paragraph 47.

48. Denies the allegations contained in Paragraph 48.

49. Denies the allegations contained in Paragraph 49.

50. Denies the allegations contained in Paragraph 50.

51. Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 51.

52. Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 52.

53. Denies the allegations contained in Paragraph 53.

54. Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 54.

55. Denies the allegation set forth in Paragraph 55 of the Complaint.

**Count 4**
**Hazardous Waste Management Act**

56. Repeats its responses to Paragraphs 1-55 above as if set forth in full herein.

57. Denies the allegations contained in Paragraph 57.

58. Denies the allegations contained in Paragraph 58.

59. Denies the allegations contained in Paragraph 59.

60. Denies the allegations contained in Paragraph 60.

61. Denies the allegations contained in Paragraph 61.

62. Denies the allegations contained in Paragraph 62.

**Count 5**
**Equitable Indemnity**

63. Repeats its responses to Paragraphs 1-62 above as if set forth in full herein.

64. Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 64.

65. Upon information and belief, admits the allegations contained in Paragraph 65.

66. Admits the allegations contained in Paragraph 66.

67. Denies the allegations contained in Paragraph 67.

68. Denies the allegations contained in Paragraph 68.

**Count 6**
**Declaratory Judgment**

69. Repeats its responses to Paragraphs 1-68 above as if set forth in full herein.

70. Denies the allegations contained in Paragraph 70.

71. Denies the allegations contained in Paragraph 71.

**Count 7**
**Declaratory Judgment as to Emhart's Rights under Travelers Policies**

NECC declines to respond to the allegations contained in this Count 7, Paragraphs 72-98, as the allegations set forth in this Count are directed against Travelers, not NECC.

**Count 8**
**Declaratory Judgment as to Emhart's Rights under Providence Washington Policies**

NECC declines to respond to the allegations contained in this Count 8, Paragraphs 79-85, as the allegations set forth in this Count are directed against Providence Washington, not NECC.

**Count 9**
**Declaration as to Indemnification Benefits under the Travelers Policies**

NECC declines to respond to the allegations contained in this Count 9, Paragraphs 86-91, as the allegations set forth in this Count are directed against Travelers, not NECC.

**Count 10**
**Declaration as to Indemnification Benefits under the Providence Washington Policies**

NECC declines to respond to the allegations contained in this Count 10, Paragraphs 92-96, as the allegations set forth in this Count are directed against Providence Washington, not NECC.

**Count 11**
**Injunctive Relief – Preserving Indemnification Limits of Travelers Policies**

97. Repeats its responses to Paragraphs 1-96 above as if set forth in full herein.

98. Denies the allegations contained in Paragraph 98.

99. Denies the allegations contained in Paragraph 99.

100. Denies the allegations contained in Paragraph 100.

101. Denies the allegations contained in Paragraph 101.

102. Denies the allegations contained in Paragraph 102.

103. Denies the allegations contained in Paragraph 103.

## Count 12
## Injunctive Relief – Preserving Indemnification Limits of Providence Washington Policies

104. Repeats its responses to Paragraphs 1-103 above as if set forth in full herein.

105. Denies the allegations contained in Paragraph 105.

106. Denies the allegations contained in Paragraph 106.

107. Denies the allegations contained in Paragraph 107.

108. Denies the allegations contained in Paragraph 108.

109. Denies the allegations contained in Paragraph 109.

110. Denies the allegations contained in Paragraph 110.

## FIRST AFFIRMATIVE DEFENSE

Plaintiff has failed to mitigate the injuries or damages it has alleged, and is therefore precluded from recovery under Counts 1, 3, and 4.

## SECOND AFFIRMATIVE DEFENSE

Defendant has breached no duty owed to plaintiff.

## THIRD AFFIRMATIVE DEFENSE

Plaintiff's claims are barred by the equitable doctrines of laches, estoppel, and waiver.

## FOURTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred by the applicable statutes of limitations.

**FIFTH AFFIRMATIVE DEFENSE**

Plaintiff's claims under all Counts are barred by estoppel as the claims asserted all arise from Emhart's own actions as the successor to Metro-Atlantic, which asserted actual and constructive control over NECC through its officers and directors during all times relevant to this action.

