**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| EMHART INDUSTRIES, INC.,<br><br>Plaintiff,<br><br>v.<br><br>NEW ENGLAND CONTAINER COMPANY, INC., PROVIDENCE WASHINGTON INSURANCE COMPANY, and TRAVELERS CASUALTY & SURETY COMPANY,<br><br>Defendants. | ) | Civil Action No. 06-218-S |

**PLAINTIFF EMHART INDUSTRIES, INC.'S STATEMENT**
**PURSUANT TO THE COURT'S OCTOBER 22, 2007 ORDER (DKT. #62)**

Pursuant to the Court's Order dated October 22, 2007, Dkt. #62, Plaintiff Emhart Industries, Inc. ("Emhart"), hereby submits this statement.

## I. FACTUAL BACKGROUND

### A. Environmental Contamination and Cleanup Measures at the Centredale Site

This is an action by Emhart against New England Container Company, Inc. ("NECC") and two of NECC's insurers — Providence Washington Insurance Company, Inc. and Travelers Casualty & Surety Company — arising out of environmental contamination at the Centredale Manor Restoration Project Superfund Site (the "Centredale Site" or the "Site"). The U.S. Environmental Protection Agency ("EPA") has claimed that a release of hazardous substances has occurred at or from the Centredale Site. Hazardous substances reported at the Site include volatile organic compounds ("VOCs"), 2,3,7,8-tetrachlorodibenzo-*p*-dioxin ("dioxin"), polychlorinated biphenyls ("PCBs"), metals, and pesticides.

The Centredale Site consists of two parcels located at 2072 and 2074 Smith Street in the Village of Centredale in North Providence, Rhode Island, and downstream areas that allegedly have been affected by activities on the two parcels. The area of the parcels totals 9.7 acres. Currently there are two high-rise apartment buildings known as Brook Village and Centredale Manor on the parcels. On the eastern portion of the Site there is a drainage swale or "tail race" that ultimately empties into a wooded wetland to the south. The Woonasquatucket River flows along the western portion of the Site.

On September 15, 1999 and February 28, 2000, EPA issued to NECC and Emhart, respectively, Notices of Potential Liability with respect to the Site. The notice to Emhart alleged that Emhart is liable for site cleanup costs as the successor to Metro-Atlantic, Inc., a former operator at the Site. The notice to NECC also alleged that NECC is liable for site cleanup costs as a former operator of the Site.

On April 12, 2000, March 26, 2001, and September 11, 2003, EPA issued Administrative Orders to NECC, Emhart, and others, ordering them to undertake certain interim cleanup measures with respect to environmental conditions at the Site. To date, Emhart has fully complied with these Orders, in the course of which Emhart has incurred response costs. Additional orders requiring performance of response actions at the Site are pending or expected, compliance with which will cause Emhart to incur substantial additional response costs.[1] In addition, EPA has indicated that it will seek to recover response costs that it has incurred and will incur in the future. Presently, EPA has incurred response costs totaling approximately $17.5 million in investigating and otherwise responding to site conditions.

---

[1] In September 2007, Emhart entered into an Administrative Settlement Agreement and Order with EPA in which it agreed to perform certain tasks to assist EPA's Feasibility Study evaluation of remedial alternatives related to contaminated sediment in Allendale and Lyman Mill Ponds. The work under this Order is ongoing.

In June 2005, EPA issued an Interim-Final Remedial Investigation Report, characterizing the nature and extent of contamination at the Site and the alleged source(s) thereof. EPA also issued Baseline Human Health and Ecological Risk Assessment Reports, describing the human health and ecological risks potentially resulting from exposure to site-related contaminants. EPA has not yet determined the final remedy for the Site. EPA is expected to issue its Record of Decision, setting forth its final remedy, in late 2008. The costs associated with implementing the selected remedy for the Site may exceed $100 million.

**B. Historical Operations at the Site**

In the 1940s, Atlantic Chemical Company ("Atlantic Chemical") began operations on a portion of the Site. In 1953, Atlantic Chemical changed its name to Metro-Atlantic, Inc. ("Metro-Atlantic"). Later, through a series of transactions, Emhart succeeded to the assets and liabilities of Metro-Atlantic.

