**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| EMHART INDUSTRIES, INC., Plaintiff, | Civil Action No. CA 06-218-S |
| v. | Jury Trial Demanded |
| NEW ENGLAND CONTAINER COMPANY, INC., PROVIDENCE WASHINGTON INSURANCE COMPANY and TRAVELERS CASUALTY & SURETY COMPANY, Defendants. | |

**PLAINTIFF EMHART INDUSTRIES, INC.'S FIRST SET OF INTERROGATORIES TO DEFENDANT TRAVELERS CASUALTY & SURETY COMPANY**

Pursuant to Federal Rules of Civil Procedure ("FRCP") Rule 33, plaintiff Emhart Industries, Inc. ("Emhart") requests that defendant Travelers Casualty & Surety Company, formerly known as Aetna Casualty and Surety Company ("Travelers"), answer the Interrogatories set forth below pursuant to the requirements of FRCP Rule 33 and serve a copy of the written answers to these Interrogatories to Emhart's counsel. These Interrogatories are deemed to be continuing, requiring supplemental answers thereto to the extent required by FRCP Rule 26(e).

## DEFINITIONS

For the purposes of these Interrogatories, the meaning of all terms shall be in accordance with their ordinary and accepted English language and usage and in addition:

1. "NECC" shall include New England Container Company and any subsidiary corporations, parent corporations, corporate predecessors, divisions or other persons or entities that are a named insured in any insurance policy issued by Travelers to NECC, from October 2, 1969 to November 15, 1982 inclusive.

2. "Emhart" shall include Emhart Industries, Inc. and Metro-Atlantic, Inc. ("Metro-Atlantic") and all of its subsidiary corporations, parent corporations, corporate predecessors, divisions or other related entities.

3. Unless otherwise indicated, the terms "you," "your," and "Travelers" mean the defendant Travelers and any and all of its subsidiary corporations, parent corporations, corporate predecessors, divisions or other related entities and their directors, officers, employees, advisors, consultants, attorneys, agents, representatives, and persons acting on their behalf.

4. "Insurance policy (or policies)" and "policy (or policies) of insurance" mean all policies of insurance, whether designated as a general liability policy, comprehensive general liability policy, products liability policy, contractual liability policy, workers' compensation policy, property liability policy, property damage policy, motor vehicle liability policy, or any other type of insurance policy, however denominated, whether primary, excess, umbrella, or catastrophe insurance, or any type of reinsurance policy or agreement.

5. "Subject Policies" refers to all insurance policies issued by Travelers to NECC, including but not limited to the following policies:

| Policy Number | Policy Period |
|---|---|
| 43PC29861CC | 10/02/69-10/02/70 |
| Unavailable | 11/15/70-11/15/71 |
| 43AL140755CCA | 11/15/71-11/15/72 |
| 43AL143048CCA | 11/15/72-11/15/73 |
| 43AL264195CCA | 11/15/73-11/15/74 |
| 43AL266935CCA | 11/15/74-11/15/75 |
| 43AL269294CMA | 11/15/75-11/15/76 |
| 43AL271243 | 11/15/76-11/15/77 |
| 43AL273795CCA | 11/15/77-11/15/78 |
| 43GL00001061 | 11/15/78-11/15/79 |
| 43GL9983CCA | 11/15/79-11/15/80 |

| | |
|---|---|
| 43GL1061CCA | 11/15/79-11/15/80 |
| 43XS3583 | 11/15/79-11/15/80 |
| 94C206921CCA | 11/15/80-11/15/81 |
| Unavailable | 11/15/80-11/15/81 |
| 43GL332007CCA | 11/15/81-11/15/82 |
| Unavailable | 11/15/81-11/15/82 |

6. "Site" shall mean the Centredale Manor Superfund Site in North Providence, Rhode Island consisting of two parcels of land, 2072 and 2074 Smith Street, and portions of the Woonasquatucket River and its floodplain that are adjacent to the two parcels on Smith Street, including but not limited to two ponds, Allendale Pond and Lyman Mill Pond.

