UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| EMHART INDUSTRIES, INC.,<br><br>Plaintiff,<br><br>v.<br><br>NEW ENGLAND CONTAINER COMPANY, INC., PROVIDENCE WASHINGTON INSURANCE COMPANY and TRAVELERS CASUALTY & SURETY COMPANY,<br><br>Defendants. | Civil Action No. CA 06-218-S<br><br>Jury Trial Demanded |

**PLAINTIFF EMHART INDUSTRIES, INC.'S FIRST REQUEST FOR PRODUCTION TO DEFENDANT PROVIDENCE WASHINGTON INSURANCE COMPANY**

Pursuant to Federal Rules of Civil Procedure ("FRCP") Rule 34, plaintiff Emhart Industries, Inc. ("Emhart") requests that defendant Providence Washington Insurance Company ("Providence"), produce the documents requested below for inspection and copying at the offices of Foley Hoag LLP, World Trade Center West, 155 Seaport Boulevard, Boston, Massachusetts, pursuant to the requirements of FRCP Rule 34(b). This Request for Production is deemed to be continuing, requiring supplemental answers thereto to the extent required by FRCP Rule 26(e).

**DEFINITIONS**

For the purposes of this Request for Production, the meaning of all terms shall be in accordance with their ordinary and accepted English language and usage and in addition:

1. "NECC" shall include New England Container Company and any subsidiary corporations, parent corporations, corporate predecessors, divisions or other persons or entities that are a named insured in any insurance policy issued by Providence to NECC, from November 15, 1982 to September 27, 1985 inclusive.

2. "Emhart" shall include Emhart Industries, Inc. and Metro-Atlantic, Inc. ("Metro-Atlantic") and all of its subsidiary corporations, parent corporations, corporate predecessors, divisions or other related entities.

3. Unless otherwise indicated, the terms "you," "your," and "Providence" mean the defendant Providence and any and all of its subsidiary corporations, parent corporations, corporate predecessors, divisions or other related entities and their directors, officers, employees, advisors, consultants, attorneys, agents, representatives, and persons acting on their behalf.

4. "Insurance policy (or policies)" and "policy (or policies) of insurance" mean all policies of insurance, whether designated as a general liability policy, comprehensive general liability policy, products liability policy, contractual liability policy, workers' compensation policy, property liability policy, property damage policy, motor vehicle liability policy, or any other type of insurance policy, however denominated, whether primary, excess, umbrella, or catastrophe insurance, or any type of reinsurance policy or agreement.

5. "Subject Policies" refers to all insurance policies issued by Providence to NECC, including but not limited to the following policies:

| Policy Number | Policy Period |
|---|---|
| CL721852 | 11/15/82 - 8/1/83 |
| Unavailable | 11/15/82 - 8/1/83 |
| CL722660 | 8/1/83 - 8/1/84 |
| CU731459 | 8/1/83 - 8/1/84 |
| CU733312 | 8/1/84 - 9/27/85 |
| CU723887 | 8/1/84 - 9/27/85 |

6. "Site" shall mean the Centredale Manor Superfund Site in North Providence, Rhode Island consisting of two parcels of land, 2072 and 2074 Smith Street, and portions of the Woonasquatucket River and its floodplain that are adjacent to the two parcels on Smith Street, including but not limited to two ponds, Allendale Pond and Lyman Mill Pond.

7. "Underlying Claims" shall mean all administrative or legal proceedings commenced against Emhart, NECC and/or any potentially responsible party and arising out of the alleged contamination of the Site, including without limitation proceedings arising from: (i) the September 15, 1999 Environmental Protection Agency ("EPA")

Notice of Potential Liability ("NPL") issued to NECC relating to the Site, (ii) the February 28, 2000 NPL issued to Emhart relating to the Site, (iii) the March 6, 2000 placement of the Site on the National Priorities List, (iv) the April 12, 2000 EPA-issued Unilateral Administrative Order for Removal Action to NECC, Emhart and other respondents, (v) the March 26, 2001 EPA-issued Second Administrative Order for Removal Action to NECC, Emhart and other respondents, (vi) the September 11, 2003 EPA-issued Third Administrative Order on Consent for Removal Action to NECC, Emhart and other respondents, and (vii) the June 30, 2005 EPA-issued Interim Final Remedial Investigation report concerning the Site.

