UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| EMHART INDUSTRIES, INC.<br><br>Plaintiff,<br><br>v.<br><br>NEW ENGLAND CONTAINER COMPANY, INC., ET AL.,<br><br>Defendants. | Civil Action No. 06-218 S |

**OPPOSITION OF TRAVELERS CASUALTY & SURETY CO.
TO EMHART'S MOTION FOR PARTIAL RELIEF FROM STAY
TO CONDUCT DISCOVERY AGAINST INSURANCE DEFENDANTS**

Pursuant to Fed. R. Civ. P. 26, D.R.I. Loc. R. 7(c), and this Court's August 22, 2007 stay order (hereinafter "Stay Order"), The Travelers Casualty and Surety Company ("Travelers") opposes the Motion of Emhart Industries, Inc. ("Emhart") for Partial Relief of Stay to Conduct Discovery Against Insurance Defendants ("Discovery Motion"). In support, Travelers states as follows:

**BACKGROUND**

1. This action was filed by Emhart in May 2006, against New England Container Co. ("NECC") and two of NECC's insurance carriers, Travelers and Providence Washington Indemnity Co. ("PWIC").

2. In July 12, 2006, Travelers filed a Motion to Dismiss, on the ground that Emhart was not a third-party beneficiary under the alleged Travelers policies, and that Emhart's claims against Travelers were contrary to Rhode Island statute. See R.I. G.L. § 27-

7-2. To date, this Court has not ruled directly on Travelers motion to dismiss. Instead, on August 15, 2007, the Court entered an order which severed and stayed Emhart's action against PWIC and Travelers, "pending resolution of the underlying cost recovery action between Emhart and [NECC]."

3. On November 15, 2007, Emhart filed the Discovery Motion. Attached to the Motion were a number of extraordinarily broad, and legally improper, discovery requests, which Emhart asked the Court's permission to serve on Travelers and PWIC.[1]

4. On November 19, 2007, the Court convened a Status Conference. At the Conference, the Court indicated that it would not entertain Emhart's Discovery Motion, and that Travelers need not file an Opposition, but instructed Travelers to work with Emhart toward a voluntary production that might address Emhart's asserted need for preservation discovery of a much more limited set of materials.

5. In December 2007, Travelers provided Emhart with several hundred pages of policy-related and alleged policy-related material, and agreed to segregate and preserve certain underwriting and claim material until the conclusion of the underlying cost recovery action, so as to satisfy Emhart's professed concern for "preservation" of this material. Emhart expressed objections to this procedure. In February 2008, Travelers offered to meet and confer with Emhart's counsel with respect to the parties' apparent disagreement. Emhart

---

[1] By way of example, Emhart's requests demanded production of information about "reserves established or proposed" by Travelers with respect to Emhart's and EPA's claims (Interrog. No. 7), "communications between Travelers and any reinsurers concerning the Subject Policies or the Underlying Claims" (Doc. Req. No. 9); "legal advisors … consulted by or on behalf of Travelers" (Interrog. No. 6), "investigation conducted or procedures followed by [Travelers] to determine whether to defend and/or indemnify NECC" (Interrog. No. 10); "all person who have ever visited the Site on [Travelers] behalf" (Interrog No. 11); "the manner in which Travelers organizes, maintains, preserves and destroys expired Insurance policies" (Interrog. No. 13); "calculation of the premiums that were charged by Travelers to NECC" (Doc Req. No. 5); and "all documents prepared for Travelers with regard to the Underlying Claims of NECC in this action" (Doc Req. No. 7). The foregoing examples are illustrative, and not exhaustive.

made no response to Travelers proposal. Instead, on May 9, Emhart hand-delivered a letter to the Court, requesting (yet again) that the Court convene a status conference on Emhart's Discovery Motion, and order the production by Travelers of the documents that Emhart had previously sought.

7. For the reasons set forth below, there is no legal basis for Emhart to seek such production, and Emhart's Discovery Motion should be denied.

