UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| EMHART INDUSTRIES, INC.<br><br>Plaintiff,<br><br>v.<br><br>NEW ENGLAND CONTAINER COMPANY, INC., ET AL.,<br><br>Defendants. | Civil Action No. 06-218 |

**SUPPLEMENTAL SUBMISSION OF TRAVELERS CASUALTY AND SURETY COMPANY REGARDING DISMISSAL OR STAY OF DIRECT ACTION CLAIMS**

Pursuant to permission granted at the May 29, 2008 Status Conference, Defendant Travelers Casualty and Surety Company ("Travelers") respectfully submits the following supplemental memorandum in further support of its Motion to Dismiss Counts VII, IX, and XI of Emhart's Complaint ("Tr. Mot.") [Dkt No. 12], its Reply Brief on Motion to Dismiss ("Tr. Reply") [Dkt. No. 28], and its Opposition to Emhart's Motion to Lift Stay and Conduct Discovery ("Tr. Opp. Stay Mot.") [Dkt. No. 80].

**SUMMARY**

1. Most of the arguments supporting Travelers Motion to Dismiss have been set out in Travelers prior filings, above. Those arguments are incorporated by reference, and will not be repeated. Instead, in this submission, Travelers will focus on a limited number of

new issues that have emerged since mid-2006, when the Court initially heard oral argument on Travelers Motion.

2. The first issue is the effect of an order entered last year (without written opinion) by Justice Patricia Hurst, denying Travelers motion to dismiss certain claims filed by Emhart in a similar action in Rhode Island Superior Court. At the May 29 status conference, Emhart took the position that Judge Hurst's ruling is, somehow, binding on this Federal Court, and that it precludes the Court from independently considering Travelers arguments as to the legal invalidity of Emhart's claims. For the reasons set forth on pp. 3-5, below, Emhart is wrong.

3. The second issue is the continuing validity of the common-law authority that Emhart cited on pp 14 - 20 of its Objection to Travelers Motion to Dismiss [Dkt. No. 22], to support its alleged right of action against Travelers. This authority – which represented a "minority position" even in 2006 – simply has not stood the test of time. In fact, recent common-law authority is all but unanimous in holding that plaintiffs have no direct right of action against a defendant's insurer, even in states (unlike Rhode Island) that do not have a statute bearing directly on this issue. See pp. 7-9, below. These recent cases – some decided within just the past few weeks – offer further support for Travelers motion, and further undermine the validity of Emhart's proposed claims.

4. The third issue arises only if Emhart should somehow avoid outright dismissal of its claims against Travelers. It is whether this Court should continue its August 15, 2007 order, which stayed discovery on Emhart's claims until the underlying litigation is concluded. For the reasons set forth on pp. 9-11, below, the stay should be continued. If this action is not to be dismissed altogether, a stay of discovery is consistent with Rhode Island

law, serves important public policy goals, avoids unnecessary conflicts of interest, permits Travelers to participate in NECC's defense without interference from Emhart; and mitigates the statutory and other concerns presented by Emhart's premature attempt to press its coverage positions directly at this time.

## ARGUMENT

### I. This Court Is Not Bound By Judge Hurst's Order Denying Travelers Motion to Dismiss The State-Court Proceedings.

At the Status Conference on May 29, 2008, Emhart's counsel suggested that this Court, in considering Travelers current motion to dismiss under R.I.G.L. § 27-7-2, is somehow bound by a brief order issued last year by Superior Court Justice Patricia Hurst, which denied, without written opinion, a motion to dismiss filed by Travelers in certain parallel state-court proceedings.[1] Emhart's position is wrong, for two separate (and independently sufficient) reasons.

First, it is black-letter law that a federal court, sitting in diversity, is not bound by the legal rulings of a state trial court. Although the Court is free to consider the Superior Court's

---

[1] The state court proceedings, also captioned Emhart Industries v. New England Container Co., Inc., C.A. No. 06-6095, were initiated by Emhart on November 22, 2006 – just days after this Court heard oral argument on Travelers Motion to Dismiss the present (federal) action. Along with the state-court complaint, Emhart filed an ex parte motion for temporary restraining order, and (soon thereafter) an "emergency" motion, seeking expedited discovery of Travelers internal files. The "emergency" motion claimed, falsely, that "NECC, Travelers, and PWIC [were] attempting to settle these insurance claims by means of a buyout," and that discovery was necessary to avoid a potential dissipation of NECC's insurance assets. In fact, no settlement negotiations were then ongoing, and over the next three months, no fewer than three separate Superior Court judges – Judge Fortunato, Judge Silverstein, and Judge Hurst – all refused Emhart's misplaced request for "emergency" relief. Eventually, Emhart dropped its "emergency" discovery request, and PWIC, NECC, and Travelers moved to dismiss or stay the state action. On January 16, 2007, Judge Hurst denied PWIC's motion, without written opinion. On March 27, 2007, Judge Hurst denied Travelers and NECC's motions, also without written opinion. See Transcript ("Tr."), attached as Exhibit A hereto. On April 20, 2007, Judge Hurst executed a brief order, prepared by Emhart's counsel, stating that Travelers motion had been denied. See Order (Exh. B hereto). It appears to be this Order that Emhart now puts forward as "binding" on this Federal Court, with respect to the matters at issue here. It should be noted that none of Judge Hurst's orders have yet become final or appealable, and none of them, therefore, have any collateral estoppel or res judicata effect, or represent "law of the case," with respect to these parties. Harlow v. Children's Hosp., 432 F.2d 50, 55 (1st Cir. 2005).

rulings if it finds them persuasive, it need not follow them as precedent. It remains free to decide, based on its own independent analysis, whether the Rhode Island State Supreme Court would reach the same conclusion. See King v. Order of Travelers, 333 U.S. 153 (1948); LaTour v. Commercial Union, 528 F.Supp. 231, 234 (D.R.I. 1981).[2]

Second, a careful review of the transcript of the Superior Court proceedings makes clear that Judge Hurst did not base her ruling against Travelers on R.I.G.L. § 27-7-2. In fact, Judge Hurst described that statute as "completely inapplicable" to her reasoning in the case. See Exh. A, p. 12. Instead, Judge Hurst declined dismissal on entirely different grounds, which had not been briefed by either party – i.e., that Travelers "ha[d not] provided [her with] the insurance policy" issued to NECC. She argued that, "without [seeing the policy], I can't say that Emhart isn't a third party beneficiary or an intended beneficiary, as a matter of law." Id., pp. 5, 12-13.

In the current (federal) action, Emhart has never asserted that it was a "third party or intended beneficiary," in the sense of being a named or additional insured under the Travelers policies issued to NECC. Nor could Emhart credibly do so.[3] Thus, while Travelers respectfully disagrees with Judge Hurst's reasoning in the State Court Action, that disagreement is of no relevance here. Travelers present motion turns, at the threshold, on the application of R.I.G.L. § 27-7-2 – an issue that Judge Hurst did not address, and, indeed,

---

2 Indeed, in its prior filings, Emhart itself has argued that a state trial court decision should *not* bind a federal court in diversity – at least for state trial court decisions, like Baxendale v. Martin, 1997 WL 1051072 (R.I. Super. 1997), that Emhart finds inconvenient to its own positions. See Emhart Opp., p. 10 n.3.

3 Travelers and NECC each have provided Emhart with all of the policies that they have been able to locate that might respond in any way to the claims asserted at the Centredale Site. None of these policies identifies Emhart as a "named insured" or "additional insured." None, in fact, mentions Emhart in any way. Upon request, Travelers would be willing to provide copies of these policies, for the Court's own examination, so as to avoid any further confusion on this point.

found "completely inapplicable" to her ruling on Travelers motion. Id., p. 12. On this issue, this Court must make up its own mind.

## II. Recent Authority Supports Travelers Position That R.I.G.L. § 27-7-2 Is Clear and Unambiguous, And Must Be Interpreted In Accordance With Its Terms.

Once this Court sets aside Emhart's mischievous suggestion that it is, somehow, bound by Judge Hurst's ruling, it becomes clear that Travelers motion should be granted on the merits. R.I.G.L. § 27-7-2 provides (with certain exceptions not relevant here) that "[a]n injured party ... in his or her suit against the insured, shall not join the insurer as a defendant."[4] The language of the statute is "clear and unambiguous." Markham v. Alliance Ins. Co., 352 A.2d 651, 654 (R.I. 1976). In the recent words of one Superior Court Justice: "Without any legal authority that states otherwise, it cannot be said … that [R.I.G.L. § 27-7-2] is intended to do anything else [than what it says]." See Imperial Cas. & Indemn. Co. v. Bellini, __ A.2d __, 2008 WL 2200239, at *4 (R.I. May 29, 2008).

The Rhode Island Supreme Court in Liberty Mutual Ins. Co. v. Kaya, __ A.2d __, 2008 WL 2152280, at *3 (R.I. May 23, 2008), recently reaffirmed the longstanding principle that, "[w]hen the language of a statute is clear and unambiguous, this Court] must interpret

4 Because the current federal action involves a direct suit by Emhart *against Travelers and NECC jointly*, the recent decision of the Rhode Island Superior Court in Taraco v. FW Realty, 2008 RI Super LEXIS 3 (Jan. 7, 2008), has no bearing on the result. The court in Taraco considered three separate lawsuits – two by third party claimants against a policyholder ("Candleberry"), arising from a leaking underground storage tank, and a third by Candleberry and one of the claimants ("Taraco") against Candleberry's insurer ("Zurich"), for a declaratory judgment of coverage under Candleberry's policies. The court concluded that R.I.G.L. § 27-7-2 did not apply, because "Zurich [wa]s not a party to the initial … action [by Taraco against Candleberry]." In this case, of course, Travelers is a party to the initial action, by Emhart against NECC, and a dismissal, or stay of action, is required. Moreover, although the Taraco Court declined to dismiss the declaratory judgment action, it did go on to hold that Taraco would not be entitled to take discovery against Zurich, until "liability ha[d] been determined in the initial Taraco matters [involving Candleberry]." This aspect of the Taraco holding is addressed in more detail in connection with Travelers request for continuance of stay, pp. 9-11, below.

the statute literally and must give the words of the statute their plain and ordinary meaning." In light of this principle, it is significant that the Rhode Island statute contains no exception that permits claimants to pursue direct suits against insurers of defendants who are alleged by a plaintiff to be "insolvent." In fact, a different section of the Code, R.I.G.L. § 27-7-2.4, addresses the insolvency of defendants directly, and sets a much higher bar: it permits direct actions to be filed against a defendant's insurer only when an allegedly insolvent tortfeasor actually "files for bankruptcy." Id.

By adopting this phrasing in R.I.G.L. § 27-7-2.4, the Legislature made clear – if it were not clear already – that a plaintiff's simple, unsubstantiated allegations of "insolvency," short of actual bankruptcy, are not enough to avoid dismissal under Rhode Island law.[5] Emhart's claim against Travelers is based on precisely these kinds of unsubstantiated allegations. Since Emhart's claims of NECC's alleged "insolvency" – even if substantiated – would not be sufficient to meet these unambiguous statutory standards, Emhart's claims against Travelers fail at the threshold, and must be dismissed.[6]

---

[5] A few other states – but not Rhode Island – have adopted broader statutes, permitting suits to be filed in the event of a policyholder's "insolvency or bankruptcy." See, e.g., Korda v. Chicago Ins. Co., 908 A.2d 1018, 1029 (Vt. 2006) (construing Vt. Stat. Ann., Tit. 8, § 4203(3) (2007)). For whatever reason, the Rhode Island Legislature has chosen not to employ this phrasing. This Court, in construing Rhode Island law, should apply the statutory language that the Legislature adopted. It should not expand that language, without statutory authorization, to include terms or meanings that the Legislature did not include or intend.

[6] In its initial briefs, Emhart also attempted to argue that the statute did not apply to declaratory judgment actions – as opposed to actions for damages – brought by claimants against defendants' insurers. This argument is addressed, and fully rebutted, in Travelers initial briefs. It need not be further examined at length. See Tr. Rep., pp. 5 - 7.

## III. Recent Authority Supports Travelers Position That A Claimant, At Common Law, Has No Direct Right of Action Against A Defendant's Insurer.

