# EXHIBIT 2

# PART I

STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

PROVIDENCE, SC. SUPERIOR COURT

EMHART INDUSTRIES :
:
Vs. : PC 2006-6095
:
NEW ENGLAND CONTAINER, et al :

DEFENDANTS' MOTIONS TO DISMISS

HEARD BEFORE

THE HONORABLE JUSTICE PATRICIA A. HURST

MARCH 27, 2007

APPEARANCES:

RACHELLE R. GREEN, ESQUIRE
-and -
JACK A. PIROZZOLO, ESQUIRE . . . . . FOR THE PLAINTIFF

R. KELLY SHERIDAN, ESQUIRE
-and -
JASON C. PRECIPHS, ESQUIRE . . . . . FOR THE DEFENDANT (Travelers)

JAMES W. RYAN, ESQUIRE
-and-
KEITH E. FAYAN, ESQUIRE . . . . . . . FOR THE DEFENDANT (NECC)

SUSAN L. INMAN
COURT REPORTER

C E R T I F I C A T I O N

I, SUSAN L. INMAN, hereby certify that the succeeding pages, 1 through 69, are a true and accurate transcript of my stenographic notes.

Susan L. Inman
Court Reporter

MARCH 27, 2007, A.M. SESSION

THE COURT: Emhart vs. New England Container.

MR. SHERIDAN: Ready, your Honor.

THE CLERK: Counsel, identify yourself for the record, please.

MR. SHERIDAN: Kelly Sheridan for the Travelers.

MR. PRECIPHS: Jason Preciphs for Travelers.

MR. PIROZZOLO: Jack Pirozzolo for Emhart.

MS. GREEN: Rachelle Green for Emhart.

MR. FAYAN: Keith Fayan, local counsel for New England Container Company. And, with me this morning is Richard Fil, attorney in good standing of the Connecticut, New York and the Pennsylvania bar. We had filed a pending motion for pro hac vice and request that the Court hear from him this morning.

THE COURT: Why don't you have a seat until we rule on your motion for pro hac? I don't grant them usually.

MR. FIL: Thank you, your Honor.

THE COURT: I had a message on my voice mail, Mr. Preciphs, about a letter you sent to me the morning before I left town for vacation.

MR. PRECIPHS: I missed you, and I had a request, an assented to request to continue this hearing. As we had not been able to reach you, I informed everyone we should be prepared to go forward.

THE COURT: I read the motion papers before I left, and then after I came in late last night I looked at them again, so I'm ready to rock'n'roll on this one. I want to start with the Travelers' motion.

MR. SHERIDAN: Yes, your Honor.

THE COURT: I thought that motion ought to be denied.

But, first of all, I can say this to everybody. You know, you've got these cross motions and everybody is pointing to other papers in other cases and joining in a previously filed motion, and you've really left me with a heap of stuff that I have to jump around and sift through to try to figure out what you want me to look at and how you want me to proceed. Nobody bothered really to lay it out. It was, "Just for this piece of my argument, we're relying on those documents." "And, by the way, for that piece of our argument, you need to look over here and see what the Federal Court has done." "And, we've got a footnote that we're relying on for that." All of it was very, very difficult.

In any event, let's start with the Travelers' motion. I thought that motion ought to be denied. It's a Rule 12(b)(6) motion, but there's a flavor of something akin to res judicata or collateral estoppel here with respect to the Federal Court proceedings. You're

pointing me to matters outside the pleadings; and it seems like you're asking me to dismiss this case on public policy grounds as a sanction for forum shopping. And, I'm not quite sure about the legal analysis that Travelers is expecting me to use. As I said, you mention public policy considerations, and you say they're forum shopping and there's pending stuff in the Federal Court, so dismiss the whole thing. And, then you toss me over to memos and argument in the Federal Court case. I mean, most of the stuff here that you've attached is all the Federal Court stuff.

So, what's the legal basis for my 12(b)(6) analysis? Because 12(b)(6) says there's no -- that's failure to state a cause of action, right?

MR. SHERIDAN: Yes, your Honor.

THE COURT: Am I missing something?

MR. SHERIDAN: Of course not. You're correct, your Honor. The basis for this, your Honor, is that they have filed two identical causes of action and we have cited Rhode Island cases to you, which we're asking your Honor to rely on, that they cannot force Travelers to defend itself in two identical parellel actions.

THE COURT: Right, but the other one is pending and you're awaiting a disposition, aren't you?

MR. SHERIDAN: The identical -- this motion before

you that we filed that we have with Travelers has two bases. One is that there's a prior pending action, hence, this action should be dismissed. And, two, we are literally defending two identical lawsuits.

