# EXHIBIT 2

# PART II

THE COURT: I'm not fully understanding. This is the problem. I think I said this to Mr. Sheridan before you were here. You brought the motion. You want me to respond to this argument. You're perfectly comfortable if I go forward today and say, no, there's no cause of action here. And, you came here this morning, or your associate did, and your proposed pro hac vice counsel came here this morning prepared to argue so that I would make a determination that there's no cause of action here. But, now you're saying that I shouldn't be ruling on this because it's better left to another court. It doesn't make any sense.

Why did you file the motion? Why did everyone appear here today to argue the motion?

MR. RYAN: Well, only because the action was filed here while the pend -- the motion to dismiss was pending in Federal Court. That's --

THE COURT: Right, but nobody made you file the motion to dismiss. You're saying, "Here's my motion to dismiss. By the way, you shouldn't be ruling on it."

MR. RYAN: No, I'm not -- perhaps, your Honor, one of the things we can ask for is a stay and that might make more sense under the circumstances.

THE COURT: I just took your motion in the order in which it was presented, and you did, too. So, if you

want to go to the back of the motion and start with the part in which you ask for a stay -- let's see, where is that?

MR. RYAN: It's Point 4, your Honor.

THE COURT: Pardon me?

MR. RYAN: Point 4 in --

THE COURT: I had the -- strike that.

As I mentioned when I was ruling on the Travelers' motion when Mr. Sheridan was arguing; I was a little confused about what I was being -- or, what the legal analysis is on this whole business of "Dismiss the case because it's pending somewhere else." It seemed to me that it was a -- there was a bit of a public policy argument thrown in there. I wasn't satisfied that the pending cases are identical.

Why don't you tell me how they're identical?

MR. RYAN: Counts 3 through 11 in the State case are identical to the counts in --

THE COURT: Well, just because some of the counts are identical doesn't mean that this claim -- claims here are identical to the Federal Court claims.

MR. RYAN: I think Count 1 parallels Count 3, your Honor. Count 1 being, of course, being the claim under the Industrial Property Remediation and Reuse Act is parallel to the CERCLA count in Count 3. And, then Count

2 which has to do with the Hazardous Waste Management Act, it's closely parallel also to the CERCLA counts, Count 4 --

THE COURT: I think this is going to be the longest running motion to dismiss in the history of this state. You might want to call this judge in Massachusetts and tell her you're tied up. And, if you don't, I will. What's her name?

MR. RYAN: Judge Hamlin.

THE COURT: Which Court?

MR. RYAN: It's Superior Court in Middlesex County, your Honor.

THE COURT: Which complaint do you want me to look at from the Federal Court?

MR. RYAN: Well --

THE COURT: You're saying I should dismiss this action, 06-6095, because it's identical to something else they filed against your client. Which complaint should I be looking at?

MR. RYAN: Well, we've attached the two complaints, your Honor.

THE COURT: Which one do you want me to start with?

MR. RYAN: Counts -- I mean, the Federal Court action, CA 06-218.

THE COURT: Okay, and if you track that -- well, I'm

looking at it, okay? Isn't there a CERCLA claim in this?

MR. RYAN: Yes, your Honor.

THE COURT: I must be confused. I thought you just sent me to 06-2274.

MR. RYAN: Yes, your Honor.

THE COURT: Well, that's NEC's compliant --

MR. RYAN: My apologies, your Honor.

THE COURT: ...against Travelers and Providence Washington.

MR. RYAN: My apologies, your Honor. I apologize for my error in this regard. The Federal Court complaint in Tab 2 which is attached to our motion -- our memorandum in support of our motion to dismiss is the Federal Court complaint.

THE COURT: Okay, so you want me where, at Tab 2 instead of Tab 1?

MR. RYAN: Well, Tab 2 is the Federal Court complaint which was pending when this action was filed. And, the point that was raised by ourselves and by Travelers, and previously by Providence Washington, is that the counts in the complaint before the Court today are virtually the same except that they have added the two state law counts in the case -- in the file before the Court.

THE COURT: Right, that's what I understand the

distinction to be. The complaint in Providence County, 06-6095, raises many of the same issues but also brings the State Court state law based claims.

MR. RYAN: That's correct, your Honor.

THE COURT: The Federal Court action raises many of the same issues, but there's a CERCLA based claim.

MR. RYAN: That's correct.

