# EXHIBIT A

HEARING DATE: 7/10/07 at 9:30 a.m.

STATE OF RHODE ISLAND
PROVIDENCE, SC.

SUPERIOR COURT

EMHART INDUSTRIES, INC.
Plaintiff,

v.

NEW ENGLAND CONTAINER COMPANY, INC., TRAVELERS CASUALTY & SURETY COMPANY and PROVIDENCE WASHINGTON INSURANCE COMPANY,
Defendants.

C.A. No. 06-6095

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT PROVIDENCE WASHINGTON INSURANCE COMPANY'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

Pursuant to Rule 12(b)(6) of the Superior Court Rules of Civil Procedure, Defendant Providence Washington Insurance Company ("Providence Washington") submits this memorandum of law in support of its Motion to Dismiss the Complaint filed by Emhart Industries, Inc. ("Emhart"). As set forth in greater detail below, the claims filed by Emhart against Providence Washington should be dismissed because Emhart's claims are barred under R.I. Gen. Laws § 27-7-2 which prohibits suit by an injured party against a defendant's insurer and Emhart does not have standing as a third-party beneficiary to file suit for insurance coverage under the insurance policies issued by Providence Washington.

## I. INTRODUCTION

Plaintiff, Emhart Industries, Inc. ("Emhart") has filed suit against New England Container Company, Inc ("NECC") and NECC's two insurers, Travelers Casualty & Surety Company ("Travelers") and Providence Washington relative to the payment of remediation costs at the Centredale Manor Superfund Site in North Providence, Rhode Island ("Centredale Manor Site").[1] The EPA issued notices of potential liability under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA") with respect to the Centredale Manor Site to both NECC and Emhart. *See* Compl. ¶¶ 7 and 9. The EPA alleges that Emhart's liability is based on the chemical manufacturing activities of a predecessor company known as Metro-Atlantic, Inc. *See* Compl. ¶ 26.

According to Emhart, NECC, not Metro-Atlantic, Inc., is the entity responsible for contamination at the Centredale Manor Site, and therefore, NECC should compensate Emhart "for all cost of containment, cleanup, restoration and removal of hazardous wastes, and for all damages, losses or injuries, including environmental, which result directly or indirectly from the discharges by NECC at the Site." Compl. ¶ 43. Emhart further alleges that it is entitled to the full value of the liability insurance policies issued

[1] Emhart filed a virtually identical complaint against NECC, Providence Washington and Travelers in the United States District Court for the District of Rhode Island in May 2006. *See* C.A. No. 06-218S. A motion to dismiss Emhart's claims against Providence Washington on the same grounds asserted herein was heard by Judge William Smith on November 13, 2006. Judge Smith has yet to render a decision on Providence Washington's Motion to Dismiss.

by Providence Washington to NECC between 1982 and 1985. *See* Compl. ¶ 10.

Emhart proceeds against Providence Washington on three theories: 1) Declaratory Judgment; 2) "Declaration as to Indemnification Benefits;" and 3) "Injunctive relief – Preserving Indemnification Limits of Providence Washington Policies." *See* Compl. Counts VI, VIII, and X.[2] According to Emhart, it has standing to pursue coverage under NECC's insurance policies because Emhart is an intended third-party beneficiary to those policies. *See* Compl. ¶ 64.

Emhart, however, has not and cannot present any evidence to establish that it is a third-party beneficiary under the PWIC policies. Moreover, Emhart's claims against Providence Washington are barred under the Rhode Island direct action statute, R.I. Gen. Laws § 27-7-2. Accordingly, Emhart has failed to state a claim upon which relief may be granted and Emhart's claims against Providence Washington should be dismissed.

