# EXHIBIT B

STATE OF RHODE ISLAND
PROVIDENCE, SC

SUPERIOR COURT

EMHART INDUSTRIES, INC.

Plaintiff,

v.

NEW ENGLAND CONTAINER COMPANY, INC., PROVIDENCE WASHINGTON INSURANCE COMPANY and TRAVELERS CASUALTY AND SURETY COMPANY,

Defendants.

C.A. No. PC 06-6095

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS COMPLAINT AGAINST TRAVELERS CASUALTY AND SURETY COMPANY**

Pursuant to Super. Ct. R. Civ. P. 12(b)(6), Defendant Travelers Casualty and Surety Company ("Travelers") submits this memorandum of law in support of its Motion to Dismiss. This action should not be entertained by this Court because it is identical, in all material respects, to an action previously filed by Emhart in federal court in this jurisdiction. That federal action has been fully briefed and argued, and Defendants' motions to dismiss for legal insufficiency are awaiting disposition. No purpose would be served by allowing Emhart to pursue both actions at once; indeed, the simultaneous prosecution of both actions is contrary to Rhode Island law, and to sound considerations of judicial efficiency and public policy.

Moreover, even if one could overlook the impropriety of Emhart filing two separate, identical actions, against the same defendants, six months apart, Emhart's claims against Travelers would fail to state a claim on which relief can be granted. Under Rhode Island

law, Emhart has no standing to assert a direct claim against its adversary's policies of insurance. See R.I. Gen. Laws 1956 § 27-7-2 (2002)("an injured party, . . . in his or her suit against the insured, shall not join the insurer as a defendant"). To the extent this Court is inclined to overlook the procedural impropriety of this action, and consider Emhart's complaint on the merits, Emhart's claims against Travelers should be dismissed with prejudice under R.I. Super. Ct. R. 12(b)(6).

## BACKGROUND

This suit arises from certain administrative actions commenced by the Environmental Protection Agency ("EPA") in connection with the Centredale Manor Restoration Superfund Site in North Providence, Rhode Island (the "Site"). Plaintiff Emhart Industries, Inc. ("Emhart") is alleged to have been an owner of property at the Site. Defendant New England Container Company, Inc. ("NECC"), a Rhode Island corporation, is alleged to have been a neighboring property owner.

In July 2006, Emhart filed suit in United States District Court in this jurisdiction against NECC and NECC's insurers – precisely the same parties that Emhart has now re-named as defendants in this action. See Complaint, *Emhart Industries, Inc. v. New England Container Company, Inc., Providence Washington Insurance Company and Travelers Casualty & Surety Company*, C.A. No. 06-218-S-LDA (filed May 11, 2006) (Exhibit A) (the "Federal Court action").[1] Emhart's claims against NECC were for cost

[1] This court may properly take judicial notice of the filings and other papers submitted in the Federal Court action, under R.I. Evid. R. 201. The filings are facts that are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonable be questioned," namely, the PACER on-line center operated by the Administrative Office of the United States Courts. See http://pacer.psc.uscourts.gov/pacerdesc.html. For the convenience of this Court, copies of the relevant pleadings – printed from the official PACER web site – also are attached as Exhibits to the present Memorandum of Law.

recovery, contribution and equitable indemnity, based on NECC's alleged activities at the Site. Emhart's claims against Travelers and Providence Washington Insurance Company ("PWIC") were based on those insurers having written certain policies of insurance to NECC. Among other things, Emhart asked the Federal Court to find that Emhart has the right to indemnification under NECC's policies (the "Policies"), in the event that Emhart prevailed in its claims against NECC; and sought an injunction to prevent the insurers from entering into any potential agreement with NECC which would erode the limits of the Policies. See Emhart Federal Complaint (Exh. A), ¶¶ 53-84.

On July 6, 2006, Travelers filed a motion in Federal Court to dismiss Emhart's Complaint for failure to state a claim on which relief could be granted. See *Memorandum of Law in Support of Motion to Dismiss Complaint Against Travelers Casualty & Surety Co.*, C.A. No. 06-218-S-LDA (filed July 6, 2006) ("Travelers Mem.") (Exhibit B). In support of its motion, Travelers cited the Rhode Island direct-action statute, R.I. Gen. L. § 27-7-2, and the common law doctrine that third parties may not sue directly under a contract of insurance issued to its litigation adversary. Id. (Exh. B), pp. 2-5. PWIC and NECC also filed motions to dismiss. On November 13, 2006, the Federal Court heard argument on Defendants' dismissal motions. It told Defendants that it would take their motions under advisement, and would issue a ruling in the near future.

**The Present Action**

On November 22, 2006, Emhart (without prior notice to Defendants' counsel) filed the present Superior Court Complaint, along with a Motion for Temporary Restraining Order to restrain NECC from reaching any settlement of its ongoing dispute with its insurers. The Superior Court Complaint was based on exactly the same facts as the

Federal Court complaint, and sought precisely the same relief against NECC, PWIC, and Travelers. Indeed, an examination of Emhart's Federal Court complaint, side by side with the present Superior Court complaint, reveals that the legal assertions in the two complaints are virtually identical.

On November 27, 2006, Judge Fortunato issued an order denying Emhart's motion for a temporary restraining order. His ruling did not reach the merits of Emhart's claim; instead, he credited the Insurers' representations that there were no settlement discussions ongoing between NECC and its Insurers, and found that Emhart had not met its threshold burden of showing a likelihood of "imminent and irreparable harm."

**Emhart's Attempts At Forum-Shopping**

On December 1, 2006, Emhart – apparently unwilling to accept Judge Fortunato's order – filed a second, "emergency" motion, before Judge Hurst, on the Civil Motion Calendar of the Providence Superior Court. The motion alleged basically the same facts that Emhart had alleged as a basis for its temporary restraining order, and sought discovery on whether any settlement discussions were ongoing between NECC and the insurers. On December 6, 2006, Judge Hurst denied that motion and ordered that no discovery should take place until Defendants had an opportunity to respond to (and challenge the legal merits of) Emhart's complaint.

On December 11, 2006, Emhart –apparently unhappy with Judge Hurst's ruling on its "emergency" discovery motion – sought to abandon the Motion Calendar, and filed an application to transfer this case into the Business Calendar. On December 13, 2006, Judge Silverstein denied that motion.

Emhart's attempts at forum-shopping having now been rejected, this case returns

to the Superior Court Civil Motion Calendar for disposition, and Travelers seeks dismissal of the remainder of Emhart's action, pursuant to Rule 12(b)(6) of the Rhode Island Rules of Civil Procedure.

## LEGAL STANDARD

Under R.I. R. Civ. P. 12(b)(6), a court must dismiss a complaint for failure to state a claim where the complaint "presents no set of facts justifying recovery." Cooperman v. Individual Inc., 171 F.3d 43, 46 (1st Cir. 1999). In performing this analysis, the Court must accept as true "the well-pleaded factual allegations of the complaint, [and] draw all reasonable inferences therefrom." Martin v. Applied Cellular Tech., 284 F.3d 1, 6 (1st Cir. 2002). "However, when it appears that the plaintiff would not be entitled to relief even when allegations are viewed in the light most favorable to [it], dismissal is appropriate." Stinson v. Simplex Grinnell L.P., 240 F.3d 83, 87 (1st Cir. 2001). For example, in Canavan v. Lovett, Schefrin & Harnett, 745 A.2d 173, 174-75 (R.I. 2000), the Rhode Island Supreme Court upheld the dismissal under Rule 12(b)(6) of claims brought by a malpractice plaintiff against the defendant's insurer, based on the plaintiff's failure to plead circumstances that would permit the plaintiff to bring a direct action against that insurer under R.I. Gen. Laws 1956 § 27-7-2 (2002) ("Section 27-7-2").

## ARGUMENT

### A. Emhart's Claims Against Travelers Are Barred By The Pendency of The Prior Federal Action.

Here, as noted, the relevant allegations of Emhart's Superior Court complaint are almost exactly identical to the allegations of the Federal Court complaint filed by Emhart, in this jurisdiction, against the same parties. Under Rhode Island law, the pendency of a

prior action between the same parties, in the same jurisdiction, on the same subject matter, permits dismissal of the second-filed complaint. Elmasian v. Daley, 87 R.I. 431 (1958); see also Rosen v. Rosen, 404 A.2d 472 (R.I. 1979).

A rule requiring dismissal of duplicative filings is supported by sound considerations of public policy. Duplicative litigation wastes judicial resources. It multiplies costs unnecessarily, burdens the court system, and allows plaintiffs unfairly to vex and harass defendants and "shop" for judges or procedural rules that might be perceived as favorable to the plaintiff's position. Moreover, it raises a significant possibility of the two courts reaching conflicting decisions, with a concomitant loss of certainty in judicial outcomes, and the threat of loss of public confidence in the judicial system as a whole. At a minimum, if a Court learns that an action between the same parties, involving the same issues, is presently pending in another Court, the second Court should stay the later-filed suit, and should order the parties to make no further filings in that suit until the prior pending action has been determined or dismissed. Syenergy Methods, Inc. v. Heritage Sales Corp., 1985 WL 661651 (R.I. Super. June 18, 1985).