**SIXTH AFFIRMATIVE DEFENSE**

Plaintiff has failed to state a claim upon which relief may be granted.

**SEVENTH AFFIRMATIVE DEFENSE**

No actions by defendant are responsible for the injuries and damages alleged.

**EIGHTH AFFIRMATIVE DEFENSE**

Any liability for damages in this matter must be apportioned among the parties at fault. Defendant's potential liability, if any, can only be determined after the percentages of fault of all parties to the incident are determined, whether or not they are parties to this litigation; therefore, defendant requests adjudication of the percentage of fault of each and every person whose fault contributed to the incident or resulting damages, including but not limited to all of the generators identified as potentially responsible parties at this Site.

**NINTH AFFIRMATIVE DEFENSE**

The alleged incidents and damages of which plaintiff complains were caused solely by the separate, independent, and/or negligent acts and/or omissions of plaintiff and third parties over whom defendant exerted no influence or control.

**TENTH AFFIRMATIVE DEFENSE**

Recovery by plaintiff would violate the rights of defendant to due process and equal protection as guaranteed by both the United States and Rhode Island Constitutions.

**ELEVENTH AFFIRMATIVE DEFENSE**

Plaintiff's claim under Count 4 should be dismissed because the Hazardous Waste Management Act, R.I. Gen. § 23-19.1 *et seq.*, does not create a private right of action.

**TWELFTH AFFIRMATIVE DEFENSE**

Holding defendant liable under plaintiff's claims would be inequitable, contrary to public policy, and fundamentally unfair.

**THIRTEENTH AFFIRMATIVE DEFENSE**

Upon information and belief, plaintiff's claims under all Counts are barred by Estoppel as the claims asserted contradict what has already been legally established as true under a prior action, Emhart, Inc. v. Home Insurance Co., C.A. 02-053 ML, that Emhart is responsible for the contamination at the Site.

WHEREFORE, NECC respectfully requests that (a) Emhart's Complaint be dismissed with prejudice; (b) that NECC be awarded its costs in this action; and (c) that this Court issue such other relief as is appropriate.

**COUNTERCLAIM**

**The Parties**

1. Upon information and belief, Emhart is a Connecticut corporation having its principal place of business in Towson, Maryland.

2. NECC is a Rhode Island Corporation having its principal place of business in Richboro, Pennsylvania.

**Jurisdiction and Venue**

3. This Court has subject matter jurisdiction of the claims asserted in Counts 1 and 5 pursuant to 42 U.S.C. § 9613(b) in those counts involve controversies arising under the

Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA") and pursuant to 28 U.S.C. § 1331 because these claims arise under the laws of the United States.

4. This Court has supplemental jurisdiction of the claims alleged in the remaining counts pursuant to 28 U.S.C. § 1367 in that these claims are related to the claims within this Court's original jurisdiction such that they form a part of the same case or controversy under Article III of the Constitution of the United States.

5. This Court has subject matter of the claims for declaratory relief pursuant to 28 U.S.C. § 2201 and/or 42 U.S.C. § 9613(g)(2).

6. Venue lies in this Court pursuant to 28 U.S.C. § 1391(b) and 42 U.S.C. § 9613(b) because a substantial part of the events or omissions giving rise to the claims occurred within this District and the releases or threatened releases of hazardous substances occurred in this District.

**Facts**

7. Emhart is the successor company to Metro-Atlantic Chemical Company ("Metro-Atlantic"), previously doing business as Atlantic Chemical Company.

8. Owners and officers of Metro-Atlantic filed articles of incorporation for New England Container Company, Inc. in 1953.

9. In 1967, Metro-Atlantic sold 100% of its shares in New England Container Company, Inc. to Bernard Buonanno, Sr., the general manager of Metro-Atlantic from 1945 to 1968.

10. During Metro-Atlantic's operations at the Site, it sent its used drums to NECC for cleaning and reconditioning.

11. Metro-Atlantic manufactured various chemicals on a portion of the Site from 1940 to 1968, including but not limited to pesticides and herbicides.