1. Metro-Atlantic manufactured hexachlorophene on the Site for one year.

Atlantic Chemical, and later Metro-Atlantic, operated a chemical manufacturing plant on a portion of the Smith Street section of the Site. Starting in 1964, and lasting for a period of less than one year, Metro-Atlantic engaged in the manufacture of hexachlorophene. EPA has alleged that Metro-Atlantic's manufacture of hexachlorophene is, at least in part, responsible for the dioxin contamination at the Site, which allegation Emhart has disputed.[2]

2. NECC burned barrels on the Site for about twenty years.

From approximately 1952 until approximately 1971, NECC operated a drum reconditioning facility on a portion of the Smith Street section of the Centredale Site. In the

---

[2] Emhart's investigations indicate that during the short period of hexachlorophene manufacturing at the Site, Metro-Atlantic's manufacturing process could not have released dioxin into the environment. Accordingly, Metro-Atlantic is not responsible for the dioxin contamination that has been found at the Site. Emhart continues to investigate any responsibility Metro-Atlantic may have for other alleged contaminants.

course of those operations, NECC received drums from various sources, and reconditioned the drums. Among other things, NECC incinerated the chemical residue in the drums, and then sold the reconditioned drums. The drums sent to NECC for reconditioning contained various hazardous substances. NECC's drum handling and reconditioning process resulted in the disposal of hazardous substances at the Site. In or about 1971, NECC relocated to Smithfield, Rhode Island.

3. <u>NECC is now insolvent.</u>

In 2001, Emhart, NECC, and others entered into a joint defense agreement, retained an environmental consultant to conduct the removal actions ordered by EPA, and shared costs associated with implementing the required measures pursuant to the three Orders issued by EPA.

On June 4, 2004, NECC ceased operations and sold all of its operating assets. Currently, NECC retains only cash assets that are managed to resolve NECC's liabilities, including its liability associated with the Centredale Site. On August 19, 2005, NECC's parent company and sole shareholder, Russell-Stanley Holdings, Inc. ("RSH"), filed a voluntary petition with the United States District Court for the District of Delaware for reorganization under Chapter 11 of the United States Bankruptcy Code. In February 2006, at the behest of the administrator of RSH's reorganization plan, NECC discontinued its participation in sharing costs with Emhart with respect to the Site.

Emhart looks to NECC and its insurers to indemnify Emhart and to discharge any liability that may arise as a consequence of the EPA proceedings.

**B. NECC has Insurance Policies with the Defendant-Insurers that Apply to Emhart's claims against NECC**

Defendant Travelers Casualty & Surety Company ("Travelers"), formerly Aetna Casualty & Surety Company, and Defendant Providence Washington Insurance Company ("PWIC" and,

collectively with Travelers, the "Insurers") issued insurance policies to NECC that are applicable to the Emhart claim against NECC. In the absence of the indemnification benefits of the Travelers and PWIC policies, NECC will likely be unable (1) to satisfy any judgment for money damages that Emhart may recover against NECC in this case, and (2) to pay for the remedial action to address the environmental contamination that NECC caused at the Centredale Site. Emhart is informed and believes that NECC has notified Travelers and PWIC of the EPA actions. Additionally, Emhart believes that NECC has attempted to settle and will attempt to settle claims under its insurance policies with the Insurers to impair the coverage.

## II. EMHART'S COMPLAINT

In Counts I through VI of the Complaint, Emhart seeks relief against NECC, including declaratory relief, under: (1) the "cost recovery" and "contribution" provisions of the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), §§ 107(a) and 113(f)(1), 42 U.S.C. §§ 9607(a) and 9613(f)(1); (2) Rhode Island statutory law; and (3) Rhode Island common law.