7. "Underlying Claims" shall mean all administrative or legal proceedings commenced against Emhart, NECC and/or any potentially responsible party and arising out of the alleged contamination of the Site, including without limitation proceedings arising from: (i) the September 15, 1999 Environmental Protection Agency ("EPA") Notice of Potential Liability ("NPL") issued to NECC relating to the Site, (ii) the February 28, 2000 NPL issued to Emhart relating to the Site, (iii) the March 6, 2000 placement of the Site on the National Priorities List, (iv) the April 12, 2000 EPA-issued Unilateral Administrative Order for Removal Action to NECC, Emhart and other respondents, (v) the March 26, 2001 EPA-issued Second Administrative Order for Removal Action to NECC, Emhart and other respondents, (vi) the September 11, 2003 EPA-issued Third Administrative Order on Consent for Removal Action to NECC, Emhart and other respondents, and (vii) the June 30, 2005 EPA-issued Interim Final Remedial Investigation report concerning the Site.

8. The terms "waste," "substance," or "substances" mean: (a) anything which was released in or about the Site at issue, and (1) as to which any person has made claim against Travelers for remediation, costs, property damage or personal injury; or (2) as to which you believe you may be the subject of a claim for remediation costs, property damage or personal injury in the future; and (b) anything with respect to which Travelers may be a potentially responsible party.

9. "PCBs" mean polychlorobiphenyls and/or compounds that may lead to their formation.

10. "TCDD" means 2,3,7,8-tetrachlorodibenzo-*p*-dioxin ("2,3,7,8-TCDD") and/or compounds that may lead to its formation, including without limitation 2,4,5-trichlorophenol ("2,4,5-TCP"), which forms 2,3,7,8-TCDD upon combustion.

11. "OCDD" means octachlorodibenzo-*p*-dioxin ("OCDD") and/or compounds that may lead to its formation, including without limitation pentachlorophenol, which forms OCDD upon combustion.

12. "Person" or "persons" means and includes natural persons, firms, corporations, professional corporations, partnerships, joint ventures, proprietorships, associations, and any other forms of organizations or legal entities or groups of persons.

13. "Document" or "documents" mean(s) and include(s), without limitation, the original and any duplicate or copy (whether or not different from the original because of notes made on or attached to such copy or otherwise), of any written, printed, recorded or graphic matter, photographic matter, video tapes, sound reproductions however produced or reproduced, notes, telephone messages, letters, telegrams, cable messages, telex messages, records, lists, memoranda, bulletins, e-mails, facsimiles, specifications, instructions, advertisement, pamphlets, literature, work assignments, calendars, diaries, agendas, minutes, transcripts, reports, studies, surveys, valuations, appraisals, memoranda of conversations or interviews, notebooks, drafts, data sheets, charts, work sheets, working papers, contracts, memoranda of agreements, assignments, licenses, orders, ledgers, journals, calculations, invoices, statements, bills, checks, catalogs, books, and all other written/documentary material (including microfilm, tapes, and data processing records, data processing cards, and computer disks) of whatever kind known to you.

14. "Communication" shall mean any written, oral or other transmission of fact, information, ideas or opinion, including, but not limited to, any utterance, notation, question, command, interjection, expression, gesture, suggestive conduct or statement of any nature whatsoever, any conversation (whether by telephone or otherwise), and any meeting, and also including, but not limited to, correspondence, financial records, corporate records, reports and documents as defined herein.

15. "Identify" and "identity," when used in reference to a natural person, mean to state the person's full name and present or last-known residence and employment address, and his or her present or last-known title or position and business affiliation. "Identify" and "identity," when used in reference to an entity other than a natural person, such as a corporation, mean to state its proper name or designation, and the address of its principal office. "Identify" and "identity," when used in reference to documents, mean to state the type of document, general subject matter, date of the document, and the author(s), addressee(s), and recipient(s).