8. The terms "waste," "substance," or "substances" mean: (a) anything which was released in or about the Site at issue, and (1) as to which any person has made claim against Providence for remediation, costs, property damage or personal injury; or (2) as to which you believe you may be the subject of a claim for remediation costs, property damage or personal injury in the future; and (b) anything with respect to which Providence may be a potentially responsible party.

9. "PCBs" mean polychlorobiphenyls and/or compounds that may lead to their formation.

10. "TCDD" means 2,3,7,8-tetrachlorodibenzo-*p*-dioxin ("2,3,7,8-TCDD") and/or compounds that may lead to its formation, including without limitation 2,4,5-trichlorophenol ("2,4,5-TCP"), which forms 2,3,7,8-TCDD upon combustion.

11. "OCDD" means octachlorodibenzo-*p*-dioxin ("OCDD") and/or compounds that may lead to its formation, including without limitation pentachlorophenol, which forms OCDD upon combustion.

12. "Person" or "persons" means and includes natural persons, firms, corporations, professional corporations, partnerships, joint ventures, proprietorships, associations, and any other forms of organizations or legal entities or groups of persons.

13. "Document" or "documents" mean(s) and include(s), without limitation, the original and any duplicate or copy (whether or not different from the original because of notes made on or attached to such copy or otherwise), of any written, printed, recorded or graphic matter, photographic matter, video tapes, sound reproductions however produced or reproduced, notes, telephone messages, letters, telegrams, cable messages, telex messages, records, lists, memoranda, bulletins, e-mails, facsimiles, specifications, instructions, advertisement, pamphlets, literature, work assignments, calendars, diaries, agendas, minutes, transcripts, reports, studies, surveys, valuations, appraisals, memoranda of conversations or interviews, notebooks, drafts, data sheets, charts, work sheets, working papers, contracts, memoranda of agreements, assignments, licenses, orders, ledgers, journals, calculations, invoices, statements, bills, checks, catalogs, books, and all other written/documentary material (including microfilm, tapes,

and data processing records, data processing cards, and computer disks) of whatever kind known to you.

14. "Communication" shall mean any written, oral or other transmission of fact, information, ideas or opinion, including, but not limited to, any utterance, notation, question, command, interjection, expression, gesture, suggestive conduct or statement of any nature whatsoever, any conversation (whether by telephone or otherwise), and any meeting, and also including, but not limited to, correspondence, financial records, corporate records, reports and documents as defined herein.

15. "Identify" and "identity," when used in reference to a natural person, mean to state the person's full name and present or last-known residence and employment address, and his or her present or last-known title or position and business affiliation. "Identify" and "identity," when used in reference to an entity other than a natural person, such as a corporation, mean to state its proper name or designation, and the address of its principal office. "Identify" and "identity," when used in reference to documents, mean to state the type of document, general subject matter, date of the document, and the author(s), addressee(s), and recipient(s).

16. "Concerning," "regarding," "pertaining," "relating," "related," or "which relates to" any given subject or person means any communication or document that constitutes, contains, embodies, concerns, regards, involves, relates to, reflects, identifies, states, refers to, deals with, is authored, transmitted, communicated or originated by, is transmitted or communicated to or received by, or is in any way pertinent to that subject or person, including, without limitation, documents concerning the preparation of other documents.

17. "Related to" or "relating to" means containing, embodying, evidencing, reflecting, identifying, stating, referring to, contradicting, rebutting, inconsistent with, dealing with, bearing upon, or in any way pertaining to, directly or indirectly.

18. "Investigation" means any fact-finding effort related to any claims, activity, business, or the actual or potential risk-exposure of any person or property, including but not limited to any survey, inspection, research, or analysis of any kind whatsoever.

19. "Date" and "when" mean the exact day, month, and year, if ascertainable, or, if not, the best approximation thereof.

20. "And" and "or" shall be construed conjunctively and disjunctively, as necessary, to make the interrogatory inclusive rather than exclusive.

21. The singular includes the plural and vice versa; the masculine includes the feminine and vice versa; and verb tenses include the past, present, and future.

22. "Each" and "any" mean "each and every," as well as "any one."

**INSTRUCTION**

If you decline to produce any documents responsive to any of the following document requests because of a claim of privilege, state in each such instance the privilege claimed, the legal and factual basis for the claim, and the identity of each document affected by the claim.

Unless stated otherwise, each document request seeks documents generated, kept or maintained by Providence and any of its third party claims administrators.