## DISCUSSION

### I. There Is No Basis For Emhart to Obtain Discovery Against Travelers At This Point In The Proceedings

Under Rhode Island law, and the Court's Stay Order, there is no basis for Emhart – a stranger to the insurance relationship between Travelers and NECC – to seek or obtain discovery from Travelers at this point in the proceedings. Indeed, and more broadly, there is no legal basis for Emhart to pursue coverage claims of any kind against Travelers, under NECC's policies, while at the same time pursuing potentially insured claims against NECC directly. See R.I.G.L. § 27-7-2 ("An injured party … in his or her suit against the insured, *shall not join the insurer as a defendant*") (emphasis added). All of Emhart's pending claims are against NECC, not Travelers. Unless and until Emhart prevails in its contribution claims against NECC, there will be no issue of coverage under the Travelers policies with regard to such claims. Id.

To the extent that there is any issue as to the coverage that may be afforded by the NECC policies, with respect to NECC's liability in the underlying actions, that issue can and should be pursued by NECC, in the first instance – which NECC has already taken appropriate steps, in its own name, to do. See New England Container Company v. Travelers Casualty and Surety Company, et al., Case No. 06-2274 (R.I. Super. Ct.) (filed April 2006). Emhart's Discovery

Motion simply ignores this statutory and case law authority, and NECC's pending Superior Court Action. Instead, Emhart offers a shifting and contradictory series of justifications for its continuing, improper attempt to seek discovery from NECC's insurers. None of those purported justifications have any validity.

### A. Emhart's Proposed Discovery Is Not Justified By Emhart's Pending Claims Against NECC.

Emhart's first purported "justification," as set forth in its Motion, is that it believes "discovery from the insurers is necessary to fully adjudicate Emhart's claims against NECC." Mot. p. 3. This argument makes no sense. The existence or non-existence of insurance coverage has no bearing whatsoever on the issues that must be resolved for Emhart to prevail in its cost recovery claims against NECC, i.e., the respective liability (as between Emhart and NECC) for the alleged contamination at the Site. Indeed, if the Court allows the discovery that Emhart is presently requesting from Travelers, it may affirmatively impede the resolution of these significant threshold issues – leading to lengthy motion practice on peripheral issues relating to coverage; disrupting the joint defense relationship between Travelers and NECC; and distracting the parties and the Court, to no useful effect.

This court is well aware of, and has recently had occasion to review, Emhart's "scorched-earth" litigation tactics with respect to its own insurers. See Emhart v. Home Ins. Co., C.A. No. 01-053 (Sept. 25, 2007), pp. 48-65. To allow Emhart to engage in these tactics with *another party's* insurer – an insurer with whom Emhart has no contractual or legal relationship – would, effectively, allow Emhart to hijack and subvert these proceedings, and the pending litigation between NECC and Travelers. It would vastly multiply the cost and complexity of this case, for no valid reason, and to no good effect.

**B. Emhart's Proposed Discovery Is Not Justified By NECC's Purported Insolvency.**

Emhart's second "justification," as set forth in its Motion, is that it believes NECC may be insolvent, and that, "in the absence of the indemnification benefits [that Emhart contends are] available to NECC under the Policies, [Emhart believes] NECC will be unable to satisfy a judgment for the money damages that [Emhart predicts it] will recover if it prevails against NECC." See Mot. p. 3. Of course, there is no reason, at this point, to believe that Emhart will recover any money damages from NECC – let alone that those "damages" will exceed NECC's available assets**.** Moreover, although Emhart has made repeated allusions over the past few years to NECC's purported "insolvency," it has never introduced any record support for that proposition, beyond its counsel's unsubstantiated "information and belief."

In any event, to the extent that Emhart's requested discovery from Travelers is, somehow, justified by the threat of some impending NECC "insolvency," that justification has been directly addressed by the Court in the Stay Order, and does not support discovery from the insurers at this point. See Stay Order [8/15/07] ("In the event that the relationship between NECC and the Insurance Companies either changes or is affected by a potential settlement of claims, Emhart may move to lift the stay …") If NECC does, in fact, become insolvent, at some point in the future, and Emhart does, in fact, secure a judgment against NECC, and NECC does, in fact, fail to satisfy such judgment, Emhart retains any rights available to it, under Rhode Island law, to pursue its claims against Travelers. Until then, Emhart's attempt to obtain discovery is both premature and unjustified.