Faced with the clear language of the Rhode Island statute, the strong public policy considerations against allowing direct claims (or discovery) by a plaintiff against a defendant's insurer,[7] and an almost complete absence of Rhode Island authority that would permit its proposed suit against Travelers, Emhart devoted the majority of its initial argument to a broad recitation of common law authority from other states. See Emhart Opp., pp. 14 – 20. Even in 2006, these cases appear to have represented a "minority position." See Tr. Reply, pp. 8 - 9 (citing Mendez v. Brites, 849 A.2d at 331 n.20). However, in the two years since Emhart submitted its brief, that "minority position" – already tenuous – has weakened further, and become all but untenable.

During these ensuing years, the overwhelming weight of appellate authority has continued to find – even in states (unlike Rhode Island) that do not have a statute bearing directly on this issue – that "a tort claimant has no direct cause of action against the tortfeasor's liability insurer until the insured tortfeasor is adjudged liable to the tort claimant," see Ohio Cas. Ins. Co. v. Time Warner Entm't Co., 244 S.W.3d 885 (Tex. App. 2008) (citation omitted).[8] At least one of these decisions, Royal Indemn. Co. v. United

---

7 See generally infra pp. 10-11. If this Court were to allow Emhart to proceed with this action, and pursue discovery against Travelers on its (contingent) claims for coverage under NECC's policies, then Travelers, to defend against those claims, might find itself forced to develop or press for facts that would be prejudicial to NECC's own, ongoing defense of the claims asserted by Emhart. The ultimate result – as Emhart surely realizes – would be a significant interference in the defense relationship between Travelers and NECC.

8 See, e.g., Ohio Casualty, 244 S.W.3d at 885; King v. Allstate Ins. Co., 159 P.3d 261, 265 (N.M. Ct. App. 2007) ("Without … a determination of liability giving rise to the obligation to pay, there is no cause of action [against an insurer]"); Hoang v. Assurance Co. of America, 149 P.3d 198, 802 (Colo. 2007); Crane v. Lazaro, 635 S.E.2d 319 (Ga. Ct. App. 2006) ("where there is no privity of contract, a party may not bring a direct action against the liability insurer of the party who allegedly caused the dmage unless there is an unsatisfied judgment against the insured or it is specifically permitted either by statute or a provision in the policy"); Sanders v. Robertson, 954 So.2d 493 (Miss. Ct. App. 2007); Ferguson v. Nationwide Prop. & Cas.

Enterprises, Inc., 162 Cal.App.4th 194 (Apr. 23, 2008), is especially noteworthy, not only because of its recency, but because its facts appear to be quite close to the ones alleged in Emhart's complaint.

The plaintiff in Royal was an insurer ("Royal"), which allegedly wrote coverage to a policyholder ("United") with respect to an environmentally contaminated site. A third party ("Flat Rock") sued United for damages arising out of the contamination. Royal filed an action for declaratory judgment against United, seeking to establish that its policies did not cover Flat Rock's claims. Flat Rock moved to intervene in the declaratory judgment action. It argued – as Emhart has argued here – that it had "a legitimate interest in making coverage arguments that may affect its possibilities of recovering damages and environmental cleanup costs from United." Id. at 484. It "explained to the trial court" – as Emhart has attempted to explain here – "that it [was] interested in obtaining a settlement among all the insurers [at the allegedly impacted site,] 'because a lot of the issues in this case center around who's got coverage and what coverage is available.'" Id.

The trial court denied Flat Rock's motion, ruling that "neither public policy nor any existing authority would allow for such intervention at this time." Id. The Court of Appeals agreed. It noted, first, that Flat Rock was "a third party who [was] not in privity of contract with the liability insurer, nor is it any kind of additional insured under this type of policy." Id. at 494. Therefore, it concluded, Flat Rock "lack[ed] standing to sue the insurer to resolve

---

Co., 218 S.W.3d 43 (Tenn. Ct. App. 2006); Korda, 908 A.2d at 1028 (acknowledging "general" rule that "direct actions against the insurer by persons other than the insured are prohibited because of the absence of privity of contract"). Because the purpose of this brief is not to repeat arguments that have previously been made, but simply to bring the Court's attention to newly-decided authority, Travelers has limited its citations to cases decided since the parties' initial round of briefing, in mid-2006. For a summary of other cases, decided prior to 2006, the Court is referred to 15 Appleman on Insurance 2d § 112.10 at 338 (2000); 7A Couch on Insurance 3d § 104:2, 104:10 -11 (1997)), and related authority. See generally Tr. Reply, pp. 7-9.

coverage questions about United's rights under the policy." Id. It observed, in passing, that "Flat Rock does not yet have a protectable interest in the insurance proceeds .... [Its asserted] interest is 'purely speculative because it is contingent upon its prevailing against [the insureds] in the [environmental] action.'" Id. (*quoting* Mt. Hawley Ins. Co. v. Sandy Lake Properties, Inc., 425 F.3d 1308 (11th Cir. 2005)).

The same is true in this case. The only present interest that Emhart has asserted, with respect to Travelers policies, is its interest in ensuring "a pool or fund from which to recover [its] damages." Mt. Hawley, 425 F.3d at 1311. But Emhart "is not a party to the [Travelers] insurance policy." Id. It "has no legally protectible interest in that insurance policy," which would entitle it to pursue the present, independent action for coverage. Id. Moreover, as in Royal and Mt. Hawley, Emhart's interest in the proceeds of NECC's alleged policy "is purely speculative[,] because it is contingent upon [Emhart] prevailing against [NECC] in the [underlying environmental] action." Id.

Thus, for the reasons set forth in Royal, Mt. Hawley, and the cases previously cited in Travelers initial brief, this Court should dismiss Emhart's claims against Travelers, with leave to refile if – but only if – Emhart later satisfies the statutory standing requirement set forth in R.I.G.L. § 27-7-2.

## IV. At A Minimum, If This Court Elects Not To Dismiss This Action, It Should Continue The Global Stay of Discovery on Emhart's Claims Against Travelers.

In the alternative, even if this Court declines to dismiss Emhart's direct-action claims against Travelers, this Court should – at a minimum – continue its August 15, 2007 stay of

all discovery on these claims until such time as the underlying litigation is concluded. A stay of discovery makes logical sense, for several reasons.

First, the continuation of the stay is consistent with the Rhode Island Legislature's intent in enacting R.I.G.L. § 27-7-2. It will serve important public policy goals; will permit Travelers to assist NECC in defending this action, without undue interference from Emhart; and will mitigate – although it will not wholly resolve – the statutory and other concerns presented by Emhart's premature attempt to press claims against Travelers at this time. See generally Taraco, 2008 R.I. Super LEXIS 3, *17 (allowing Candleberry to pursue declaratory judgment against its insurer, under Employers Fire Ins. Co. v. Beals, 103 R.I. 623, 240 A.2d 397 (R.I. 1968), despite the pendency of Taraco's underlying claim, upon a finding that the proposed coverage action did not give rise to any conflict between Candleberry's positions and its insurer's positions with respect to the Taraco claim; but disallowing discovery by the *third-party claimant* against the insurer until "liability ha[d] been determined in the initial Taraco matters").

Second, the stay makes sense from a perspective of judicial economy. Coverage actions are expensive. Indeed, Emhart's last coverage action (against its own insurers) cost millions of dollars in discovery alone. Scores of individuals were deposed, numerous experts were retained, and there was great disruption to parties, witnesses, third parties, and the court. Absent clear necessity, this court should not condone a second such fishing expedition – particularly at this early stage of the proceedings, when Emhart has not obtained a final judgment against NECC, and may never obtain such a judgment.

Third, the pursuit by Emhart of discovery against Travelers, on a claim for declaratory judgment under NECC's policies, would undermine the duties that Travelers

owes to NECC, by placing Travelers in a potentially conflicted position with respect to its policyholder. See Ohio Casualty, 244 S.W.3d at 888 (acknowledging "a public-policy basis for the rule [against direct actions], which is the prevention of the conflict of interest that could arise if a third-party claimant were permitted to sue an insurer before obtaining judgment against the insured"); compare Beals, 103 R.I. at 623; Taraco, 2008 R.I. Super LEXIS at *14. This could have grave implications, not only for the parties in this litigation, but more generally, for the long-established system of cooperation under which insurers and policyholders work together in defending against third-party claims.

The present case offers a good example. If this Court were to allow Emhart to pursue discovery against Travelers on its (contingent) claims for coverage under NECC's policies, then Travelers, to defend against those claims, might find itself forced to develop or press for facts that would be prejudicial to NECC's own, ongoing defense of the claims asserted by Emhart. The ultimate result – as Emhart surely realizes – would be to drive a wedge between Travelers and NECC: chilling those parties' communications, and frustrating Travelers defense of its policyholder against Emhart's underlying claims. In the short run, Emhart might derive some kind of tactical benefit from this kind of mischief. But, in the long run, if plaintiffs were permitted to pursue this kind of discovery against defendants' insurers directly, it would risk grave harm to the fundamental premises of the insurance system – putting at risk the entire, deeply embedded system of cooperation under which insurers and

policyholders work together in defending third-party claims. [9]

**CONCLUSION**

For the reasons stated in Travelers initial briefs and above, this Court should join the overwhelming majority of courts that have addressed the issue, and should dismiss Emhart's direct coverage claims against Travelers. In the alternative, however, if the Court elects to deny Travelers motion to dismiss, then it should at least continue its stay of any discovery on those claims, at least until such time as "liability has been determined in the initial [action by Emhart against NECC]." Taraco, 2008 RI Super LEXIS, at *21.

Respectfully submitted,

THE TRAVELERS CASUALTY AND SURETY COMPANY,

/s/ R. Kelly Sheridan

R. Kelly Sheridan, Esq., Bar No. 1976
Jason Preciphes, Bar No. 6727
ROBERTS, CARROLL, FELDSTEIN & PEIRCE, LLC
10 Weybosset Street
Providence, RI 02903
Tel: (401) 521-7000

Of Counsel:

John A. Nadas (pro hac vice)
Eric Bradford Hermanson (pro hac vice)
Choate, Hall & Stewart
Two International Place
Boston, MA 02110
Tel: (617) 248-5000

Dated: June 12, 2008

[9] The conclusion is buttressed, of course, by the fact that Emhart, to this point, has adduced absolutely no legitimate argument in support of the lifting of the Court's August 15, 2008 stay order. It has provided absolutely no compelling basis for the extremely broad (and legally unwarranted) discovery that it is requesting from Travelers. See generally Travelers Opp. to Emhart Mot to Lift Stay, pp. 4 - 9.

## CERTIFICATION OF SERVICE

I hereby certify that on this 12th day of June, 2008_a copy of the within has been filed electronically through the CM/ECF System, where it is available for viewing and downloading and will be sent electronically to the counsel of record listed below who are registered participants identified on the Notice of Electronic Filing:

Rachelle R. Green, Esq.: rgreen@duffysweeney.com, lspink@duffysweeney.com

John F.X. Peloso, Jr., Esq.: jpeloso@rc.com

Jack R. Pirozzolo, Esq.: jpirozzolo@foleyhoag.com

James W. Ryan, Esq.: jwr@psh.com, emw@psh.com

Craig M. Scott, Esq.: cscott@duffysweeney.com

Philip C. Swain, Esq.: pswain@foleyhoag.com

Todd D. White, Esq.: Twhite@apslaw.com, stheriault@apslaw.com

KATY a. Hynes khynes@apslaw.com

**Service via First-Class Mail will be delivered to:**

John R Bauer
Robinson & Cole, LLP
One Boston Place
Boston, MA 02108-4404

Richard M Fil
Robinson & Cole, LLP
280 Trumbull Street
Hartford, CT 06103-3597

/s/ R. Kelly Sheridan

# STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

PROVIDENCE, SC. SUPERIOR COURT

EMHART INDUSTRIES,

Plaintiff,

v.

NEW ENGLAND CONTAINER COMPANY, INC., TRAVELERS CASUALTY & SURETY COMPANY and PROVIDENCE WASHINGTON INSURANCE COMPANY,

Defendants.