THE COURT: Look, nobody made you file this motion. You could have just sat here for a while to see what happened over in the Federal Court.

MR. SHERIDAN: That's true, your Honor, but I think the case law that we've cited to you supports the notion that a party should not have to defend itself in two identical causes of action.

THE COURT: Right, and if that one is dismissed -- so, you filed this motion in that case, so you're arguing in the Federal Court, "Hey, we are defending in the State Court, so dismiss it here." That's what you just said.

MR. SHERIDAN: No, your Honor. This motion before you today is in two parts. The first argument is that there's a prior pending action in Federal Court.

THE COURT: Okay, hold that. Did you make that argument in Federal Court, that there's a prior pending, or a pending action in State Court?

MR. SHERIDAN: No, your Honor, the Federal --

THE COURT: Well, let's put that aside for a moment.

MR. SHERIDAN: The basis of the motion in Federal Court is identical. However, as to the second basis of

the motion before you today, namely --

THE COURT: Which is the 27-7-2 issue?

MR. SHERIDAN: Exactly. So, we argued in Federal Court. That lawsuit was filed first. We briefed it and argued it before Judge Smith and are awaiting a decision that Emhart is barred under 27-7-2.

THE COURT: Well, I got some bad news for you. If you gave him the same motion as you gave me, you're going to lose on that one. You're pointing to 27-7-2, but, at least in my papers, you haven't provided the insurance policy. Without it, I can't say that Emhart isn't a third party beneficiary or an intended beneficiary as a matter of law. There are lots of times -- I mean, yes, there's a general -- strike that.

The statute says you don't sue the carrier as opposed to the tort-feasor, but that's a substitution issue. If a party -- if an individual is an intended beneficiary under the language of the policy, or a third party beneficiary under the language of the policy, then they have a contract based claim, and you're asking me to say that as a matter of law there's no cause of action, they failed to state a claim. "Don't look at the policy, Judge, just say as a matter of law they failed to state a claim." They've stated a claim. It may be that they're one of those classes of individuals that falls within the

legal definition of intended or third party beneficiary. I don't know.

MR. SHERIDAN: May I respond?

THE COURT: Sure.

MR. SHERIDAN: Your Honor, we would contend for purposes of a 12(b)(6), it is their obligation to plead that. They have not pled in this case and, indeed, there's no good faith basis for them to plead that they are a third party beneficiary of the policy that the Travelers issued to NECC -- the underlying policy, your Honor. I would agree with your Honor if they allege, "We are a third party beneficiary of the policy," it would not be an appropriate basis for a 12(b)(6) motion. But, the complaint hasn't alleged that.

THE COURT: Well, what you gave me -- and this is -- you know, I didn't get that from your pleadings. I have your motion, and the attachments that I'm supposed to rely on are the complaint in the Federal Court case, the motion to dismiss in the Federal Court case, the objection to the motion to dismiss in the Federal Court case, the reply to that motion to dismiss in the Federal case, and a copy of a transcript from a California Court case. So, I didn't get the drift that this whole 27-7-2 was because the original complaint in this action failed to articulate sufficient facts to support that kind of a

claim. And, can you point me specifically to, you know, where I missed that in your memo?

MR. SHERIDAN: Well, the --

THE COURT: Just show me the page because you're --

MR. SHERIDAN: It was in Section A on Pages 5 and 6 of our principal memo, and the prior pending action argument was also addressed in our reply memo, Pages 2 through 6, your Honor.

THE COURT: All right. Well, look, we'll start with Page 5, okay? Page 5 Section A says, "Emhart's claim against Travelers are barred by the pendency of the prior federal action." So, I'm not taking that to mean that -- see, when I see that, I don't see, Gee, Travelers must be arguing -- what they really mean is to say that the complaint doesn't sufficiently plead that they have something actionable under the language of the policy. I took this to mean, based on you're heading, that you were still focused on this barring as a result of the Federal Court action.

You continue on Page 5. You just pointed me to Page 5. You go on to talk about the dismissal, duplicative filings. I didn't take that to mean that you thought that the complaint was not sufficient in alleging what was needed to overcome 27 --

MR. SHERIDAN: Your Honor, I apologize.

THE COURT: 27-7-2.

MR. SHERIDAN: Your Honor, if I could direct the Court's attention to our reply memo on Page 6.

THE COURT: Well, let's stick with your memo because that was my starting point of your grounds for your motion to dismiss. Where in the motion to dismiss do you alert me to the fact that this is sort of a Rule 9 based kind of thing because they haven't alleged facts sufficient to support a claim against the carrier?