THE COURT: So, they really aren't identical. One is the state law based set of claims and the other is a federal, CERCLA based claim.

MR. RYAN: Well, I think --

THE COURT: I mean, I'm hearing -- I keep hearing for purposes of argument that these things are identical or near identical. They're not. One is state law based one is federal law based. I don't get it.

MR. RYAN: Could I have a moment, your Honor?

THE COURT: Sure.

MR. RYAN: Well, I may have stated it backwards, your Honor. I apologize for that. But, the state law claims are also in the federal complaint.

THE COURT: Okay.

MR. RYAN: Count 3 and Count 4.

THE COURT: Okay, well, let me look at it. I'm looking at Count 1. Count 1 in the federal action is CERCLA.

MR. RYAN: That's right.

THE COURT: Count 1 in the State action is 23-19.14-6(b)(3), and/or a common law claim for contribution and indemnification. So, I don't see Count 1 as being identical. If I look at Count 2 of the Federal Court claim --

MR. RYAN: If I may be heard.

THE COURT: ...I see they're looking for contribution under CERCLA which is different from -- I don't know what the contribution requirements are under CERCLA off the top of my head, but to the extent that Count 1 in the State Court case seeks contribution, the contribution claim in Federal Court case is CERCLA based and that's different.

MR. RYAN: If you look at Count 3 in the Federal Court complaint, your Honor, you will see that same claim under the same -- the same state law claim under the Industrial Property and Remediation and Reuse Act as appears in the complaint which is presently before the Court.

THE COURT: I see that. So, we have one overlap so far.

MR. RYAN: Umm-hmm.

THE COURT: And, then we have Count 4 which looks like it's another overlap. So, that's two.

MR. RYAN: That's correct, your Honor.

THE COURT: And, then we have equitable claims, declaratory claims and claims having to do with the rights under the insurance policies. And, as I understood from Mr. Sheridan, this same motion is pending in front of Judge Smith -- Magistrate Smith.

MR. RYAN: Judge Smith.

THE COURT: Whatever he is.

Mr. RYAN: And, he just ruled on it, your Honor.

THE COURT: Right, but Mr. Sheridan said the reason he didn't bring that to my attention because it had to do with a different set of the claims, so that really wasn't relevant.

MR. RYAN: I wasn't here, your Honor. The counts are the same to me. That's part of our motion here, that the same matters are being litigated in Federal Court.

THE COURT: Well, if you're telling me that Judge Smith just ruled and said that these aren't -- let's see, where is it?

I very briefly looked at this decision and I just saw it for the first time this morning. He denied a motion in which apparently New England Container argued that these were parallel proceedings, and Judge Smith said they weren't.

Am I not reading this correctly?

MR. RYAN: No, that motion was argued before suit was filed in this case, your Honor.

THE COURT: Before suit was filed in this case?

MR. RYAN: That's correct.

THE COURT: It's dated March 20, 2007. That was last week.

MR. RYAN: I know, but the Federal Court case was filed May 11, 2006. The motions were argued on November 13th of 2006. Emhart came to the State Superior Court on November 22nd of 2006, and we just got a ruling last week from Judge Smith on the motions which were argued.

THE COURT: Well, what were the differences between those two sets of cases? He was distinguishing between two cases, right? Saying that they're not parallel proceedings.

MR. RYAN: I think there's some language in there, but that really was not the issue before him at that time.

THE COURT: Okay.

MR. RYAN: My point would be, your Honor, that he -- part of our claim was to dismiss both of the CERCLA counts. If that happened there would not be Federal Court jurisdiction. The Court dismissed one, but not the other. So, there is Federal Court jurisdiction of all

these counts which are included in the State case, which I would say really are the very same.

THE COURT: Oh, I can see there's some overlap. I'm just very uncomfortable with dismissing the entire case because there's some overlap. And, I'm uncomfortable, given the way this has all been presented, making a determination that there is 100 percent overlap in any particular count. That's my problem. I don't have any difficulty with all of you getting to one person on one set of issues and another person on another set of issues. That's good because we don't want to issue conflicting decisions.