## II. STANDARD OF REVIEW

Under Rhode Island law, a motion to dismiss should be granted when "it appears to a certainty that the plaintiff[] will not be entitled to relief under any set of facts which might be proved in support of their claim." *Guiliano v. Pastina*, 793 A.2d 1035, 1036 (R.I. 2002) (internal citations omitted). In reviewing a motion to dismiss, the court must "look no further than the complaint, assume that all allegations in the complaint are true, and resolve any doubts in [the non-movant's] favor." *Toste Farm Corp. v. Hadbury, Inc.*, 798 A.2d 901, 905 (R.I. 2002). Here, Providence Washington's Motion to Dismiss

[2] On May 4, 2006 NECC filed a complaint in this Court, see C.A. No. 06-2274 seeking declaratory judgment action against Providence Washington and Travelers in this Court to establish coverage for the contamination at the Centredale Manor Site. NECC's complaint against Providence Washington and Travelers is still pending.

should be granted because Emhart is not entitled, under any set of facts, to the claimed relief.

## III. ARGUMENT

### A. Emhart's Claims Against Providence Washington Are Barred By R.I. Gen. Laws § 27-7-2

In this case Emhart has filed suit against NECC and its insurers, Providence Washington and Travelers for the costs of the EPA mandated remediation at the Centredale Manor Site. Emhart's claims against Providence Washington, however, are expressly prohibited under R.I. Gen. Laws § 27-7-2, which provides that an injured party cannot file suit against the defendant's insurer until judgment has been obtained. Specifically, R.I. Gen. Laws § 27-7-2 states that "[a]n injured party, or, in the event of that party's death, the party entitled to sue for that death, in his or her suit against the insured, shall not join the insurer as a defendant." (emphasis added.) Rhode Island courts have held that the prohibition set forth in R.I. Gen. Laws § 27-7-2 applies to tort actions, as well as claims for declaratory relief filed directly against a defendant's insurance carrier. *See Canavan v. Lovett, Schefrin and Harnett*, 745 A.2d 173 (R.I. 2000); *Baxendale v. Martin*, No. 94-2303, 1997 WL 1051072 (R.I. Super. Ct. Aug. 14, 1997).

In *Canavan,* the Rhode Island Supreme Court referenced R.I. Gen. Laws § 27-7-2 when holding that a plaintiff could not file suit directly against the defendant law firm's professional malpractice insurance carrier. *Id.* at 174. In that case, the Court held that the plaintiff had no standing to bring a direct action against Lloyd's of London (the professional malpractice carrier) and that Lloyd's "had no duty to act in a fiduciary capacity toward the plaintiff." *Id.* The Court further noted:

> The plaintiff would have no direct action against Lloyd's until he first obtained a judgment against the law firm, and, secondly, that such judgment was not satisfied in whole or in part.

*Id.* at 174-175.

In *Baxendale*, Judge Gibney had to decide if the Plaintiff had standing to file a declaratory judgment action against the defendant's insurer prior to obtaining a judgment against the defendant. *See Baxendale*, 1997 WL 1051072, at *1. Judge Gibney reviewed a variety of cases in which this issue was raised and concluded:

> This court grants the defendant insurers' motion to dismiss the plaintiff's second amended complaint against the defendant insurers as the insurers were improperly joined as defendants in violation of § 27-7-2, and the plaintiff may not maintain a declaratory judgment action against the insurers at this time.

*Id.* at * 4 (emphasis added). In support of this position, Judge Gibney cited *St. Paul Fire Marine v. Med. Protective Co.*, 675 S.W.2d 665, 667 (Mo. App. 1984), *Farmer's Ins. Exchange v. District Court*, 862 P.2d 944 (Colo. 1993) and *Batteast v. Argonaut Ins. Co.*, 454 N.E.2d 706, 708 (Ill.App. 1 Dist. 1983). *Id.* at * 2-3.

In *St. Paul Fire Marine*, one of the insured's insurers requested a declaration of rights regarding a contract issued to the insured by another insurance company. 675 S.W.2d at 666.However, the court held that one who is not a party and has no right to enforce a contract lacks standing to seek a declaration of rights under that contract. *Id.* at 667.

Similarly, the court in *Farmer's Ins. Exchange* held that the plaintiff lacked standing to bring a declaratory judgment action against the defendant's insurer prior to

judgment, on the basis that the plaintiff did not yet possess a legally protected right or cognizable interest that could be resolved through a declaratory ruling. *See id.* at 947-48.