**B. Emhart's Claims Against Travelers in Counts VII, IX and XI Are Barred By R.I. Gen. Laws § 27-7-2.**

For the reasons stated above, the public policy against duplicative litigation is sufficent, in and of itself, to require dismissal of Emhart's present claims. However, to the extent that this Court is inclined to reach the merits of Emhart's complaint, those claims should be dismissed, because – as Travelers has previously argued to the Federal Court – those claims are barred by R.I. Gen. Laws § 27-7-2. See generally Travelers Mem. (Exh. B); see also *Plaintiffs' Memorandum of Law in Support of Its Objection to Motion to*

*Dismiss Complaint Against Travelers Casualty and Surety Co.*, C.A. No. 06-218-S-LDA (filed August 8, 2006) ("Emhart Mem.") (Exhibit C); *Defendant Travelers Casualty and Surety Company's Reply to Plaintiff's Objection to Motion to Dismiss Complaint*, C.A. No. 06-218-S-LDA (filed August 8, 2006) ("Travelers Reply Mem.") (Exhibit D).

### 1. R.I. Gen. Laws § 27-7-2 Is Clear and Unequivocal, and Bars The Relief Emhart Is Seeking.

Section 27-7-2 prohibits an insurer from being joined as a defendant in an action against the insurer's policyholder, except in extremely limited circumstances:

> An injured party, or in the event of the injured party's death, the party entitled to sue for that death, in his or her suit against the insured, ***shall not join the insurer as a defendant.*** If the officer serving any process against the insured shall return that process "non-est inventus", or where before suit has been brought . . . the insured has died, or where a suit is pending against an insured in his or her own name and the insured has died prior to judgment, . . . the injured party, and in the event of that party's death, the party entitled to sue for that death, may proceed directly against the insurer. The injured party, or in the event of that party's death, the party entitled to sue for that death, after having obtained judgment against the insured alone, may proceed on that judgment in a separate action against the insurer . . . .R.I. Gen. Laws § 27-7-2 (2002) (emphasis added).

The statutory prohibition is clear and unequivocal. It reflects a considered legislative judgment that an injured party may sue a defendant's insurer only in the event of the insured party's unavailability, or after the injured party has "obtained judgment against the insured alone." Id.; Mendez v. Brites, 849 A.2d 329, 332, n.2 (R.I. 2004) ("in Rhode Island and in most other jurisdictions, an injured party lacks standing to maintain a direct action for damages against a tortfeasor's insurer until and unless the injured party has secured a judgment against the tortfeasor"); Collier v. Travelers Ins. Co., 197 A.2d

493, 496 (R.I. 1964). See also, e.g., Doire v. Commerce Ins. Co., 692 A.2d 696, 697 (R.I. 1997); Clauson v. New England Ins. Co., 254 F.3d 331, 336 (1st Cir. 2001). One effect of the policy is "to protect the insurance company against the well-known tendency of jurors to fail to consider the merits if a defendant . . . is insured." See Travelers Mem., pp. 4-5 (citing Miller v. Metropolitan Cas. Ins. Co., 146 A. 412, 414 (R.I. 1929); Collier, 197 A.2d at 496). Another effect is to protect insurers from being forced into an impossibly conflicted position: owing duties both to their policyholders and to the third-party claimants that are litigating against those policyholders.

Here, as in Canavan, Emhart has not pleaded, and cannot credibly plead, any of the limited circumstances that might permit the filing of a direct suit against Travelers under the Rhode Island statute. It does not allege that service on NECC was returned because NECC could not be found. It does not allege that it has obtained judgment against NECC. In Count VII of its State Court Complaint, Emhart does allege, on information and belief, that NECC "has ceased business operations and sold its business assets." Complaint, ¶ 68. Perhaps Emhart intends to argue, in this Count of the Complaint, that NECC has "died" within the meaning of the statute. But, if this is Emhart's intention, it is unavailing. As the First Circuit recently made clear, Section 27-7-2's "death of the insured" exception does not apply to the insolvency or dissolution of a corporation. Travelers Mem., p. 5 (*citing* Carriero v. Rhodes Gill and Co., Ltd., 68 F. 3d 1443, 1450-51 (1st Cir. 1995) ("the plain and sensible meaning of 'died' does not embrace the dissolution of a corporation.")).

**2. R.I.G.L. § 27-7-2 Contains No Exception for Declaratory Judgments, and There Is No Sound Basis For Such An Exception.**

In an effort to avoid the Rhode Island statute, Emhart sought to argue in the

Federal Court that declaratory judgments by third parties were not "direct actions" against insurers, and therefore were not subject to R.I.G.L. § 27-7-2. See Emhart Mem. (Exh. C), at 1 - 2. But, contrary to Emhart's suggestion, the statutory prohibition is clear and unequivocal. It prohibits an injured party from joining an insurer as a defendant in any action against the insurer's policyholder. It does not distinguish between cases in which an insurer is joined as a declaratory judgment defendant, and those in which a party simply "claim[s] damages from the insurer." Id. (Exh. C) at 2; see also Travelers Reply Mem. (Exh. D), pp. 2-4.

Nor has Emhart pointed to any Rhode Island case law that would support its proposed construction of the Rhode Island statute. Although Emhart's brief in the federal action cited Morrow v. Norfolk & Dedham Mutual Fire Ins. Co., 661 A.2d 968 (R.I. 1995) for the broad proposition that a "declaratory judgment action by an injured party [is] not a direct action prohibited by the statute," see Emhart Mem. (Exh. C), at 2, this argument misreads Morrow. The plaintiff in Morrow was the policyholder's son, who was injured in his father's home. The plaintiff then filed a claim under his father's policy. The insurer rejected the claim, "on the basis that [the plaintiff] was considered a resident of [the policyholder's] household and he therefore had the status of an insured." 661 A.2d at 968. On review, the Rhode Island Supreme Court concluded – not surprisingly – that the plaintiff had standing to challenge the insurer's denial directly: "There is nothing in the statute that precludes a declaration of rights between parties to an insurance contract." 661 A.2d at 968.

In the instant case, by contrast, no party has alleged that Emhart is a "party" to the Travelers Policies, or that it "has the status of an insured." The facts that underlay the

Supreme Court's decision in Morrow simply are not present in this case.[2] See Travelers Reply Mem. (Exh. D), p. 4; see also Baxendale v. Martin, 1997 WL 1051072 (R.I. Super. Aug. 14, 1997) (construing Morrow).

### 3. The Rhode Island Case Law Also Fails To Support Emhart's Construction of R.I.G.L. § 27-7-2

At least two subsequent Rhode Island Supreme Court cases confirm that – contrary to Emhart's position – Morrow did *not* hold "a declaratory judgment action by an injured party was not . . . prohibited by the statute." In Robinson v. Mayo, 849 A.2d 351 n.2 (R.I. 2004), the Rhode Island Supreme Court – implicitly rejecting Emhart's view of the Morrow holding – described a claimant's right to seek a declaratory judgment against an insurer as being, at best, "unsettled" under Rhode Island law. In Mendez v. Brites, 849 A.2d 329 n.2 (R.I. 2004), the Court went further, noting that "[m]ost courts would hold that the absence of privity of contract between an injured-party claimant and the alleged tortfeasor's insurer bars not only a direct damages action but also a declaratory-judgment action against that insurer." Tellingly, neither Robinson nor Mendez made any reference to Morrow – an omission that is all but incomprehensible if Morrow had, in fact, held (as Emhart argues) "that a declaratory judgment action by an injured party was not a direct action prohibited by the statute." Emhart Mem. (Exh. C), p. 2; see also Travelers Reply

---

[2] In addition to Morrow, Emhart's Federal Court papers cite Doire v. Commerce Insurance Co., 692 A.2d 696, 696-97 (R.I. 1997), to suggest that a declaratory judgment may be treated differently from a direct action for damages for purposes of § 27-7-2. Emhart Mem. (Exh. C), pp. 8-9. In fact, Doire supports Travelers position. The plaintiff in Doire had already obtained a default judgment against the insured prior to filing a declaratory judgment suit against the insurer. See 692 A.2d at 696-97. Although the Court found that the declaratory judgment action was improper, it allowed the case to proceed because the plaintiff met one of the express conditions on which direct actions are permitted by § 27-7-2. See R.I.G.L. § 27-7-2 ("The injured party...after having obtained judgment against the insured alone, may proceed on that judgment in a separate action against the insurer..."). In the present case, by contrast, Emhart does not – and cannot – allege that it has "obtained judgment against the insured alone."