12. Most of the drums NECC cleaned and reconditioned at the Site came from Metro-Atlantic's operations.

13. During the 1960s, Metro-Atlantic manufactured hexachlorophene and its intermediate trichlorophenol. Dioxin is a by-product created through the production of trichlorophenol. Other products associated with the manufacture of hexachlorophene and trichlorophenol that Metro-Atlantic regularly used include sulfuric acid, caustic soda, alcohols, solvents, tetrachlorobenzene, and formaldehyde.

14. Metro-Atlantic released dioxin and other hazardous substances to the environment during its manufacture of hexachlorophene and other chemical products.

15. Metro-Atlantic sent to NECC for reconditioning drums containing hexachlorophene, trichlorophenol, dioxin, and other hazardous substances.

16. On September 19, 1999, EPA issued to NECC a Notice of Potential Liability with respect to the Site, in which EPA demanded that NECC remediate the Site and reimburse EPA for response costs it has incurred at the Site.

17. In the Notice of Potential Liability, EPA identified hazardous substances released at the Site to include 2,3,7,8 – Tetrachlorodibenzo-p-Dioxin and hexachlorophene, as well as pesticides, volatile organic compounds, and semi-volatile organic compounds.

18. EPA ordered NECC to perform removal actions at the Site through a Unilateral Administrative Order dated April 12, 2000, a Unilateral Administrative Order dated March 26, 2001, and an Administrative Consent Order dated September 11, 2003.

19. NECC complied with each of these orders and incurred significant costs in doing so.

20. EPA has spent at least $15 million in response costs at the Site to date, and it will seek from NECC additional monies to cover costs of implementing a final remedy for the Site.

**Count 1: Cost Recovery under Section 107 of CERCLA**

21. NECC repeats the allegations contained in Paragraphs 1 through 20 of this Counterclaim as if set forth in full herein.

22. The Site is a "facility" within the meaning of 42 U.S.C. § 9601(9).

23. Emhart is an "owner or operator" within the meaning of 42 U.S.C. § 9601(20)(A).

24. During the time when Emhart owned and/or operated the Site, there occurred a "release" of "hazardous substances" into the "environment" within the meaning of 42 U.S.C. § § 9601(22), (14), and (8) at the Site as a result of Emhart's activities.

25. Emhart's release of hazardous substances at the Site have caused NECC to incur "response" costs within the meaning of 42 U.S.C. § 9601(25), such costs being consistent with the National Contingency Plan.

26. NECC believes that it will incur additional response costs related to Emhart's release of hazardous substances at the Site.

27. Emhart's predecessor is solely responsible for releases of hazardous substances at the Site.

28. NECC is entitled to recover its response costs pursuant to Section 107(a) of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9607(a).

**Count 2: Industrial Property Remediation and Reuse Act**

29. NECC incorporates and realleges the allegations contained in Paragraphs 1 through 28 of this Counterclaim.

30. Emhart is a "person" within the meaning of R.I. Gen. Laws § 23-19.14-3(h).

31. Emhart is an "operator" of the Site within the meaning of R.I. Gen. Laws § 23-19.14-3(f).

32. The Site is a "site" within the meaning of R.I. Gen. Laws § 23-19.14-3(n).

33. Emhart caused the "release" of "hazardous materials", "hazardous substances", and/or "hazardous wastes" at the Site within the meaning of R.I. Gen. Laws §§ 23-19.14-3(j), (c), (d), and (e).

34. Emhart is a "responsible party" within the meaning of R.I. Gen. Laws § 23-19.14-3(m).

35. NECC has incurred costs for "remedial or response actions" at the Site, necessary to prevent substantial danger to present or future public health, welfare, and the environment within the meaning of R.I. Gen. Laws §§ 23-19.14-3(k), 23-19.14-6.

36. NECC is informed and believes, and therefore avers, that Emhart is a responsible party liable to NECC for necessary costs, and all indirect costs, NECC has incurred for remedial or response action at the Site pursuant to R.I. Gen. Law § 23-19.14-6.

**Count 3: Equitable Indemnity**

37. NECC repeats and realleges the allegations in Paragraphs 1 through 37 of this Counterclaim as if set forth in full herein.