Counts VII through XII of the Complaint seek declaratory and injunctive relief against NECC's insurers, PWIC, and Travelers. These claims are grounded in Emhart's contentions that (1) the subject PWIC and Travelers policies provide coverage for the Emhart claim against NECC, (2) the proceeds of the policies will be required to satisfy a judgment against NECC in favor of Emhart in this action, and (3) there is a risk that NECC, PWIC, and Travelers will act, other than in the ordinary course of business for full and adequate consideration, to reduce the benefits available under the policies so that a judgment in this case could not be satisfied.

On March 20, 2007, the Court issued a Memorandum Opinion and Order (Dkt. #48) dismissing Count II of the Complaint, which is Emhart's claim against NECC for "contribution" under CERCLA § 113(f)(1). The Court held that Emhart was precluded from bringing such a

claim because "the balance of decisional authority suggests that the type of administrative order to which Emhart is subject is not a 'civil action' within the meaning of § 113(f)(1)." Mem. & Order, at 7 (Dkt. #48). Accordingly, while this memorandum does not address Count II, because of the uncertainty concerning the law and facts for this claim, Emhart reserves its right to seek reconsideration of the Court's decision and its appellate rights in relation to Count II.

On August 15, 2007, the Court issued an Order (Dkt. #55) severing and staying Emhart's claims against PWIC and Travelers pending resolution of the underlying action between Emhart and NECC. Accordingly, this memorandum does not address Emhart's claims against the Insurers. Emhart, however, has filed a motion to reopen the case against the Insurers and seek discovery regarding the existence of insurance policies and extent of relevant coverage. Because delay in discovery may result in loss of information due to the passage of time, the motion seeks preservation of evidence. Moreover, PWIC's recent request for mediation (in its letter to the Court dated November 6, 2007) demonstrates the relevance of this discovery on the existence of relevant policies and coverage. The parties cannot have an effective mediation until all potentially applicable policies and coverage have been identified to Emhart.

## III. <u>ELEMENTS OF CLAIMS</u>

### A. Count I — Cost Recovery Under CERCLA § 107

Count I of Emhart's Complaint asserts a claim under CERCLA § 107(a), which provides a cause of action to recover response costs incurred in the cleanup of contaminated sites from other responsible parties. *United States v. Atl. Research Corp.*, 127 S. Ct. 2331, 2333 (2007). CERCLA § 107 authorizes private parties who take action in response to a release or threatened release of hazardous substances at a contaminated site to seek reimbursement of the costs of response from certain classes of persons. *See id.* at 2338. Under CERCLA, the classes of persons who may be liable are (1) the current owner and operator of the site, (2) the owner and

operator of the site at the time hazardous substances were disposed thereon, (3) any person who, by contract, agreement, or otherwise, arranged for disposal or treatment of hazardous substances, or arranged with a transporter for transport for disposal or treatment of hazardous substances, at a site from which there is a release or threatened release of hazardous substances, and (4) a transporter who selected the site for disposal or treatment of hazardous substances. CERCLA § 107(a), 42 U.S.C. § 9607(a); *see also Acushnet Co. v. Mohasco Corp.*, 191 F.3d 69, 74 (1st Cir. 1999).

CERCLA authorizes the imposition of strict, joint, and several liability. *See In re Hemingway Transp., Inc.*, 993 F.2d 915, 921 (1st Cir. 1993). Under these principles, a single party may be held liable for all response costs at a particular site, regardless of that party's fault or the number of other parties liable or potentially liable for response action at the site. *See United States v. Davis*, 261 F.3d 1, 29 (1st Cir. 2001).

The elements of liability for Emhart's CERCLA § 107 claim are (1) NECC falls within one of the four classes of responsible persons; (2) a "release or threatened release" of hazardous substances occurred at the "facility"; (3) the release or threatened release caused Emhart to incur response costs; and (4) Emhart's response costs were "necessary" and "consistent with the national contingency plan." CERCLA § 107(a), 42 U.S.C. § 9607(a); *see also Davis*, 261 F.3d at 29. NECC is liable to Emhart pursuant to CERCLA § 107(a)(2) as the owner or operator of the Site at the time hazardous substances were disposed thereon.