16. "Concerning," "regarding," "pertaining," "relating," "related," or "which relates to" any given subject or person means any communication or document that constitutes, contains, embodies, concerns, regards, involves, relates to, reflects, identifies, states, refers to, deals with, is authored, transmitted, communicated or originated by, is transmitted or communicated to or received by, or is in any way pertinent to that subject or person, including, without limitation, documents concerning the preparation of other documents.

17. "Related to" or "relating to" means containing, embodying, evidencing, reflecting, identifying, stating, referring to, contradicting, rebutting, inconsistent with, dealing with, bearing upon, or in any way pertaining to, directly or indirectly.

18. "Investigation" means any fact-finding effort related to any claims, activity, business, or the actual or potential risk-exposure of any person or property, including but not limited to any survey, inspection, research, or analysis of any kind whatsoever.

19. "Date" and "when" mean the exact day, month, and year, if ascertainable, or, if not, the best approximation thereof.

20. "And" and "or" shall be construed conjunctively and disjunctively, as necessary, to make the interrogatory inclusive rather than exclusive.

21. The singular includes the plural and vice versa; the masculine includes the feminine and vice versa; and verb tenses include the past, present, and future.

22. "Each" and "any" mean "each and every," as well as "any one."

## INSTRUCTION

If you decline to answer any of the following interrogatories because of a claim of privilege, state in each such instance the privilege claimed, the legal and factual basis for the claim, and the identity of each person to whom the contents of the communication have been disclosed, either orally or in writing.

## INTERROGATORIES

1. Please identify yourself, state upon what authority you are answering these Interrogatories, and on whose behalf you are responding. If you are responding to these Interrogatories on behalf of fewer than all of the entities who issued and/or subscribed to the Subject Policies, identify those entities for whom you are not responding and state your understanding as to why you have not been authorized to respond on their behalf.

2. Please describe every insurance relationship from October 2, 1969 to November 15, 1982 between NECC and Travelers, including without limitation policy numbers, policy periods, and coverage limits. This Interrogatory does not seek the information already included in the definition of Subject Policies above, but rather seeks supplemental information regarding (i) any additional policies not listed in the above definition, (ii) information identified as "unavailable" in the above definition, and (iii) coverage limits for all policies. To the extent that any additional policies are identified in response to this Interrogatory, the term "Subject Policies" shall be defined herein to include such newly-identified policies.

3. Please describe every insurance relationship from October 2, 1969 to November 15, 1982 between NECC and any insurer other than Travelers of which Travelers is aware, including without limitation policy numbers, policy periods, and coverage limits.

4. As to each of the Subject Policies: (a) identify the persons who were the active underwriters at the time of placement of coverage, i.e., the persons who initialed the broker's slips; and (b) identify all persons, if any, who assisted the active underwriters in placing that coverage or had any responsibility for any part of the process of placing that coverage.

5. Identify all demands or claims for coverage made by NECC under each Subject Policy issued by Travelers to NECC with respect to the Underlying Claims, including the dates on which you first received notice of NECC's demands or claims for coverage, and identify the person(s) who have acted on your behalf with respect to

NECC's demands or claims for coverage for the Underlying Claims, as well as all persons, if any, who assisted such persons in the investigation, management, evaluation, or processing of NECC's demands or claims for coverage for the Underlying Claims.

6. Identify all persons, including all legal advisors, who have been consulted by or on behalf of Travelers between 1969 and the present concerning NECC, the Subject Policies, the Underlying Claims, or NECC's demands or claims for coverage under the Subject Policies.

7. State whether you have taken any action or reached any decision related to the establishment of reserves in regard to any potential liability you may incur to any person as a result of NECC's demands or claims for coverage under any of the Subject Policies, and if so describe each such action or decision, including the amount of any reserves established or proposed, the identity of all persons who took each such action or who made or were responsible for each such decision, and the identity of all documents which evidence, refer to, reflect or otherwise concern the matters addressed in this Interrogatory.

8. Describe in detail every Investigation conducted and all information sought or obtained by or for Travelers with respect to each decision Travelers made regarding whether or not to issue any of the Subject Policies, and identify all persons who gathered information for, or provided information to, Travelers concerning NECC as part of those Investigations.