**DOCUMENT REQUESTS**

1. All general liability, workers' compensation, property damage, and motor vehicle liability insurance policies and documents, including the entire underwriting file or files of such insurance policies issued by Providence to NECC at any time, including without limitation the Subject Policies and any additional policies identified in response to Interrogatory No. 2, served herewith.

2. All Insurance policies and documents in Travelers' possession, custody, or control, including the entire underwriting file or files of such Insurance policies, issued by any insurer other than Providence to NECC at any time.

3. All documents that relate to NECC's application for any Insurance policy to Providence, at any time.

4. All documents that relate to the negotiation of Insurance policies, including but not limited to the identity of any person who was involved in the

negotiation or issuance or may have knowledge regarding the negotiation or issuance of the Subject Policies, between Providence and NECC.

5. All documents that relate to the calculation of the premiums that were charged by Providence to NECC for the Subject Policies.

6. All documents that relate to premiums paid to Providence by NECC for the Subject Policies.

7. All documents prepared for Providence with regard to the Underlying Claims of NECC in this action.

8. All documents that relate to any communications between Providence and any reinsurers concerning the Subject Policies or the Underlying Claims.

9. All documents that relate to any communications between Providence and NECC concerning the Underlying Claims.

10. All documents that relate to any demands or claims for coverage made by NECC under any Insurance policies issued by Providence to NECC with respect to the Underlying Claims, including without limitation all documents in any files created, kept or maintained by Providence or any person or entity acting on behalf of Providence, in order to handle NECC's demands for coverage for the Underlying Claims.

11. All documents that relate to Providence's response to, or handling of, any claims made by NECC under any Insurance policy issued by Providence to NECC with respect to the Underlying Claims, including without limitation all documents that form the basis for or relate to any determination by Providence as to whether Providence was obligated to provide NECC with coverage for the Underlying Claims.

12. All documents that relate to any practice, policy, procedure, rule, instruction or guideline that Providence consulted, followed, referred to or relied on in determining whether Providence was obligated to provide coverage to NECC for the Underlying Claims.

13. All documents that relate to amounts paid to NECC by Providence for liability insurance coverage at any time relating to the Underlying Claims.

14. All documents that relate to any amounts Providence paid to NECC or received from any potentially responsible party to share, pay for, settle, reduce or offset the costs Providence has paid or will pay in the future with respect to liability for the contamination at or from the Site.

15. All documents that relate to the purchase, sale, leasehold, operating or other agreement or contract entered into by Providence, NECC or any other entity concerning the Site, including all correspondence concerning such purchase, sale, lease or other agreement.

16. All documents describing the operations conducted by NECC at the Site, including but not limited to documents that identify any permits, licenses or applications relating to the Site.

17. All documents regarding any substances used, generated or disposed of, and suggestions of how to handle, transport, use or dispose of waste, hazardous waste, oil, chemicals, solvents and/or substances used at the Site, including but not limited to instructions, manuals, safety guidelines, periodicals, reports, brochures, material safety

data sheets, government bulletins, information from manufacturers or distributors, regulations and/or any other warning obtained or issued to NECC.

18. All documents which concern or evidence the physical and chemical composition of the materials, products, and other substances used at the Site between 1948 and 1972, including but not limited to products containing PCBs, TCDD and/or OCDD, and any related material safety data sheets and correspondence from manufacturers, distributors, suppliers, insurers or any other entity, including the manner in which such materials, products, and other substances were used, received and stored.

19. All documents that identify how waste was disposed of at the Site, including but not limited to each agreement NECC entered into for the transport of waste at or off the Site.

20. All documents that concern or evidence NECC's purchase, use, handling, storage, release and/or disposal on or off the Site of any storage device, such as barrels, drums, or other storage tanks or device, including documents regarding: (a) the quantity and contents of materials or residues of materials contained in such storage device; (b) when such storage device was used; (c) the location where such storage device was kept; (d) the surface upon where such storage device was placed; and (e) the end disposition of any waste products contained in such storage device.

21. All documents relating to the use of any lagoons and/or retention ponds for the storage or disposal of any wastes or other substances at the Site, including documents regarding: (a) when such lagoons and/or retention ponds were used and any related permits issued; (b) the events giving rise to the decisions to use lagoons and/or

retention ponds; (c) the basis for the decision to use lagoons and/or retention ponds; (d) exactly what was stored in such lagoons and/or retention ponds; (e) the disposition of any material stored in lagoons and/or retention ponds; and (f) permits, applications for permits and violations of such permits.