### C. Emhart's Proposed Discovery Is Not Justified By Emhart's Purported Concern For "Preservation"

Emhart's final "justification" – which Emhart argued at length during the November 2007 status conference – is that discovery of Travelers claim and underwriting files is, somehow, necessary for preservation purposes, because this discovery, Emhart says, "could be more difficult to obtain at a later date." This argument is entirely speculative. It asks the Court to assume – without any foundation – [1] that Emhart will secure a judgment against NECC; [2] that NECC will not be able to satisfy that judgment; [3] that Emhart will then acquire a legal right to pursue an action directly against Travelers; [4] that Travelers will oppose Emhart's claims, in that action, on grounds that implicate its claim and underwriting file documents – as opposed to the plain language of the policies themselves and the facts adduced during the Emhart / NECC trial – ; and [5] that the (not-yet-identified) documents bearing on this (not-yet-identified) issue in this (speculative) future proceeding will, by that time, have disappeared from Travelers custody. Not one of these propositions has any support.

Nor is this the first time that Emhart has sought, in this Court, to advance such speculative arguments as basis for pursuing broad-ranging and legally unwarranted discovery against third parties. Tellingly, in In Re Centredale Manor Superfund Site, No. MC 03-114L, Magistrate Almond denied a Fed R. Civ. P. 27(a) petition by Emhart to engage in non-party depositions of third-party witnesses, for "preservation" purposes, on the basis of wholly conclusory assertions of exactly this nature. Emhart had filed a petition, seeking leave to take "preservation" discovery from nine third-party witnesses, on grounds that, "in the absence of a global settlement, it will be engaged in future litigation with PRPs and potentially others regarding payment of clean-up costs at the [Centredale Manor] Site." See Order (Oct. 26, 2006), p. 2. As grounds for seeking this discovery, Emhart pointed, conclusorily, to the "age and

infirmity of some of the witnesses," and argued that "many of the witnesses are 'elderly and not in good health.'" Id. at 3. The Magistrate rejected that rationale, and denied Emhart's motion. He pointed out that Emhart, in order to obtain "preservation" discovery against a non-party, bore the burden of showing – rather than merely suggesting – that the witnesses would not be available at trial, and that "evidence is likely to be lost." Id. (*quoting* Ash v. Cort, 512 F.2d 909, 911 (3d Cir. 1975).

The same is true here. Emhart has articulated no legitimate, non-pretextual rationale for pursuing "preservation" discovery from Travelers – a complete bystander to this litigation, against whom Emhart's claims have been severed and stayed. And, to the extent that Emhart does have some legitimate, non-speculative reason for asserting that "evidence [is] likely to be lost" – which it does not – that rationale has been adequately addressed by Travelers, through its agreement to segregate and preserve its claim and underwriting material "until the conclusion of the Emhart-NECC litigation." See December 27, 2007 Csp. [Exh. A], p.2.

## II. Emhart's Proposal For Discovery of Travelers "Claim and Underwriting Files" Subverts The Insurer / Insured Relationship, and Gives Emhart an Unfair Advantage in Its Litigation with NECC.

In its latest submission to the Court, Emhart casts its Discovery Motion in terms of "claim and underwriting files" that may be in Travelers possession, relating to coverage Travelers may have provided to NECC.[2] Under Rhode Island law, such a request is improper. Among other things, it is directly contrary to R.I.G.L. § 27-7-2, and the other authority set out by Travelers in

[2] In fact, the discovery requests that Emhart originally sought leave to propound went far beyond "claim and underwriting" material. They included a wide range of privileged, confidential, and wholly irrelevant internal Travelers material – on a staggering array of topics – many of which are wholly inappropriate for discovery, at this (or any other) point in the litigation. See generally p.2 n.1, *infra*.

its July 12, 2006 Motion to Dismiss. This authority suggests – among other things – that insurers should not be placed in the difficult, costly, and potentially conflicted position of having to defend their policyholders' interests against a third party, on the one hand, while, on the other hand, responding to claims (and discovery) from the same third party, in the same action, relating to the insurers' defense of the policyholder against those same claims.

If allowed, the discovery sought by Emhart would implicate a wide range of privileged, confidential, and proprietary material, relating directly to Travelers defense of Emhart's claims against NECC, and to the underlying EPA action and conditions at the Site, on which Travelers defense of those claims is based. Such requests strike directly to the heart of the work-product privilege, see Hickman v. Taylor, 329 U.S. 495, 510-11 (1947) (protecting against disclosure of "documents … prepared in anticipation of litigation or for trial by or for another party or that other party's representative … including the other party's attorney, consultant, surety, indemnitor, insurer, or agent") (emphasis added), and to the attorney-client and joint defense relationship, insofar as NECC and Travelers are co-defendants with respect to Emhart's current claims. If Emhart's requests for discovery were to be allowed, Travelers communications with NECC, its policyholder, both on the Emhart action and the underlying EPA action, would be deeply and irrevocably chilled, and the role of Travelers claim personnel would be severely compromised.