C.A. No. 06-6095

## ORDER

This matter came on for hearing on March 27, 2007 before the Honorable Patricia A. Hurst. The matters before the Court were Defendant Travelers Casualty & Surety Company's Motion to Dismiss the Complaint or, in the alternative, Motion to Dismiss Counts V, Count VII and Count IX, and Defendant New England Container Company, Inc.'s Motion to Dismiss the Complaint or, in the alternative, Motion to Stay these proceedings. After hearing thereon and consideration thereof, it is hereby:

## ORDERED:

1. Travelers Casualty & Surety Company's Motion to Dismiss the Complaint is hereby DENIED.

2. Travelers Casualty & Surety Company's Motion to Dismiss Count V, Count VII, and Count IX is hereby DENIED.

3. New England Container Company, Inc.'s Motion to Dismiss Count II is hereby GRANTED.

SUPERIOR COURT
FILED
HENRY S. KINCH JR.
07 APR -6 AM 11: 24

**Emhart Industries v. New England Container Company, Inc., Travelers Casualty & Surety Company and Providence Washington Insurance Company**
**C.A. No. 06-6095**

4. New England Container Company, Inc.'s Motion to Dismiss all other Counts in the Complaint is hereby DENIED.

5. New England Container Company, Inc.'s Motion to Stay these proceedings is hereby DENIED.

ENTERED:

Honorable Justice
Dated: 4-20-07

ORDER: Joanne Rinaldi
DEPUTY CLERK

Clerk 4-20-07

Presented by:

NEW ENGLAND CONTAINER COMPANY, INC.,

James W. Ryan (#4042)
Partridge Snow & Hahn LLP
180 South Main Street
Providence, RI 02903
(401) 861-8200
(401) 861-8210 FAX
jwr@psh.com

Of Counsel:
John F.X. Peloso, Jr., Esq.
Kirstin M. Etela, Esq.
Robinson & Cole LLP
695 East Main Street
Stamford, CT 06904

**Emhart Industries v. New England Container Company, Inc., Travelers Casualty & Surety Company and Providence Washington Insurance Company**
**C.A. No. 06-6095**

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing ORDER was mailed, postage prepaid, on this 5 day of April, 2007:

Robert J. O'Keefe, Esq.
Rachelle R. Green, Esq.
Duffy Sweeney & Scott, Ltd.
One Turks Head Place, Suite 1200
Providence, RI 02903

R. Kelly Sheridan, Esq.
Jason C. Preciphs, Esq.
Roberts Carroll Feldstein & Peirce
10 Weybosset Street
Providence, RI 02903

Todd D. White, Esq.
Jamie LaPorte, Esq.
Adler Pollock & Sheehan PC
One Citizens Plaza, 8th Floor
Providence, RI 02903

Jack R. Pirozzolo, Esq.
Richard L. Binder, Esq.
Foley Hoag LLP
Seaport World Trade Center West
Boston, MA 02210

Eric B. Hermanson, Esq.
Choate, Hall & Stewart, LLP
Two International Place
Boston, MA 02110

910255_1/3929-3

400282

STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

PROVIDENCE, SC. SUPERIOR COURT

EMHART INDUSTRIES :
:
Vs. : PC 2006-6095
:
NEW ENGLAND CONTAINER, et al :

DEFENDANTS' MOTIONS TO DISMISS

HEARD BEFORE

THE HONORABLE JUSTICE PATRICIA A. HURST

MARCH 27, 2007

APPEARANCES:

RACHELLE R. GREEN, ESQUIRE
-and -
JACK A. PIROZZOLO, ESQUIRE . . . . . FOR THE PLAINTIFF

R. KELLY SHERIDAN, ESQUIRE
-and -
JASON C. PRECIPHS, ESQUIRE . . . . . FOR THE DEFENDANT (Travelers)

JAMES W. RYAN, ESQUIRE
-and-
KEITH E. FAYAN, ESQUIRE . . . . . . . . FOR THE DEFENDANT (NECC)

SUSAN L. INMAN
COURT REPORTER

# C E R T I F I C A T I O N

I, SUSAN L. INMAN, hereby certify that the succeeding pages, 1 through 69, are a true and accurate transcript of my stenographic notes.

Susan L. Inman
Court Reporter

MARCH 27, 2007, A.M. SESSION

THE COURT: Emhart vs. New England Container.

MR. SHERIDAN: Ready, your Honor.

THE CLERK: Counsel, identify yourself for the record, please.

MR. SHERIDAN: Kelly Sheridan for the Travelers.

MR. PRECIPHS: Jason Preciphs for Travelers.

MR. PIROZZOLO: Jack Pirozzolo for Emhart.

MS. GREEN: Rachelle Green for Emhart.

MR. FAYAN: Keith Fayan, local counsel for New England Container Company. And, with me this morning is Richard Fil, attorney in good standing of the Connecticut, New York and the Pennsylvania bar. We had filed a pending motion for pro hac vice and request that the Court hear from him this morning.

THE COURT: Why don't you have a seat until we rule on your motion for pro hac? I don't grant them usually.

MR. FIL: Thank you, your Honor.

THE COURT: I had a message on my voice mail, Mr. Preciphs, about a letter you sent to me the morning before I left town for vacation.

MR. PRECIPHS: I missed you, and I had a request, an assented to request to continue this hearing. As we had not been able to reach you, I informed everyone we should be prepared to go forward.

THE COURT: I read the motion papers before I left, and then after I came in late last night I looked at them again, so I'm ready to rock'n'roll on this one. I want to start with the Travelers' motion.

MR. SHERIDAN: Yes, your Honor.

THE COURT: I thought that motion ought to be denied.

But, first of all, I can say this to everybody. You know, you've got these cross motions and everybody is pointing to other papers in other cases and joining in a previously filed motion, and you've really left me with a heap of stuff that I have to jump around and sift through to try to figure out what you want me to look at and how you want me to proceed. Nobody bothered really to lay it out. It was, "Just for this piece of my argument, we're relying on those documents." "And, by the way, for that piece of our argument, you need to look over here and see what the Federal Court has done." "And, we've got a footnote that we're relying on for that." All of it was very, very difficult.

In any event, let's start with the Travelers' motion. I thought that motion ought to be denied. It's a Rule 12(b)(6) motion, but there's a flavor of something akin to res judicata or collateral estoppel here with respect to the Federal Court proceedings. You're

pointing me to matters outside the pleadings, and it seems like you're asking me to dismiss this case on public policy grounds as a sanction for forum shopping. And, I'm not quite sure about the legal analysis that Travelers is expecting me to use. As I said, you mention public policy considerations, and you say they're forum shopping and there's pending stuff in the Federal Court, so dismiss the whole thing. And, then you toss me over to memos and argument in the Federal Court case. I mean, most of the stuff here that you've attached is all the Federal Court stuff.

So, what's the legal basis for my 12(b)(6) analysis? Because 12(b)(6) says there's no -- that's failure to state a cause of action, right?

MR. SHERIDAN: Yes, your Honor.

THE COURT: Am I missing something?

MR. SHERIDAN: Of course not. You're correct, your Honor. The basis for this, your Honor, is that they have filed two identical causes of action and we have cited Rhode Island cases to you, which we're asking your Honor to rely on, that they cannot force Travelers to defend itself in two identical parellel actions.

THE COURT: Right, but the other one is pending and you're awaiting a disposition, aren't you?

MR. SHERIDAN: The identical -- this motion before

you that we filed that we have with Travelers has two bases. One is that there's a prior pending action, hence, this action should be dismissed. And, two, we are literally defending two identical lawsuits.

THE COURT: Look, nobody, made you file this motion. You could have just sat here for a while to see what happened over in the Federal Court.

MR. SHERIDAN: That's true, your Honor, but I think the case law that we've cited to you supports the notion that a party should not have to defend itself in two identical causes of action.

THE COURT: Right, and if that one is dismissed -- so, you filed this motion in that case, so you're arguing in the Federal Court, "Hey, we are defending in the State Court, so dismiss it here." That's what you just said.

MR. SHERIDAN: No, your Honor. This motion before you today is in two parts. The first argument is that there's a prior pending action in Federal Court.

THE COURT: Okay, hold that. Did you make that argument in Federal Court, that there's a prior pending, or a pending action in State Court?

MR. SHERIDAN: No, your Honor, the Federal --

THE COURT: Well, let's put that aside for a moment.

MR. SHERIDAN: The basis of the motion in Federal Court is identical. However, as to the second basis of

the motion before you today, namely --

THE COURT: Which is the 27-7-2 issue?

MR. SHERIDAN: Exactly. So, we argued in Federal Court. That lawsuit was filed first. We briefed it and argued it before Judge Smith and are awaiting a decision that Emhart is barred under 27-7-2.

THE COURT: Well, I got some bad news for you. If you gave him the same motion as you gave me, you're going to lose on that one. You're pointing to 27-7-2, but, at least in my papers, you haven't provided the insurance policy. Without it, I can't say that Emhart isn't a third party beneficiary or an intended beneficiary as a matter of law. There are lots of times -- I mean, yes, there's a general -- strike that.

The statute says you don't sue the carrier as opposed to the tort-feasor, but that's a substitution issue. If a party -- if an individual is an intended beneficiary under the language of the policy, or a third party beneficiary under the language of the policy, then they have a contract based claim, and you're asking me to say that as a matter of law there's no cause of action, they failed to state a claim. "Don't look at the policy, Judge, just say as a matter of law they failed to state a claim." They've stated a claim. It may be that they're one of those classes of individuals that falls within the

legal definition of intended or third party beneficiary. I don't know.

MR. SHERIDAN: May I respond?

THE COURT: Sure.

MR. SHERIDAN: Your Honor, we would contend for purposes of a 12(b)(6), it is their obligation to plead that. They have not pled in this case and, indeed, there's no good faith basis for them to plead that they are a third party beneficiary of the policy that the Travelers issued to NECC -- the underlying policy, your Honor. I would agree with your Honor if they allege, "We are a third party beneficiary of the policy," it would not be an appropriate basis for a 12(b)(6) motion. But, the complaint hasn't alleged that.

THE COURT: Well, what you gave me -- and this is -- you know, I didn't get that from your pleadings. I have your motion, and the attachments that I'm supposed to rely on are the complaint in the Federal Court case, the motion to dismiss in the Federal Court case, the objection to the motion to dismiss in the Federal Court case, the reply to that motion to dismiss in the Federal Court case and a copy of a transcript from a California case. So, I didn't get the drift that this whole 27-7-2 was because the original complaint in this action failed to articulate sufficient facts to support that kind of a

claim. And, can you point me specifically to, you know, where I missed that in your memo?

MR. SHERIDAN: Well, the --

THE COURT: Just show me the page because you're --

MR. SHERIDAN: It was in Section A on Pages 5 and 6 of our principal memo, and the prior pending action argument was also addressed in our reply memo, Pages 2 through 6, your Honor.

THE COURT: All right. Well, look, we'll start with Page 5, okay? Page 5 Section A says, "Emhart's claim against Travelers are barred by the pendency of the prior federal action." So, I'm not taking that to mean that -- see, when I see that, I don't see, Gee, Travelers must be arguing -- what they really mean is to say that the complaint doesn't sufficiently plead that they have something actionable under the language of the policy. I took this to mean, based on you're heading, that you were still focused on this barring as a result of the Federal Court action.

You continue on Page 5. You just pointed me to Page 5. You go on to talk about the dismissal, duplicative filings. I didn't take that to mean that you thought that the complaint was not sufficient in alleging what was needed to overcome 27 --

MR. SHERIDAN: Your Honor, I apologize.

THE COURT: 27-7-2.

MR. SHERIDAN: Your Honor, if I could direct the Court's attention to our reply memo on Page 6.

THE COURT: Well, let's stick with your memo because that was my starting point of your grounds for your motion to dismiss. Where in the motion to dismiss do you alert me to the fact that this is sort of a Rule 9 based kind of thing because they haven't alleged facts sufficient to support a claim against the carrier?

MR. SHERIDAN: On Page 8 of the memorandum, your Honor, that talks about, "Emhart has not pleaded, and cannot credibly plead, any of the limited circumstances that might permit the filing of direct suit in Rhode Island under the Rhode Island statute."