MR. SHERIDAN: On Page 8 of the memorandum, your Honor, that talks about, "Embart has not pleaded, and cannot credibly plead, any of the limited circumstances that might permit the filing of direct suit in Rhode Island under the Rhode Island statute."

THE COURT: I did see that, okay? And, I picked up on the words, "cannot credibly plead."

MR. SHERIDAN: And, then we also made reference to --

THE COURT: Wait. And, then you go on, and instead of talking about those exceptions -- and it's not an exception really. Strike that. Okay, I saw that. "Cannot credibly plead any of the limited circumstances that might permit the filing of direct suit." You pointed to the non est issue.

MR. SHERIDAN: Also, the bottom of --

THE COURT: You pointed to the judgment issue, on the deceased business piece of it, and then you go through that piece of it, but you never address this whole question of whether they're a third party or an intended beneficiary.

MR. SHERIDAN: Bottom of Page 9, your Honor.

THE COURT: Okay, wait, stop. So, we can agree that 5 didn't do it, and we can agree that 8 didn't do it. So, now we are at the bottom of Page 9. And, I'm still under 27-7-2.

MR. SHERIDAN: That's correct, your Honor. "In the instant case, by contrast, no party has alleged that Emhart is a 'party' to the Travelers policies or that it 'has the status of an insured.'"

THE COURT: Okay. So --

MR. SHERIDAN: And, then we reiterated the point in our reply memo.

THE COURT: Okay, so out of this we have that one line. The problem is, you've just made this broad conclusion in there. I mean, I saw that, too. It was a one-liner at the end of all of this, and then you go back into your analysis of 27-7-2, but you don't talk about these -- the legal analysis, the third party or the intended beneficiary. That's my problem. You know, I looked at this as a whole, and I followed the direction

you seem to be pointing me in.

MR. SHERIDAN: Out of fairness, Judge, if the complaint does not allege that they're a third party beneficiary or an intended beneficiary or have the status of an insured, I would respectfully ask the Court not to fault us for not having briefed that issue since they didn't raise it. The issue first came up when we pointed it out in the reply memo your Honor had denied the 27-7-2 argument in a similar motion filed by Providence Wash. in this action. And, we brought to your attention when you had made that ruling at the time, your Honor suggested if Emhart was a third party beneficiary, that you needed the policy. That's why in our reply memo we addressed the intended beneficiary or third party beneficiary issue as well and pointed out again that Emhart had not pled that it was a third party beneficiary or had the status of an insured.

THE COURT: Do you have a copy of the complaint with you?

MR. SHERIDAN: Yes, your Honor.

THE COURT: The operative complaint, which ever one that is.

MR. SHERIDAN: Yes, your Honor.

THE COURT: The operative counts against Travelers are 5, 7 and 9. On Page 2, the facts point to a

multitude of policies, right?

MR. SHERIDAN: Yes, your Honor.

THE COURT: ...issued by Travelers. It looks like there's one, two, three, four, five, six, seven, eight, nine, ten, eleven, twelve, thirteen, fourteen, fifteen, sixteen, seventeen.

Okay, now this is the complaint that was filed in November. And, you've, I think, interposed the motion to dismiss in lieu of an answer?

MR. SHERIDAN: Yes, your Honor.

THE COURT: Okay. Is your problem that in this complaint they only make an -- or that Emhart only makes the broad statement that the claims asserted are within the scope of coverage?

MR. SHERIDAN: Yes, your Honor. That does not, in our mind, allege that they are a third party beneficiary. Indeed, your Honor, we don't think there's any good faith --

THE COURT: Well, it goes on to say that they aver and they believe and, therefore, aver that Travelers has obligations to satisfy NECC's obligations to Emhart. That doesn't do it for you, I know.

MR. SHERIDAN: That's correct, they clearly have alleged that they believe there's coverage under our policies for our insured, NECC.

THE COURT: And, then they go on and they say under 57, they believe they're an intended beneficiary or a third party beneficiary. So, that allegation is there. So, you can't tell me that --

Am I missing something? I'm looking at Page 10 of the complaint. And, once that's raised, I can't say as a matter of law that they're not, unless I see the policy language and there's 16-17 policies here.

MR. SHERIDAN: If that's your Honor's ruling on 27-7-2, I will accept it, your Honor.

THE COURT: Look, you've been telling me that there's nothing in the complaint that raises this third party intended beneficiary issue. And, I'm looking at the complaint right now, and it does. I thought it did.

MR. SHERIDAN: Fine, your Honor, I'll accept your ruling as on 27-7-2.