I'm going to leave that for a moment and go back to your motion in the order in which the issues were presented. Your argument under Item Number 1 is that there are no facts that would entitle Emhart to recovery under 23-19.14-6. I disagree with that analysis. Specifically, I disagree with the analysis in your Paragraph A, "The Industrial Property Remediation and Reuse Act does not create a private cause of action." I'm not going to dismiss the count on that basis because I think -- it doesn't give rise to a cause of action. It certainly preserves existing causes of action. So, I'm not going to dismiss any claim for contribution or liability that we have here on that basis.

The Subsection B entitled, "Even if IPRARA allowed a private right of action, a responsible party cannot seek cost recovery." I disagree with that because the statutory scheme clearly anticipates that people will bring actions for contribution. Sometimes they're protected from those actions, but there's no bar here to those actions. So, on that ground -- strike that. That doesn't give me grounds to dismiss this Count 1.

Now, looking at Count 2 --

Let me stop there. I want to hear from opposing counsel on this Count 1 business because there's so many issues here, if I start going through them all at once I'm going to --

MR. PIROZZOLO: As to Count 1, your Honor is absolutely correct. An analysis of the statute is clear. It gives a right of action by any other person, and the analogy to --

THE COURT: Does it give a right of action or does it just preserve existing common law and other claims? In other words, does it give a right to a cause of action or does the legislature evidence its intent not to bar otherwise existing causes of action or is there any difference?

MR. PIROZZOLO: I think it's both. I think, yes, it would apply to common law causes of action, but also in

Part (a) of the statute, "A party --" "Responsible parties are strictly, jointly and severally liable for the actual or threatened release of any hazardous material at the site:". If they are owners or operators of the site. NECC was an operator at the site. "Any person who at the time of disposal of any hazardous material owned or operated at the site." NECC operated the site. So, Part (a) creates liability. Part (b) gives the right of action. The right of action would also extend to common law claims I think, your Honor.

THE COURT: So, you're saying not only are there common law contribution or equitable right of contribution, the statute codifies that?

MR. PIROZZOLO: It's not ambiguous. I mean, you can't read it any other way.

THE COURT: Okay, now what about Subsection (b)? Even if it does allow a private right of action or contribution, a responsible party can't seek cost recovery. I think you've probably answered my question already, but I want to hear you on it. They're saying that CERCLA doesn't allow it so we should read the Rhode Island statute the same way we read CERCLA.

MR. PIROZZOLO: Well, that's not true. CERCLA -- and that's been confused. And, if the Court would like the background.

What has occurred and, indeed, one of the reasons we're here is that the Supreme Court case of Aviall restricted recovery under Section 114 of CERCLA which involved contri -- specifically contribution actions. And, under Section 107 of CERCLA, the courts have read an implied right of contribution, and that is what Judge Smith follows in his decision. And, if you look at Page 4 of the decision, he says in the first count NECC asserts that Emhart is not an innocent party and, consequently, liable for site cleanup. It is prohibited from pursuing cost recovery under Section 107(a). But, then in resolving that issue, he says on Page 8, Emhart really seeks an implied right of contribution under 107. And, in ultimately resolving it, he said, "Thus, the question is whether Emhart may permissibly seek an implied right of contribution under 107. While the conclusion is not free from doubt, this Court believes it can."

So, Judge Smith has concluded that Emhart does have an implied right of action under 107 for contribution. It's quite clear under any reading of it, Emhart has a right of cost recovery. The distinction is if Emhart is a totally innocent party, it's a cost recovery action. And, if Emhart had contributed to whatever the problem is, it becomes a contribution action.

Now, what's occurred since Aviall is two Courts of Appeals have held that there is an implied right of contribution, and one -- I believe it's the Third Circuit -- held that there is no implied right of contribution. The Supreme Court now has -- that's been appealed to the Supreme Court and that is now being briefed in the Supreme Court in this session. So, ultimately by the end of the -- by the summer -- by the spring or summer, we're going to know whether there is or is not a CERCLA claim.

The reason we're here, your Honor, is that --.

THE COURT: Well, let me just jump in. I'm not sure that I have to reserve decision for quite that long because in reading our State statute -- in other words, I don't have to duck the issue and wait for that issue because when I read our State statute, I don't even have to get to CERCLA.

MR. PIROZZOLO: That's my point, your Honor. That's right, because there is this question in the Federal Court and we're here. Our right to be in the Federal Court is in doubt. Judge Smith has now said we have a right to be there, but he does not have the last word.

This Court clearly has jurisdiction and clearly there's a right of action under the Rhode Island statute as well as our common -- our equity claim.