The policy consideration for the aforementioned position was best articulated by the court in *Batteast,* 454 N.E.2d at 708 when it wrote: "***There [would be] no reason why every tort claimant would not, upon filing a personal injury action, concomitantly file a declaratory judgment action to determine the maximum amount of coverage to which he would be entitled in the event that liability was subsequently established.***" The prohibition set forth in R.I. Gen. Law § 27-7-2, barring prejudgment direct action suits against a defendant's insurer, is consistent with this policy consideration.

In the parallel proceeding pending in federal court, Emhart cited *Morrow v. Norfolk & Dedham Mut. Fire Ins. Co.*, 661 A. 2d 967 (R.I. 1995) for the proposition that declaratory judgment actions against a defendant's insurer are permitted. Emhart's reliance on *Morrow*, however, is misplaced. In *Morrow*, the insurance company denied coverage to the plaintiff on the basis that he was the son of the policy holder, and therefore, an insured party under the contract. *Id.* After his claim was denied, the son filed a declaratory judgment action against the insurance company. In that case, the court held that the son had standing to pursue a declaratory judgment action against his father's insurer because R.I. Gen. Laws § 27-7-2 allows for "a declaration of rights <u>between parties to an insurance contract</u>," *Morrow* at p. 968 (emphasis added). Contrary to Emhart's assertions, however, the *Morrow* case does not establish that a third-party in Emhart's position can file a claim for declaratory relief.

In *Baxendale*, Judge Gibney analyzed the *Morrow* decision and held that a declaratory judgment action by a nonparty to an insurance contract was barred under R.I. Gen. Laws § 27-7-2. 1997 WL 1051072 at * 2. In *Baxendale*, the plaintiff argued, as does Emhart in this case, that the *Morrow* decision stands for the proposition that an injured party is permitted to file a suit for declaratory judgment against the defendant's insurer. *Id.* Judge Gibney expressly rejected the plaintiff's argument and held that the *Morrow* decision allowed for a declaration of rights between parties to a contract. *Id.* Judge Gibney explained that R.I. Gen. Laws § 27-7-2 barred the plaintiff from filing a declaratory judgment action directly against the doctor's insurer because the plaintiff was not a party to the contract for malpractice insurance held by the defendant doctor, and the plaintiff had not obtained a judgment against the doctor prior to filing the declaratory judgment action. *Id.* at *3-4.

In this case, Emhart is not a party to the insurance contracts between NECC and Providence Washington, nor has Emhart obtained a judgment against NECC as required under R.I. Gen. Laws § 27-7-2. Instead, Emhart has acted in <u>direct</u> <u>contravention</u> of R.I. Gen. Laws § 27-272 by naming Providence Washington in the same action that was filed against NECC to establish liability for contamination at the Centredale Manor Site. The direct suit against Providence Washington, absent an entry of judgment against NECC, is expressly prohibited under Rhode Island laws § 27-7-2. Accordingly, Emhart's claims against Providence Washington are barred and should be dismissed.

B. Emhart Does Not Have Standing To Assert A Direct Action Against Providence Washington Because Emhart Is Not An Intended Third-Party Beneficiary Under The Insurance Contracts Between Providence Washington And NECC

Emhart filed the within action against Providence Washington to declare its rights under insurance contracts between Providence Washington and NECC. Emhart's claims must fail, however, because Emhart is not a party to the insurance contracts nor is it an intended third-party beneficiary. Under Rhode Island law, it is well established that in order to bring a declaratory judgment action there must be a justiciable controversy. *See Meyer v. City of Newport*, 844 A.2d 148, 151 (R.I. 2004). "By definition, a justiciable controversy must contain a plaintiff who has standing to pursue the action... ." *Id.* In Rhode Island, non-parties to an agreement do not have standing to bring an action to declare the validity or enforceability of an agreement. *See id.*; *see also Sousa v. Town of Coventry*, 774 A.2d 812, 815 n.4 (R.I. 2001) (in a case involving a town manager's authority to enter into a lease, the Rhode Island Supreme Court noted that there is no support for the proposition that an individual who was not a party to a contract may assert the rights of one of the contracting parties in order to avoid a contract or have it declared unenforceable).