Mem. (Exh. D), pp. 5-6.

Ultimately, the Court in both Mendez and Robinson found it unnecessary to decide whether R.I.G.L. § 27-7-2 barred the plaintiffs' declaratory judgment suit, because the Court found, in both cases, that the insurer had waived the right to invoke the Rhode Island statutory bar.[3] As a result, the Courts in Robinson and Mendez went on to muse about the purported "conflict in authority" from other jurisdictions, where Rhode Island's direct action statute did not apply. But the Courts' lengthy discussion of this alleged conflict, in both Robinson and Mendez, is mere dictum. The Courts' musings have little or no application to the instant case, where Travelers has timely briefed and argued – and has in no way waived – its rights under the Rhode Island statute.

Interestingly, Emhart's brief in the Federal Court relegated to a footnote the one Rhode Island case, Baxendale v. Martin, 1997 WL 1051072 (R.I. Super. Aug. 14, 1997), that squarely addresses the scope of Morrow's holding and the application of R.I.G.L. § 27-7-2 to an action for declaratory judgment. See Emhart Mem. (Exh. C), p. 10 n. 3. Considering a plaintiff's motion to add a defendant's insurers as declaratory judgment defendants, in an action against a policyholder for damages, Judge Gibney in Baxendale addressed and rejected the precise argument made by Emhart in this case – that § 27-7-2 should be construed to "exempt declaratory judgments from [the statute's] purview on the ground that the declaratory judgment is distinguishable from a tort liability action." 1997 WL at 1051072 at * 2. With respect to Morrow, Judge Gibney wrote:

---

[3] See Robinson, 849 A.2d at 332 n.2 (noting that "no party in this case has briefed this issue to us or invoked § 27-7-2 as a bar to plaintiff's joinder of the Trust as a party"); Mendez, 849 A.2d at 333 n.2 (noting, again, that "no party in this case [had] properly has briefed and argued" the issue; and finding that the insurer had waived the protection of § 27-7-2, in any event, by submitting to a cross-complaint by its policyholder).

> [A] close reading of Morrow reveals that the Rhode Island Supreme Court further qualified the declaration of rights to mean those rights 'between parties to an insurance contract.' Morrow, plaintiff son of the insured[,] brought a claim directly against his . . . father's insurer for injuries the son had sustained during a fall on the covered premises. The insurance company denied the claim on the ground that [the] plaintiff was not a third party but an actual insured who thus was precluded from recovery under the terms of the policy . . . . The insurance company was a party to a contract under which an actual claim had been made by plaintiff whom the company alleged was an actual insured party . . . . In the instant case, the plaintiff is not an alleged party to the insurance contract, and, thus, the principle set out in Morrow does not apply.

In its Federal Court filings, Emhart attempted to argue that Judge Gibney's decision in Baxendale was "flawed," and that Judge Gibney did not consider "the Morrow decision as a whole." See Emhart Mem. (Exh. C), p. 10 n. 3. In fact, it is Emhart's reading, not Judge Gibney's, that fails to consider Morrow "as a whole" – in light of the facts of the case, the coverage positions of the defendant insurer, and the subsequent treatment of the decision in Mendez and Robinson. See Travelers Reply Mem., pp. 6-7. Judge Gibney's reading of Morrow is entitled to significant deference from this Court, and it is both persuasive and legally correct.

**4. Other Authority (Outside Rhode Island) Is Either Inapplicable To This Case, Or Supports Travelers Position.**

Having failed to distinguish Baxendale, or to identify any countervailing Rhode Island authority that would permit it to circumvent the plain language of R.I.G.L. § 27-7-2, Emhart devoted the majority of its Federal Court brief to a broad, and largely irrelevant, recitation of case law authority from other states. See Emhart Mem. (Exh. B). To the extent Emhart repeats those arguments here, they are unavailing. Most of the cases that

Emhart cites are from jurisdictions that have no statutory equivalent to R.I.G.L. § 27-7-2. They were decided under the common law of these other states, or under direct-action statutes that bear no resemblance to the one enacted by the Rhode Island legislature. They are, quite simply, inapplicable to the issue of statutory construction presented by R.I.G.L. § 27-7-2.[4]

In any event, to the extent that the authorities cited by Emhart are in any way relevant to the issue of statutory construction before this court, those cases represent a *minority* common-law view.[5] The *majority* view – even in jurisdictions that have no statutory equivalent to R.I.G.L. § 27-7-2 – is that "the absence of privity of contract between an injured-party claimant and the alleged tortfeasor's insurer bars not only a direct damages action but also a declaratory-judgment action against that insurer." Mendez, 849 A.2d at 331 n.2. See generally 15 Appleman on Insurance 2d § 112.10 at 338 (2000); 7 Russ et al., Couch on Insurance 3d § 104:2, 104:10 -11 (1997)).

[4] Moreover, a significant number of the cases that Emhart cited in its Federal Court brief turn out, on examination, to be red herrings. Although some of these cases involve claims for declaratory judgment, the decisions of the courts in these cases do not turn on the distinction between a declaratory judgment suit and a suit for damages. In allowing these cases to proceed, the courts focus on other factors – factors that would often be sufficient to bring them within the statutory exceptions to R.I.G.L. § 27-7-2 in any event. See, e.g., Harford Mutual Insurance Co. v. Woodfin Equities Corp., 687 A.2d 652, 654 (Md. 1997) (default judgment for fixed amount entered against insured and insured was insolvent); Fortson v. St. Paul Fire and Marine Insurance, 751 F.2d 1157, 1159 (11th Cir. 1985) (separate action against insurer for bad faith).

[5] The one case that Emhart's Federal Court brief cited most prominently, Bankers Trust v. Old Republic Ins. Co., 959 F.2d 677, 679-681 (7th Cir. 1992), was decided under the law of Illinois – a jurisdiction which, unlike Rhode Island, has no statutory limitations on actions against insurers. Bankers Trust arose in the context of a "tangled" fact pattern in which the policyholder first defaulted on a loan to the plaintiff, then entered into an allegedly collusive settlement with its insurer establishing the maximum amount to which the policyholder would be entitled in any insurance proceeds or settlement. Id. at 679-80. Although the Seventh Circuit permitted the plaintiff's declaratory judgment suit to proceed against the insurer, it emphasized the district court's "equitable discretion to grant or withhold declaratory relief" in these circumstances, id. at 680, 681, and acknowledged the "general rule" at common law that "a suit to determine an insurer's obligations to indemnify its insured is premature until the insured has been determined to be liable to to somebody." Id. at 680. In the present case, if this Court is inclined to apply Banker's Trust, the most appropriate exercise of this Court's "equitable discretion" would be to apply the Rhode Island statute as written, dismiss this action, and reject Emhart's attempt to circumvent Rhode Island law by joining Travelers and its policyholder in a single, consolidated proceeding.

This majority view is consistent with the legitimate public policy concerns that Rhode Island courts, and courts in other jurisdictions, have articulated in the past. As Rhode Island courts repeatedly have acknowledged, the preclusion of direct actions against insurers serves several purposes, including courts' concern "to protect the insurance company against the well-known tendency of jurors to fail to consider the merits if a defendant . . . is insured." Miller v. Metropolitan Cas. Ins. Co., 146 A. 412, 414 (R.I. 1929); Collier v. Travelers Ins. Co., 197 A.2d 493, 496 (R.I. 1964). That concern is present whether a claimant's suit is for damages, or simply for a declaratory judgment that "if there is liability, the [insurer's] policies provide coverage." See Emhart Mem. (Exh. C), p. 12. In either case, the jury learns that the defendant is insured. In either case, the defendant and the insurance company must face "the well-known tendency of jurors to fail to consider the merits" in these circumstances.[6] In either case, the courts would be beseiged by coverage suits, brought by personal injury claimants who were not parties to, and lacked standing to seek a declaration of rights under, their adversaries' insurance contracts. See St. Paul Fire & Marine v. Med. Protective Co., 675 S.W.2d 665, 667 (Mo. App. 1984), *cited in* Baxendale, at * 2-3.