38. A release of hazardous substances occurred at the Site sometime prior to 1971.

39. NECC was under the actual and/or constructive control of Emhart's predecessor Metro-Atlantic during all times relevant hereto, specifically, all times prior to 1971, because Metro-Atlantic and NECC were owned and/or operated by the same shareholders, officers, and directors, and specifically, Bernard Buonanno, Sr.

40. Bernard Buonanno, Sr. purchased 100% of the shares of NECC from Metro-Atlantic in 1953.

41. Bernard Buonanno, Sr. was General Manager of Metro-Atlantic from 1945 to 1968 and President and Director of NECC from 1948 until 1978.

42. At all times relevant hereto, specifically all times prior to 1971, Metro-Atlantic sent it drums used for containing and storing hazardous substances from its operations on the Site to the NECC drum reconditioning facility on the Site for cleaning and reconditioning in a manner overseen by its General Manager, Bernard Buonanno, Sr.

43. Both NECC and Emhart have incurred response costs as responsible parties under CERCLA and are likely to incur additional costs to reimburse EPA for past response costs and to perform a final remedy at the Site.

44. As between Emhart and NECC, Emhart should reimburse NECC and indemnify it from all further costs as it is solely responsible for the actions of its predecessor, Metro-Atlantic, who had actual and/or constructive control of NECC.

45. Given the above, NECC is entitled to reimbursement from and indemnification by Emhart.

**Count 4: Declaratory Judgment**

46. NECC repeats and realleges the allegations in Paragraphs 1 through 46 of this Counterclaim as if set forth in full herein.

47. There is a controversy with respect to the nature and extent of the obligation of Emhart to pay for anticipated future response costs and EPA's past response costs at the Site.

48. NECC is entitled to a declaration that Emhart is liable to NECC for the costs that NECC will incur with respect to the Site.

**Count 5: Injunctive Relief**

50. NECC repeats and realleges the allegations in Paragraphs 1 through 49 of this Counterclaim as if set forth in full herein.

51. NECC is pursuing recovery of insurance proceeds from several insurance policies with Travelers and Providence Washington in an insurance recovery action currently pending in Rhode Island State Court.

52. Emhart has no legal or equitable claim against any of NECC's insurance policies.

53. NECC should be afforded the opportunity to litigate against its insurance carriers in State Court, and Emhart should be permanently enjoined from interfering with or litigating to receive any potential recovery due to NECC under those policies.

WHEREFORE, NECC prays that this Court:

A. Award NECC the damages to which it is entitled as a result of the conduct of Emhart including, but not limited to, response costs, costs of remedial or removal actions, costs of containment, cleanup, restoration, and removal of hazardous substances, costs for restoration of damages to natural resources, whether incurred in the past or the future, and all attorneys' fees, direct costs, and indirect costs NECC has incurred to date, with interest, in connection with this litigation, the Centredale Manor Superfund Site, and all future costs associated with the same;

B. Enter a declaratory judgment that Emhart is liable to NECC for all past and future costs including, but not limited to, all response costs, costs for remediation or removal actions, costs of containment, cleanup, restoration, and removal of hazardous substances, and all attorneys' fees, direct costs, and indirect costs NECC has incurred to date with interest, in

connection with this litigation, the Centredale Manor Superfund Site, and all future costs associated with the same;

C. Enter a permanent injunction enjoining Emhart from seeking to prevent NECC from settling from its insurers and asserts it own claims against those policies;

D. Enter a declaratory judgment finding Emhart solely liable for the release of hazardous substances at the Site;

E. All other relief as the Court deems just and proper.

DEFENDANT,

NEW ENGLAND CONTAINER COMPANY, INC.,

By Its Attorneys

PARTRIDGE SNOW & HAHN LLP

/s/ James W. Ryan
James W. Ryan (#4042)
180 South Main Street
Providence, RI 02903
(401) 861-8200
(401) 861-8210 FAX
jwr@psh.com

Of Counsel:
John F.X. Peloso, Jr., Esq.
Kirstin M. Etela, Esq.
Robinson & Cole LLP
695 East Main Street
Stamford, CT 06904

DATED: September 17, 2007

**CERTIFICATE OF SERVICE**

I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on September 17, 2007.

/s/ James W. Ryan