**B. Count II — Contribution Under CERCLA § 113**

On March 20, 2007, the Court dismissed this claim. Mem. & Order at 7 (Dkt. #48). Because of the uncertain state of the law and facts concerning this claim, Emhart reserves its rights in relation to this claim.

### C. Count III — Industrial Property Remediation and Reuse Act ("IPRRA")

Rhode Island's IPRRA establishes the liability of responsible parties for costs associated with removal and remediation of hazardous material. R.I. Gen. Laws § 23-19.14-6. Responsible parties, as defined by the statute, are strictly, jointly, and severally liable for, among other things, "any other necessary costs of removal or remedial action incurred by any other person." *Id.*

To establish its claim under IPRRA, Emhart would need to show: (1) NECC falls within one of the four classes of responsible parties; (2) a "release or threatened release" of hazardous material occurred at the Site; and (3) Emhart incurred necessary costs of removal or remedial action. *See id.* NECC is liable pursuant to R.I. Gen. Laws § 23-19.14-6(a)(2) as the owner or operator of the Site at the time hazardous material was disposed thereon.

### D. Count IV — Hazardous Waste Management Act ("HWMA")

Rhode Island's HWMA, in relevant part, imposes liability on responsible parties for unauthorized transportation, storage, or disposal of hazardous waste. R.I. Gen. Laws § 23-19.1-22(a). Responsible parties are absolutely liable for all costs and damages resulting directly or indirectly from the discharge of hazardous waste.[3] *Id.*

---

[3] In *Stoutenburgh v. Dierauf*, No. 90-194-Appeal (R.I. Dec. 13, 1990), the Rhode Island Supreme Court issued an unpublished, non-precedential order, without opinion, stating that, as a matter of law, no private right of action exists under HWMA. *See id., quoted in toto in Charter Int'l Oil Co. v. United States*, 925 F. Supp. 104, 113 (D.R.I. 1996). This Court, however, has twice addressed the question of whether a private cause of action exists under HWMA. In *Charter*, the Court noted that the Rhode Island Supreme Court considered the question only "very briefly" in *Stoutenburgh* and that its precedential effect was unclear. 925 F. Supp. at 113; *see* R.I. S. Ct. R. App. P. 16(j) ("Unpublished order shall have no precedential effect."). Despite the Court's own lengthy analysis supporting a private cause of action, the Court certified the question. *Id.* at 112-16. The case settled, however, before the Rhode Island Supreme Court ruled. Subsequently, in *Gail v. New England Gas Co.*, 460 F. Supp. 2d 314 (D.R.I. 2006), after both parties declined the Court's invitation to certify the question, the *Gail* Court, without regard to the *Charter* Court's analysis, relied upon the unpublished *Stoutenburgh* order as well as a Rhode Island Superior Court decision and found that no private cause of action exists under HWMA. *Gail*, 460 F. Supp. 2d at 327 & n.5 (citing *Stoutenburgh* and *Hotel Assocs., LLC v. HMS Assocs. Ltd. P'ship*, 2004 WL 422812 (R.I. Super. Dec 20, 2004)). Because the law is unsettled, Emhart seeks to reserve its rights at this time by advancing this claim.

In light of the statute's strict liability scheme, Emhart need only show: (1) NECC transported, stored, or disposed of hazardous waste in an unauthorized manner or caused unauthorized transportation, storage, or disposal; and (2) the unauthorized transportation, storage or disposal directly or indirectly caused Emhart to incur costs or damages. *See id.* The Court may award treble damages if NECC's violation of the statute is found to be willful and knowing. R.I. Gen. Laws § 23-19.1-22(d).

**E. Count V — Equitable Indemnity**

Under Rhode Island law, the doctrine of equitable indemnity permits a party to recover when it has been exposed to liability solely through the wrongdoing of another. *McCrory v. Spigel*, 740 A.2d 1274, 1276 (R.I. 1999). There are three elements to recovery: (1) Emhart is liable to a third party; (2) NECC is also liable to the same third party; and (3) as between Emhart and NECC, NECC ought to discharge the obligation. *Id.* at 1277. NECC has admitted that it "is "liable to [EPA] as a potentially responsible party" in relation to the Site. *See* Statement of New England Container Company, Inc., at 3 (Dkt. #64).