9. Identify all documents and communications, including without limitation policy applications, that provided information to Travelers concerning NECC as part of

any Investigation of NECC for purposes of deciding whether to or not to issue any of the Subject Policies.

10. State and describe in full and complete detail the actions you took and the communications you made as a result of receiving notice of NECC's demands or claims for coverage of the Underlying Claims, including without limitation the Investigation conducted or the procedures followed by you to determine whether to defend and/or indemnify NECC.

11. Identify all persons who have ever visited the Site on your behalf and state separately (i) for each such person: (a) when the person visited the Site, (b) who the person met with or spoke to while at the Site, (c) the purpose of the visit and any actions you took as a result of the visit, and (d) any observations made during the visit, and (ii) the identity of all documents that evidence, relate to, refer to or otherwise concern any matter covered by this Interrogatory.

12. Identify all present and former personnel of yours who, by virtue of their responsibilities while employed by you, have knowledge with respect to your Investigation of NECC's demands or claims for coverage of the Underlying Claims and, with respect to each such person identified, please state the basis of such person's knowledge.

13. Describe in detail the manner in which Travelers organizes, maintains, preserves, and destroys expired Insurance policies.

14. Set forth in detail all facts and circumstances, and identify all documents, that you rely upon in asserting the affirmative defenses pled in your Answer.

15. Please identify each person whom you expect to call as an expert witness at trial and state the subject matter on which each expert is expected to testify, the substance of the facts and opinions to which each expert is expected to testify, and a summary of the grounds for each such opinion.

EMHART INDUSTRIES, INC.

By its attorneys,

Craig M. Scott (by PGS)

Craig M. Scott, Esq. (#4237)
Duffy Sweeney & Scott, Ltd.
One Turks Head Place, Suite 1200
Providence, RI 02903
Tel: (401) 455-0700
Fax: (401) 455-0701

OF COUNSEL:
Jack R. Pirozollo, Esq.
Philip C. Swain, Esq.
Foley Hoag LLP
155 Seaport Boulevard
Boston, MA 02210
Tel: (617) 832-1000
Fax: (617) 832-7000

Dated: July 24, 2007

**CERTIFICATE OF SERVICE**

I, Rachelle R. Green, hereby certify that a true copy of the foregoing PLAINTIFF EMHART INDUSTRIES, INC.'S FIRST SET OF INTERROGATORIES TO DEFENDANT TRAVELERS CASUALTY & SURETY COMPANY was served by hand on counsel (unless indicated otherwise) on July 24, 2007.

Rachelle R. Green

**(Via Hand Delivery)**
James W. Ryan, Esq.
Partridge Snow & Hahn, LLP
180 South Main Street
Providence, RI 02903
Counsel for New England Container Corporation

**(Via Federal Express)**
John F.X. Peloso, Jr., Esq.
Kirsten M. Etela
Robinson & Cole
695 East Main Street
Stamford, CT 06901-2141
Pro Hac Counsel for New England Container Corporation

**(Via Hand Delivery)**
R. Kelly Sheridan, Esq.
Jason C. Preciphs, Esq.
Roberts Carroll Feldstein & Peirce
10 Weybosset Street
Providence, RI 02903
Counsel for Travelers Casualty & Surety Company

**(Via Federal Express)**
Eric B. Hermanson, Esq.
JohnA. Nadas
Julie C. Rising
Choate, Hall & Stewart, LLP
Two International Place
Boston, MA 02110
Pro Hac Counsel for Travelers Casualty & Surety Company

**(Via Hand Delivery)**
Todd D. White, Esq.
Jamie LaPorte, Esq.
Adler Pollock & Sheehan PC
One Citizens Plaza, 8th Floor
Providence, RI 02903-1345
Counsel for Providence Washington Insurance Company

**(Via Federal Express)**
Jack R. Pirozzolo, Esq.
Richard L. Binder, Esq.
Philip C. Swain
Foley Hoag LLP
155 Seaport Boulevard
Boston, MA 02210