22. All documents relating to any wastes released to the air, ground, surface waters or ground waters at or from the Site, including transportation, delivery, and ultimate disposition of the wastes to or from the Site, during the operations conducted by NECC at the Site.

23. All documents relating to, reflecting or evidencing contracts entered into between NECC and any other person or entity for the recycling, generation, treatment, transport, storage or disposal at the Site of waste, oil, chemicals, solvents and/or hazardous substances generated, used or transported by NECC or any other entity in connection with the Site.

24. All documents relating to whether any measures to prevent, stop or control releases or discharge(s) of hazardous waste at or from the Site were taken.

25. All documents relating to how and/or when Providence first discovered or became aware by NECC, other insurers, or by any federal, local or state government that waste or other substances and/or possible contamination or pollution were being released at or from the Site.

26. All documents relating to whether any of the drums or barrels used at the Site to store products were ever discovered to be leaking, rusting, containing holes, or buried including documents relating to: (a) the identity of the contents of such drums

and barrels; (b) the notice from or to any state, local or federal government official or agency relating to such drums and barrels; (c) the efforts or measures taken to remove, recapture or clean up materials contained in such drums and barrels; (d) the exact location of drums or barrels that were buried; (e) the contents of any buried drums or barrels; (f) the identity of the individuals who made the decision and/or carried out such decision to bury such drums or barrels; (g) whether the buried drums or barrels were excavated from the original location of their burial; and (h) whether the contents of the drums or barrels were released therefrom.

27. All documents relating to all efforts taken by or on behalf of Providence to investigate, test, sample, clean up, remove or contain environmental contamination or pollution at the Site, including documents regarding: (a) the identity of each person assisting and retained in the investigation, clean up or containment; (b) the cost of the investigation, clean up or containment effort and the checks evidencing payment by Providence of such bills and invoices; and (c) for those investigation, clean up or containment efforts that are ongoing, the amount expended to date and the projected future costs.

28. All memorializations, discussions or any documents that reference any interviews conducted of present or former employees at the Site, and identification of any former and present employees who worked at the Site and any officers and directors of NECC or any successors who have or had knowledge or responsibility with respect to the generation, treatment, storage, use, disposal, release or transport of waste, hazardous waste, oil, chemicals, solvents and/or substances to, from or at the Site.

29. All documents related to any written communications addressed to Providence and/or NECC from medical personnel, hospitals, environmental regulatory authorities, municipal and state boards of health, environmental interest groups, workers compensation boards or any other person or entity inquiring about or reporting injuries, disease or environmental property damage associated with exposure or migration of any wastes used at the Site, and any and all replies given to such inquiries.

30. All documents relating to the source or cause of environmental contamination or pollution at or off the Site, including but not limited to documents identifying: (a) the location and identity of the source or cause of the contamination or pollution; (b) the person(s) who discovered the existence of such contamination or pollution and the date of such discovery; and (c) the person(s) who discovered the source of contamination or pollution and the date of such discovery.

31. All documents that relate to each draft and/or final report or study concerning the Site conducted by any regulatory agency, including without limitation the Environmental Protection Agency's ("EPA"): (a) Notice of Potential Liability; (b) placement of the Site on the National Priorities List, (c) Unilateral Administrative Order for Removal Action, (d) Second Administrative Order for Removal Action; (e) Third Administrative Order on Consent for Removal Action; (f) Remedial Investigation, (g) Interim Final Remedial Investigation Report; and (h) any other feasibility study, environmental impact statement, or record of decision issued by any governmental agency whether or not by the EPA.

32. All documents that discuss or relate to the identification of, existence, nature or extent of any actual or potential liability for NECC or any other potentially responsible party for the environmental contamination at or from the Site, including all documents relating to any estimates, judgments, computations or other calculations of such action or potential liability.

33. All documents that relate to any communications between Providence and Travelers Casualty & Surety Company and/or any other insurance carriers relating to the Underlying Claims.

34. All documents that relate to any cost sharing agreement, settlement agreement, indemnity agreement, or any contract or other payment arrangement entered into between Providence and any other entity concerning the Site, and all checks received by Providence under such agreements in connection with the Site.

35. All documents that relate to any communications between Providence and its auditors concerning the Underlying Claims, NECC, or this action.

36. All documents that relate to all consulting, billing, retainer and scope of work agreements, reports, maps, photos, correspondence, bills and any other documents generated by any consulting or engineering firm retained by or on behalf of Providence or any other entity with respect to the Site.