Emhart, by contrast, has demonstrated no "substantial need" for the claim and underwriting materials it seeks. Id. It has made no effort to demonstrate that it "is unable without undue hardship to obtain the substantial equivalent of the materials by other means." Id. A simple review of Emhart's proposed requests reveals that they go far beyond the purported "need" that Emhart has articulated to the Court, and that Emhart has made no effort to limit them

to matter that might be "necessary to fully adjudicate Emhart's claims against NECC," or claims that might pertain to some potential insolvency by NECC in the future, or material that "could be more difficult to obtain at a later date."

In sum, the breadth of Emhart's proposed discovery requests betray as a fiction the "justifications" that Emhart has tried to assert, in its Discovery Motion, for pursuing discovery at this time. The requests contravene this Court's stay order, and the legal and case management considerations that led to the entry of that order. They seek, instead, to place Travelers in a position of tension, if not outright adversity, with its policyholder and counsel, and to disrupt the cooperative relationship that currently exists between Travelers and NECC with respect to the defense of Emhart's pending claims. Emhart has set forth no compelling rationale for this discovery, and it should not be allowed. See also Bartlett v. John Hancock Mut. Life Ins. Co., 538 A.2d 997, 1001 (R.I. 1988) (explicitly recognizing the insurer's claim of privilege in its claim file material, and severing the plaintiff's claim to avoid discovery of insurer's claim file. "For the claims file to be discoverable, the underlying claim must first be resolved, either by settlement or litigation. Otherwise, privileged material may be disclosed that would jeopardize the insurance company's defense.") (*quoting* In Re Bergeson, 112 F.R.D. 692 (D. Mont. 1986)); see also id. at 1001 ( "until the right of coverage is first established, a plaintiff claiming to be an insured cannot compel disclosure of the insurer's work product and privileged matters in its claim files") (*quoting* Allstate Ins. Co. v. Swanson, 506 So.2d 497 (Fla. App. 1987)).

**CONCLUSION**

For the reasons set forth above, Travelers respectfully requests that the Stay Order remain in place, and that Emhart's Motion for Partial Relief of Stay to Conduct Discovery Against Insurance Defendants be denied.

Respectfully submitted,

THE TRAVELERS CASUALTY AND SURETY COMPANY,

/s/ Jason C. Preciphs

R. Kelly Sheridan (#1976)
Jason C. Preciphs (#6727)
Roberts, Carroll, Feldstein & Peirce, Inc.
10 Weybosset Street
Providence, Rhode Island 02903
(401) 521-7000 (P)
(401) 521-1328 (F)

Of counsel:

John A. Nadas (pro hac vice)
Eric Bradford Hermanson (pro hac vice)
Choate, Hall & Stewart
Two International Place
Boston, MA 02110
Phone: (617) 248-5000
Fax: (617) 248-4000

Dated: May 28, 2008

**CERTIFICATION OF SERVICE**

I hereby certify that on this 28th day of May, 2008 a copy of the within has been filed electronically through the CM/ECF System, where it is available for viewing and downloading and will be sent electronically to the counsel of record listed below who are registered participants identified on the Notice of Electronic Filing:

Rachelle R. Green, Esq.: rgreen@duffysweeney.com, lspink@duffysweeney.com

John F.X. Peloso, Jr., Esq.: jpeloso@rc.com

Jack R. Pirozzolo, Esq.: jpirozzolo@foleyhoag.com

James W. Ryan, Esq.: jwr@psh.com, emw@psh.com

Craig M. Scott, Esq.: cscott@duffysweeney.com

Philip C. Swain, Esq.: pswain@foleyhoag.com

Todd D. White, Esq.: Twhite@apslaw.com, stheriault@apslaw.com

**Service via First-Class Mail will be delivered to:**

John R Bauer
Robinson & Cole, LLP
One Boston Place
Boston, MA 02108-4404

Richard M Fil
Robinson & Cole, LLP
280 Trumbull Street
Hartford, CT 06103-3597

/s/ Jason C. Preciphs