THE COURT: I did see that, okay? And, I picked up on the words, "cannot credibly plead."

MR. SHERIDAN: And, then we also made reference to --

THE COURT: Wait. And, then you go on, and instead of talking about those exceptions -- and it's not an exception really. Strike that. Okay, I saw that. "Cannot credibly plead any of the limited circumstances that might permit the filing of direct suit." You pointed to the non est issue.

MR. SHERIDAN: Also, the bottom of --

THE COURT: You pointed to the judgment issue, on the deceased business piece of it, and then you go through that piece of it, but you never address this whole question of whether they're a third party or an intended beneficiary.

MR. SHERIDAN: Bottom of Page 9, your Honor.

THE COURT: Okay, wait, stop. So, we can agree that 5 didn't do it, and we can agree that 8 didn't do it. So, now we are at the bottom of Page 9. And, I'm still under 27-7-2.

MR. SHERIDAN: That's correct, your Honor. "In the instant case, by contrast, no party has alleged that Emhart is a 'party' to the Travelers policies or that it 'has the status of an insured.'"

THE COURT: Okay. So --

MR. SHERIDAN: And, then we reiterated the point in our reply memo.

THE COURT: Okay, so out of this we have that one line. The problem is, you've just made this broad conclusion in there. I mean, I saw that, too. It was a one-liner at the end of all of this, and then you go back into your analysis of 27-7-2, but you don't talk about these -- the legal analysis, the third party or the intended beneficiary. That's my problem. You know, I looked at this as a whole, and I followed the direction

you seem to be pointing me in.

MR. SHERIDAN: Out of fairness, Judge, if the complaint does not allege that they're a third party beneficiary or an intended beneficiary or have the status of an insured, I would respectfully ask the Court not to fault us for not having briefed that issue since they didn't raise it. The issue first came up when we pointed it out in the reply memo your Honor had denied the 27-7-2 argument in a similar motion filed by Providence Wash. in this action. And, we brought to your attention when you had made that ruling at the time, your Honor suggested if Emhart was a third party beneficiary, that you needed the policy. That's why in our reply memo we addressed the intended beneficiary or third party beneficiary issue as well and pointed out again that Emhart had not pled that it was a third party beneficiary or had the status of an insured.

THE COURT: Do you have a copy of the complaint with you?

MR. SHERIDAN: Yes, your Honor.

THE COURT: The operative complaint, which ever one that is.

MR. SHERIDAN: Yes, your Honor.

THE COURT: The operative counts against Travelers are 5, 7 and 9. On Page 2, the facts point to a

multitude of policies, right?

MR. SHERIDAN: Yes, your Honor.

THE COURT. ...issued by Travelers. It looks like there's one, two, three, four, five, six, seven, eight, nine, ten, eleven, twelve, thirteen, fourteen, fifteen, sixteen, seventeen.

Okay, now this is the complaint that was filed in November. And, you've, I think, interposed the motion to dismiss in lieu of an answer?

MR. SHERIDAN: Yes, your Honor.

THE COURT: Okay. Is your problem that in this complaint they only make an -- or that Emhart only makes the broad statement that the claims asserted are within the scope of coverage?

MR. SHERIDAN: Yes, your Honor. That does not, in our mind, allege that they are a third party beneficiary. Indeed, your Honor, we don't think there's any good faith --

THE COURT: Well, it goes on to say that they aver and they believe and, therefore, aver that Travelers has obligations to satisfy NECC's obligations to Emhart. That doesn't do it for you, I know.

MR. SHERIDAN: That's correct, they clearly have alleged that they believe there's coverage under our policies for our insured, NECC.

THE COURT: And, then they go on and they say under 57, they believe they're an intended beneficiary or a third party beneficiary. So, that allegation is there. So, you can't tell me that --

Am I missing something? I'm looking at Page 10 of the complaint. And, once that's raised, I can't say as a matter of law that they're not, unless I see the policy language and there's 16-17 policies here.

MR. SHERIDAN: If that's your Honor's ruling on 27-7-2, I will accept it, your Honor.

THE COURT: Look, you've been telling me that there's nothing in the complaint that raises this third party intended beneficiary issue. And, I'm looking at the complaint right now, and it does. I thought it did.

MR. SHERIDAN: Fine, your Honor, I'll accept your ruling as on 27-7-2.

THE COURT: Wait, don't -- let's not misinterpret what I'm saying. If they have a contract based claim against Travelers because they're an intended beneficiary or a third party beneficiary, 27-7-2 is completely inapplicable, so I'm not interpreting 27-7-2 to mean that it's a -- this is an exception. Because 27-7-2 is aimed at situations in which a tort-feasor -- and, let's pick the easy case. There's a car accident and the injured party decides to go right after the carrier as opposed to

the tort-feasor. And, people used to do that because they wanted to let juries know that there was insurance. That's where that all started and that's why the carrier was taken out of it, and because there was no direct contractual relationship. That's what 27-7-2 is aimed at. This is a completely separate kettle of fish that we have here. This is somebody claiming a contract based claim against a carrier that is not the tort-feasor. That's what the problem is here.

Can I hear from you on this?

MS. GREEN: Your Honor, I am local counsel. Jack Pirozzolo has been admitted pro hac vice in the case.

THE COURT: Go ahead.

MR. PIROZZOLO: Your Honor, I was puzzled by the contention that we had not alleged that Emhart was an intended beneficiary. I think your Honor has found it in the complaint. It's on Page 10, allegation 57. So I would say as a matter of pleading, we have pleaded the policies and we have pleaded that Emhart is an intended beneficiary, and as such, a third party beneficiary of the Travelers policies.

THE COURT: Well, that's why I asked to see the complaint because I did look at it some time ago. I've been out of town. I breezed through some of this last night, over the weekend and this morning because I had my

notes with me, but I thought that it had been pled.

MR. PIROZZOLO: That's why I was puzzled by the argument and did not want to interrupt.

The only thing I want to say, your Honor, is that this Travelers' motion in this respect, and as far as the DJ action, is identical to the motion brought previously in this action by Providence Washington. And, your Honor denied that motion from the bench approximately two months ago. We've attached your Honor's ruling to our brief. And, for the reasons that your Honor stated at that time, your Honor denied the motion to dismiss.

THE COURT: I hate people who try to remind what I did before. It's usually the Supreme Court that does that.

MR. PIROZZOLO: Your Honor's ruling is attached to our brief.

THE COURT: All right. I'm going to deny Travelers' motion.

And, just by the way, I can see what this case is all about. I don't know if any of you were involved -- Mr. Sheridan, your firm might have been involved in the Kaiser-Roth matter.

MR. SHERIDAN: Yes, we were, your Honor.

THE COURT: I think we all need to talk about some case management here because I can see you've got the

same kind of stuff going on, and I'm not sure you all need to be spread all over the different courts. And, that case was huge. It had more insurance policies than you have involved here, but you've got the same kinds of issues and you're headed for a splintering of this I think.

MR. SHERIDAN: That was really the basis for our motion on the prior pending action. I think the first decision that the plaintiff has to make, and if the Court won't, the plaintiff has to make is in which jurisdiction are we going to litigate. The three counts against Travelers here are the same --

THE COURT: Wait. I wasn't intending to go down that slope. You're making it too slippery. Take a seat. I was just trying to help and pointing out I have an awful lot of expertise in that area.

MR. PIROZZOLO: Your Honor, we've been charged with forum selection. We thought the business section was appropriate for this case.

THE COURT: It needs a special assignment.

MR. PIROZZOLO: I learned that it was not assigned and that was one reason we had gone to Judge Silverstein.

THE COURT: I'll take it up with Judge Rodgers.

MR. PIROZZOLO: Thank you, your Honor. It was a suggestion of a special assignment.

THE COURT: It's definitely needed. I'll talk to him about it. And, he knows -- he's assigned environmental spill DJ actions to me before.

MR. PIROZZOLO: I think that would -- I mean, we would welcome a special assignment, if that is feasible.

THE COURT: But, not necessarily me.

Now, Mr. Preciphs, what was going on with the continuance on this? What was your problem?

MR. SHERIDAN: That was on the Travelers' motion, your Honor. Your Honor already resolved that.

THE COURT: Okay.

MR. PRECIPHS: Thank you, your Honor.

THE COURT: Okay. Now, we have somebody else's motion. What's next? Wasn't there a second motion?

MR. FAYAN: Yes, your Honor, New England Container Company.

THE COURT: Right. Here it is. This one I had trouble with, too. This is pointing me all over the place. Okay.

MR. FAYAN: Your Honor, if I may --

THE COURT: Travelers' motion is denied.

Okay, now we're onto -- okay.

In one part of this -- and, I started to get confused right away. You said that you joined in -- you're joining in -- okay.

MR. FAYAN: Your Honor, as an initial matter --

THE COURT: Wait a sec.

Okay, you joined in Providence Wash's motion filed December 4th, but that's not before me at this point. I'm looking at Footnote 1. So, that derailed me right at the outset because, as I recall, Providence Wash's had to do with this whole third party intended beneficiary thing, right? So, is that the basis of your motion? And that didn't make sense to me because New England Container isn't the carrier, so I don't know why you would be pointing to the carrier's defenses and saying, "It's our motion to dismiss and it's based on that." So, I became completely confused.

MR. FAYAN: Unfortunately, I don't know that I am the attorney that could provide any clarity on that point.

THE COURT: You're here arguing the motion and looking at the papers.

MR. FAYAN: However, Attorney James Ryan from our firm was reached for trial. He informed me this morning and asked me to appear before your Court this morning and ask that this Court permit the, or consider the motion for pro hac vice admission of Attorney Richard Fil who is much more well versed in this matter and fully prepared to --

THE COURT: So, you want him to -- well, your colleague was prepared to argue it. Who is he on trial in front of?

MR. FAYAN: That's correct, James Ryan. I was only informed that he had been reached and he asked me to handle the matter this morning.

THE COURT: He told you that this morning?

MR. FAYAN: Yes, your Honor.

THE COURT: He didn't know Friday he was reached for trial?

MR. FAYAN: I can't answer that, your Honor.

THE COURT: When was he reached for trial?

MR. FAYAN: I can't answer that either, your Honor.

THE COURT: Let me see the pro hac motion.

(Document handed to the Court)

THE COURT: Well, where's the rest of it? This is the petition. I want to see all the supporting documents. This doesn't even come close to conforming to the Supreme Court rules. You want me to admit somebody based on this? And, this was filed less than ten days ago?

MR. FAYAN: I would respectfully request --

THE COURT: Where is the rest of it? You don't know?

MR. FAYAN: I'm at a distinct disadvantage of

providing any clarity.

THE COURT: You go call your office find out where he is and what judge he's in front of, okay?

MR. FAYAN: Very well, your Honor.

THE COURT: And, I'll hold this. Don't let him put you in this position again.

MR. FAYAN: Yes, your Honor.

THE COURT: Tell him I said so.

MR. FAYAN: I will.

THE COURT: We'll take a brief recess.

( R E C E S S )

THE COURT: Do we have any information on the Emhart matter yet?

MR. RYAN: Your Honor, James Ryan. I'm here.

THE COURT: You're on trial in front of whom?

MR. RYAN: Your Honor, I have a matter that is in Middlesex County Superior Court, Justice Hamlin. It was on for trial yesterday. She's still engaged and I'm waiting for a call from the clerk.

THE COURT: I'm lost. I thought you were on trial?

MR. RYAN: I'm waiting for a call from the clerk as to when we begin the trial which I expect will be today or tomorrow.

THE COURT: Why weren't you here at 9:30?

MR. RYAN: Your Honor, I was preparing for trial. I

sent an associate from our firm.

THE COURT: You had that associate come in here and tell me that I had to accelerate a badly drafted pro hac motion because you were on trial, and you were at the office getting ready for trial?

MR. RYAN: My apologies, your Honor.

THE COURT: Oh, don't ever do that to an associate again. Have a seat. I'll be back with all of you in a minute, and I'm not done with that issue. These associates put their credibility on the line.

* * * * *

THE COURT: I will take the Emhart matter.

THE CLERK: Counsel, identify yourself again, please, for the record.