THE COURT: Wait, don't -- let's not misinterpret what I'm saying. If they have a contract based claim against Travelers because they're an intended beneficiary or a third party beneficiary, 27-7-2 is completely inapplicable, so I'm not interpreting 27-7-2 to mean that it's a -- this is an exception. Because 27-7-2 is aimed at situations in which a tort-feasor -- and, let's pick the easy case. There's a car accident and the injured party decides to go right after the carrier as opposed to

the tort-feasor. And, people used to do that because they wanted to let juries know that there was insurance. That's where that all started and that's why the carrier was taken out of it, and because there was no direct contractual relationship. That's what 27-7-2 is aimed at. This is a completely separate kettle of fish that we have here. This is somebody claiming a contract based claim against a carrier that is not the tort-feasor. That's what the problem is here.

Can I hear from you on this?

MS. GREEN: Your Honor, I am local counsel. Jack Pirozzolo has been admitted pro hac vice in the case.

THE COURT: Go ahead.

MR. PIROZZOLO: Your Honor, I was puzzled by the contention that we had not alleged that Emhart was an intended beneficiary. I think your Honor has found it in the complaint. It's on Page 10, allegation 57. So I would say as a matter of pleading, we have pleaded the policies and we have pleaded that Emhart is an intended beneficiary, and as such, a third party beneficiary of the Travelers policies.

THE COURT: Well, that's why I asked to see the complaint because I did look at it some time ago. I've been out of town. I breezed through some of this last night, over the weekend and this morning because I had my

notes with me, but I thought that it had been pled.

MR. PIROZZOLO: That's why I was puzzled by the argument and did not want to interrupt.

The only thing I want to say, your Honor, is that this Travelers' motion in this respect, and as far as the DJ action, is identical to the motion brought previously in this action by Providence Washington. And, your Honor denied that motion from the bench approximately two months ago. We've attached your Honor's ruling to our brief. And, for the reasons that your Honor stated at that time, your Honor denied the motion to dismiss.

THE COURT: I hate people who try to remind what I did before. It's usually the Supreme Court that does that.

MR. PIROZZOLO: Your Honor's ruling is attached to our brief.

THE COURT: All right. I'm going to deny Travelers' motion.

And, just by the way, I can see what this case is all about. I don't know if any of you were involved -- Mr. Sheridan, your firm might have been involved in the Kaiser-Roth matter.

MR. SHERIDAN: Yes, we were, your Honor.

THE COURT: I think we all need to talk about some case management here because I can see you've got the

same kind of stuff going on, and I'm not sure you all need to be spread all over the different courts. And, that case was huge. It had more insurance policies than you have involved here, but you've got the same kinds of issues and you're headed for a splintering of this I think.

MR. SHERIDAN: That was really the basis for our motion on the prior pending action. I think the first decision that the plaintiff has to make, and if the Court won't, the plaintiff has to make is in which jurisdiction are we going to litigate. The three counts against Travelers here are the same --

THE COURT: Wait. I wasn't intending to go down that slope. You're making it too slippery. Take a seat. I was just trying to help and pointing out I have an awful lot of expertise in that area.

MR. PIROZZOLO: Your Honor, we've been charged with forum selection. We thought the business section was appropriate for this case.

THE COURT: It needs a special assignment.

MR. PIROZZOLO: I learned that it was not assigned and that was one reason we had gone to Judge Silverstein.

THE COURT: I'll take it up with Judge Rodgers.

MR. PIROZZOLO: Thank you, your Honor. It was a suggestion of a special assignment.

THE COURT: It's definitely needed. I'll talk to him about it. And, he knows -- he's assigned environmental spill DJ actions to me before.

MR. PIROZZOLO: I think that would -- I mean, we would welcome a special assignment, if that is feasible.

THE COURT: But, not necessarily me.

Now, Mr. Preciphs, what was going on with the continuance on this? What was your problem?

MR. SHERIDAN: That was on the Travelers' motion, your Honor. Your Honor already resolved that.

THE COURT: Okay.

MR. PRECIPHS: Thank you, your Honor.

THE COURT: Okay. Now, we have somebody else's motion. What's next? Wasn't there a second motion?

MR. FAYAN: Yes, your Honor, New England Container Company.

THE COURT: Right. Here it is. This one I had trouble with, too. This is pointing me all over the place. Okay.

MR. FAYAN: Your Honor, if I may --

THE COURT: Travelers' motion is denied.

Okay, now we're onto -- okay.

In one part of this -- and, I started to get confused right away. You said that you joined in -- you're joining in -- okay.

MR. FAYAN: Your Honor, as an initial matter --

THE COURT: Wait a sec.