THE COURT: Right. Well, he's asking me to dismiss

your claim because I should be turning my eye to CERCLA for guidance in interpreting the Rhode Island statute, which I find, by the way, clear and unambiguous. And, I'm just asking you to comment on that, and I think you have.

MR. PIROZZOLO: Yeah, I don't think you need any federal guidance. I think Rhode Island has written a statute that is clear and unambiguous --

THE COURT: All right.

MR. PIROZZOLO: ...in this respect.

THE COURT: Let's go to Count 2.

Mr. Ryan, Count 2 was a little different, and I could see the point to be made on --

Let me make sure I'm on the right count in the complaint. Okay, Count 2 is entitled "Violation of Rhode Island General Laws 23-19.1." I viewed this chapter a little differently. I see this chapter as being the State permitting enforcement scheme. And, by that I mean this is the piece of it that allows the State to give permits and to bring enforcement actions and everything else. I think I agree with you on this one that there's no private right of action that's created by the chapter.

Now, on the other hand, if NEC -- NECC?

MR. RYAN: CC.

THE COURT: If NECC violated the chapter, evidence

of those violations would certainly be evidence of NECC's liability in the context of a 23-19.14-6 or 23-19.14-12 claim for contribution or indemnification action. But, that's a little different. So, while I see 19.1 as extending only to the State and its right to pursue civil penalties -- I'm sorry -- civil remedies and criminal penalties, although I see that being the thrust of 19.1 --

I'm going to say that better. It's been a long morning so far, and we're in the afternoon. Let's start again.

19.1, as I see it, is the permitting and enforcement scheme. It extends to the State the right to pursue civil remedies and criminal penalties. I don't agree that it gives rise to a private cause of action other than to allow the State to chase for civil remedies. On that basis, I can grant your motion I think, but that would have to be with a clear understanding that if, indeed, NECC was in violation of the chapter, that information, that evidence, would probably be admissible in the trial of this case because their violations would be evidence in the litigation on the contribution. That's what I'm trying to say. So, if I grant your motion with respect to Count 2, I need to make it perfectly clear that this is not a signal to the trial

judge that evidence of NECC's violations wouldn't be admissible at trial.

Do you understand what I'm saying?

MR. PIROZZOLO: I do.

THE COURT: Why don't you agree with my distinction?

MR. PIROZZOLO: To some degree I concur. If you parse the section, Section (a) says, "Any person who shall violate shall be absolutely liable for certain costs."

THE COURT: Wait a minute. Let me --

MR. PIROZZOLO: It's very clear --

THE COURT: Wait, wait, wait.

MR. PIROZZOLO: This is 23-19.1-22.

THE COURT: Let me get to my section. 23-19.1-22.

MR. PIROZZOLO: 22(a). It begins with, "Any person," and then the operative language is toward the end where it says, "Shall be absolutely liable for the cost of containment, cleanup, restoration and removal of the hazardous wastes, and for all damages, losses or injuries, including environmental which result directly or indirectly from the discharge."

Now, that's a statement of -- that creates liability.

THE COURT: Yeah, but as to who? I think yes to the State.

MR. PIROZZOLO: Creates -- if I may, creates liability so far. Then under (b) says, "Proceedings brought pursuant to this section shall be instituted by filing a complaint in the Superior Court." So, we filed a complaint in the Superior Court. But, when you get to (c) which is actions by the State, it's permissive. It says, "The actions --" If you go to (c), "An action pursuant to the statute may be brought by the Attorney General or the Department of Environmental Management in the name of the State as trustee of those natural resources."

So, it creates the liability. It has jurisdiction in the State Superior Court and it allows the Attorney General to bring an action in the name of the State. Far from clarity, but there is -- I think that is a permissible and appropriate reading of the statute. And, it's for that reason in the cited case, Gail vs. New England, where the Court held -- Superior Court held that there was not a private right of action under this statute. And, the Court said I was not free from doubt and thought and opined, it's something that might be certified to the Rhode Island Superior Court. But, I think your Honor's analysis is that an action under the first statute, 23-19.14-6(b)(3), would embrace conduct defined as illegal in (a) and (b), and that being the

case, we're -- you know, we're content. That is a part of our claim.