Only parties to the contract or intended third-party beneficiaries may seek to have rights declared under a contract. *See Forcier v. Cardello*, 173 B.R. 973, 984-985 (D.R.I. 1994) (stating that only intended third-party beneficiaries, not incidental beneficiaries, can bring an action for damages resulting from a breach of contract). Where the plaintiff is neither a party to the (insurance) contract nor an intended third-party beneficiary, it has no legally protected interest that would give it standing to bring a declaratory judgment.

*See id.* at 985-86; *see also Farmer's Ins. Co., Inc. v. Miller*, 926 S.W.2d 104, 107-08 (Mo. App. 1996) (holding that plaintiffs lacked standing under the Declaratory Judgment Act where the plaintiffs were neither parties to the contact nor intended third-party beneficiaries; *St. Paul Fire Marine*, 675 S.W.2d at 667 (holding that one who is not a party to a contract lacks standing to bring a declaration of rights under the contract). Under Rhode Island law, third-party standing to enforce a contract extends equally to circumstances involving insurance agreements. *See e.g. Employers Mut. Cas. Co. v. Pires*, 723 A.2d 295, 298 (R.I. 1999).

In determining a claimant's standing as an intended or incidental third-party beneficiary, Rhode Island courts follow the Restatement (Second) of Contracts. *See Forcier*, 173 B.R. at 985; *see also Finch v. Rhode Island Grocers Assoc.*, 175 A.2d 177, 181 (R.I. 1961). Under Section 302 of the *Restatement (Second) of Law – Contracts*, the parties to a contract must "directly and unequivocally intend to benefit a third party in order for that party to be considered an intended beneficiary." *Forcier*, 173 B.R. at 985. "There is a strong presumption, [however], that parties contract only for the benefit of themselves, and a contract will not be considered as having been made for the use and benefit of a third person unless it clearly appears that such was the intention of the parties." *Brown v. Summerlin Assoc.*, 614 S.W.2d 227, 229 (Ark. 1981).

Unlike an intended third-party beneficiary, "[a]n incidental beneficiary acquires by virtue of the promise no right against the promisor or the promisee." *Restatement (Second) of Law – Contracts* § 315. Under the comment section of Section 315a it is further noted that:

> An incidental beneficiary is a person who will be benefited by performance of a promise but who is neither a promisee nor an intended beneficiary.

*Id.*

An "incidental beneficiary" is a disfavored and narrowly construed concept. This is particularly true when the incidental beneficiary seeks to collect funds for damages or injuries from an unrelated indemnitor or service provider. In *Denman v. People's Heritage Bank, Inc.*, 704 A.2d 411, 414 (Me. 1998), a pedestrian was injured when she slipped and fell on ice that had accumulated on a public sidewalk in front of a bank. The plaintiff pedestrian brought an action against both the bank and the company with which the bank had executed a snow removal agreement. *Id.* at 413. The trial court entered summary judgment for both the bank and the snow removal company. *Id.* On appeal, the Supreme Court of Maine held that neither the bank nor the snow removal company owed the plaintiff a duty of care under a city ordinance mandating the removal of snow and ice. *Id.* at 414. The court also affirmed that the plaintiff could not recover against the snow removal company under a theory that she was an intended third-party beneficiary of the agreement between the bank and the snow removal company. *Id.* at 415. The court rationalized that because there was no evidence supporting her contention that the defendants intended for her to reap the benefit of the snow removal contract, the defendants' summary judgment would be granted. *Id.*

In *Anderson v. Regents of the Univ. of California*, 554 N.W.2d 509, 516 (Wis. 1996), tourists who contracted with a tour operator and ticket agency for a tour package to the 1994 Rose Bowl Game sued the regents of the University of California when they learned that tickets to the game were unavailable or could not be obtained for more than

their face value. The appellate court affirmed the trial court's dismissal of the case holding that the plaintiffs were not third-party beneficiaries of the game participation agreement between the Pacific Ten Conference, the Big Ten Conference and the Football Tournament Association, and therefore, the plaintiffs lacked standing to sue for the breached participation agreement. *Id.* at 517. The court also determined that whatever benefit plaintiffs derived as potential ticket purchasers as a result of the agreement's provision limiting the sale price of tickets to their face value was only incidental and persons who enjoyed only incidental benefits from an agreement between other parties were not third-party beneficiaries of the contract. *Id.* at 516.