Finally, and tellingly, the majority view is consistent with the position that Emhart itself has taken in other actions, in which it has resisted *discovery* by third parties of its insurance-related information policies on grounds that "the law with regard to insurance

---

6 Although the statutory prohibition set out in R.I.G. L. § 27-7-2 (2002) is a sufficient basis to dismiss all claims against Travelers (see discussion *infra*), it is worth noting that Emhart's claims also fail to the extent they rely on its allegation that it is an intended beneficiary of the Travelers Policies. A party may only be considered an intended beneficiary to a contract where the parties "directly and unequivocally intend to benefit [the] third party..." *Forcier v. Cardello*, 173 B.R. 973, 984-85 (D.R.I. 1994) (*quoting* Restatement (Second) of Contracts, § 402). Emhart has failed to provide – and apparently cannot provide – any legal or factual basis for its assertion that it is an intended third-party beneficiary under the Travelers Policies. For further discussion of this issue, *see* Defendant Providence Washington's Memorandum of Law in Support of its Motion to Dismiss Plaintiffs' Complaint (filed December 4, 2006), pp. 8 – 12, which discussion is incorporated herein by reference.

coverage is that you've got to have a judgment entered [against a policyholder] .... [before] you can decide if you're a third-party beneficiary to that policy to chase the carrier." See *Goodrich Corp. v. Emhart Inds., Inc.*, No. CV-04-759-VAP-SS (C.D. Cal.), Transcript of June 14, 2005 Hearing (Exhibit E), pp. 16-17. Emhart's position in opposing discovery in the *Goodrich* action – that "you've got to have a judgment entered [before] you can decide if you're a third-party beneficiary to [an insurance] policy" – stands in stark contrast to its position in the present action, where it seeks to intervene as a "third party beneficiary" under NECC's insurance policies, despite the absence of any "judgment entered" in Emhart's favor against NECC.

In sum, Emhart's proposed construction of R.I.G.L. § 27-7-2 – distinguishing actions for declaratory judgment from actions for damages – would be contrary to the plain language of the Rhode Island statute, and the Rhode Island courts' well-founded concern to avoid prejudice to insurers. By contrast, Travelers proposed construction of the statute is consistent with the clear statutory language, with Emhart's own previously-asserted views of "the law with regard to insurance coverage," with Judge Gibney's decision in Baxendale, with the majority position acknowledged by Mendez, and with the important public policy concerns articulated by the Rhode Island courts.

## CONCLUSION

This action should not be entertained by this Court, and should be dismissed, because it is identical in all material respects to the Federal Court action previously filed by Emhart. However, to the extent that this Court is inclined not to dismiss this action in its entirety, and instead chooses to reach the merits of Emhart's Superior Court Complaint,

the Court should (at a minimum) grant Travelers Motion, and dismiss Counts V, VII and IX of Emhart's Superior Court Complaint.

Respectfully submitted,
THE TRAVELERS CASUALTY AND SURETY COMPANY,
By Its Attorneys,

R. Kelly Sheridan #1976
Jason C. Preciphs #6727
ROBERTS, CARROLL, FELDSTEIN & PEIRCE, INC.
10 Weybosset Street
Providence, RI 02903
Tel: (401) 521-7000; (401) 521-1328 (fax)

Of Counsel:
John A. Nadas (pro hac vice pending)
Eric Bradford Hermanson (pro hac vice pending)
Choate, Hall & Stewart
Two International Place
Boston, MA 02110
Phone: (617) 248-5000
Fax: (617) 248-4000

Dated: December 15, 2006

Of Counsel:
John A. Nadas (pro hac vice pending)
Eric Bradford Hermanson (pro hac vice pending)
Choate, Hall & Stewart
Two International Place
Boston, MA 02110
Phone: (617) 248-5000
Fax: (617) 248-4000

**CERTIFICATION**

The undersigned hereby certifies that a true copy of the within document was sent, via First-Class Mail, postage prepaid, to the following on the 15th day of December, 2006:

Rachelle R. Green, Esq.
Robert J. O'Keefe, Esq.
DUFFY, SWEENEY & SCOTT
One Turks Head, Suite 1200
Providence, RI 02903

Jack R. Pirozzlo, Esq.
FOLEY HOAG, LLP
Seaport World Trade Center West
Boston, MA 02210

Todd White, Esq.
Jaime LaPorte, Esq.
ADLER, POLLOCK & SHEEHAN
One Citizens Plaza, 8th Floor
Providence, RI 02903

James W. Ryan, Esq.
Partridge, Snow & Hahn, LLP
180 South Main St.
Providence, RI 02903

John F.X. Peloso, Esq.
Robinson & Cole
695 East Main St.
Stamford, CT 06901-2141

Deborah M Hughes

# TAB A

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| EMHART INDUSTRIES, INC.,<br><br>Plaintiff,<br><br>v.<br><br>NEW ENGLAND CONTAINER COMPANY, INC., PROVIDENCE WASHINGTON INSURANCE COMPANY and TRAVELERS CASUALTY & SURETY COMPANY,<br><br>Defendants. | CA 06 218<br><br>Civil Action No.<br><br>**Jury Trial Demanded** |

COMPLAINT

The Parties

1. Plaintiff, Emhart Industries, Inc. ("Emhart"), is a Connecticut corporation, having its principal place of business in Towson, Maryland.

2. Emhart is informed and believes, and therefore avers, that defendant, New England Container Company, Inc. ("NECC"), is a corporation organized under the laws of the State of Rhode Island, with its current principal place of business in Richboro, Pennsylvania. At pertinent times, NECC has had its principal place of business in Providence, Rhode Island.

3. Emhart is informed and believes, and therefore avers, that defendant Travelers Casualty & Surety Company, formerly known as Aetna Casualty and Surety Company ("Travelers"), is an insurance company organized under the laws of the State of Connecticut, with its principal place of business in Hartford, Connecticut. At all times pertinent, Travelers was licensed to do business, and was doing and transacting business, in the State of Rhode Island.

4. Emhart is informed and believes, and therefore avers, that defendant Providence Washington Insurance Company ("Providence Washington"), is an insurance company organized under the laws of the State of Rhode Island, with its principal place of business in Providence, Rhode Island. At all times pertinent, Providence Washington was licensed to do business, and was doing and transacting business, in the State of Rhode Island.

Jurisdiction and Venue

5. This Court has subject matter jurisdiction of the claims asserted in Counts I, II and VI pursuant to 42 U.S.C. § 9613(b) in that those counts involve controversies arising under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA") and pursuant to 28 U.S.C. § 1331 in that said claims arise under the laws of the United States.

6. This Court has supplemental jurisdiction of the claims alleged in the remaining counts pursuant to 28 U.S.C. § 1367 in that such claims are so related to the claims within this Court's original jurisdiction that they form a part of the same case or controversy under Article III of the United States Constitution.

7. This Court has subject matter of the claims for declaratory relief pursuant to 28 U.S.C. § 2201 and/or 42 U.S.C. § 9613(g)(2).

8. Venue lies in this Court pursuant to 28 U.S.C. § 1391(b) and 42 U.S.C. § 9613(b) in that a substantial part of the events or omissions giving rise to the claims occurred in this District, the releases or threatened releases of hazardous substances occurred in this District, and defendants reside or have done business in this District.

Facts

A. The Insurance Policies

9. Emhart is informed and believes, and therefore avers, that Travelers issued liability insurance policies to NECC between at least 1969 and 1982 ("Travelers Policies"). The Travelers Policies include the following:

| Policy Number | Policy Period |
|---|---|
| 43PC29861CC | 10/2/69 – 10/2/70 |
| Unavailable | 11/15/70 – 11/15/71 |
| 43AL140755CCA | 11/15/71 – 11/15/72 |
| 43AL143048CCA | 11/15/72 – 11/15/73 |
| 43AL264195CCA | 11/15/73 – 11/15/74 |
| 43AL266935CCA | 11/15/74 – 11/15/75 |
| 43AL269294CMA | 11/15/75 – 11/15/76 |
| 43AL271243 | 11/15/76 – 11/15/77 |
| 43AL273795CCA | 11/15/77 – 11/15/78 |
| 43GL00001061 | 11/15/78 – 11/15/79 |
| 43GL9983CCA | 11/15/79 – 11/15/80 |
| 43GL1061CCA | 11/15/79 – 11/15/80 |
| 43XS3583 | 11/15/79 – 11/15/80 |
| 94C206921CCA | 11/15/80 – 11/15/81 |
| Unavailable | 11/15/80 – 11/15/81 |
| 43GL332007CCA | 11/15/81 – 11/15/82 |
| Unavailable | 11/15/81 – 11/15/82 |

10. Emhart is informed and believes, and therefore avers, that Providence Washington issued liability insurance policies to NECC between at least 1982 and 1985 ("Providence Washington Insurance Policies"). The Providence Washington Policies include the following:

| Policy Number | Policy Period |
|---|---|
| CL721852 | 11/15/82 – 8/1/83 |
| Unavailable | 11/15/82 – 8/1/83 |
| CL722660 | 8/1/83 – 8/1/84 |
| CU731459 | 8/1/83 – 8/1/84 |
| CU733312 | 8/1/84 – 9/27/85 |
| CU723887 | 8/1/84 – 9/27/85 |

B. The Centredale Manor Superfund Site

11. On September 15, 1999, the Environmental Protection Agency ("EPA") issued to NECC a Notice of Potential Liability pursuant to Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), relating to the Centredale Manor Superfund Site in North Providence, Rhode Island ("Site").