**F. Count VI — Declaratory Judgment**

Pursuant to 28 U.S.C. § 2201, 42 U.S.C. § 9613(g)(2), and R.I. Gen. Laws § 9-30-1, Emhart may seek entry of a judgment declaring that NECC is liable for all future response costs that may be incurred by Emhart at the Site. CERCLA § 113(g)(2) provides that "[i]n any [initial action for recovery of costs referred to in Section 9607 of this title], the court shall enter a declaratory judgment on liability for response costs or damages that will be binding on any subsequent action or actions to recover further response costs or damages." 42 U.S.C. § 9613(g)(2).

**G. Emhart has Moved to Reopen the Case against the Insurers to Seek Discovery**

Counts VII through XII are three identical counts against each insurance company. Counts VII through X request declarations that PWIC and Travelers (1) must pay Emhart the amount of damages for which NECC is found liable, up to the limits of NECC's insurance policies, and (2) have obligations to preserve the indemnification benefits under the policies to satisfy Emhart's claims against NECC. Counts XI and XII request injunctive relief preventing PWIC and Travelers from entering into any agreement with NECC that would reduce the benefits under the insurance policies.

On August 15, 2007, the Court severed and stayed Emhart's claims against the Insurers pending resolution of the underlying action between Emhart and NECC. Aug. 15, 2007 Order (Dkt. #55). As explained above, Emhart has moved to lift the stay as against the Insurers to seek discovery in order to preserve evidence on the existence of insurance policies and extent of relevant coverage. Moreover, as discussed above, in order to have the best chance at mediation, Emhart should have knowledge of all potentially applicable policies and coverage.

Respectfully submitted,

EMHART INDUSTRIES, INC.

By its attorneys,

/s/ Rachelle R. Green
Craig M. Scott (#4237)
Rachelle R. Green (#5870)
DUFFY SWEENEY & SCOTT, LTD.
One Turks Head Place, Suite 1200
Providence, RI 02903
Tel: (401) 455-0700
Fax: (401) 455-0701

Jack R. Pirozzolo (*pro hac vice*)
Philip C. Swain (*pro hac vice*)
FOLEY HOAG LLP
155 Seaport Boulevard
Boston, MA 02210
Tel: (617) 832-1000
Fax: (617) 832-7000

Dated: November 15, 2007

**CERTIFICATE OF SERVICE**

I, Rachelle R. Green, hereby certify that a true copy of the foregoing was filed through the ECF system on the 15th day of November, 2007 and will be sent electronically to the registered participants identified on the Notice of Electronic Filing:

James W. Ryan, Esq.
Partridge Snow & Hahn, LLP
180 South Main Street
Providence, RI 02903

R. Kelly Sheridan, Esq.
Jason C. Preciphs, Esq.
Roberts Carroll Feldstein & Peirce
10 Weybosset Street
Providence, RI 02903

Todd D. White, Esq.
Jamie LaPorte, Esq.
Adler Pollock & Sheehan PC
One Citizens Plaza, 8th Floor
Providence, RI 02903-1345

Eric B. Hermanson, Esq.
John A. Nadas, Esq.
Julie C. Rising, Esq.
Choate, Hall & Stewart, LLP
Two International Place
Boston, MA 02110

John F.X. Peloso, Jr., Esq.
Kirsten M. Etela, Esq.
Robinson & Cole
695 East Main Street
Stamford, CT 06901-2141

Jack R. Pirozzolo, Esq.
Philip C. Swain, Esq.
Foley Hoag LLP
155 Seaport Boulevard
Boston, MA 02210

/s/ Rachelle R. Green
Rachelle R. Green

H:\Clients\Emhart Industries, Inc\New England Container Corp. (NECC) (06-218) USDC\Pleadings\Scheduling Conference Statement.DOC