37. All reports, recommendations or documents prepared by each engineer, engineering firm or consultant retained by Providence, any other potentially responsible party, or regulatory agency with respect to the pollution at or from the Site, including all logs, designs, blueprints, maps, surveys, aerial photographs and/or videos relating to the

layout and/or construction (including additions) of the Site, monitoring wells installed, sampled and tested on and off the Site, and any test or study done at any time to determine the geographical or hydrographical characteristics at or from the Site for whatever purpose made.

38. Any documents that Providence's experts shall rely upon at trial to support their opinions with respect to the Site, including without limitation all reports and drafts prepared by each testifying expert.

39. All documents relating to any lawsuits, administrative matters or hearings related to the Site in which Providence is a party, including but not limited to all consultants' reports, evaluations and communications, all records of the underlying suit, matters or hearing, all deposition transcripts, interrogatories, admissions, stipulations, pleadings and settlement agreements.

40. All documents that relate to response and/or oversight costs incurred by any regulatory agency to investigate or remediate contamination on or from the Site and for which reimbursement has been sought from Providence.

41. All documents that relate to inspection reports, complaints, directives, notices of violations or imposition of fines for violations of any federal, state or local government statutes or regulations relating to waste or pollution at or from the Site including: (a) documents identifying each person on behalf of any federal, state or local government entity who conducted or assisted in conducting such inspection or visit; and (b) documents setting forth the conclusions, findings, recommendations, and/or directives of such persons on behalf of any federal, state or local government entity.

42. All documents that relate to any practice, policy, procedure, rule, instruction or guideline that Travelers consulted, followed, referred to or relied on in connection with the retention and destruction of Insurance policies.

43. All documents identified in response to any Interrogatory included in Plaintiff Emhart Industries, Inc.'s First Set of Interrogatories to Defendant Providence Washington Insurance Company, served herewith.

EMHART INDUSTRIES, INC.

By its attorneys,

Craig M. Scott (by PRS)

Craig M. Scott, Esq. (#4237)
Duffy Sweeney & Scott, Ltd.
One Turks Head Place, Suite 1200
Providence, RI 02903
Tel: (401) 455-0700
Fax: (401) 455-0701

OF COUNSEL:
Jack R. Pirozollo, Esq.
Philip C. Swain, Esq.
Foley Hoag LLP
155 Seaport Boulevard
Boston, MA 02210
Tel: (617) 832-1000
Fax: (617) 832-7000

Dated: July 24, 2007

**CERTIFICATE OF SERVICE**

I, Rachelle R. Green, hereby certify that a true copy of the foregoing PLAINTIFF EMHART INDUSTRIES, INC.'S FIRST REQUEST FOR PRODUCTION TO DEFENDANT PROVIDENCE WASHINGTON INSURANCE COMPANY was served by hand (unless otherwise indicated ) on counsel of record on July 24, 2007.

Rachelle R. Green

**(Via Hand Delivery)**
James W. Ryan, Esq.
Partridge Snow & Hahn, LLP
180 South Main Street
Providence, RI 02903
Counsel for New England Container Corporation

**(Via Federal Express)**
John F.X. Peloso, Jr., Esq.
Kirsten M. Etela
Robinson & Cole
695 East Main Street
Stamford, CT 06901-2141
Pro Hac Counsel for New England Container Corporation

**(Via Hand Delivery)**
R. Kelly Sheridan, Esq.
Jason C. Preciphs, Esq.
Roberts Carroll Feldstein & Peirce
10 Weybosset Street
Providence, RI 02903
Counsel for Travelers Casualty & Surety Company

**(Via Federal Express)**
Eric B. Hermanson, Esq.
JohnA. Nadas
Julie C. Rising
Choate, Hall & Stewart, LLP
Two International Place
Boston, MA 02110
Pro Hac Counsel for Travelers Casualty & Surety Company

**(Via Hand Delivery)**
Todd D. White, Esq.
Jamie LaPorte, Esq.
Adler Pollock & Sheehan PC
One Citizens Plaza, 8th Floor
Providence, RI 02903-1345
Counsel for Providence Washington Insurance Company

**(Via Federal Express)**
Jack R. Pirozzolo, Esq.
Richard L. Binder, Esq.
Philip C. Swain
Foley Hoag LLP
155 Seaport Boulevard
Boston, MA 02210