MS. GREEN: Rachelle Green for plaintiff, Emhart Industries.

MR. PIROZZOLO: Jack Pirozzolo for Emhart.

MR. RYAN: James Ryan on behalf of New England Container.

MR. FAYAN: Keith Fayan for New England Container.

THE COURT: Before we start with this piece of it, Mr. Sheridan, you're still in the courtroom. Could you come up here?

(Mr. Sheridan & Mr. Preciphs approach)

THE COURT: While we were taking the break, my law

clerk dropped a document in my lap which I hadn't seen probably because of my absence while I was away last week. As I've said to everybody today, I had the papers at home and didn't get the last of them. Here it is, filed March 26th. Ms. Green submitted it. It's a copy of Judge Smith's opinion and order. And, he seems to say that the State proceeding isn't parallel. Is there a reason that you didn't bring this to my attention this morning? I thought I spent an awful lot of time talking with you about whether these were parallel proceedings.

MR. SHERIDAN: There's a third action, your Honor. It's, therefore, that third case that he's referring to -- there's another action that NECC filed. It's own civil action against the insurer. That action had been filed before the Federal Court action had been filed. Judge Smith knew about it. This action before you today, your Honor, was not even filed when the Federal Court action was filed. As we discussed earlier, this action was filed later in time. He was referring to NECC's action against the carriers.

THE COURT: All right, just curious. I think Ms. Green thinks it probably stands for a different proposition, but, okay.

Now, let's get to this other piece of it which is New England Container's motion.

All right, now, Mr. Fayan appeared this morning not prepared to argue the motion. And, he said, Mr. Ryan, that you were on trial and couldn't make it. And, when I said, "What? He didn't know yesterday or Friday that he was on trial?" Mr. Fayan said he didn't know the particulars. I asked him who you were on trial in front of, and he said he didn't know the particulars. And, I asked where you were and he said he didn't know the particulars. Did he know that you were at the office, Mr. Ryan?

MR. RYAN: I saw him this morning, your Honor, but I don't know if he knew I was at the office at the time that the matter was on here. I've been waiting for a call from the Clerk of the Court.

THE COURT: I appreciate that, but you're here.

MR. RYAN: I am here, your Honor.

The matter -- could I put something on the record with regard to that other matter?

THE COURT: In a minute. Mr. Fayan was put in a bad situation because he said he found out about having to be here just this morning; is that correct?

MR. RYAN: Yes, your Honor, it just -- we discussed it this morning. There was an exchange of e-mails yesterday.

THE COURT: Okay, so he came marching in here with

marching orders from you that he should present to me a miscellaneous petition for admission of counsel pro hac vice. And, this is a miscellaneous petition that you filed. Now, this was filed on the 21st of March, and it wasn't scheduled for a hearing date and there's no motion to shorten time. So, I gathered that this had been filed so someone else, Fil, Richard Fil, could argue today's motion.

When did you find out about the trial?

MR. RYAN: My trial, your Honor?

THE COURT: Umm-hmm.

MR. RYAN: My trial has been scheduled for some time.

THE COURT: Okay.

MR. RYAN: But, unfortunately, I find that the dates are hard to pin down. It was scheduled for yesterday. The trial was scheduled to begin yesterday.

THE COURT: So, that's why the motion for admission pro hac was filed?

MR. RYAN: No, Mr. Fil is counsel with John Peloso who has a long-standing relationship with this client, and as does the firm. And, Mr. Peloso has appeared in court, in the Federal Court to argue this, but Mr. Peloso himself is on trial.

THE COURT: Okay, because the way it was constructed

this morning, the way it was presented left me with the impression that you were unexpectedly jammed up. This poor associate didn't have a clue, and I needed to hear a miscellaneous petition for pro hac vice in the middle of the dispositive motion calendar so that the arguments in the case could be covered. And, then he handed me a miscellaneous petition that is not in compliance with the Supreme Court requirements.

MR. RYAN: My apologies. I see that, and I understand that.

THE COURT: Can I see the rest of the paperwork?

MR. RYAN: With the regard to the miscellaneous petition?

THE COURT: Yeah. Yeah, I want to see the attorney certification.

MR. RYAN: I believe we just have what you have, your Honor.

THE COURT: You believe you just what?

MR. RYAN: I believe we filed what you have in your hand.

THE COURT: All I have is a miscellaneous petition. You didn't file the attorney certification?

MR. RYAN: I do not believe there is one attached, your Honor.

THE COURT: Okay, so not only was I presented with

this little mess between you and your associate, he interposed this miscellaneous petition which was filed out of time without a motion to shorten time. Now, the Supreme Court expects that you're going to sign on to these miscellaneous petitions and you're going to make a representation to me that one of the good cause grounds has been shown, or is in existence rather. And, the Supreme Court requires the moving attorney to make a factual representation that those grounds exist. But, the way you've done this, you've avoided making the factual representations.

MR. RYAN: I apologize, your Honor.

THE COURT: I know the Supreme Court also expects the proposed pro hac vice attorney to sign on, so we then have two attorneys, a local one and the pro hac, signing on under Rule 11 to some factual averments about either a long-standing representation of the client, the lack of experience in the local bar, the complexity of the issues, the agency proceedings and so on. But, for whatever reason, the two of you decided you weren't going to sign on to this.

Tell me about Mr. Fil's long-standing representation of New England Container.

MR. RYAN: Mr. Fil is a partner in the firm of Robinson & Cole. New England Container --

THE COURT: No, no, I want to hear about Mr. Fil, because the Supreme Court --

MR. RYAN: Right.

THE COURT. ...asks everybody to sign on to this, not because his law firm or somebody else in the law firm has a long-standing representation. The question is, does that attorney? Now, does he have a long-standing history of representing this client?

MR. RYAN: I can't make that representation, your Honor. Mr. Fil is here, though.

THE COURT: Well, why don't you go ask him? Find out how many days, months, weeks and years he's been representing New England Container and how many cases, okay?

MR. RYAN: Certainly.

(Mr. Ryan conferring with Mr. Fil off the record)

MR. RYAN: Your Honor, Mr. Fil advises that he has been working on this -- in connection with the environmental issues at this site for about the past year and has probably billed 40 to 50 hours. His contact to date has principally been working in connection in negotiations with the Environmental Protection Agency with regard to this particular site.

THE COURT: Forty to fifty hours starting when?

MR. RYAN: Within the past year, your Honor.

THE COURT: And, when you say he's "been working in connection," I guess I'm trying to understand how that fits into the long-standing representation of NEC. Has he entered an appearance on behalf of NEC in some other litigation? In what has he represented NEC? As opposed to maybe having a long-standing representation with NEC's carrier in other kinds of litigation that NEC wasn't involved in, for example.

MR. RYAN: Would you like me to ask him, your Honor?

THE COURT: Pardon me?

MR. RYAN: My understanding is that his representation has principally been focused on negotiations with issues relating to the Environmental Protection Agency for this site. I don't know if he's appeared or entered his appearance on behalf of NECC.

THE COURT: I'm not getting from this what his history is with NEC.

MR. RYAN: Umm-hmm.

THE COURT: Maybe I'm just a little tired because I've been on the bench all morning, but try me again.

MR. RYAN: Well, he has --

THE COURT: When did he first form the attorney-client relationship with NEC?

MR. RYAN: I'm told that it was approximately a year ago, your Honor.

THE COURT: He didn't sign the -- you didn't provide me with a client certification.

MR. RYAN: That's correct, your Honor. I apologize.

THE COURT: And, I don't see his certification that he hasn't, within the past 60 months, applied for pro hac vice admission in any particular cases.

MR. RYAN: It is not in that paperwork, your Honor. I can represent to the Court that he has not in this jurisdiction.

THE COURT: Well, I'm not interested in your representations or your firm's at this point, because so far they don't have a good history. What I'm seeing is that he isn't interested in making representations and signing on to them.

Now, the attorney certification also requires him to acknowledge that if we do let him in, he'll be subject to the disciplinary procedures of the Supreme Court, and it also includes a release so we can take a look at his history with whatever his jurisdiction is, but he didn't sign that; did he?

MR. RYAN: We didn't ask him to sign it, your Honor. I take full responsibility. Again, we used the wrong form.

THE COURT: Well, here's a guy who wants to be admitted into litigation in this jurisdiction and he

apparently hasn't gone so far as to read the rules applicable to his admission, because if he had he would have said, "Oh, Ryan, you're such a dope, you've got this miscellaneous petition that is not going to measure up to the Supreme Court rules. You didn't ask me to file the attorney certification and we need to clean up this business about my long-standing representation with the client." So, obviously, he didn't even read the rules. I think that's bad form.

I can't see any reason to admit this attorney pro hac vice. Not only has good cause not been shown, I think it's been demonstrated that he should not be admitted. So, the miscellaneous petition for admission pro hac vice is denied.

Don't forget to report that to the Federal Courts whenever you move for pro hac vice admission in Federal Court, Mr. Fil, okay?

Now, let's go on to the substance of New England Container's motion. I will hear you on the motion.

MR. RYAN: Your Honor, as we have set forth in our moving papers, New England Container takes the position that there is no private right of action under the IPRARA that a potentially responsible party cannot bring a private right of action for cost recovery. And, as to Count 2, we have moved that there is no private right of

action under the Hazardous Resource Recovery Act, relying on the case of Hotel Associates --

THE COURT: Well, I have Count 2 -- am I missing something? I'm sorry. I have -- well, I'm looking at your memo, and you've given me two complaints, one in what looks like, PC 06-2274, and one in 06-218 which is a Federal Court action. So, I started out being confused in the first instance. What's the point of those two attachments?

MR. RYAN: The point is that the action brought in the Superior Court before the Court today, with the exception of the first two counts, is identical to the Federal Court action.

THE COURT: Oh, okay. Then you want to start with Count 1. I see. Okay, so this is the complaint that was filed on -- I don't have the filing date here. I think it was November.

MR. RYAN: November 20th --

THE COURT: Let me look at Count 1. Okay, that's the 23-19.14 claim; correct?

MR. RYAN: Yes, your Honor.

THE COURT: And, you're saying that just doesn't give rise to a cause of action?

MR. RYAN: That's correct, your Honor.

THE COURT: Well, tell me the purpose behind it.

Give me the analysis.

MR. RYAN: Well, your Honor, as to Count 1, the analysis is that there is no private right of action --

THE COURT: Right, you've said that. I would like you to get deeper into it for me, please, if you would. What's the public policy behind the chapter, the title? I mean, that's generally how we approach this stuff in determining whether there's a private right of action.

MR. RYAN: That's correct, your Honor.

THE COURT: I'll tell you what. You all can come back at 2:00, and between now and then you can get prepared to argue this motion.

MR. RYAN: Thank you, your Honor.

THE COURT: Two o'clock.

* * * * *

**MARCH 27, 2007, P.M. SESSION**

THE COURT: Okay, we're continuing in the matter of Emhart vs. NEC, 06-6095.

Mr. Ryan, we're picking up, I hope, with Count 1 on your motion to dismiss, and that would be having to do with General Laws 23-19.14; correct?

MR. RYAN: Correct, your Honor.

THE COURT: Okay, here's how I saw this one. If I look at -- I had to bring my volume out here to go back and forth between the pages. If I look at Subsection (b)(3), I see the following language.

Let me start with, actually, the introductory phrase. Subparagraph (b), "Responsible parties as defined in this section shall be liable for:" And, then we drop down to Subsection (3), "Any other necessary costs of removal or remedial action incurred by any other person." I take that to mean any other person." It seems clear, unambiguous. I don't think the legislature would have included that language in this statute if it meant to limit the liability to the State. So, I see this as, perhaps not giving rise to an independent cause of action in that one would be necessary for contribution or negligence or whatever, but it certainly doesn't limit the liability of responsible parties just to the State. In other words, I think it allows for any other party

that has been harmed by a responsible party's pollution, it allows for any other party who has been harmed by that pollution to bring an action for liability. There might be common law grounds, negligence, breach of contract. It might be contribution. It doesn't matter what it is. This section seems, to me, to leave room for that.

So, although the complaint, NEC's complaint, treats it as an independent cause of action that is a violation of the chapter, I think, at the very least, it preserves any other claims they would have against NEC.