Okay, you joined in Providence Wash's motion filed December 4th, but that's not before me at this point. I'm looking at Footnote 1. So, that derailed me right at the outset because, as I recall, Providence Wash's had to do with this whole third party intended beneficiary thing, right? So, is that the basis of your motion? And that didn't make sense to me because New England Container isn't the carrier, so I don't know why you would be pointing to the carrier's defenses and saying, "It's our motion to dismiss and it's based on that." So, I became completely confused.

MR. FAYAN: Unfortunately, I don't know that I am the attorney that could provide any clarity on that point.

THE COURT: You're here arguing the motion and looking at the papers.

MR. FAYAN: However, Attorney James Ryan from our firm was reached for trial. He informed me this morning and asked me to appear before your Court this morning and ask that this Court permit the, or consider the motion for pro hac vice admission of Attorney Richard Fil who is much more well versed in this matter and fully prepared to --

THE COURT: So, you want him to -- well, your colleague was prepared to argue it. Who is he on trial in front of?

MR. FAYAN: That's correct, James Ryan. I was only informed that he had been reached and he asked me to handle the matter this morning.

THE COURT: He told you that this morning?

MR. FAYAN: Yes, your Honor.

THE COURT: He didn't know Friday he was reached for trial?

MR. FAYAN: I can't answer that, your Honor.

THE COURT: When was he reached for trial?

MR. FAYAN: I can't answer that either, your Honor.

THE COURT: Let me see the pro hac motion.

(Document handed to the Court)

THE COURT: Well, where's the rest of it? This is the petition. I want to see all the supporting documents. This doesn't even come close to conforming to the Supreme Court rules. You want me to admit somebody based on this? And, this was filed less than ten days ago?

MR. FAYAN: I would respectfully request --

THE COURT: Where is the rest of it? You don't know?

MR. FAYAN: I'm at a distinct disadvantage of

providing any clarity.

THE COURT: You go call your office find out where he is and what judge he's in front of, okay?

MR. FAYAN: Very well, your Honor.

THE COURT: And, I'll hold this. Don't let him put you in this position again.

MR. FAYAN: Yes, your Honor.

THE COURT: Tell him I said so.

MR. FAYAN: I will.

THE COURT: We'll take a brief recess.

( R E C E S S )

THE COURT: Do we have any information on the Embart matter yet?

MR. RYAN: Your Honor, James Ryan. I'm here.

THE COURT: You're on trial in front of whom?

MR. RYAN: Your Honor, I have a matter that is in Middlesex County Superior Court, Justice Hamlin. It was on for trial yesterday. She's still engaged and I'm waiting for a call from the clerk.

THE COURT: I'm lost. I thought you were on trial?

MR. RYAN: I'm waiting for a call from the clerk as to when we begin the trial which I expect will be today or tomorrow.

THE COURT: Why weren't you here at 9:30?

MR. RYAN: Your Honor, I was preparing for trial. I

sent an associate from our firm.

THE COURT: You had that associate come in here and tell me that I had to accelerate a badly drafted pro hac motion because you were on trial, and you were at the office getting ready for trial?

MR. RYAN: My apologies, your Honor.

THE COURT: Oh, don't ever do that to an associate again. Have a seat. I'll be back with all of you in a minute, and I'm not done with that issue. These associates put their credibility on the line.

* * * * *

THE COURT: I will take the Emhart matter.

THE CLERK: Counsel, identify yourself again, please, for the record.

MS. GREEN: Rachelle Green for plaintiff, Emhart Industries.

MR. PIROZZOLO: Jack Pirozzolo for Emhart.

MR. RYAN: James Ryan on behalf of New England Container.

MR. FAYAN: Keith Fayan for New England Container.

THE COURT: Before we start with this piece of it, Mr. Sheridan, you're still in the courtroom. Could you come up here?

(Mr. Sheridan & Mr. Preciphs approach)

THE COURT: While we were taking the break, my law

clerk dropped a document in my lap which I hadn't seen probably because of my absence while I was away last week. As I've said to everybody today, I had the papers at home and didn't get the last of them. Here it is, filed March 26th. Ms. Green submitted it. It's a copy of Judge Smith's opinion and order. And, he seems to say that the State proceeding isn't parallel. Is there a reason that you didn't bring this to my attention this morning? I thought I spent an awful lot of time talking with you about whether these were parallel proceedings.

MR. SHERIDAN: There's a third action, your Honor. It's, therefore, that third case that he's referring to -- there's another action that NECC filed. It's own civil action against the insurer. That action had been filed before the Federal Court action had been filed. Judge Smith knew about it. This action before you today, your Honor, was not even filed when the Federal Court action was filed. As we discussed earlier, this action was filed later in time. He was referring to NECC's action against the carriers.