THE COURT: I thought your complaint was really well drafted, but on a certain level -- and, I could see why it happened. On a certain level, it seemed to be overpled, because my view of this is there are claims for contribution and indemnification out there. Somebody has to, if it's possible, apportion the liability, A, and depending on who settles with the State and who doesn't, there may or may not be an impediment -- it's almost like a joint tort-feasor kind of release. So, I see this basic common law claim for contribution or indemnification sitting out there.

I looked at all these statutes. I don't see any one of them as interfering with those common law claims. In fact, I see the legislature as having taken a good deal of care to make sure it didn't interfere with all of that. I can see why, in going through the analysis, you would have taken care to identify each chapter and each section and go on to argue that not only do we have these common law claims, these state law claims, we also have statutory based claims and here they are. What's happened here is because you have so isolated the different claims that have their same -- that have their fundamental underpinning of which is contribution and

indemnification, we're now splitting hairs about whether this one is merely evidence in the context of that one, whether this creates a private right as opposed to that one creating a private right, and I think we're going down that road unnecessarily. It's not a criticism. I can see why you wrote your complaint the way you did, but you're taking us down this path.

MR. PIROZZOLO: Maybe excessively cautious in a sense that could have been pleaded in one count.

THE COURT: Right, and we still would be here arguing the same stuff.

Looking at the overall procedure, remedies, penalties, definitions, permitting requirements of 19.1, I have to disagree with you. I think that, true, the legislature did not, in enacting 19.1, interfere with any other claims that a responsible party might have against other responsible parties. I disagree that this gives rise in and of itself to an independent private cause of action.

Having said that -- and, I'll say this again. Now, evidence and violations of this chapter would most likely be admissible in the context of your common law or other statutory based claims, but I don't think that 19.1 in and of itself gives rise to a cause of action such that you could bring a claim under it if you didn't have

claims for contribution and indemnification, state law, common law or under 23-19.14.

So, I'm going to grant the motion on Count 2. That's what I'm inclined to do here.

MR. PIROZZOLO: I understand, your Honor.

THE COURT: And, I'm going over that in detail because I see a huge difference between a right of action and evidence.

It's like running the stop sign. If you run the stop sign and you rear-end my car when I'm through the intersection and just parked there, I can't pursue criminal penalties or revoke your license, but running the stop sign is evidence of negligence in my civil claim. That's all I'm getting at.

Okay, so, that takes care of Count 1 and 2 of the complaint.

Now, Count 3 is equitable indemnity. That's not a subject of the motion to dismiss on a substantive ground, is it?

MR. RYAN: No, it's not, your Honor.

THE COURT: This is just the, "They're already in Federal Court" ground, correct?

MR. RYAN: That's correct.

THE COURT: So, I'll put that aside for a second. Substantively there's a cause of action pled here.

Count 4, same thing.

MR. RYAN: Correct.

THE COURT: It probably should have been a two count complaint, one for equitable indemnity and one for declaratory judgment.

Now, Count 5 that doesn't -- that's Travelers'.

MR. PIROZZOLO: Remaining counts are the insurer's, your Honor.

THE COURT: Okay. Well, the problem is that I'm looking at the memo, NECC's memo, and it addresses Counts 5 through 10, and that I found confusing because those counts aren't addressed to you.

MR. RYAN: Well, we thought we should make the argument that, your Honor, those policies were obtained by NECC for NECC's benefit, not for the benefit of Emhart, Emhart not being --

THE COURT: Well, you've basically taken the tact that Travelers took and Travelers said -- this was this morning when you weren't here. Travelers said, "Hey, they didn't make a claim that they were third party beneficiaries or intended beneficiaries." Well, they did. That's in the complaint. We've established that. No one has given me the policies. There's some 20 -- I'm sorry -- 16, maybe, policies at issue. I can't say as a matter of law, having looked at those policies -- having

not looked at those policies, rather -- strike that.

I can't say as a matter of law, having not looked at those policies, that Emhart isn't an intended beneficiary or a third party beneficiary. If I had the policies, that would take me to a Rule 56 standard. Here, you're holding me to a Rule 12 standard. Can I say that there's no set of facts upon which an individual couldn't be an intended beneficiary or a third beneficiary to an insurance contract? I can't say that. The Supreme Court has acknowledged that they can. So, I thought, to the extent that you're trying to assert the arguments that should be raised by carriers who have been sued directly, the motion ought to be denied. I think that statute -- and, I said it this morning probably better than I'm saying it now. I think 27-7 was aimed at keeping plaintiffs from taking a direct shot at a tort-feasor's carrier. It probably originated in the old days when plaintiffs wanted juries to know that there was insurance. Then, as things evolved, we became more sophisticated about the privity argument as the statute is a good one. But, if a third party is an intended beneficiary or a third party beneficiary, then they have something that is close enough to privity to maintain the action.