In *Klamath Water Users Protective Ass'n v. Patterson*, 204 F.3d 1206 (9th Cir. 1999), irrigators brought suit seeking to preserve existing water allocations. Plaintiff irrigators alleged they were third-party beneficiaries to a 1956 contract between the United States Bureau of Reclamation and a power company that operated a dam. *Id.* at 1210. The Oregon Federal District Court granted declaratory judgment to the Bureau and the power company successor, holding that the irrigators did not have third-party beneficiary water rights under the contract. *Id.* at 1209. The Ninth Circuit Court of Appeals affirmed holding that the plain language of the contract rebutted the contention that irrigators were intended third-party beneficiaries. *Id.* at 1211.

The national disfavor of incidental beneficiaries in the aforementioned circumstances is consistent with the position enumerated by the Rhode Island Supreme Court that non-parties to an agreement and incidental beneficiaries do not have standing

to bring an action to declare the validity or enforceability of contracts. *See Meyer*, 844 A.2d at 151; *see also Forcier*, 173 B.R. at 984-87.

Here, even if the Court accepts as true all facts in Emhart's Complaint and even if the Court draws all reasonable inferences there from in Emhart's favor, it is evident that Emhart cannot prevail in a declaratory judgment action against Providence Washington. According to Emhart, its claims against NECC are "within the scope of the coverage afforded by the Providence Washington Policies." Compl. ¶ 61. Even if the Court accepts as true that insurance policies issued by Providence Washington to NECC cover environmental liabilities, Emhart cannot establish that it was an intended third-party beneficiary under the insurance policies between Providence Washington and NECC. Emhart has not alleged, nor can it establish, that Providence Washington and NECC directly and unequivocally intended to benefit Emhart by entering into the contract for insurance. Moreover, there is no basis to infer that Providence Washington and NECC entered into contracts for insurance coverage to protect Emhart from CERCLA liability. If anything, Emhart is no more than an incidental beneficiary under the insurance policies between Providence Washington and NECC. Emhart's status as an incidental beneficiary, however, does not confer upon it the right to seek a declaration as to Providence Washington's obligations under the insurance policies. Accordingly, Emhart does not have standing to assert a claim against Providence Washington and the Court should grant Providence Washington's motion to dismiss Emhart's claims under Rule 12(b)(6) of the Superior Court Rules of Civil Procedure.

## CONCLUSION

For the foregoing reasons, the Defendant Providence Washington Insurance Company respectfully requests that this Court dismiss the Complaint against it pursuant to 12(b)(6) of the Superior Court Rules of Civil Procedure for failure to state a claim upon which relief may be granted.

Dated: December 4, 2006

For the Defendant
Providence Washington Insurance Co.,
By its Counsel,

Todd D. White (#5943)
Jaime LaPorte (#6668)
Adler Pollock & Sheehan P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903-1345
Tel: (401) 274-7200
Fax: (401) 351-4607

CERTIFICATE OF SERVICE

I hereby certify that on this 4th day of December 2006, I caused a true copy of the within document to be sent to the following individuals by regular mail, postage prepaid:

Robert J. O'Keefe, Esq.
Rachelle R. Green, Esq.
Duffy Sweeney & Scott, Ltd.
One Turks Head Place, Suite 1200
Providence, RI 02903

Jack R. Pirozzolo, Esq.
Foley Hoag, LLP
155 Seaport Boulevard
Boston, MA 02110

Jason C. Preciphs, Esq.
Roberts, Carroll, Feldstein Pierce
Ten Weybosset Street
Providence, RI 02903

Eric Bradford Hermanson, Esq.
Choate, Hall & Stewart
Two International Place
Boston, MA 02110

James W. Ryan, Esq.
Partridge Snow & Hahn
180 South Main Street
Providence, RI 02903

*400985_1.doc*