12. The EPA defined the Site as consisting of two parcels of land, 2072 and 2074 Smith Street, and portions of the Woonasquatucket River and its floodplain that are adjacent to the two parcels on Smith Street, including but not limited to two ponds, Allendale Pond and Lyman Mill Pond.

13. On February 28, 2000, the EPA issued to Emhart a Notice of Potential Liability with respect to the Site. In said Notice of Potential Liability, the EPA demanded, inter alia, that Emhart remediate the Site and reimburse the EPA for the "response" costs, within the meaning of 42 U.S.C. § 9601(25), that the EPA incurred in connection with the Site.

14. On March 6, 2000, the Site was placed on the National Priorities List, pursuant to Section 105(a) of CERCLA, 42 U.S.C. § 9605(a).

15. On April 12, 2000, the EPA issued a Unilateral Administrative Order for Removal Action ("First Order") to NECC, Emhart and other respondents, ordering the

respondents to undertake certain time-critical removal activities with respect to environmental conditions at the Site.

16. On March 26, 2001, the EPA issued a Second Administrative Order for Removal Action ("Second Order") to NECC, Emhart and other respondents, ordering the respondents to implement certain non-time-critical removal actions with respect to the Site.

17. On September 11, 2003, the EPA executed a Third Administrative Order on Consent for Removal Action ("Third Order") with a number of respondents, including Emhart and NECC, requiring the respondents to implement additional time-critical removal activities at the Site.

18. Emhart has complied with the requirements of the First, Second and Third Orders.

19. Emhart has incurred substantial costs as a result of the EPA proceedings, including the costs of complying with the First, Second and Third Orders and other costs in connection with the EPA proceedings.

20. The EPA has asserted that the response costs which it will seek to recover from Emhart and other PRPs are approximately $15 million before interest.

21. The ultimate remedy at the Site will be determined after the EPA completes a Remedial Investigation to characterize the nature and extent of contamination at the Site and a Feasibility Study to develop and analyze alternative remedial actions and issues a Record of Decision.

22. The EPA is in the process of conducting a Remedial Investigation of the Site. An EPA contractor issued an Interim Final Remedial Investigation report concerning the Site that was dated June 30, 2005.

23. Emhart is informed and believes, and therefore avers, that once the Feasibility Study is completed and the Record of Decision is issued, Emhart will be required to undertake remedial work at the Site costing millions of dollars.

24. Emhart is informed and believes, and therefore avers, that NECC provided notice of the EPA claim concerning the Site, and other information concerning proceedings in connection with the Site, to Travelers and Providence Washington.

C. Operations at the Site

25. From approximately 1952 until the early 1970s, NECC operated a facility for reconditioning steel drums on a portion of the Site. In the course of those operations, NECC received drums from many sources, reconditioned the drums and then sold the reconditioned drums. The drums that NECC received were substantially, but not completely, empty. Those drums often contained small amounts of residue.

26. Emhart is informed and believes, and therefore avers, that the customers of NECC who provided drums for reconditioning included entities that sold trichlorophenol or products in which trichlorophenol was an ingredient. Emhart is informed and believes, and therefore avers, that the residue in drums that NECC received from those customers included trichlorophenol.

27. In the course of reconditioning drums for future sale, NECC incinerated the drums that it received. In the course of bringing the drums to the incinerator, there were spills and leaks of the residual contents of the drums.

28. Emhart is informed and believes, and therefore avers, that the actions of NECC in incinerating drums, as part of the reconditioning process, resulted in the "release" into

the "environment," within the meaning of 42 U.S.C. §§ 9601(8) and 9601(22), of various cogeners of dioxin.

29. In addition to the releases of dioxin, the operations of NECC resulted in the "release" into the "environment," within the meaning of 42 U.S.C. §§ 9601(8) and 9601(22), of other "hazardous substances," within the meaning of 42 U.S.C. §§ 9601(14).

30. The EPA has alleged that the liability of Emhart is based on the activities of Metro-Atlantic, Inc. ("Metro-Atlantic"). Metro-Atlantic was a chemical manufacturing company that conducted business operations on a portion of the Site from the 1940's through in or about 1968.

**COUNT I**
**Cost Recovery Under CERCLA – NECC**

31. Emhart incorporates the allegations contained in paragraphs 1 through 30 of the Complaint, as if set forth in full herein.

32. Emhart is informed and believes, and therefore avers, that the Site constitutes a "facility" or facilities within the meaning of 42 U.S.C. § 9601(9).

33. Emhart is informed and believes, and therefore avers, that NECC was an "operator," within the meaning of 42 U.S.C. § 9601(20)(A), of a portion of the Site.

34. Emhart is informed and believes, and therefore avers, that during the period in which NECC was an operator of a portion of the Site, there was "disposal," within the meaning of 42 U.S.C. § 9601(29), of "hazardous substances," within the meaning of 42 U.S.C. §§ 9601(14), at the Site as a result of the activities of NECC.

35. Emhart is informed and believes, and therefore avers, that as a result of activities conducted at the Site by NECC, there have been "releases" or threatened "releases,"

within the meaning of 42 U.S.C. §§ 9601(8) and 9601(22), of "hazardous substances," within the meaning of 42 U.S.C. §§ 9601(14), at and from the Site.

36. The aforesaid releases or threatened releases of hazardous substances at the Site have caused Emhart to incur necessary "response" costs, within the meaning of 42 U.S.C. § 9601(25), which are consistent with the national contingency plan.

37. Emhart is informed and believes, and therefore avers, that it will incur additional such necessary response costs as a result of the aforesaid release or threatened release of hazardous substances at the Site.

38. Emhart is informed and believes, and therefore avers, that, pursuant to 42 U.S.C. § 9607(a), Emhart is entitled to recover from NECC the response costs that Emhart has incurred in connection with the Site, plus interest.

**COUNT II**
**Contribution Under CERCLA – NECC**

39. Emhart incorporates the allegations contained in paragraphs 1 through 38 of the Complaint, as if set forth in full herein.

40. Emhart is informed and believes, and therefore avers, that an administrative civil action, pursuant to 42 U.S.C. § 9606, is presently pending against Emhart.

41. Emhart is informed and believes, and therefore avers, that NECC operated a "facility" or "facilities," within the meaning of 42 U.S.C. § 9601(9), during the time period in which there was "disposal," within the meaning of 42 U.S.C. § 9601(29), of "hazardous substances," within the meaning of 42 U.S.C. §§ 9601 (22), at the Site.

42. Emhart is informed and believes, and therefore avers, that as a result of activities conducted at the Site by NECC, there have been "releases" or threatened "releases,"

within the meaning of 42 U.S.C. §§ 9601(8) and 9601(22), of "hazardous substances," within the meaning of 42 U.S.C. §§ 9601(14), at and from the Site.

43. The aforesaid releases or threatened releases of hazardous substances at the Site have caused Emhart to incur necessary "response" costs, within the meaning of 42 U.S.C. § 9601(25), which are consistent with the national contingency plan.

44. Emhart is informed and believes, and therefore avers, that it will incur additional such necessary response costs as a result of the aforesaid release or threatened release of hazardous substances at the Site.

45. Emhart is informed and believes, and therefore avers, that, pursuant to 42 U.S.C. § 9613(f)(1), NECC is liable to Emhart for its proportionate share of all response costs incurred or to be incurred by Emhart in connection with the Site, plus interest.

**COUNT III**
**INDUSTRIAL PROPERTY REMEDIATION AND REUSE ACT**
**(R.I. GEN. LAWS § 23-19.14-1 *et seq.*) – NECC**

46. Emhart incorporates the allegations contained in paragraphs 1 through 45 of the Complaint, as if set forth in full herein.

47. Emhart is informed and believes, and therefore avers, that NECC is a "person" within the meaning of R.I. Gen. Laws § 23-19.14-3(h).

48. Emhart is informed and believes, and therefore avers, that NECC is an "operator" within the meaning of R.I. Gen. Laws § 23-19.14-3(f), of the Site.

49. Emhart is informed and believes, and therefore avers, that the Site is a "site" within the meaning of R.I. Gen. Laws § 23-19.14-3(n).

50. Emhart is informed and believes, and therefore avers, that there were disposals at the Site by NECC of "hazardous materials" within the meaning of R.I. Gen. Laws § 23-19.14-3(c).

51. Emhart is informed and believes, and therefore avers, that there was contamination at the Site by "hazardous substances" within the meaning of R.I. Gen. Laws § 23-19.14-3(d).

52. Emhart is informed and believes, and therefore avers, that there have been actual releases, within the meaning of R.I. Gen. Laws § 23-19.14-3(j), and/or potential threats of release, of hazardous materials at the Site.