That's born out by 23-19.14, 23-19.14-12, "Protection from Contribution Actions." This chapter does protect responsible parties from contribution. Implicit in that is that contribution actions can be brought. The only time protection is afforded is when the responsible party seeking protection has resolved its liability to the State.

So, looking at both of these sections together, I'm led to believe that the legislature, in enacting this particular chapter, didn't intend to limit the liability of responsible parties to other people, including other responsible parties.

So, that was my take on the argument on the Chapter 19.14 issue. So, let me hear you on that.

MR. RYAN: Your Honor, my response to your inquiry

would be that had they intended that, they would have laid it out more clearly. This Act was enacted in 1995. It's certainly very similar to the provisions in CERCLA. I think it's clear. Certainly, we have argued before, it's been clear since Judge Smith's decision that Emhart is really a responsible party which is now looking for contribution.

THE COURT: Well, I'm not quite on that piece of it yet. I'm just talking about this argument in which NEC asserts that there's no cause of action asserted under 19.14 at all. From what I'm gathering from the argument is that any action that can be brought pursuant to 19.14 is something that can be brought by the State only. Isn't that what you're saying?

MR. RYAN: Yes, it is, no private cause of action.

THE COURT: Okay. I disagree with that analysis because it seems to me that 19.14-6(b)(3) tells us that "Responsible parties shall be liable for any other necessary costs of removal or remedial action incurred by any other person." If I read that to mean that only the State can take action under this, then I would have to read this to mean that the State somehow becomes the collection lawyer for other parties who have had to pay costs of removal or remedial action, and that doesn't make any sense to me. So, at the very least, I see this

as preserving other claims that other parties might have.

When we get to the piece of it in which you argue that because CERCLA doesn't allow responsible parties to recover against each other, therefore this statutory scheme must require the same thing, I'm not so sure I agree with you on that one either. I think the Rhode Island statutory scheme is different from CERCLA. The Subparagraph (b)(3) and then 23-19.14-12 I think anticipate actions for contribution, and what else could that be except actions between jointly responsible parties?

MR. RYAN: Well, the Court raises a very good point. It seems to me that now that the District Court has established that there is jurisdiction there, I wonder about, as we expressed in our brief, but I think it's more true today than it was just a week ago, what sense it makes for two different courts to be essentially resolving the same issues.

THE COURT: Well, I'm in the middle of resolving some of the issues against your clients.

MR. RYAN: I understand, and maybe that's why I feel the way I feel.

THE COURT: I'm sure you do.

MR. RYAN: But, there is controversy on ruling on very similar issues.

THE COURT: I'm not fully understanding. This is the problem. I think I said this to Mr. Sheridan before you were here. You brought the motion. You want me to respond to this argument. You're perfectly comfortable if I go forward today and say, no, there's no cause of action here. And, you came here this morning, or your associate did, and your proposed pro hac vice counsel came here this morning prepared to argue so that I would make a determination that there's no cause of action here. But, now you're saying that I shouldn't be ruling on this because it's better left to another court. It doesn't make any sense.

Why did you file the motion? Why did everyone appear here today to argue the motion?

MR. RYAN: Well, only because the action was filed here while the pend -- the motion to dismiss was pending in Federal Court. That's --

THE COURT: Right, but nobody made you file the motion to dismiss. You're saying, "Here's my motion to dismiss. By the way, you shouldn't be ruling on it."

MR. RYAN: No, I'm not -- perhaps, your Honor, one of the things we can ask for is a stay and that might make more sense under the circumstances.

THE COURT: I just took your motion in the order in which it was presented, and you did, too. So, if you

want to go to the back of the motion and start with the part in which you ask for a stay -- let's see, where is that?

MR. RYAN: It's Point 4, your Honor.

THE COURT: Pardon me?

MR. RYAN: Point 4 in --

THE COURT: I had the -- strike that.

As I mentioned when I was ruling on the Travelers' motion when Mr. Sheridan was arguing, I was a little confused about what I was being -- or, what the legal analysis is on this whole business of "Dismiss the case because it's pending somewhere else." It seemed to me that it was a -- there was a bit of a public policy argument thrown in there. I wasn't satisfied that the pending cases are identical.

Why don't you tell me how they're identical?

MR. RYAN: Counts 3 through 11 in the State case are identical to the counts in --

THE COURT: Well, just because some of the counts are identical doesn't mean that this claim -- claims here are identical to the Federal Court claims.

MR. RYAN: I think Count 1 parallels Count 3, your Honor. Count 1 being, of course, being the claim under the Industrial Property Remediation and Reuse Act is parallel to the CERCLA count in Count 3. And, then Count

2 which has to do with the Hazardous Waste Management Act, it's closely parallel also to the CERCLA counts, Count 4 --

THE COURT: I think this is going to be the longest running motion to dismiss in the history of this state. You might want to call this judge in Massachusetts and tell her you're tied up. And, if you don't, I will. What's her name?

MR. RYAN: Judge Hamlin.

THE COURT: Which Court?

MR. RYAN: It's Superior Court in Middlesex County, your Honor.

THE COURT: Which complaint do you want me to look at from the Federal Court?

MR. RYAN: Well --

THE COURT: You're saying I should dismiss this action, 06-6095, because it's identical to something else they filed against your client. Which complaint should I be looking at?

MR. RYAN: Well, we've attached the two complaints, your Honor.

THE COURT: Which one do you want me to start with?

MR. RYAN: Counts -- I mean, the Federal Court action, CA 06-218.

THE COURT: Okay, and if you track that -- well, I'm

looking at it, okay? Isn't there a CERCLA claim in this?

MR. RYAN: Yes, your Honor.

THE COURT: I must be confused. I thought you just sent me to 06-2274.

MR. RYAN: Yes, your Honor.

THE COURT: Well, that's NEC's compliant --

MR. RYAN: My apologies, your Honor.

THE COURT: ...against Travelers and Providence Washington.

MR. RYAN: My apologies, your Honor. I apologize for my error in this regard. The Federal Court complaint in Tab 2 which is attached to our motion -- our memorandum in support of our motion to dismiss is the Federal Court complaint.

THE COURT: Okay, so you want me where, at Tab 2 instead of Tab 1?

MR. RYAN: Well, Tab 2 is the Federal Court complaint which was pending when this action was filed. And, the point that was raised by ourselves and by Travelers, and previously by Providence Washington, is that the counts in the complaint before the Court today are virtually the same except that they have added the two state law counts in the case -- in the file before the Court.

THE COURT: Right, that's what I understand the

distinction to be. The complaint in Providence County, 06-6095, raises many of the same issues but also brings the State Court state law based claims.

MR. RYAN: That's correct, your Honor.

THE COURT: The Federal Court action raises many of the same issues, but there's a CERCLA based claim.

MR. RYAN: That's correct.

THE COURT: So, they really aren't identical. One is the state law based set of claims and the other is a federal, CERCLA based claim.

MR. RYAN: Well, I think --

THE COURT: I mean, I'm hearing -- I keep hearing for purposes of argument that these things are identical or near identical. They're not. One is state law based one is federal law based. I don't get it.

MR. RYAN: Could I have a moment, your Honor?

THE COURT: Sure.

MR. RYAN: Well, I may have stated it backwards, your Honor. I apologize for that. But, the state law claims are also in the federal complaint.

THE COURT: Okay.

MR. RYAN: Count 3 and Count 4.

THE COURT: Okay, well, let me look at it. I'm looking at Count 1. Count 1 in the federal action is CERCLA.

MR. RYAN: That's right.

THE COURT: Count 1 in the State action is 23-19.14-6(b)(3), and/or a common law claim for contribution and indemnification. So, I don't see Count 1 as being identical. If I look at Count 2 of the Federal Court claim --

MR. RYAN: If I may be heard.

THE COURT: ...I see they're looking for contribution under CERCLA which is different from -- I don't know what the contribution requirements are under CERCLA off the top of my head, but to the extent that Count 1 in the State Court case seeks contribution, the contribution claim in Federal Court case is CERCLA based and that's different.

MR. RYAN: If you look at Count 3 in the Federal Court complaint, your Honor, you will see that same claim under the same -- the same state law claim under the Industrial Property and Remediation and Reuse Act as appears in the complaint which is presently before the Court.

THE COURT: I see that. So, we have one overlap so far.

MR. RYAN: Umm-hmm.

THE COURT: And, then we have Count 4 which looks like it's another overlap. So, that's two.

MR. RYAN: That's correct, your Honor.

THE COURT: And, then we have equitable claims, declaratory claims and claims having to do with the rights under the insurance policies. And, as I understood from Mr. Sheridan, this same motion is pending in front of Judge Smith -- Magistrate Smith.

MR. RYAN: Judge Smith.

THE COURT: Whatever he is.

Mr. RYAN: And, he just ruled on it, your Honor.

THE COURT: Right, but Mr. Sheridan said the reason he didn't bring that to my attention because it had to do with a different set of the claims, so that really wasn't relevant.

MR. RYAN: I wasn't here, your Honor. The counts are the same to me. That's part of our motion here, that the same matters are being litigated in Federal Court.

THE COURT: Well, if you're telling me that Judge Smith just ruled and said that these aren't -- let's see, where is it?

I very briefly looked at this decision and I just saw it for the first time this morning. He denied a motion in which apparently New England Container argued that these were parallel proceedings, and Judge Smith said they weren't.

Am I not reading this correctly?

MR. RYAN: No, that motion was argued before suit was filed in this case, your Honor.

THE COURT: Before suit was filed in this case?

MR. RYAN: That's correct.

THE COURT: It's dated March 20, 2007. That was last week.

MR. RYAN: I know, but the Federal Court case was filed May 11, 2006. The motions were argued on November 13th of 2006. Emhart came to the State Superior Court on November 22nd of 2006, and we just got a ruling last week from Judge Smith on the motions which were argued.

THE COURT: Well, what were the differences between those two sets of cases? He was distinguishing between two cases, right? Saying that they're not parallel proceedings.

MR. RYAN: I think there's some language in there, but that really was not the issue before him at that time.

THE COURT: Okay.

MR. RYAN: My point would be, your Honor, that he -- part of our claim was to dismiss both of the CERCLA counts. If that happened there would not be Federal Court jurisdiction. The Court dismissed one, but not the other. So, there is Federal Court jurisdiction of all

these counts which are included in the State case, which I would say really are the very same.

THE COURT: Oh, I can see there's some overlap. I'm just very uncomfortable with dismissing the entire case because there's some overlap. And, I'm uncomfortable, given the way this has all been presented, making a determination that there is 100 percent overlap in any particular count. That's my problem. I don't have any difficulty with all of you getting to one person on one set of issues and another person on another set of issues. That's good because we don't want to issue conflicting decisions.

I'm going to leave that for a moment and go back to your motion in the order in which the issues were presented. Your argument under Item Number 1 is that there are no facts that would entitle Emhart to recovery under 23-19.14-6. I disagree with that analysis. Specifically, I disagree with the analysis in your Paragraph A, "The Industrial Property Remediation and Reuse Act does not create a private cause of action." I'm not going to dismiss the count on that basis because I think -- it doesn't give rise to a cause of action. It certainly preserves existing causes of action. So, I'm not going to dismiss any claim for contribution or liability that we have here on that basis.

The Subsection B entitled, "Even if IPRARA allowed a private right of action, a responsible party cannot seek cost recovery." I disagree with that because the statutory scheme clearly anticipates that people will bring actions for contribution. Sometimes they're protected from those actions, but there's no bar here to those actions. So, on that ground -- strike that. That doesn't give me grounds to dismiss this Count 1.

Now, looking at Count 2 --

Let me stop there. I want to hear from opposing counsel on this Count 1 business because there's so many issues here, if I start going through them all at once I'm going to --

MR. PIROZZOLO: As to Count 1, your Honor is absolutely correct. An analysis of the statute is clear. It gives a right of action by any other person, and the analogy to --

THE COURT: Does it give a right of action or does it just preserve existing common law and other claims? In other words, does it give a right to a cause of action or does the legislature evidence its intent not to bar otherwise existing causes of action or is there any difference?