THE COURT: All right, just curious. I think Ms. Green thinks it probably stands for a different proposition, but, okay.

Now, let's get to this other piece of it which is New England Container's motion.

All right, now, Mr. Fayan appeared this morning not prepared to argue the motion. And, he said, Mr. Ryan, that you were on trial and couldn't make it. And, when I said, "What? He didn't know yesterday or Friday that he was on trial?" Mr. Fayan said he didn't know the particulars. I asked him who you were on trial in front of, and he said he didn't know the particulars. And, I asked where you were and he said he didn't know the particulars. Did he know that you were at the office, Mr. Ryan?

MR. RYAN: I saw him this morning, your Honor, but I don't know if he knew I was at the office at the time that the matter was on here. I've been waiting for a call from the Clerk of the Court.

THE COURT: I appreciate that, but you're here.

MR. RYAN: I am here, your Honor.

The matter -- could I put something on the record with regard to that other matter?

THE COURT: In a minute. Mr. Fayan was put in a bad situation because he said he found out about having to be here just this morning; is that correct?

MR. RYAN: Yes, your Honor, it just -- we discussed it this morning. There was an exchange of e-mails yesterday.

THE COURT: Okay, so he came marching in here with

marching orders from you that he should present to me a miscellaneous petition for admission of counsel pro hac vice. And, this is a miscellaneous petition that you filed. Now, this was filed on the 21st of March, and it wasn't scheduled for a hearing date and there's no motion to shorten time. So, I gathered that this had been filed so someone else, Fil, Richard Fil, could argue today's motion.

When did you find out about the trial?

MR. RYAN: My trial, your Honor?

THE COURT: Umm-hmm.

MR. RYAN: My trial has been scheduled for some time.

THE COURT: Okay.

MR. RYAN: But, unfortunately, I find that the dates are hard to pin down. It was scheduled for yesterday. The trial was scheduled to begin yesterday.

THE COURT: So, that's why the motion for admission pro hac was filed?

MR. RYAN: No, Mr. Fil is counsel with John Peloso who has a long-standing relationship with this client, and as does the firm. And, Mr. Peloso has appeared in court, in the Federal Court to argue this, but Mr. Peloso himself is on trial.

THE COURT: Okay, because the way it was constructed

this morning, the way it was presented left me with the impression that you were unexpectedly jammed up. This poor associate didn't have a clue, and I needed to hear a miscellaneous petition for pro hac vice in the middle of the dispositive motion calendar so that the arguments in the case could be covered. And, then he handed me a miscellaneous petition that is not in compliance with the Supreme Court requirements.

MR. RYAN: My apologies. I see that, and I understand that.

THE COURT: Can I see the rest of the paperwork?

MR. RYAN: With the regard to the miscellaneous petition?

THE COURT: Yeah. Yeah, I want to see the attorney certification.

MR. RYAN: I believe we just have what you have, your Honor.

THE COURT: You believe you just what?

MR. RYAN: I believe we filed what you have in your hand.

THE COURT: All I have is a miscellaneous petition. You didn't file the attorney certification?

MR. RYAN: I do not believe there is one attached, your Honor.

THE COURT: Okay, so not only was I presented with

this little mess between you and your associate, he interposed this miscellaneous petition which was filed out of time without a motion to shorten time. Now, the Supreme Court expects that you're going to sign on to these miscellaneous petitions and you're going to make a representation to me that one of the good cause grounds has been shown, or is in existence rather. And, the Supreme Court requires the moving attorney to make a factual representation that those grounds exist. But, the way you've done this, you've avoided making the factual representations.

MR. RYAN: I apologize, your Honor.

THE COURT: I know the Supreme Court also expects the proposed pro hac vice attorney to sign on, so we then have two attorneys, a local one and the pro hac, signing on under Rule 11 to some factual averments about either a long-standing representation of the client, the lack of experience in the local bar, the complexity of the issues, the agency proceedings and so on. But, for whatever reason, the two of you decided you weren't going to sign on to this.

Tell me about Mr. Fil's long-standing representation of New England Container.

MR. RYAN: Mr. Fil is a partner in the firm of Robinson & Cole. New England Container —

THE COURT: No, no, I want to hear about Mr. Fil, because the Supreme Court --

MR. RYAN: Right.

THE COURT: ...asks everybody to sign on to this, not because his law firm or somebody else in the law firm has a long-standing representation. The question is, does that attorney? Now, does he have a long-standing history of representing this client?

MR. RYAN: I can't make that representation, your Honor. Mr. Fil is here, though.