As I said to Mr. Sheridan this morning when we were

arguing the Travelers' motion, I see this not as me construing 27-7-2. 27-7-2 is clear. The question is whether it's applicable at all. If Emhart is a third party beneficiary or an intended beneficiary, then 27-7-2 isn't applicable. That's because if Emhart is a third party or intended beneficiary, it is effectively suing its own carrier, the one that it's extended benefits to. That's not what 27-7-2 is aimed at and that's not what the clear language of 27-7-2 calls for. So, if they are intended beneficiaries or third party beneficiaries, and that will depend on the language in the contract, then 27-7-2 doesn't even come into play. So, if that's the argument on Counts 5 through 10, then the motion ought to be dismissed.

MR. PIROZZOLO: Excuse me, your Honor.

THE COURT: I'm sorry, the motion ought to be denied, but I'm going to hear you on it. So, go ahead and argue it.

MR. RYAN: Your Honor, we cited some cases. There's a strong presumption that the contract is only for the benefit of the insured unless it expresses otherwise. There's no evidence before the Court that it did in any of these insurance --

THE COURT: They made the allegation. You've held me to a Rule 12 standard. They've made the allegation

that they're third party or intended beneficiaries. You say that they're not and that they haven't come forward with evidence to demonstrate that they are, but that's not the standard we're here on.

MR. RYAN: The other part of our argument, of course, is that they don't have standing with regard to this issue that they have not suffered any injury at this point. And, again, we've cited a few cases for that proposition.

THE COURT: Let's start with the first piece of it, counsel. Address this business of, "You can't bring the claim because of 27-7-2."

MR. PIROZZOLO: This is the -- this was the issue that was decided by your Honor I guess in Providence Washington. It's a DJ action, and as a DJ action, the cases indicate that we do have standing to seek a declaration as to the liability of the insurers in these circumstances. And, that was argued -- actually, the same arguments made by Travelers, same arguments being made here, was made about two months ago in this Court and your Honor has ruled on it.

THE COURT: It was all done on a Rule 12 basis, right?

MR. PIROZZOLO: Oh, yeah.

THE COURT: So, all these motions are coming in and

I still have yet to see the policies.

MR. PIROZZOLO: That's right.

THE COURT: Now, what about the standing issue?

MR. PIROZZOLO: It's the same analysis. I feel like I am repeating myself. We've made the allegation that we are entitled to the benefits of the policy.

THE COURT: Well, they're saying you haven't suffered an injury in fact.

MR. PIROZZOLO: It's a DJ -- first of all, we have because there are past expenses that we're suing for. And, they're not the largest part of the case, but, yes, we have, and we do allege we've suffered damage already. But, we're also seeking a declaratory judgment as to whether there's coverage going forward on the site.

THE COURT: Why does someone who's potentially a third party or an intended beneficiary have to wait until a judgment has been entered against them before they ask for a declaration that there's coverage? I think that's basically what you're saying.

MR. RYAN: Yes, and we cite some cases for that proposition, your Honor. I think what the Court is saying, that interpretation of the statute has evolved and the -- it may not be interpreted the same today as it was some time ago.

THE COURT: Well, you know, Mr. Sheridan tried to

get me to say that I was interpreting 27-7-2. I'm not. 27-7-2 addresses those situations in which individuals that aren't parties to the insurance contract and cannot be considered to be third party or intended beneficiaries can sue a carrier. They're saying you're outside that whole column of people and exceptions. They're saying 27-7-2 doesn't even apply. And, I think they're right about that. Those injury in fact cases all have to do with individuals, I think, that fell within the statutory exceptions for suing a carrier. This is different. This is somebody who is saying, "I'm a third party beneficiary, I'm an actual beneficiary. I'm not just trying to get money under somebody else's --" strike that. They're taking the position that they're an actual beneficiary, intended or third party, as opposed to just trying to recover what a tort-feasor would have had to pay. That's quite a bit different. So, I see them as having standing to ask for a declaration interpreting what their rights are as a third party beneficiary or an intended beneficiary. So, on that ground, I certainly can't grant your motion to dismiss.