53. Emhart is informed and believes, and therefore avers, that NECC is a "responsible party" within the meaning of R.I. Gen. Laws § 23-19.14-6(b).

54. Emhart has incurred costs of necessary "removal or remedial actions," within the meaning of R.I. Gen. Laws § 23-19.14-3(k), with respect to the Site. Said removal or remedial actions were necessary to rectify the effects of releases of hazardous material at the Site so as to prevent a substantial danger to present or future public health or welfare or the environment.

55. Emhart is informed and believes, and therefore avers, that NECC is liable to Emhart, pursuant to R.I. Gen. Laws § 23-19.14-6, for the necessary costs of removal or remedial actions with respect to the Site that Emhart has incurred, plus interest.

**COUNT IV**
**HAZARDOUS WASTE MANAGEMENT ACT**
**(R.I. Gen. Laws § 23-19.1) – NEEC**

56. Emhart incorporates the allegations contained in paragraphs 1 through 55 of the Complaint, as if set forth in full herein.

57. Emhart is informed and believes, and therefore avers, that NECC is a "person" within the meaning of R.I. Gen. Laws § 23-19.1-4(10).

58. Emhart is informed and believes, and therefore avers, that there was "disposal," within the meaning of R.I. Gen. Laws § 12-19.1-4(3), by NECC at the Site of "hazardous waste" within the meaning of R.I. Gen. Laws § 23-19.1-4(4).

59. Emhart is informed and believes, and therefore avers, that NECC has engaged in the disposal of hazardous wastes in a manner or location not authorized by R.I. Gen. Laws § 23-19.1-1, et seq., or the rules and regulations promulgated thereunder.

60. Emhart is informed and believes, and therefore avers, that NECC has caused the unauthorized transportation, storage or disposal of hazardous wastes in violation of R.I. Gen. Laws § 23-19.1-1, et seq.

61. Emhart has incurred damage, injury or loss, including costs of containment, cleanup, restoration and removal of hazardous wastes, which result directly or indirectly from the discharges by NECC.

62. Emhart is informed and believes, and therefore avers, that pursuant to R.I. Gen. Laws § 23-19.1-22(a), NECC is liable to Emhart for all cost of containment, cleanup, restoration and removal of hazardous wastes, and for all damages, losses or injuries, including environmental, which result directly or indirectly from the discharges by NECC at the Site.

**COUNT V**
**Equitable Indemnity - NECC**

63. Emhart incorporates the allegations contained in paragraphs 1 through 62 of the Complaint, as if set forth in full herein.

64. Emhart is informed and believes, and therefore avers, that there was disposal of hazardous materials at the Site during the time that NECC operated at a portion of the Site.

65. The EPA issued orders concluding that Emhart is a "liable party," within the meaning of 42 U.S.C. § 9607, and, as result of said orders, Emhart has paid "response" costs within the meaning of 42 U.S.C. § 9601(25).

66. The EPA issued orders concluding that NECC is a "liable party," within the meaning of 42 U.S.C. § 9607, and that NECC is liable for "response" costs within the meaning of 42 U.S.C. § 9601(25).

67. Emhart is informed and believes, and therefore avers, that, as between Emhart and NECC, the response costs incurred by Emhart ought to be reimbursed by NECC.

68. Emhart is informed and believes, and therefore avers, that it is entitled to indemnification from NECC.

**COUNT VI**
**<u>Declaratory Judgment – NECC</u>**

69. Emhart incorporates the allegations contained in paragraphs 1 through 68 of the Complaint, as if set forth in full herein.

70. Emhart is informed and believes, and therefore avers, that there is a controversy between Emhart and NECC concerning the nature and extent of the obligation of NECC to pay for anticipated future response costs with respect to the Site.

71. Emhart is entitled to a declaration that NECC is liable to Emhart for the costs that Emhart will incur with respect to the Site.

**COUNT VII**
**<u>Declaratory Judgment As To Emhart's Rights Under Travelers Policies</u>**

72. Emhart incorporates the allegations contained in paragraphs 1 through 71 of the Complaint, as if set forth in full herein.

73. The claims that Emhart has asserted against NECC herein are within the scope of the coverage afforded by the Travelers Policies.

74. Emhart is informed and believes, and therefore avers, that Travelers has an obligation, under the Travelers Policies, to satisfy NECC's obligations to Emhart with respect to the damages that Emhart will recover if it prevails against NECC with respect to the claims asserted herein.

75. Emhart is informed and believes, and therefore avers, that Travelers denies that it has an obligation to satisfy NECC's obligations to Emhart with respect to the damages that Emhart will recover if it prevails against NECC with respect to the claims asserted herein.

76. Emhart is informed and believes, and therefore avers, that Emhart, as a result of its claims against NECC, is an intended beneficiary of the Travelers Policies and, as such, that it is a third party beneficiary of the Travelers Policies.

77. There is an actual controversy between Emhart, as a third party beneficiary of the Travelers Policies, and Travelers as to the obligations of Travelers to Emhart if Emhart prevails against NECC with respect to the claims asserted herein.

78. Emhart is informed and believes, and therefore avers, that it is entitled to a declaration that Travelers is obligated to pay to Emhart the amount of damages, up to the indemnification limits of the Travelers Policies, for which NECC will be liable if Emhart prevails against NECC with respect to the claims asserted herein.

**COUNT VIII**

**Declaratory Judgment As To Emhart's Rights Under Providence Washington Policies**

79. Emhart incorporates the allegations contained in paragraphs 1 through 78 of the Complaint, as if set forth in full herein.

80. The claims that Emhart has asserted against NECC herein are within the scope of the coverage afforded by the Providence Washington Policies.

81. Emhart is informed and believes, and therefore avers, that Providence Washington has an obligation, under the Providence Washington Policies, to satisfy NECC's obligations to Emhart with respect to the damages that Emhart will recover if it prevails against NECC with respect to the claims asserted herein.

82. Emhart is informed and believes, and therefore avers, that Providence Washington denies that it has an obligation to satisfy NECC's obligations to Emhart with respect to the damages that Emhart will recover if it prevails against NECC with respect to the claims asserted herein.

83. Emhart is informed and believes, and therefore avers, that Emhart, as a result of its claims against NECC, is an intended beneficiary of the Providence Washington Policies and, as such, that it is a third party beneficiary of the Providence Washington Policies.

84. There is an actual controversy between Emhart, as a third party beneficiary of the Providence Washington Policies, and Providence Washington as to the obligations of Providence Washington to Emhart if Emhart prevails against NECC with respect to the claims asserted herein.

85. Emhart is informed and believes, and therefore avers, that it is entitled to a declaration that Providence Washington is obligated to pay to Emhart the amount of damages, up to the indemnification limits of the Providence Washington Policies, for which NECC will be liable if Emhart prevails against NECC with respect to the claims asserted herein.

**COUNT IX**
**Declaration As To Indemnification Benefits Under The Travelers Policies**

86. Emhart incorporates the allegations contained in paragraphs 1 through 85 of the Complaint, as if set forth in full herein.

87. Emhart is informed and believes, and therefore avers, that NECC has ceased its business operations and sold its business assets.

88. Emhart is informed and believes, and therefore avers, that damages to which it will be entitled if it prevails on its claims against NECC are considerably in excess of the amount of NECC's assets plus the combined indemnification benefits of the Travelers Policies and the Providence Washington Policies.

89. Emhart is informed and believes, and therefore avers, that, in the absence of the indemnification benefits available to NECC under the Travelers Policies, NECC will be unable to satisfy a judgment for the money damages that Emhart will recover if it prevails against NECC with respect to the claims asserted herein.

90. Emhart is informed and believes, and therefore avers, that there is a risk that NECC and Travelers will take action, other than in the ordinary course of business for full and adequate consideration, to reduce the indemnification benefits under the Travelers Policies, with the result that NECC will be unable to satisfy a judgment on Emhart's claims against NECC in this action.

91. There is an actual controversy between Emhart and Travelers as to the obligation of Travelers to preserve the indemnification benefits under the Travelers Policies to satisfy the damages which Emhart will recover if it prevails against NECC with respect to the claims asserted herein.

**COUNT X**
**Declaration As To Indemnification Benefits Under The Providence Washington Policies**

92. Emhart incorporates the allegations contained in paragraphs 1 through 91 of the Complaint, as if set forth in full herein.

93. Emhart is informed and believes, and therefore avers, that damages to which it will be entitled if it prevails on its claims against NECC are considerably in excess of the amount of NECC's assets plus the combined indemnification benefits of the Travelers Policies and the Providence Washington Policies.

94. Emhart is informed and believes, and therefore avers, that, in the absence of the indemnification benefits available to NECC under the Providence Washington Policies, NECC will be unable to satisfy a judgment for the money damages that Emhart will recover if it prevails against NECC with respect to the claims asserted herein.