MR. PIROZZOLO: I think it's both. I think, yes, it would apply to common law causes of action, but also in

Part (a) of the statute, "A party --" "Responsible parties are strictly, jointly and severally liable for the actual or threatened release of any hazardous material at the site:" If they are owners or operators of the site. NECC was an operator at the site. "Any person who at the time of disposal of any hazardous material owned or operated at the site." NECC operated the site. So, Part (a) creates liability. Part (b) gives the right of action. The right of action would also extend to common law claims I think, your Honor.

THE COURT: So, you're saying not only are there common law contribution or equitable right of contribution, the statute codifies that?

MR. PIROZZOLO: It's not ambiguous. I mean, you can't read it any other way.

THE COURT: Okay, now what about Subsection (b)? Even if it does allow a private right of action or contribution, a responsible party can't seek cost recovery. I think you've probably answered my question already, but I want to hear you on it. They're saying that CERCLA doesn't allow it so we should read the Rhode Island statute the same way we read CERCLA.

MR. PIROZZOLO: Well, that's not true. CERCLA -- and that's been confused. And, if the Court would like the background.

What has occurred and, indeed, one of the reasons we're here is that the Supreme Court case of Aviall restricted recovery under Section 114 of CERCLA which involved contri -- specifically contribution actions. And, under Section 107 of CERCLA, the courts have read an implied right of contribution, and that is what Judge Smith follows in his decision. And, if you look at Page 4 of the decision, he says in the first count NECC asserts that Emhart is not an innocent party and, consequently, liable for site cleanup. It is prohibited from pursuing cost recovery under Section 107(a). But, then in resolving that issue, he says on Page 8, Emhart really seeks an implied right of contribution under 107. And, in ultimately resolving it, he said, "Thus, the question is whether Emhart may permissibly seek an implied right of contribution under 107. While the conclusion is not free from doubt, this Court believes it can."

So, Judge Smith has concluded that Emhart does have an implied right of action under 107 for contribution. It's quite clear under any reading of it, Emhart has a right of cost recovery. The distinction is if Emhart is a totally innocent party, it's a cost recovery action. And, if Emhart had contributed to whatever the problem is, it becomes a contribution action.

Now, what's occurred since Aviall is two Courts of Appeals have held that there is an implied right of contribution, and one -- I believe it's the Third Circuit -- held that there is no implied right of contribution. The Supreme Court now has -- that's been appealed to the Supreme Court and that is now being briefed in the Supreme Court in this session. So, ultimately by the end of the -- by the summer -- by the spring or summer, we're going to know whether there is or is not a CERCLA claim.

The reason we're here, your Honor, is that --

THE COURT: Well, let me just jump in. I'm not sure that I have to reserve decision for quite that long because in reading our State statute -- in other words, I don't have to duck the issue and wait for that issue because when I read our State statute, I don't even have to get to CERCLA.

MR. PIROZZOLO: That's my point, your Honor. That's right, because there is this question in the Federal Court and we're here. Our right to be in the Federal Court is in doubt. Judge Smith has now said we have a right to be there, but he does not have the last word.

This Court clearly has jurisdiction and clearly there's a right of action under the Rhode Island statute as well as our common -- our equity claim.

THE COURT: Right. Well, he's asking me to dismiss

your claim because I should be turning my eye to CERCLA for guidance in interpreting the Rhode Island statute, which I find, by the way, clear and unambiguous. And, I'm just asking you to comment on that, and I think you have.

MR. PIROZZOLO: Yeah, I don't think you need any federal guidance. I think Rhode Island has written a statute that is clear and unambiguous --

THE COURT: All right.

MR. PIROZZOLO: ...in this respect.

THE COURT: Let's go to Count 2.

Mr. Ryan, Count 2 was a little different, and I could see the point to be made on --

Let me make sure I'm on the right count in the complaint. Okay, Count 2 is entitled "Violation of Rhode Island General Laws 23-19.1." I viewed this chapter a little differently. I see this chapter as being the State permitting enforcement scheme. And, by that I mean this is the piece of it that allows the State to give permits and to bring enforcement actions and everything else. I think I agree with you on this one that there's no private right of action that's created by the chapter.

Now, on the other hand, if NEC -- NECC?

MR. RYAN: CC.

THE COURT: If NECC violated the chapter, evidence

of those violations would certainly be evidence of NECC's liability in the context of a 23-19.14-6 or 23-19.14-12 claim for contribution or indemnification action. But, that's a little different. So, while I see 19.1 as extending only to the State and its right to pursue civil penalties -- I'm sorry -- civil remedies and criminal penalties, although I see that being the thrust of 19.1 --

I'm going to say that better. It's been a long morning so far, and we're in the afternoon. Let's start again.

19.1, as I see it, is the permitting and enforcement scheme. It extends to the State the right to pursue civil remedies and criminal penalties. I don't agree that it gives rise to a private cause of action other than to allow the State to chase for civil remedies. On that basis, I can grant your motion I think, but that would have to be with a clear understanding that if, indeed, NECC was in violation of the chapter, that information, that evidence, would probably be admissible in the trial of this case because their violations would be evidence in the litigation on the contribution. That's what I'm trying to say. So, if I grant your motion with respect to Count 2, I need to make it perfectly clear that this is not a signal to the trial

judge that evidence of NECC's violations wouldn't be admissible at trial.

Do you understand what I'm saying?

MR. PIROZZOLO: I do.

THE COURT: Why don't you agree with my distinction?

MR. PIROZZOLO: To some degree I concur. If you parse the section, Section (a) says, "Any person who shall violate shall be absolutely liable for certain costs."

THE COURT: Wait a minute. Let me --

MR. PIROZZOLO: It's very clear --

THE COURT: Wait, wait, wait.

MR. PIROZZOLO: This is 23-19.1-22.

THE COURT: Let me get to my section. 23-19.1-22.

MR. PIROZZOLO: 22(a). It begins with, "Any person," and then the operative language is toward the end where it says, "Shall be absolutely liable for the cost of containment, cleanup, restoration and removal of the hazardous wastes, and for all damages, losses or injuries, including environmental which result directly or indirectly from the discharge."

Now, that's a statement of -- that creates liability.

THE COURT: Yeah, but as to who? I think yes to the State.

MR. PIROZZOLO: Creates -- if I may, creates liability so far. Then under (b) says, "Proceedings brought pursuant to this section shall be instituted by filing a complaint in the Superior Court." So, we filed a complaint in the Superior Court. But, when you get to (c) which is actions by the State, it's permissive. It says, "The actions --" If you go to (c), "An action pursuant to the statute may be brought by the Attorney General or the Department of Environmental Management in the name of the State as trustee of those natural resources."

So, it creates the liability. It has jurisdiction in the State Superior Court and it allows the Attorney General to bring an action in the name of the State. Far from clarity, but there is -- I think that is a permissible and appropriate reading of the statute. And, it's for that reason in the cited case, Gail vs. New England, where the Court held -- Superior Court held that there was not a private right of action under this statute. And, the Court said I was not free from doubt and thought and opined, it's something that might be certified to the Rhode Island Superior Court. But, I think your Honor's analysis is that an action under the first statute, 23-19.14-6(b)(3), would embrace conduct defined as illegal in (a) and (b), and that being the

case, we're -- you know, we're content. That is a part of our claim.

THE COURT: I thought your complaint was really well drafted, but on a certain level -- and, I could see why it happened. On a certain level, it seemed to be overpled, because my view of this is there are claims for contribution and indemnification out there. Somebody has to, if it's possible, apportion the liability, A, and depending on who settles with the State and who doesn't, there may or may not be an impediment -- it's almost like a joint tort-feasor kind of release. So, I see this basic common law claim for contribution or indemnification sitting out there.

I looked at all these statutes. I don't see any one of them as interfering with those common law claims. In fact, I see the legislature as having taken a good deal of care to make sure it didn't interfere with all of that. I can see why, in going through the analysis, you would have taken care to identify each chapter and each section and go on to argue that not only do we have these common law claims, these state law claims, we also have statutory based claims and here they are. What's happened here is because you have so isolated the different claims that have their same -- that have their fundamental underpinning of which is contribution and

indemnification, we're now splitting hairs about whether this one is merely evidence in the context of that one, whether this creates a private right as opposed to that one creating a private right, and I think we're going down that road unnecessarily. It's not a criticism. I can see why you wrote your complaint the way you did, but you're taking us down this path.

MR. PIROZZOLO: Maybe excessively cautious in a sense that could have been pleaded in one count.

THE COURT: Right, and we still would be here arguing the same stuff.

Looking at the overall procedure, remedies, penalties, definitions, permitting requirements of 19.1, I have to disagree with you. I think that, true, the legislature did not, in enacting 19.1, interfere with any other claims that a responsible party might have against other responsible parties. I disagree that this gives rise in and of itself to an independent private cause of action.

Having said that -- and, I'll say this again. Now, evidence and violations of this chapter would most likely be admissible in the context of your common law or other statutory based claims, but I don't think that 19.1 in and of itself gives rise to a cause of action such that you could bring a claim under it if you didn't have

claims for contribution and indemnification, state law, common law or under 23-19.14.

So, I'm going to grant the motion on Count 2. That's what I'm inclined to do here.

MR. PIROZZOLO: I understand, your Honor.

THE COURT: And, I'm going over that in detail because I see a huge difference between a right of action and evidence.

It's like running the stop sign. If you run the stop sign and you rear-end my car when I'm through the intersection and just parked there, I can't pursue criminal penalties or revoke your license, but running the stop sign is evidence of negligence in my civil claim. That's all I'm getting at.

Okay, so, that takes care of Count 1 and 2 of the complaint.

Now, Count 3 is equitable indemnity. That's not a subject of the motion to dismiss on a substantive ground, is it?

MR. RYAN: No, it's not, your Honor.

THE COURT: This is just the, "They're already in Federal Court" ground, correct?

MR. RYAN: That's correct.

THE COURT: So, I'll put that aside for a second. Substantively there's a cause of action pled here.

Count 4, same thing.

MR. RYAN: Correct.

THE COURT: It probably should have been a two count complaint, one for equitable indemnity and one for declaratory judgment.

Now, Count 5 that doesn't -- that's Travelers'.

MR. PIROZZOLO: Remaining counts are the insurer's, your Honor.

THE COURT: Okay. Well, the problem is that I'm looking at the memo, NECC's memo, and it addresses Counts 5 through 10, and that I found confusing because those counts aren't addressed to you.

MR. RYAN: Well, we thought we should make the argument that, your Honor, those policies were obtained by NECC for NECC's benefit, not for the benefit of Emhart, Emhart not being --

THE COURT: Well, you've basically taken the tact that Travelers took and Travelers said -- this was this morning when you weren't here. Travelers said, "Hey, they didn't make a claim that they were third party beneficiaries or intended beneficiaries." Well, they did. That's in the complaint. We've established that. No one has given me the policies. There's some 20 -- I'm sorry -- 16, maybe, policies at issue. I can't say as a matter of law, having looked at those policies -- having

not looked at those policies, rather -- strike that.

I can't say as a matter of law, having not looked at those policies, that Emhart isn't an intended beneficiary or a third party beneficiary. If I had the policies, that would take me to a Rule 56 standard. Here, you're holding me to a Rule 12 standard. Can I say that there's no set of facts upon which an individual couldn't be an intended beneficiary or a third beneficiary to an insurance contract? I can't say that. The Supreme Court has acknowledged that they can. So, I thought, to the extent that you're trying to assert the arguments that should be raised by carriers who have been sued directly, the motion ought to be denied. I think that statute -- and, I said it this morning probably better than I'm saying it now. I think 27-7 was aimed at keeping plaintiffs from taking a direct shot at a tort-feasor's carrier. It probably originated in the old days when plaintiffs wanted juries to know that there was insurance. Then, as things evolved, we became more sophisticated about the privity argument as the statute is a good one. But, if a third party is an intended beneficiary or a third party beneficiary, then they have something that is close enough to privity to maintain the action.