THE COURT: Well, why don't you go ask him? Find out how many days, months, weeks and years he's been representing New England Container and how many cases, okay?

MR. RYAN: Certainly.

(Mr. Ryan conferring with Mr. Fil off the record)

MR. RYAN: Your Honor, Mr. Fil advises that he has been working on this -- in connection with the environmental issues at this site for about the past year and has probably billed 40 to 50 hours. His contact to date has principally been working in connection in negotiations with the Environmental Protection Agency with regard to this particular site.

THE COURT: Forty to fifty hours starting when?

MR. RYAN: Within the past year, your Honor.

THE COURT: And, when you say he's "been working in connection," I guess I'm trying to understand how that fits into the long-standing representation of NEC. Has he entered an appearance on behalf of NEC in some other litigation? In what has he represented NEC? As opposed to maybe having a long-standing representation with NEC's carrier in other kinds of litigation that NEC wasn't involved in, for example.

MR. RYAN: Would you like me to ask him, your Honor?

THE COURT: Pardon me?

MR. RYAN: My understanding is that his representation has principally been focused on negotiations with issues relating to the Environmental Protection Agency for this site. I don't know if he's appeared or entered his appearance on behalf of NECC.

THE COURT: I'm not getting from this what his history is with NEC.

MR. RYAN: Umm-hmm.

THE COURT: Maybe I'm just a little tired because I've been on the bench all morning, but try me again.

MR. RYAN: Well, he has --

THE COURT: When did he first form the attorney-client relationship with NEC?

MR. RYAN: I'm told that it was approximately a year ago, your Honor.

THE COURT: He didn't sign the -- you didn't provide me with a client certification.

MR. RYAN: That's correct, your Honor. I apologize.

THE COURT: And, I don't see his certification that he hasn't, within the past 60 months, applied for pro hac vice admission in any particular cases.

MR. RYAN: It is not in that paperwork, your Honor. I can represent to the Court that he has not in this jurisdiction.

THE COURT: Well, I'm not interested in your representations or your firm's at this point, because so far they don't have a good history. What I'm seeing is that he isn't interested in making representations and signing on to them.

Now, the attorney certification also requires him to acknowledge that if we do let him in, he'll be subject to the disciplinary procedures of the Supreme Court, and it also includes a release so we can take a look at his history with whatever his jurisdiction is, but he didn't sign that; did he?

MR. RYAN: We didn't ask him to sign it, your Honor. I take full responsibility. Again, we used the wrong form.

THE COURT: Well, here's a guy who wants to be admitted into litigation in this jurisdiction and he

apparently hasn't gone so far as to read the rules applicable to his admission, because if he had he would have said, "Oh, Ryan, you're such a dope, you've got this miscellaneous petition that is not going to measure up to the Supreme Court rules. You didn't ask me to file the attorney certification and we need to clean up this business about my long-standing representation with the client." So, obviously, he didn't even read the rules. I think that's bad form.

I can't see any reason to admit this attorney pro hac vice. Not only has good cause not been shown, I think it's been demonstrated that he should not be admitted. So, the miscellaneous petition for admission pro hac vice is denied.

Don't forget to report that to the Federal Courts whenever you move for pro hac vice admission in Federal Court, Mr. Fil, okay?

Now, let's go on to the substance of New England Container's motion. I will hear you on the motion.

MR. RYAN: Your Honor, as we have set forth in our moving papers, New England Container takes the position that there is no private right of action under the IPRARA that a potentially responsible party cannot bring a private right of action for cost recovery. And, as to Count 2, we have moved that there is no private right of

action under the Hazardous Resource Recovery Act, relying on the case of Hotel Associates --

THE COURT: Well, I have Count 2 -- am I missing something? I'm sorry. I have -- well, I'm looking at your memo, and you've given me two complaints, one in what looks like, PC 06-2274, and one in 06-218 which is a Federal Court action. So, I started out being confused in the first instance. What's the point of those two attachments?

MR. RYAN: The point is that the action brought in the Superior Court before the Court today, with the exception of the first two counts, is identical to the Federal Court action.

THE COURT: Oh, okay. Then you want to start with Count 1. I see. Okay, so this is the complaint that was filed on -- I don't have the filing date here. I think it was November.

MR. RYAN: November 20th --

THE COURT: Let me look at Count 1. Okay, that's the 23-19.14 claim; correct?

MR. RYAN: Yes, your Honor.

THE COURT: And, you're saying that just doesn't give rise to a cause of action?

MR. RYAN: That's correct, your Honor.

THE COURT: Well, tell me the purpose behind it.