Now, that still brings me back to this, "Dismiss the whole thing or stay it while the prior pending federal action is litigated."

Before I go off on that, let me just say for the

record, I've denied the motion as to Count 1 of the complaint. I've rejected the grounds asserted in support of the motion to dismiss for Count 1. On Count 2, I've granted the motion. I don't see 23-19.1 as giving rise to an independent cause of action. That's not to say that evidence of those violations wouldn't be admissible in a contribution and/or an indemnification claim. I'm not passing on 3 or 4. I think we all agree that those two are state law based claims and they're not the subject of the motion.

So, so far we have Count 1 intact. Count 2 not intact. Count 3 intact. Count 4 intact. Count 5, 6, 7, 8, 9, 10 all relate to Emhart's status as a third party or intended beneficiary under these various policies. So, those are intact. There's more state law claims involved in this than there are federal claims I think. Counts 1 and 2 are state law based. 3 through 10 all have to do with --

MR. PIROZZOLO: It's --

THE COURT: Pardon me?

MR. PIROZZOLO: I don't mean to interrupt.

THE COURT: Yeah; you did, but go ahead.

MR. PIROZZOLO: It's all state law, the entire complaint is based on state law claims.

THE COURT: When I said that, I meant the whole

picture. There's more state law stuff floating around between all these parties than there seems to be federal law issues. Maybe I'm reading too much into it.

MR. PIROZZOLO: I think that's actually right, and depending upon what the Supreme Court ends up doing on this Aviall issue, these disputes very well may end up being state law claims in State courts. You're absolutely right, your Honor. It's fundamentally state law claims.

THE COURT: As I shuffle through this Federal Court claim, it is very close to this claim but you've added the extra pieces of it being CERCLA.

MR. PIROZZOLO: Yes. The reason we're here, your Honor, is that -- we began the case in Federal Court because Judge Smith had already handled a case involving this site. In fact, we tried that case last Fall. He's thoroughly familiar with the case.

THE COURT: Boy, does that give me a great excuse not to exercise jurisdiction right now.

MR. PIROZZOLO: The problem is, jurisdiction is in jeopardy and we do have an absolute right to be here in State Court. I even went to the Constitution and the Rhode Island constitution gives us that right.

THE COURT: Remain calm.

MR. PIROZZOLO: While Judge Smith --

THE COURT: I recognize that. I recognize that you don't want to be in a position where, because of the CERCLA issues your Federal claims go down the tubes and so do your state law claims.

MR. PIROZZOLO: Judge Smith said so, he said as much. He said he would be -- when we were arguing, I made the argument that, "Well, the pendent State claims would survive." And, he said at this stage of the action, he said we might -- if there isn't Federal jurisdiction -- and, part of the reason we're here is that jeopardy and part of it was his suggestion. He said we might be in the State Court -- better off in the State Court. And, even though he's ruled, it's not necessarily the last word. We want to be sure we can proceed with this action. And, here, for better or for worse, we have an entitlement to proceed. There is no question of this Court's jurisdiction.

THE COURT: The issue -- I shouldn't have used the word "jurisdiction" because I was thinking of the pendent jurisdiction issue you're going to face if you lose on the federal claims in in Federal Court. That's why I've been reluctant to say, "Oh, yeah, sure, we'll dismiss this," because if you're thrown out of the Federal Court, now we're all back to square one here, new complaint, all new issues, same arguments. It's a big waste of time.

MR. PIROZZOLO: Yup.

THE COURT: Let me just take a quick break here. In the meanwhile, would you approach the bench?

Mr. Sheridan? I want to see all the attorneys up here.

(Bench conference)

THE COURT: I'm going to give my court reporter a break.

( R E C E S S )

THE COURT: We're proceeding again in the matter of 06-6095, Enhart vs. New England. We just took a brief recess. During that recess, I met briefly with counsel. It seemed to me that all of the parties here have raised good issues. I can see why the plaintiff has filed in both the Federal Court and the State Court.

The defendants have brought motions to dismiss. I understand why they've raised the substantive grounds they have. Unfortunately, that's invited me to pass on those substantive grounds, and I've -- between last month's or the earlier motions and today's motions, I've ruled against them on the substantive issues to the extent that Rule 12 motions to dismiss raise substantive issues. So, the defendants are stuck here with my rulings. This has all muddied the waters a little bit I think. The motion to dismiss is denied except for Count

2 as I've already indicated.