95. Emhart is informed and believes, and therefore avers, that there is a risk that NECC and Providence Washington will take action, other than in the ordinary course of business for full and adequate consideration, to reduce the indemnification benefits under the Providence Washington Policies, with the result that NECC will be unable to satisfy a judgment on Emhart's claims against NECC in this action.

96. There is an actual controversy between Emhart and Providence Washington as to the obligation of Providence Washington to preserve the indemnification benefits under the Providence Washington Policies to satisfy the damages which Emhart will recover if it prevails against NECC with respect to the claims asserted herein.

**COUNT XI**
**Injunctive Relief – Preserving Indemnification Limits Of Travelers Policies**

97. Emhart incorporates the allegations contained in paragraphs 1 through 96 of the Complaint, as if set forth in full herein.

98. Emhart is informed and believes, and therefore avers, that it is likely to succeed on the merits of its claim against NECC.

99. Emhart is informed and believes, and therefore avers, that, in the absence of injunctive relief, it would suffer irreparable harm.

100. Emhart is informed and believes, and therefore avers, that defendants would suffer little, if any, hardship if injunctive relief is granted to Emhart. When the absence of hardship to defendants is contrasted with the irreparable harm that Emhart would suffer if injunctive relief were denied, the balance of hardship favors affording Emhart the injunctive relief that it seeks.

101. Emhart is informed and believes, and therefore avers, that granting injunctive relief would be in accordance with the public interest, including the public policies underlying CERCLA.

102. Emhart is suffering irreparable injury and, in the absence of injunctive relief, Emhart has no plain and adequate remedy at law.

103. Emhart is entitled to a preliminary injunction, and thereafter a permanent injunction, enjoining and restraining NECC and Travelers from entering into any agreement, other than in the ordinary course of business and for full and adequate consideration, that would reduce the indemnification benefits of the Travelers Policies.

**COUNT XII**
**<u>Injunctive Relief – Preserving Indemnification Limits Of Providence Washington Policies</u>**

104. Emhart incorporates the allegations contained in paragraphs 1 through 103 of the Complaint, as if set forth in full herein.

105. Emhart is informed and believes, and therefore avers, that it is likely to succeed on the merits of its claim against NECC.

106. Emhart is informed and believes, and therefore avers, that, in the absence of injunctive relief, it would suffer irreparable harm.

107. Emhart is informed and believes, and therefore avers, that defendants would suffer little, if any, hardship if injunctive relief is granted to Emhart. When the absence of hardship to defendants is contrasted with the irreparable harm that Emhart would suffer if injunctive relief were denied, the balance of hardship favors affording Emhart the injunctive relief that it seeks.

108. Emhart is informed and believes, and therefore avers, that granting injunctive relief would be in accordance with the public interest, including the public policies underlying CERCLA.

109. Emhart is suffering irreparable injury and, in the absence of injunctive relief, Emhart has no plain and adequate remedy at law.

110. Emhart is entitled to a preliminary injunction, and thereafter a permanent injunction, enjoining and restraining NECC and Providence Washington from entering into any agreement, other than in the ordinary course of business and for full and adequate consideration, that would reduce the indemnification benefits of the Providence Washington Policies.

WHEREFORE, plaintiff, Emhart Industries, Inc., prays that this Court:

A. Award Emhart Industries, Inc. the damages to which it is entitled as a result of the conduct of New England Container Company, Inc., including but not limited to response costs, costs of remedial or removal actions, costs of containment, cleanup, restoration, and removal of the hazardous wastes and attorneys' fees, that Emhart Industries, Inc. has incurred to date and will incur through the date of trial in connection with the Centredale Manor Superfund Site, plus interest, costs and attorney's fees;

B. Enter a declaratory judgment that New England Container Company, Inc. is liable for all costs, including but not limited to, response costs, costs of remedial or removal

actions, costs of containment, cleanup, restoration, and removal of the hazardous wastes and attorneys' fees, that Emhart Industries, Inc. shall incur in connection with the Centredale Manor Superfund Site;

C. Enter a declaratory judgment in favor of Emhart Industries, Inc. that Travelers Casualty & Surety Company is obligated to pay to Emhart Industries, Inc. the amount of damages, up to the indemnification limits of the insurance policies that Travelers Casualty & Surety Company issued to New England Container Company, Inc., for which New England Container Company is found liable to Emhart Industries, Inc. in this action;

D. Enter a declaratory judgment in favor of Emhart Industries, Inc. that Providence Washington Insurance Company is obligated to pay to Emhart Industries, Inc. the amount of damages, up to the indemnification limits of the insurance policies that Providence Washington Insurance Company issued to New England Container Company, Inc., for which New England Container Company is found liable to Emhart Industries, Inc. in this action;

E. Enter a preliminary injunction, and thereafter a permanent injunction, enjoining and restraining defendants New England Container Company, Inc. and Travelers Casualty & Surety Company and each of their agents, servants, employees, attorneys, successors, assigns and consignees, and all those acting under their authority or in privity with them from taking any action, other than in the ordinary course of business for full and adequate consideration, to reduce the indemnification benefits under the insurance policies that Travelers Casualty & Surety Company issued to New England Container Company, Inc.;

F. Enter a preliminary injunction, and thereafter a permanent injunction, enjoining and restraining defendants New England Container Company, Inc. and Providence Washington Insurance Company and each of their agents, servants, employees, attorneys,

successors, assigns and consignees, and all those acting under their authority or in privity with them from taking any action, other than in the ordinary course of business for full and adequate consideration, to reduce the indemnification benefits under the insurance policies that Providence Washington Insurance Company issued to New England Container Company, Inc.; and

G. Award Emhart Industries, Inc. such other and further relief as the Court deems just and proper.

DEMAND FOR TRIAL BY JURY

Plaintiff respectfully requests trial by jury on all claims so triable.

Respectfully submitted,

EMHART INDUSTRIES, INC.

By its attorneys,

Craig M. Scott, Esq. (#4237) 5/11/06
Duffy Sweeney & Scott, Ltd.
One Turks Head Place, Suite 1200
Providence, RI 02903
(401) 455-0700
(401) 455-0701 (facsimile)
cscott@duffysweeney.com

OF COUNSEL:
Jack R. Pirozzolo, Esq.
Richard L. Binder, Esq.
Willcox, Pirozzolo & McCarthy
Professional Corporation
50 Federal Street
Boston, MA 02110
(617) 482-5470
(617) 423-1572 (facsimile)
jpirozzolo@wpmlaw.com

# TAB

# B

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

EMHART INDUSTRIES, INC.

Plaintiff,

v.

NEW ENGLAND CONTAINER COMPANY, INC., PROVIDENCE WASHINGTON INSURANCE COMPANY and TRAVELERS CASUALTY AND SURETY COMPANY,

Defendants.

Civil Action No. 06-218

**MOTION TO DISMISS COMPLAINT**
**AGAINST TRAVELERS CASUALTY AND SURETY COMPANY**

Defendant Travelers Casualty and Surety Company ("Travelers") hereby moves to dismiss the Complaint as against Travelers pursuant to Fed. R. Civ. P. 12(b)(6). As grounds in support of this Motion, Travelers relies upon the Supporting Memorandum of Law submitted contemporaneously herewith.

Respectfully submitted,

THE TRAVELERS CASUALTY AND SURETY COMPANY,

#6727

R. Kelly Sheridan, Esq., Bar No. 1976
Jason C. Preciphs, Esq., Bar No. 6727
ROBERTS, CARROLL, FELDSTEIN & PEIRCE, LLC
10 Weybosset Street
Providence, RI 02903
Tel: (401) 521-7000
Fax: (401) 521-1328

Of Counsel:

John A. Nadas (pro hac vice pending)
Eric Bradford Hermanson (pro hac vice pending)
Julie C. Rising (pro hac vice pending)
Choate, Hall & Stewart
Two International Place
Boston, MA 02110
Phone: (617) 248-5000
Fax: (617) 248-4000

Dated: July 6, 2006

4098812v1

**CERTIFICATION**

The undersigned hereby certifies that a true copy of the within document was hand delivered to the following on the 6th day of July, 2006:

Craig M. Scott, Esq.
Duffy Sweeney & Scott, Ltd.
One Turks Head Place
Suite 1200
Providence, RI 02903

Deborah M Hawkins

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| EMHART INDUSTRIES, INC.<br><br>Plaintiff,<br><br>v.<br><br>NEW ENGLAND CONTAINER COMPANY, INC., PROVIDENCE WASHINGTON INSURANCE COMPANY and TRAVELERS CASUALTY AND SURETY COMPANY,<br><br>Defendants. | Civil Action No. 06-218 |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS COMPLAINT AGAINST TRAVELERS CASUALTY AND SURETY COMPANY**

Pursuant to Fed. R. Civ. P. 12(b)(6), Defendant Travelers Casualty and Surety Company ("Travelers") submits this memorandum of law in support of its Motion to Dismiss. For the reasons set forth below, all of Plaintiff's claims against Travelers fail to state a claim on which relief can be granted, and should therefore be dismissed as an impermissible direct action under R.I. Gen. Laws 1956 § 27-7-2 (2002).