As I said to Mr. Sheridan this morning when we were

arguing the Travelers' motion, I see this not as me construing 27-7-2. 27-7-2 is clear. The question is whether it's applicable at all. If Emhart is a third party beneficiary or an intended beneficiary, then 27-7-2 isn't applicable. That's because if Emhart is a third party or intended beneficiary, it is effectively suing its own carrier, the one that it's extended benefits to. That's not what 27-7-2 is aimed at and that's not what the clear language of 27-7-2 calls for. So, if they are intended beneficiaries or third party beneficiaries, and that will depend on the language in the contract, then 27-7-2 doesn't even come into play. So, if that's the argument on Counts 5 through 10, then the motion ought to be dismissed.

MR. PIROZZOLO: Excuse me, your Honor.

THE COURT: I'm sorry, the motion ought to be denied, but I'm going to hear you on it. So, go ahead and argue it.

MR. RYAN: Your Honor, we cited some cases. There's a strong presumption that the contract is only for the benefit of the insured unless it expresses otherwise. There's no evidence before the Court that it did in any of these insurance --

THE COURT: They made the allegation. You've held me to a Rule 12 standard. They've made the allegation

that they're third party or intended beneficiaries. You say that they're not and that they haven't come forward with evidence to demonstrate that they are, but that's not the standard we're here on.

MR. RYAN: The other part of our argument, of course, is that they don't have standing with regard to this issue that they have not suffered any injury at this point. And, again, we've cited a few cases for that proposition.

THE COURT: Let's start with the first piece of it, counsel. Address this business of, "You can't bring the claim because of 27-7-2."

MR. PIROZZOLO: This is the -- this was the issue that was decided by your Honor I guess in Providence Washington. It's a DJ action, and as a DJ action, the cases indicate that we do have standing to seek a declaration as to the liability of the insurers in these circumstances. And, that was argued -- actually, the same arguments made by Travelers, same arguments being made here, was made about two months ago in this Court and your Honor has ruled on it.

THE COURT: It was all done on a Rule 12 basis, right?

MR. PIROZZOLO: Oh, yeah.

THE COURT: So, all these motions are coming in and

I still have yet to see the policies.

MR. PIROZZOLO: That's right.

THE COURT: Now, what about the standing issue?

MR. PIROZZOLO: It's the same analysis. I feel like I am repeating myself. We've made the allegation that we are entitled to the benefits of the policy.

THE COURT: Well, they're saying you haven't suffered an injury in fact.

MR. PIROZZOLO: It's a DJ -- first of all, we have because there are past expenses that we're suing for. And, they're not the largest part of the case, but, yes, we have, and we do allege we've suffered damage already. But, we're also seeking a declaratory judgment as to whether there's coverage going forward on the site.

THE COURT: Why does someone who's potentially a third party or an intended beneficiary have to wait until a judgment has been entered against them before they ask for a declaration that there's coverage? I think that's basically what you're saying.

MR. RYAN: Yes, and we cite some cases for that proposition, your Honor. I think what the Court is saying, that interpretation of the statute has evolved and the -- it may not be interpreted the same today as it was some time ago.

THE COURT: Well, you know, Mr. Sheridan tried to

get me to say that I was interpreting 27-7-2. I'm not. 27-7-2 addresses those situations in which individuals that aren't parties to the insurance contract and cannot be considered to be third party or intended beneficiaries can sue a carrier. They're saying you're outside that whole column of people and exceptions. They're saying 27-7-2 doesn't even apply. And, I think they're right about that. Those injury in fact cases all have to do with individuals, I think, that fell within the statutory exceptions for suing a carrier. This is different. This is somebody who is saying, "I'm a third party beneficiary, I'm an actual beneficiary. I'm not just trying to get money under somebody else's --" strike that. They're taking the position that they're an actual beneficiary, intended or third party, as opposed to just trying to recover what a tort-feasor would have had to pay. That's quite a bit different. So, I see them as having standing to ask for a declaration interpreting what their rights are as a third party beneficiary or an intended beneficiary. So, on that ground, I certainly can't grant your motion to dismiss.

Now, that still brings me back to this, "Dismiss the whole thing or stay it while the prior pending federal action is litigated."

Before I go off on that, let me just say for the

record, I've denied the motion as to Count 1 of the complaint. I've rejected the grounds asserted in support of the motion to dismiss for Count 1. On Count 2, I've granted the motion. I don't see 23-19.1 as giving rise to an independent cause of action. That's not to say that evidence of those violations wouldn't be admissible in a contribution and/or an indemnification claim. I'm not passing on 3 or 4. I think we all agree that those two are state law based claims and they're not the subject of the motion.

So, so far we have Count 1 intact. Count 2 not intact. Count 3 intact. Count 4 intact. Count 5, 6, 7, 8, 9, 10 all relate to Emhart's status as a third party or intended beneficiary under these various policies. So, those are intact. There's more state law claims involved in this than there are federal claims I think. Counts 1 and 2 are state law based. 3 through 10 all have to do with --

MR. PIROZZOLO: It's --

THE COURT: Pardon me?

MR. PIROZZOLO: I don't mean to interrupt.

THE COURT: Yeah, you did, but go ahead.

MR. PIROZZOLO: It's all state law, the entire complaint is based on state law claims.

THE COURT: When I said that, I meant the whole

picture. There's more state law stuff floating around between all these parties than there seems to be federal law issues. Maybe I'm reading too much into it.

MR. PIROZZOLO: I think that's actually right, and depending upon what the Supreme Court ends up doing on this Aviall issue, these disputes very well may end up being state law claims in State courts. You're absolutely right, your Honor. It's fundamentally state law claims.

THE COURT: As I shuffle through this Federal Court claim, it is very close to this claim but you've added the extra pieces of it being CERCLA.

MR. PIROZZOLO: Yes. The reason we're here, your Honor, is that -- we began the case in Federal Court because Judge Smith had already handled a case involving this site. In fact, we tried that case last Fall. He's thoroughly familiar with the case.

THE COURT: Boy, does that give me a great excuse not to exercise jurisdiction right now.

MR. PIROZZOLO: The problem is, jurisdiction is in jeopardy and we do have an absolute right to be here in State Court. I even went to the Constitution and the Rhode Island constitution gives us that right.

THE COURT: Remain calm.

MR. PIROZZOLO: While Judge Smith --

THE COURT: I recognize that. I recognize that you don't want to be in a position where, because of the CERCLA issues your Federal claims go down the tubes and so do your state law claims.

MR. PIROZZOLO: Judge Smith said so, he said as much. He said he would be -- when we were arguing, I made the argument that, "Well, the pendent State claims would survive." And, he said at this stage of the action, he said we might -- if there isn't Federal jurisdiction -- and, part of the reason we're here is that jeopardy and part of it was his suggestion. He said we might be in the State Court -- better off in the State Court. And, even though he's ruled, it's not necessarily the last word. We want to be sure we can proceed with this action. And, here, for better or for worse, we have an entitlement to proceed. There is no question of this Court's jurisdiction.

THE COURT: The issue -- I shouldn't have used the word "jurisdiction" because I was thinking of the pendent jurisdiction issue you're going to face if you lose on the federal claims in in Federal Court. That's why I've been reluctant to say, "Oh, yeah, sure, we'll dismiss this," because if you're thrown out of the Federal Court, now we're all back to square one here, new complaint, all new issues, same arguments. It's a big waste of time.

MR. PIROZZOLO: Yup.

THE COURT: Let me just take a quick break here. In the meanwhile, would you approach the bench?

Mr. Sheridan? I want to see all the attorneys up here.

(Bench conference)

THE COURT: I'm going to give my court reporter a break.

( R E C E S S )

THE COURT: We're proceeding again in the matter of 06-6095, Emhart vs. New England. We just took a brief recess. During that recess, I met briefly with counsel. It seemed to me that all of the parties here have raised good issues. I can see why the plaintiff has filed in both the Federal Court and the State Court.

The defendants have brought motions to dismiss. I understand why they've raised the substantive grounds they have. Unfortunately, that's invited me to pass on those substantive grounds, and I've -- between last month's or the earlier motions and today's motions, I've ruled against them on the substantive issues to the extent that Rule 12 motions to dismiss raise substantive issues. So, the defendants are stuck here with my rulings. This has all muddied the waters a little bit I think. The motion to dismiss is denied except for Count

2 as I've already indicated.

At this time I'm going to deny all of the motions to stay the proceedings. Travelers asked for a stay. NECC has asked for a stay. I won't stay the proceedings, but I'm going to ask the attorneys, out of courtesy to me and to each other, to forbear in filing motions for summary judgment, discovery motions and so on and so forth just for, let's say, two weeks. And, again, this is not an order. I'm asking for this out of courtesy to me and to your co-counsel and opposing counsel. Having heard what I heard in the conference, I think it's appropriate for me to go to the Presiding Justice of this Court and suggest to him that he make a special assignment of this case for both purposes of discovery, trial, all substantive issues and so on. I don't know what he'll say. He may look at me and laugh. He may say, "What a great idea."

While I'm going through that process, I'd like the attorneys to turn to their clients, sit everybody down and figure out what the clients want to do. I think the plaintiff needs to decide what risks the plaintiff wants to take and what risks the plaintiff doesn't want to take in terms of the two jurisdictions, federal versus state.

I think the defendants ought to figure out what they're willing to offer by way of stipulations. If you

can't agree to being in the Federal Court versus the State Court, and if you can't agree to preserve actions versus other actions, you at least ought to come up with some stipulations on discovery so you don't have to duplicate everything.

So, go to your clients this week. Let's have a conference next week. I'll talk to Judge Rodgers. Everybody will have had an opportunity to think about this, and maybe we can get all of you on the correct track. As I said during the conference, you all want to litigate this. You want a judge that is fair and impartial. You want someone who can read the law. You want a decent trial and you want to get on with your lives. And, you're getting mired in things that you ought not to get mired in as far as I'm concerned, and you're going to be wasting everybody's time if you don't straighten this piece of it out.

So, the motion is granted in part and denied in part. Travelers' was denied. Somebody present an order and judgment -- I'm sorry. Not a judgment. An order on this, okay? You can leave out the part about it going into this two-week hiatus because that's not an order. Okay.

Who wants to be -- Mr. Ryan, how long is your trial?

MR. RYAN: Just two or three days, your Honor,

hopefully.

THE COURT: All right. Do you want Mr. Sheridan to be the one to coordinate all this or your associate or what?

MR. RYAN: I'd be happy to do it, your Honor.

THE COURT: All right. And, quite frankly, I think you're doing an awfully good job, and I don't see any need for any pro hac vice counsel. You've been in my courtroom any number of times. You're very competent. You know what you're doing. Your firm knows what it's doing. This long-standing representation stuff that everybody is using to get out-of-state law firms in here without taking the bar exam just is not something -- is not a practice that I like, okay? So, I'm not going to tell you you can't bring any more pro hac vice motions. But, if you do, make sure they're in proper form and just understand that I don't favor them, nor does the Supreme Court, okay?

MR. SHERIDAN: Thank you, your Honor.

THE COURT: There's plenty of competent lawyers here that do a darn good job. And, nobody realizes when the pro hacs come in and they start doing all the paperwork, I end up on the phone day in and day out explaining, "You can't file it this way, you got to file it the other way, you've submitted the wrong form of order," blah, blah,

blah, blah, blah. So, it's a bigger problem than me just trying to restrain somebody.

MR. SHERIDAN: Candor compels me to say we've already filed a pro hac motion that will be appearing on your calendar forthwith.

THE COURT: You know what you can do, Mr. Sheridan, if you want to set up an e-mail distribution list -- did you want to do it that way so we can coordinate this? I can give you my e-mail address, but it's not to be spread around. I expect everyone to keep it in their office and don't contact me except in the context of what we're trying to put together here. Do you want to do that?

MR. SHERIDAN: Certainly, your Honor.

THE COURT: Capital P, small h, u-r-s-t, at courts, plural, c-o-u-r-t-s, dot, r-i, dot, gov. So, make a distribution list for everybody that is involved. Don't put the clients on it. Just me and the lawyers. And, then we can set up the conference that way, and we can keep everybody posted and I can let you know about the progress that I have made with Judge Rodgers.

MR. SHERIDAN: Thank you, your Honor.

THE COURT: Does that work?

MR. PIROZZOLO: Thank you, your Honor.

* * * * *