Give me the analysis.

MR. RYAN: Well, your Honor, as to Count 1, the analysis is that there is no private right of action --

THE COURT: Right, you've said that. I would like you to get deeper into it for me, please, if you would. What's the public policy behind the chapter, the title? I mean, that's generally how we approach this stuff in determining whether there's a private right of action.

MR. RYAN: That's correct, your Honor.

THE COURT: I'll tell you what. You all can come back at 2:00, and between now and then you can get prepared to argue this motion.

MR. RYAN: Thank you, your Honor.

THE COURT: Two o'clock.

* * * * *

MARCH 27, 2007, P.M. SESSION

THE COURT: Okay, we're continuing in the matter of Emhart vs. NEC, 06-6095.

Mr. Ryan, we're picking up, I hope, with Count 1 on your motion to dismiss, and that would be having to do with General Laws 23-19.14; correct?

MR. RYAN: Correct, your Honor.

THE COURT: Okay, here's how I saw this one. If I look at -- I had to bring my volume out here to go back and forth between the pages. If I look at Subsection (b)(3), I see the following language.

Let me start with, actually, the introductory phrase. Subparagraph (b), "Responsible parties as defined in this section shall be liable for:" And, then we drop down to Subsection (3), "Any other necessary costs of removal or remedial action incurred by any other person." I take that to mean any other person." It seems clear, unambiguous. I don't think the legislature would have included that language in this statute if it meant to limit the liability to the State. So, I see this as, perhaps not giving rise to an independent cause of action in that one would be necessary for contribution or negligence or whatever, but it certainly doesn't limit the liability of responsible parties just to the State. In other words, I think it allows for any other party

that has been harmed by a responsible party's pollution, it allows for any other party who has been harmed by that pollution to bring an action for liability. There might be common law grounds, negligence, breach of contract. It might be contribution. It doesn't matter what it is. This section seems, to me, to leave room for that.

So, although the complaint, NEC's complaint, treats it as an independent cause of action that is a violation of the chapter, I think, at the very least, it preserves any other claims they would have against NEC.

That's born out by 23-19.14, 23-19.14-12, "Protection from Contribution Actions." This chapter does protect responsible parties from contribution. Implicit in that is that contribution actions can be brought. The only time protection is afforded is when the responsible party seeking protection has resolved its liability to the State.

So, looking at both of these sections together, I'm led to believe that the legislature, in enacting this particular chapter, didn't intend to limit the liability of responsible parties to other people, including other responsible parties.

So, that was my take on the argument on the Chapter 19.14 issue. So, let me hear you on that.

MR. RYAN: Your Honor, my response to your inquiry

would be that had they intended that, they would have laid it out more clearly. This Act was enacted in 1995. It's certainly very similar to the provisions in CERCLA. I think it's clear. Certainly, we have argued before, it's been clear since Judge Smith's decision that Emhart is really a responsible party which is now looking for contribution.

THE COURT: Well, I'm not quite on that piece of it yet. I'm just talking about this argument in which NEC asserts that there's no cause of action asserted under 19.14 at all. From what I'm gathering from the argument is that any action that can be brought pursuant to 19.14 is something that can be brought by the State only. Isn't that what you're saying?

MR. RYAN: Yes, it is, no private cause of action.

THE COURT: Okay. I disagree with that analysis because it seems to me that 19.14-6(b)(3) tells us that "Responsible parties shall be liable for any other necessary costs of removal or remedial action incurred by any other person." If I read that to mean that only the State can take action under this, then I would have to read this to mean that the State somehow becomes the collection lawyer for other parties who have had to pay costs of removal or remedial action, and that doesn't make any sense to me. So, at the very least, I see this

as preserving other claims that other parties might have.

When we get to the piece of it in which you argue that because CERCLA doesn't allow responsible parties to recover against each other, therefore this statutory scheme must require the same thing, I'm not so sure I agree with you on that one either. I think the Rhode Island statutory scheme is different from CERCLA. The Subparagraph (b) (3) and then 23-19.14-12 I think anticipate actions for contribution, and what else could that be except actions between jointly responsible parties?

MR. RYAN: Well, the Court raises a very good point. It seems to me that now that the District Court has established that there is jurisdiction there, I wonder about, as we expressed in our brief, but I think it's more true today than it was just a week ago, what sense it makes for two different courts to be essentially resolving the same issues.

THE COURT: Well, I'm in the middle of resolving some of the issues against your clients.

MR. RYAN: I understand, and maybe that's why I feel the way I feel.

THE COURT: I'm sure you do.

MR. RYAN: But, there is controversy on ruling on very similar issues.