At this time I'm going to deny all of the motions to stay the proceedings. Travelers asked for a stay. NECC has asked for a stay. I won't stay the proceedings, but I'm going to ask the attorneys, out of courtesy to me and to each other, to forbear in filing motions for summary judgment, discovery motions and so on and so forth just for, let's say, two weeks. And, again, this is not an order. I'm asking for this out of courtesy to me and to your co-counsel and opposing counsel. Having heard what I heard in the conference, I think it's appropriate for me to go to the Presiding Justice of this Court and suggest to him that he make a special assignment of this case for both purposes of discovery, trial, all substantive issues and so on. I don't know what he'll say. He may look at me and laugh. He may say, "What a great idea."

While I'm going through that process, I'd like the attorneys to turn to their clients, sit everybody down and figure out what the clients want to do. I think the plaintiff needs to decide what risks the plaintiff wants to take and what risks the plaintiff doesn't want to take in terms of the two jurisdictions, federal versus state.

I think the defendants ought to figure out what they're willing to offer by way of stipulations. If you

can't agree to being in the Federal Court versus the State Court, and if you can't agree to preserve actions versus other actions, you at least ought to come up with some stipulations on discovery so you don't have to duplicate everything.

So, go to your clients this week. Let's have a conference next week. I'll talk to Judge Rodgers. Everybody will have had an opportunity to think about this, and maybe we can get all of you on the correct track. As I said during the conference, you all want to litigate this. You want a judge that is fair and impartial. You want someone who can read the law. You want a decent trial and you want to get on with your lives. And, you're getting mired in things that you ought not to get mired in as far as I'm concerned, and you're going to be wasting everybody's time if you don't straighten this piece of it out.

So, the motion is granted in part and denied in part. Travelers' was denied. Somebody present an order and judgment -- I'm sorry. Not a judgment. An order on this, okay? You can leave out the part about it going into this two-week hiatus because that's not an order. Okay.

Who wants to be -- Mr. Ryan, how long is your trial?

MR. RYAN: Just two or three days, your Honor,

hopefully.

THE COURT: All right. Do you want Mr. Sheridan to be the one to coordinate all this or your associate or what?

MR. RYAN: I'd be happy to do it, your Honor.

THE COURT: All right. And, quite frankly, I think you're doing an awfully good job, and I don't see any need for any pro hac vice counsel. You've been in my courtroom any number of times. You're very competent. You know what you're doing. Your firm knows what it's doing. This long-standing representation stuff that everybody is using to get out-of-state law firms in here without taking the bar exam just is not something -- is not a practice that I like, okay? So, I'm not going to tell you you can't bring any more pro hac vice motions. But, if you do, make sure they're in proper form and just understand that I don't favor them, nor does the Supreme Court, okay?

MR. SHERIDAN: Thank you, your Honor.

THE COURT: There's plenty of competent lawyers here that do a darn good job. And, nobody realizes when the pro hacs come in and they start doing all the paperwork, I end up on the phone day in and day out explaining, "You can't file it this way, you got to file it the other way, you've submitted the wrong form of order," blah, blah,

blah, blah, blah. So, it's a bigger problem than me just trying to restrain somebody.

MR. SHERIDAN: Candor compels me to say we've already filed a pro hac motion that will be appearing on your calendar forthwith.

THE COURT: You know what you can do, Mr. Sheridan, if you want to set up an e-mail distribution list -- did you want to do it that way so we can coordinate this? I can give you my e-mail address, but it's not to be spread around. I expect everyone to keep it in their office and don't contact me except in the context of what we're trying to put together here. Do you want to do that?

MR. SHERIDAN: Certainly, your Honor.

THE COURT: Capital P, small h, u-r-s-t, at courts, plural, c-o-u-r-t-s, dot, r-i, dot, gov. So, make a distribution list for everybody that is involved. Don't put the clients on it. Just me and the lawyers. And, then we can set up the conference that way, and we can keep everybody posted and I can let you know about the progress that I have made with Judge Rodgers.

MR. SHERIDAN: Thank you, your Honor.

THE COURT: Does that work?

MR. PIROZZOLO: Thank you, your Honor.

* * * * *