**Background and Summary of Argument**

This suit arises from certain administrative actions commenced by the Environmental Protection Agency ("EPA") in connection with the Centredale Manor Restoration Superfund Site in North Providence, Rhode Island (the "Site"). Plaintiff Emhart Industries, Inc. ("Emhart") is alleged to have been an owner of property at the Site. Defendant New England Container Company, Inc. ("NECC"), a Rhode Island corporation, is alleged to have been a

neighboring property owner. Emhart is now suing NECC for cost recovery, contribution and equitable indemnity, based on NECC's alleged activities at the Site. Emhart is suing Travelers and a second insurer, Providence Washington Insurance Company ("Providence"), because they allegedly wrote certain policies of insurance to NECC. Of the twelve counts in Emhart's complaint, only three (Counts VII, IX and XI) are directed at Travelers. Counts VII and IX seek solely declaratory relief, asking this Court to find that Emhart has the right to indemnification under NECC's policies issued by Travelers (the "Travelers Policies"), in the event that Emhart prevails in its claims against NECC. Complaint ¶ 78. Count XI seeks an injunction to prevent Travelers from entering into any potential agreement with NECC which would erode the Travelers Policies.[1]

Although Emhart's Complaint purports to claim rights under the Travelers Policies, the sole basis for these assertions is "as a result of [Emhart's] claims against NECC" which allegedly make Emhart "a third party beneficiary of the Travelers Policies." Complaint ¶ 76.[2] In other words, Emhart alleges that Travelers "has an obligation ... to satisfy NECC's obligations to Emhart with respect to the damages that Emhart will recover if it prevails against NECC." *Id.* ¶¶ 74, 89. The Complaint does not allege that Travelers insured Emhart directly. In fact, it does not allege that Travelers and Emhart had a contractual relationship of

---

1 The present motion is limited to the three counts brought against Travelers, and, if granted, would excuse Travelers from this case. For purposes of the present motion, Travelers takes no position on the validity of Emhart's claims against Providence or NECC. Likewise, for purposes of the present motion, Travelers accepts (without conceding) the factual allegations set out in Emhart's Complaint.

2 Although the statutory prohibition set out in R.I. Gen. Laws § 27-7-2 (2002) is a sufficient basis to dismiss all claims against Travelers (see discussion, *infra*), it is worth noting that Emhart's claims also fail to the extent they rely on its allegation that it is an intended beneficiary of the Travelers Policies. A party may only be considered an intended beneficiary to a contract where the parties "directly and unequivocally intend to benefit [the] third party..." *Forcier v. Cardello*, 173 B.R. 973, 984-85 (D.R.I. 1994) (*quoting* Restatement (Second) of Contracts, § 402). Emhart has failed to provide – and apparently cannot provide – any legal or factual basis for its assertion that it is an intended third-party beneficiary under the Travelers Policies. For further discussion of this

any kind. The substantive claims in Emhart's suit are directed at NECC, and its claims against Travelers are solely based on Travelers role as NECC's insurer. All of Emhart's claims against Travelers are therefore unequivocally barred by Rhode Island's prohibition on direct actions against insurers. Additionally, Emhart has explicitly asserted that its only potential injury is the cost related to the cleanup of the Site, which cannot support a request for a preliminary injunction. Therefore, Counts VII, IX and XI of the Complaint should be dismissed, and Travelers should be excused from this lawsuit.

**Legal Standard**

Under Fed. R. Civ. P. 12(b)(6), a court must dismiss a complaint for failure to state a claim where the complaint "presents no set of facts justifying recovery." *Cooperman v. Individual Inc.*, 171 F.3d 43, 46 (1st Cir. 1999). In performing this analysis, the Court must accept as true "the well-pleaded factual allegations of the complaint, [and] draw all reasonable inferences therefrom." *Martin v. Applied Cellular Tech.*, 284 F.3d 1, 6 (1st Cir. 2002). "However, when it appears that the plaintiff would not be entitled to relief even when allegations are viewed in the light most favorable to [it], dismissal is appropriate." *Stinson v. Simplex Grinnell L.P.*, 240 F.3d 83, 87 (1st Cir. 2001). Thus, by way of example analogous to this case, in *Canavan v. Lovett, Schefrin & Harnett*, 745 A.2d 173, 174-75 (R.I. 2000), the Rhode Island Supreme Court (applying the state-law equivalent to Fed. R. Civ. P. 12(b)(6)) upheld the dismissal of claims brought by a malpractice plaintiff against the defendant's insurer, based on the plaintiff's failure to plead circumstances that would permit the plaintiff to bring a direct action against that insurer under R.I. Gen. Laws 1956 § 27-7-2 (2002)

---

issue, *see* Defendant Providence Washington's Memorandum of Law in Support of its Motion to Dismiss Pursuant to Rule 12(c) (May 30, 2006), which discussion is incorporated herein by reference.

("Section 27-7-2").

## Argument

### A. Emhart's Claims Against Travelers in Counts VII, IX and XI Are Barred By R.I. Gen. Laws § 27-7-2.

Section 27-7-2 prohibits an insurer from being joined as a defendant in an action against the insurer's policyholder, except in extremely limited circumstances:

> An injured party, or in the event of the injured party's death, the party entitled to sue for that death, in his or her suit against the insured, ***shall not join the insurer as a defendant***. If the officer serving any process against the insured shall return that process "non-est inventus", or where before suit has been brought . . . the insured has died, or where a suit is pending against an insured in his or her own name and the insured has died prior to judgment, . . . the injured party, and in the event of that party's death, the party entitled to sue for that death, may proceed directly against the insurer. The injured party, or in the event of that party's death, the party entitled to sue for that death, after having obtained judgment against the insured alone, may proceed on that judgment in a separate action against the insurer . . . .R.I. Gen. Laws § 27-7-2 (2002) (emphasis added).

The statute reflects a considered legislative judgment that an injured party may sue a defendant's insurer only in the event of the insured party's unavailability, or after the injured party has "obtained judgment against the insured alone." *Id.*; *Mendez v. Brites*, 849 A.2d 329, 332, n.2 (R.I. 2004) ("in Rhode Island and in most other jurisdictions, an injured party lacks standing to maintain a direct action for damages against a tortfeasor's insurer until and unless the injured party has secured a judgment against the tortfeasor"); *Collier v. Travelers Ins. Co.*, 197 A.2d 493, 496 (R.I. 1964). *See also, e.g., Doire v. Commerce Ins. Co.*, 692 A.2d 696, 697 (R.I. 1997); *Clauson v. New England Ins. Co.*, 254 F.3d 331, 336 (1st Cir. 2001). One effect of the policy is "to protect the insurance company against the well-known

tendency of jurors to fail to consider the merits if a defendant . . . is insured." *Miller v. Metropolitan Cas. Ins. Co.*, 146 A. 412, 414 (R.I. 1929); *Collier*, 197 A.2d at 496. Another effect is to protect insurers from being forced into an impossibly conflicted position: owing duties both to their policyholders and to the third-party claimants that are their policyholders' actual or potential litigation adversaries.

Here, as in *Canavan*, Emhart has not pleaded, and cannot credibly plead, any of the limited circumstances that might permit the filing of a direct suit against Travelers under the Rhode Island statute. It does not allege that service on NECC was returned because NECC could not be found. It does not allege that it has obtained judgment against NECC. In Count XI of the Complaint, Emhart does allege, on information and belief, that NECC "has ceased business operations and sold its business assets." Complaint, ¶ 87. Perhaps Emhart intends to argue, in this Count of the Complaint, that NECC has "died" within the meaning of the statute. But if this is Emhart's intention, it is unavailing. As the First Circuit recently made clear, Section 27-7-2's "death of the insured" exception does not apply to the insolvency or dissolution of a corporation. *Carriero v. Rhodes Gill and Co., Ltd.*, 68 F. 3d 1443, 1450-51 (1st Cir. 1995) ("the plain and sensible meaning of 'died' does not embrace the dissolution of a corporation.")

At bottom, Emhart has not alleged – and cannot credibly allege – any facts that would give it standing to sue Travelers directly, or to contravene the statutory bar on direct actions against insurers. As a result, Travelers is entitled to dismissal of Emhart's claims in Counts VII, IX and XI of the Complaint as a matter of law.[3] *Canavan*, 745 A.2d at 174-75.

---

[3] Count IX does not include the declaration it purports to seek, and the Complaint's final request for relief only asks for one declaration related to Travelers. *See* Complaint, ¶¶ 86-91; and ¶ C at p. 19.