**B. Count XI of Emhart's Complaint, Seeking Preliminary Injunctive Relief, Is Independently Deficient Because It Fails To Allege Irreparable Harm.**

Finally, even if Emhart could somehow find a basis for its proposed end run around Section 27-7-2 and the Restatement, Emhart has failed to satisfy the standards necessary for issuance of the preliminary injunctive relief it seeks in Count XI of its Complaint. To obtain a preliminary injunction, a party must prove four elements: (1) that it will suffer irreparable harm without the injunction; (2) that such harm outweighs the harm suffered by the party to be enjoined; (3) likelihood of success on the merits of the underlying claim; and (4) that the injunction will not adversely affect the public interest. *K-Mart Corporation v. Oriental Plaza, Inc.*, 875 F.2d 907, 914-15 (1st Cir. 1989).

Absent a showing of irreparable harm, courts will not consider the remaining factors. *Ross-Simons of Warwick, Inc. v. Baccarat, Inc.*, 217 F.3d 8, 13 (1st Cir. 2000) (a showing of irreparable harm "is an essential prerequisite for a grant of injunctive relief.") Irreparable harm is defined as an injury "that is not accurately measurable or adequately compensable by money damages." *Id., citing K-Mart*, 875 F.2d at 914 ("[I]f money damages will fully alleviate harm, then the harm cannot be said to be irreparable.") *See also Foxboro Co. v. Arabian American Oil Co.*, 805 F.2d 34, 36 (1st Cir. 1986), *citing Itek Corp. v. First Nat'l Bank*, 730 F.2d 19, 22 (1st Cir.1984) ("We do not find irreparable injury where only money is at stake and where the plaintiff has a satisfactory remedy at law to recover the money at issue.") Here, the sole purpose of Emhart's complaint is to obtain contribution and recovery of costs related to the clean up of the Site. In effect, Emhart asks this Court to prevent Travelers from "entering into any agreement, other than in the ordinary course of business" with NECC "that would reduce the indemnification benefits of the Travelers Policies."

Complaint ¶ 103. This request for relief is directed only at protecting Emhart's potential monetary benefits under NECC's policies. Because the Complaint seeks to do no more than obtain monetary relief from NECC, Emhart cannot satisfy the essential prerequisite of irreparable harm, and Count XI, seeking a preliminary injunction, is independently deficient as a matter of law.[4]

**Conclusion**

For the reasons set forth above, Travelers requests that Counts VII, IX, and XI be dismissed for failure to state a claim upon which relief may be granted and The Travelers Casualty and Surety Company be dismissed from the case.

---

4 Although it is unnecessary to address the remaining factors Emhart must satisfy to obtain a preliminary injunction, it is worth noting that Emhart cannot meet any of the remaining factors. First, section A of this brief demonstrates that Emhart is not likely to succeed on the merits of its claims against Travelers. Second, Emhart has not plead any facts to demonstrate that its potential monetary damage would outweigh any damage to Travelers by the issuance of such an injunction. Finally, the requested injunction effectively requests that this Court bar Travelers and NECC from contracting with each other; which is clearly against public policy. *See generally Martinelli v. Little Angels Day Care, Inc.*, 847 A.2d 838, 845 (R.I. 2004) (acknowledging the "considerable public policy regarding freedom of contract"); *Computrol, Inc. v. Newtrend, L.P.*, 203 F.3d 1064, 1070 (8th Cir. 2000) (recognizing the "strong public policy favoring freedom of contract.") Thus, when balancing the minimal potential harm to Emhart coupled with its very low likelihood of success on the merits of its claims against the strong public policy against restricting freedom to contract, the factors clearly weigh in favor of Travelers and against any injunction.

Respectfully submitted,

THE TRAVELERS CASUALTY AND
SURETY COMPANY,

#6727

R. Kelly Sheridan, Esq., Bar No. 1976
Jason C. Preciphs, Esq., Bar No. 6727
ROBERTS, CARROLL, FELDSTEIN
& PEIRCE, LLC
10 Weybosset Street
Providence, RI 02903
Tel: (401) 521-7000

Of Counsel:

John A. Nadas (pro hac vice pending)
Eric Bradford Hermanson (pro hac vice pending)
Julie C. Rising (pro hac vice pending)
Choate, Hall & Stewart
Two International Place
Boston, MA 02110
Phone: (617) 248-5000
Fax: (617) 248-4000

Dated: July 6, 2006

4090813v5

**CERTIFICATION**

The undersigned hereby certifies that a true copy of the within document was hand delivered to the following on the 6th day of July, 2006:

Craig M. Scott, Esq.
Duffy Sweeney & Scott, Ltd.
One Turks Head Place
Suite 1200
Providence, RI 02903

[signature]

# TAB C

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| EMHART INDUSTRIES, INC.,<br><br>Plaintiff,<br><br>v.<br><br>NEW ENGLAND CONTAINER COMPANY, INC., PROVIDENCE WASHINGTON INSURANCE COMPANY and TRAVELERS CASUALTY & SURETY COMPANY,<br><br>Defendants. | Civil Action No 06-218S |

**PLAINTIFF'S OBJECTION TO MOTION TO DISMISS COMPLAINT AGAINST TRAVELERS CASUALTY AND SURETY COMPANY**

Defendant Travelers Casualty and Surety Company ("Travelers") has moved, pursuant to Rule 12(b)(6), to dismiss Counts VII, IX, and XI of the Complaint brought by Emhart Industries, Inc. ("Emhart"). Travelers' motion relies upon Rhode Island's direct action statute, R.I.G.L. § 27-7-2. That statute provides that a party claiming that it is entitled to damages due to the liability of an insured may not, at the same claim, claim such damages directly from the insurer, except where certain statutory requirements have been met. The direct action statute is inapplicable, as a declaratory judgment case is not within the scope of the direct action statute. A declaratory judgment action seeks a coverage determination, not a judgment on the merits of the underlying claim against the insured.

The Rhode Island Supreme Court held, in Morrow v. Norfolk & Dedham Mut. Fire Ins. Co., 661 A.2d 967 (R.I. 1995), that a declaratory judgment action by an injured party was not a direct action prohibited by the statute. See also Doire v. Commerce Ins. Co., 692 A.2d

696 (R.I. 1997) (distinguishing between a direct action and a declaratory judgment). In extensive footnotes in two subsequent decisions, Mendez v. Brites, 849 A.2d 329, 331-32, n.2 (R.I. 2004), and Robinson v. Mayo, 849 A.2d 351, 353, n.2 (R.I. 2004), the court discussed the issue in dicta, without the benefit of full briefing and without mentioning Morrow, but declined to reach it. To the extent that the Rhode Island Supreme Court has left the question open, rather than having decided it in Morrow, there is a substantial likelihood that, if the issue were squarely presented and fully briefed, the court would confirm that the direct action statute has no impact on the right of a claimant to bring a declaratory judgment action against an insurer to obtain a coverage determination.

Under such circumstances, the Rhode Island court would follow the substantial body of out-of-state law recognizing that declaratory judgments are not direct actions. Courts in other jurisdictions commonly draw this distinction in applying statutes or common law requirements similar to that in effect in Rhode Island. See, e.g., Harford Mut. Ins. Co. v. Woodfin Equities Corp., 687 A.2d 652, 658 (Md. 1997). As was explained in Community Action of Greater Indianapolis, Inc. v. Indiana Farmers Mut. Ins. Co., 708 N.E.2d 882, 885 (Ind. Ct. App. 1999), "[w]here the plaintiff is not suing the insurance company to establish that its insured committed a tort against the plaintiff, but rather is suing to establish whether the insurer can deny coverage or whether the insurance policy remained in effect, such a suit is not a direct action against an insurer." Federal courts draw the same distinction when construing the term "direct action" in 28 U.S.C. § 1332(c)(1). See, e.g., Dairyland Ins. Co. v. Makover, 654 F.2d 1120, 1124 (5th Cir. 1981), citing White v. U.S. Fidelity and Guaranty Co., 356 F.2d 746,747-48 (1st Cir. 1966). While a direct action essentially substitutes the insurer for the insured in a suit involving the insured's underlying liability, a declaratory judgment action essentially substitutes

Case 1:06-cv-00218-S-LDA Document 22 Filed 08/08/2006 Page 3 of 31

the claimant for the insured in an action to determine the coverage afforded by the insurance policies.[1]

Travelers makes an additional argument regarding Count XI, where Emhart seeks an injunction to preserve the availability of the policy proceeds. Travelers' argument that Emhart is not entitled to injunctive relief ignores Emhart's allegation that, in the absence of an injunction, insufficient funds will be available to make Emhart whole. See Complaint, ¶¶89-90. As the First Circuit stated in Foxboro Co. v. Arabian American Oil Co., 805 F.2d 34, 36 (1st Cir. 1986), one of the cases upon which Travelers relies, "[w]e do not find irreparable injury where only money is at stake and where the plaintiff has a satisfactory remedy at law to recover the money at issue." (Emphasis supplied). Travelers disregards the second part of this statement. The rule cited in Foxboro does not bar an injunction under the circumstances here.

In further support of this objection, Emhart relies upon its memorandum of law filed herewith.

1 In a footnote, Travelers incorporates by reference the arguments made by its co-defendant, Providence Washington Insurance Company ("PWIC") in the Memorandum of Law in Support of the Motion of the Defendant Providence Washington Insurance Company to Dismiss Pursuant to Rule 12(c). PWIC's arguments were answered fully by Emhart in Plaintiff's Memorandum of Law in Support of its Objection to Motion of the Defendant Providence Washington Insurance Company for Judgment on the Pleadings Pursuant to Rule 12(c), filed on July 5, 2006.

Respectfully submitted,

Emhart Industries, Inc.,
By Its Attorneys,

/s/ Craig M. Scott
Craig M. Scott (#4237)
Duffy Sweeney & Scott, Ltd.
One Turks Head Place, Suite 1200
Providence, RI 02903
(401) 455-0700
(401) 455-0701 (facsimile)
cscott@duffysweeney.com

Of Counsel:
Jack R. Pirozzolo
Richard L. Binder
Judith S. Ziss
Willcox, Pirozzolo & McCarthy
Professional Corporation
50 Federal Street
Boston, MA 02110
(617) 482-5470
(617) 423-1572 (facsimile)
jpirozzolo@wpmlaw.com

**CERTIFICATE OF SERVICE**

Todd D. White, Esq.
Jaime LaPorte, Esq.
Adler, Pollock & Sheehan, P.C.
One Citizens Plaza, 8th Floor
Providence, Rhode Island 02093-1345

R. Kelly Sheridan, Esq.
Jason C. Preciphs, Esq.
Roberts Carroll Feldstein & Peirce
10 Weybosset Street
Providence, RI 02903

I hereby certify that the within Objection was filed through the ECF system on the 8th day of August, 2006, and will be sent electronically to the above-named counsel who are registered participants identified on the Notice of Electronic Filing and that I further caused counsel listed below to be served via First Class Mail:

John A. Nadas, Esq.
Eric Bradford Hermanson, Esq.
Julie C. Rising, Esq.
Choate, Hall & Stewart, LLP
Two International Place
Boston, Massachusetts 02110

/s/ Craig M. Scott

H:\Clients\Wilcox, Pirozzolo & McCarthy\Pleadings\Emhart-NECC Travelers Objection.doc

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| EMHART INDUSTRIES, INC.,<br><br>Plaintiff,<br><br>v.<br><br>NEW ENGLAND CONTAINER COMPANY, INC., PROVIDENCE WASHINGTON INSURANCE COMPANY and TRAVELERS CASUALTY & SURETY COMPANY,<br><br>Defendants. | Civil Action No 06-218S |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS OBJECTION TO MOTION TO DISMISS COMPLAINT AGAINST TRAVELERS CASUALTY AND SURETY COMPANY**

This is an action by Emhart Industries, Inc. ("Emhart") against New England Container Company, Inc. ("NECC") and two of NECC's insurers, the movant, Travelers Casualty and Surety Company ("Travelers"), and its co-defendant, Providence Washington Insurance Co. ("PWIC"), arising out of environmental contamination at the Centredale Manor Superfund Site ("Centredale Site"). Travelers moves to dismiss on standing grounds. For the reasons set forth below, Travelers' motion should be denied.

## I. PROCEDURAL HISTORY AND SUMMARY

Emhart brought this action seeking cost recovery, contribution and other relief from NECC in connection with the EPA claim against Emhart relating to the Centredale Site. Counts VII, IX, and XI, which pertain to Travelers, seek declaratory and injunctive relief. Emhart alleges that the proceeds of the insurance policies issued by Travelers will be necessary

to pay the judgment that Emhart expects to obtain against NECC and that there is a risk that those insurance proceeds will become unavailable while Emhart's action against NECC is pending. In three parallel counts (Counts VIII, X, and XII) Emhart makes the same allegations with respect to PWIC. Due to the risk that the insurance proceeds will become unavailable, Emhart seeks a coverage determination with respect to both insurers at this time.

Both insurers have moved to dismiss on standing grounds but, at least initially, each insurer relied upon a different theory. Travelers, which filed the later of the two motions, moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), on the ground that the action against it is "an impermissible direct action under R.I. Gen. Laws 1956 § 27-7-2 (2002)." Travelers Mem. at 1.[1] As Emhart shows below, this statute does not apply because Emhart has brought a declaratory judgment action against Travelers to determine coverage, not a direct action against Travelers to determine its insured's liability. A declaratory judgment action is not a direct action for purposes of the statute.

PWIC took a different tack when it filed its motion. See PWIC Mem. It relied solely on the theory that Emhart is not a third party beneficiary of the policies PWIC issued to NECC. (Travelers, keeping its options open, has stated in a footnote that it also incorporates PWIC's arguments by reference. See Travelers Mem. at 2, n.2.) Emhart opposed PWIC's

---

1 Memorandum of Law in Support of Motion to Dismiss Complaint against Travelers Casualty and Surety Company, dated July 6, 2006. Emhart also refers herein to the three memoranda filed in connection with the PWIC motion. These are:

1) Memorandum of Law in Support of the Motion of the Defendant Providence Washington Insurance Company to Dismiss Pursuant to Rule 12(c), dated May 30, 2006 ("PWIC Mem.");

2) Plaintiff's Memorandum of Law in Support of its Objection to Motion of the Defendant Providence Washington Insurance Company for Judgment on the Pleadings Pursuant to Rule 12(c), filed on July 5, 2006 ("Emhart's PWIC Objection"); and

3) Reply of Defendant Providence Washington Insurance Company to Plaintiff's Memorandum of Law in Support of its Objection to Providence Washington Insurance Company's Motion for Judgment on the Pleadings Pursuant to Rule 12(c), dated July 14, 2006 ("PWIC Reply").

motion on two grounds. First, it argued that it had standing to prosecute two of the three counts under the Declaratory Judgment Act, 28 U.S.C. § 2201, regardless of whether it was a third party beneficiary of the policies. See Emhart PWIC Obj. at 7-16. Second, as to the single count which relied upon third party beneficiary status, it argued that the Court could not determine whether Emhart was a third party beneficiary on the present record since the determination depended, at least in part, on the text of the policies and the policies were not before the Court. See Emhart PWIC Obj. at 16-25. While Travelers' motion was pending, PWIC filed a reply memorandum. Rather than addressing the issue it initially raised in its motion, PWIC belatedly raised the same issue raised by Travelers and argued that Rhode Island's direct action statute deprives Emhart of standing. See PWIC Reply.

In Emhart's view, PWIC waived the "direct action" argument by raising it for the first time in a reply brief. Under LR Cv 7, "[a] reply memorandum shall consist only of a response to an objection and shall not present additional grounds for granting the motion ...." Thus, PWIC was not entitled to raise this new issue in its reply, and Emhart believes it has grounds to move to strike the reply brief. Emhart has not moved to strike, however, because it recognizes that the "direct action" issue is already before the Court as a result of Travelers' motion. Since a response to the points PWIC has raised buttresses Emhart's opposition to Travelers' motion, Emhart has discussed those points in this memorandum.

As shown below, Travelers' reliance upon Rhode Island's direct action statute is misplaced. Under the direct action statute, a party claiming that it is entitled to damages due to the liability of an insured may not, at the same time, claim such damages directly from the insurer, except where certain statutory requirements have been met. See § 27-7-2. That statute

is inapplicable, and Emhart is not required to meet the requirements of the statute here, because the present declaratory judgment case is not a direct action.

In Counts VII and IX, Emhart seeks a declaratory judgment regarding coverage. (Count XI, seeking an injunction, rests upon the declaratory judgment claims.) An action for a declaratory judgment is quite different from a direct action. The Rhode Island Supreme Court held, in Morrow v. Norfolk & Dedham Mut. Fire Ins. Co., 661 A.2d 967 (R.I. 1995), that a declaratory judgment action by an injured party was not a direct action prohibited by the statute. See also Doire v. Commerce Ins. Co., 692 A.2d 696 (R.I. 1997) (distinguishing between a direct action and a declaratory judgment). Courts in other jurisdictions have commonly distinguished between direct actions and declaratory judgment actions in applying statutes or common law requirements similar to that in effect in Rhode Island. See, e.g., Harford Mut. Ins. Co. v. Woodfin Equities Corp., 687 A.2d 652, 658 (Md. 1997). As was explained in Community Action of Greater Indianapolis, Inc. v. Indiana Farmers Mut. Ins. Co., 708 N.E.2d 882, 885 (Ind. Ct. App. 1999), "[w]here the plaintiff is not suing the insurance company to establish that its insured committed a tort against the plaintiff, but rather is suing to establish whether the insurer can deny coverage or whether the insurance policy remained in effect, such a suit is not a direct action against an insurer." While a direct action essentially substitutes the insurer for the insured in a suit involving the insured's underlying liability, a declaratory judgment essentially substitutes the claimant for the insured in an action to determine the coverage afforded by the insurance policies.

Travelers makes an additional argument regarding Count XI, where Emhart seeks an injunction to preserve the availability of the policy proceeds. Travelers argues that Emhart is not entitled to injunctive relief because an injunction is not available where a party has a

monetary remedy. Travelers Mem. at 6-7. Travelers fails to distinguish between the situation where, if no injunction enters, a plaintiff may be made whole at some future date through money damages and the situation here where, in the absence of an injunction, insufficient funds will be available to make Emhart whole. As the First Circuit stated in Foxboro Co. v. Arabian American Oil Co., 805 F.2d 34, 36 (1st Cir. 1986), one of the cases upon which Travelers relies, "[w]e do not find irreparable injury where only money is at stake and where the plaintiff has a satisfactory remedy at law to recover the money at issue." (Emphasis supplied). Travelers ignores the second part of this statement. The rule cited in Foxboro does not bar an injunction under the circumstances here.

Travelers' motion should be denied and Counts VII, IX, and XI should be permitted to go forward.

## II. BACKGROUND

The Environmental Protection Agency ("EPA") has issued Notices of Potential Liability and a series of administrative orders to NECC, Emhart and other respondents (Complaint, ¶¶ 11-17). The notices to Emhart are based upon the alleged activities of Metro-Atlantic, Inc. ("Metro-Atlantic") (Complaint, ¶ 30). The EPA is expected to issue additional orders in the future (Complaint, ¶¶ 20-23). Emhart has incurred substantial expense in complying with these orders and expects to incur additional expense, particularly since the EPA estimates that it will seek to recover response costs of approximately $15 million, plus interest, from Emhart and other Potentially Responsible Parties (Complaint, ¶¶ 18-20). In Counts I-VI, Emhart seeks relief against NECC, including declaratory relief, under the "cost recovery" and "contribution" provisions of the Comprehensive Environmental Response, Compensation, and

Liability Act ("CERCLA"), 42 U.S.C. §§ 9607(a) and 9313, as well as Rhode Island statutes similar to CERCLA and Rhode Island common law.

Emhart seeks declaratory and injunctive relief against Travelers as well as PWIC. Travelers issued liability insurance policies to NECC for a period "between at least 1969 and 1982" (Complaint, ¶ 9). Emhart's claims against Travelers are asserted in Counts VII, IX, and XI. Based on information and belief, Emhart alleges that NECC notified Travelers of the EPA claim concerning the Centredale Site (Complaint, ¶ 24). Travelers has not indemnified or defended NECC. Emhart also alleges that its claims against NECC in this action, which derive from the EPA proceedings regarding the Centredale Site, are covered by Travelers' policies and that Travelers "has an obligation ... to satisfy NECC's obligations to Emhart with respect to the damages that Emhart will recover if it prevails against NECC..." (Complaint, ¶¶ 73-74).

In Count VII, Emhart seeks a declaratory judgment based upon its status as a third party beneficiary of the insurance policies issued to NECC by Travelers (Complaint, ¶ 76). Counts IX and XI are grounded in Emhart's allegations that its claims against NECC "are considerably in excess" of NECC's assets plus the combined limits of the insurance policies issued by Travelers and by NECC's other insurer, PWIC (Complaint ¶ 88). Emhart further alleges that the Travelers policies provide coverage for the Emhart claim against NECC, that the proceeds of the Travelers policies will be required to satisfy a judgment against NECC in favor of Emhart in this action and that "there is a risk that NECC and [Travelers] will take action, other than in the ordinary course of business for full and adequate consideration, to reduce the indemnification benefits" available under the policies so that such a judgment could not be satisfied (Complaint, ¶¶ 89-90). The additional allegations in Count XI concern the requirements for injunctive relief (Complaint, ¶¶ 98-102).

## III. ARGUMENT

### A. As A Party Seeking Dismissal, Travelers Has A Heavy Burden

Travelers seeks dismissal under Rule 12(b)(6). The burden upon a party seeking dismissal at this early stage of litigation is a heavy one. As the First Circuit noted in remanding an action that had been dismissed, "rendition of judgment [under Rule 12(c)] in such an abrupt fashion represents an extremely early assessment of the merits of the case...." Rivera-Gomez v. de Castro, 843 F.2d 651, 635 (1st Cir. 1988). That statement is even more applicable to a Rule 12(b)(6) motion, which is filed at an earlier stage in the litigation. The Court must accept as true "the well-pleaded factual allegations of the complaint, draw all reasonable inferences therefrom in the plaintiff's favor and determine whether the complaint, so read, sets forth facts sufficient to justify recovery on any cognizable theory." Martin v. Applied Cellular Tech., Inc., 284 F.3d 1, 6 (1st Cir. 2002). Travelers has not met its burden here.[2]

### B. The Direct Action Statute Does Not Bar A Declaratory Judgment

Section 27-7-2 states that "[a]n injured party ... in his or her suit against the insured, shall not join the insurer as a defendant" but that the "insured party ... after having obtained judgment against the insured alone, may proceed on that judgment in a separate action against the insured ...." This provision does not apply to a declaratory judgment action.

---

[2] Travelers errs when it relies upon Canavan v. Lovett, Schefrin and Harnett, 745 A.2d 173, 174-75 (R.I. 2000), a case which was dismissed because the plaintiff failed to plead facts, such as the death of the insured, that would support the filing of a direct action against the insurer before entry of an underlying judgment against the insured. Canavan does not support Travelers. Emhart has brought a declaratory judgment action - not a direct action brought pursuant to § 27-7-1 et seq. (The distinction between a direct action and a declaratory judgment action is discussed in detail in Section B, infra.) Travelers has failed to address that distinction and, instead, has simply made the irrelevant argument that a corporation such as NECC cannot "die." See Travelers Mem. at 5

Case 1:06-cv-00218-S-LDA Document 22 Filed 08/08/2006 Page 13 of 31

**1. Rhode Island Distinguishes Between Direct Actions And Declaratory Judgments**

**a. Morrow And Doire Adopt The Distinction**

Rhode Island's Supreme Court recognizes the difference between a direct action and a declaratory judgment in the context of Rhode Island's direct action statute. In Morrow v. Norfolk & Dedham Mut. Fire Ins. Co., 661 A.2d 967 (R.I. 1995), the court rejected the insurer's argument that the direct action statute precluded the claimant from bringing a declaratory judgment action seeking a coverage determination against the insurer. There the insured's son, who lived in the basement of his father's house, fell on a stairway and, when his father's insurer denied coverage for his injuries, he brought a declaratory judgment action against the insurer. The insurer argued that the son could not sue, relying upon § 27-7-2. In rejecting that argument, the court distinguished between a direct action and a declaratory judgment, saying:

> Although the statute cited by Norfolk prohibits naming an insurance company as a direct defendant in a tort liability action, there is nothing in the statute that precludes a declaration of rights between parties to an insurance contract. Consequently, we are of the opinion that the trial justice was correct when she determined that Robert possessed standing to bring this declaratory judgment action.

Morrow, 661 A.2d at 968. Thus, the court affirmed the trial court's ruling on jurisdiction and held that the son was permitted to seek such a declaration.

Indeed, one of the cases upon which Travelers relies, Doire v. Commerce Ins. Co., 692 A.2d 696 (R.I. 1997), draws the same distinction between direct actions and declaratory judgments. Essentially, Doire is the mirror image of Morrow. A party who had obtained a judgment against an insured brought a declaratory judgment action against the insurer, seeking money damages. The trial court dismissed, but Rhode Island's Supreme Court reversed on appeal. While it agreed that, under the circumstances, a declaratory judgment would not lie, it

pointed to the claimant's right to bring a direct action seeking monetary relief and remanded for further proceedings. In both Morrow and Doire, the Rhode Island Supreme Court recognized the difference between a direct action under § 27-7-1 et seq. and an action seeking a declaratory judgment.

In its reply memorandum, PWIC erroneously construes Morrow as nothing more than a decision that permitted an insured to seek a declaratory judgment against his insurer. See PWIC Reply at 2. Such a reading assumes that the Rhode Island Supreme Court, and the trial court that it affirmed, handed down two contradictory rulings on the same issue in the same case. Two issues were decided in Morrow. First, as noted above, the court held that the son, who was the injured plaintiff, had standing to bring a declaratory judgment action against his father's insurer. Second, it held that the son was covered by the insurance policy. The coverage issue in Morrow turned on whether the son was a "resident" of his father's household and, accordingly, an "insured" under the policy. The policy did not provide coverage for an injury to an "insured." The son argued that he was not an "insured," an argument that the court accepted. Under PWIC's reading of Morrow, the Rhode Island Supreme Court held that the plaintiff was an insured for purposes of standing but was not an insured for purposes of obtaining coverage.

The two rulings in Morrow are reconciled only if the Morrow court's ruling on standing is understood to rest upon the distinction between a declaratory judgment and a direct action rather than upon the distinction between a claimant and an insured. As the son denied he was an "insured," and his right to coverage was dependent upon his status as a "non-insured," his right to bring the declaratory judgment action turned upon his status as a claimant, rather than as an insured. Whatever ambiguity might be found in certain language in the court's opinion, Morrow indicates that a claimant who is barred from bringing a direct action against an insurer

because he has not obtained a judgment against an insured may still seek a declaratory judgment against the insurer.[3]

b. Mendez And Robinson, At Most, Leave The Question Open

The distinction between a direct action and a declaratory judgment was also recognized in Mendez v. Brites, 849 A.2d 329, 331-32, n.2 (R.I. 2004), a declaratory judgment action by a claimant to reform a liability policy. There the court pointed to the rule, upon which

[3] PWIC also relies upon an unreported Superior Court decision, Baxendale v. Martin, 1997 WL 1051072 (R.I. Super. Aug. 14, 1997), and three cases cited in Baxendale. See PWIC Reply at 2-3.

PWIC acknowledges that Baxendale is not binding precedent. PWIC Reply at 2. However, it should not be followed for other reasons. First, Baxendale's narrow interpretation of Morrow, like that of PWIC, is flawed - and for the same reasons. While the Baxendale court stated that it relied upon a "close reading of Morrow" (1997 WL 1051072 at *2), that reading was confined to a single reference to "parties to an insurance contract" without regard to the Morrow decision as a whole. Second, as discussed in this footnote, the cases upon which Baxendale relied dealt with the scope of declaratory judgments rather than the reach of a direct action statute. Emhart already showed in its PWIC Objection that federal law applies and that the Supreme Court held long ago, in Maryland Casualty Co. v. Pacific Coal & Oil Co., 312 U.S. 270 (1941), that coverage disputes brought before entry of an underlying judgment are justiciable under the Declaratory Judgment Act. Emhart PWIC Obj. at 7-14. Third, two of the cases cited in Baxendale, Batteast v. Argonaut Ins. Co., 454 N.E.2d 706, 707 (Ill. App. Ct. 1983), and Farmers Ins. Exchange v. District Court, 862 P.2d 944 (Colo. 1993), are distinguishable from the case at bar because the sole issue was the amount of coverage provided by a defending insurer. See discussion of Batteast, infra. Fourth, the actual holding in Baxendale is unclear since the court stated that it was declining jurisdiction in the exercise of its "discretion." See Baxendale, 1997 WL 1051072 at *4.

As noted above, PWIC also cites to three cases cited by Baxendale. St. Paul Fire & Marine Ins. Co. v. Medical Protective Company of Fort Wayne, Indiana, 675 S.W.2d 665 (Mo. Ct. App. 1984), is a suit between two insurers. The court does not mention a statutory bar to a direct action. Instead, the court adopts a restrictive reading of the Missouri declaratory judgment act under circumstances where the insured is not a party to the suit In Batteast, the Illinois appellate court, citing Reagor v. Travelers Ins. Co., 415 N.E.2d 512 (Ill. App. Ct. 1980), acknowledged that a claimant could bring a declaratory judgment on the question of coverage, which is the issue at bar. However, it held that, where an insurer was defending and participating in settlement discussions, the question of the amount of coverage was not ripe for consideration in a declaratory judgment action brought before judgment had entered in the underlying case. As with St. Paul, the question of whether a direct action bar prohibited a declaratory judgment action never arose. Reagor, which is discussed, infra, strongly supports Emhart's claim here. The third case, Farmers, 862 P.2d 944, although more broadly worded, rests on a fact pattern almost identical to that in Batteast and, like both Batteast and St. Paul, the court makes no mention of a statutory bar to a direct action. Essentially, the Farmers court declined the plaintiff's "request... to help her decide whether she should accept [the insurer's] settlement offer," which the court construed as an inappropriate task for it to undertake. Farmers, 862 P.2d at 948. In many ways Farmers, which was cited repeatedly in Baxendale, is the centerpiece of that Superior Court decision. Notably, Butler v. Liberty Mut. Ins. Co., 375 A.2d 576 (Md. App. 1977), one of the few cases relied on in Farmers and a decision of Maryland's intermediate appellate court, was later disapproved by Maryland's highest court. See Harford Mut. Ins. Co. v. Woodfin Equities Corp., 687 A.2d 652, 658 (Md. 1997), discussed, infra.

Case 1:06-cv-00218-S-LDA Document 22 Filed 08/08/2006 Page 16 of 31

Travelers relies, that "in Rhode Island and in most other jurisdictions, an injured party lacks standing to maintain a direct action for damages against a tortfeasor's insurer until and unless the injured party has secured a judgment against the tortfeasor." Id. at 331 n.2. However, Mendez declined to reach the standing issue because the claimant filed a declaratory judgment rather than a direct action. Id. Instead it assumed arguendo that the claimant had standing. In the alternative, it relied upon the insured's standing since the insured had filed a cross-complaint against his insurer. Id. at 332 n.2. Although Travelers cites Mendez, it ignores this important aspect of the case.

While leaving the standing issue open, Mendez discussed it in a lengthy footnote. In dicta, and without mentioning Morrow, the court looked to out-of-state sources and noted a "conflict of authority" as to whether a third-party could bring a declaratory judgment action at a time when a direct action for damages would have been premature. Id. In the course of its discussion, Mendez cited Bankers Trust Co. v. Old Republic Ins. Co., 959 F.2d 677, 682 (7th Cir. 1992), and quoted extensively from the opinion. It referenced the Seventh Circuit's holding that "'the victim of an insured's tort, even though he is not a third-party beneficiary of his injurer's insurance policy, has a legally protectable interest in that policy before he has reduced his tort claim to judgment.'" Mendez, 849 A.2d at 332 n.2. Mendez then looked to the rationale behind the Bankers Trust holding, again quoting from the decision:

> "Suppose that ... before [the injured party] could feasibly bring a tort suit, let alone obtain a judgment, the insurer declared the liability insurance policy void; and ... the insured had no other assets. Then a tort suit would be worthless unless the insured's victim could obtain a declaration that the policy was valid after all."

Id. (ellipses in Mendez). These quotations emphasized the necessity for a declaratory judgment where, as here, there is a risk that insurance proceeds required to satisfy a potential future

judgment would be lost in the absence of declaratory relief. Thus, Mendez recognized the strong policy reasons behind permitting a declaratory judgment action where a direct action would not lie.

While the Mendez discussion of Bankers Trust was predicated upon the Bankers Trust distinction between a direct action and a declaratory judgment, Mendez did not quote directly from the portion of the Bankers Trust opinion dealing with the direct action bar. In fact, Bankers Trust flatly held that the declaratory judgment "suit is not a direct action suit against an insurer" prohibited by state law. Bankers Trust, 959 F.2d at 682. The Seventh Circuit explained its holding in the following words:

> This conclusion is not inconsistent with the refusal of most states to permit the victim of an insured injurer to sue the injurer's liability insurer directly. The reason for that refusal, a reason wholly unengaged by a case such as this, is to protect the insurance company from the hostility of juries. [Citations omitted.] Anyway Bankers Trust is not suing [the insurer] to establish that LKA committed a tort against Bankers Trust, but only to establish that [the insurer's] insurance policy remains in force up to the policy limits.

Id. This rationale is equally applicable here. Emhart is not suing Travelers to establish NECC's liability to Emhart but to establish that, if there is liability, the Travelers policies provide coverage. Moreover, the Bankers Trust view of the rationale for the direct action bar is in accord with Travelers' own position. Quoting Miller v. Metropolitan Cas. Ins. Co., 146 A. 412, 414 (R.I. 1929), Travelers explains that "[o]ne effect of the policy is 'to protect the insurance company against the well-known tendency of jurors to fail to consider the merits if a defendant ... is insured.'" Travelers Mem. at 4-5. See also Peerless Ins. Co. v. Rivera, 208 B.R. 313, 316 (D.R.I. 1997).[4]

[4] Due to the insured's bankruptcy, the claimant in Peerless had the right, pursuant to § 27-7-4, to bring a direct action before entry of judgment. However, this Court concluded that lifting the automatic stay to permit a declaratory judgment action by the insurer was preferable to a direct action by the claimant because "the

The Rhode Island Supreme Court revisited the issues discussed in the Mendez footnote when it handed down Robinson v. Mayo, 849 A.2d 351 (R.I. 2004), less than a week later. As in Mendez, the Robinson discussion was in dicta, was in a footnote, and did not mention Morrow. Robinson, 849 A.2d at 353, n.2. It noted that "no party in this case has briefed [the issue of standing] or invoked § 27-7-2 as a bar to plaintiff's joinder of [the insurer] as a party to this action." Id. It then "assumed arguendo, without deciding," that the claimant had standing. At the same time, it cited to the Mendez dicta, which discussed the "conflict of authority with respect to [an] injured party's right to bring a declaratory-judgment action against an insurer." Id. As the Robinson court stated directly, and the Mendez court stated somewhat more cryptically, the court did not have the benefit of briefing by the parties in preparing the dicta set forth in its two lengthy footnotes. Mendez, 849 A.2d at 332, n.2; Robinson, 849 A.2d at 353, n.2. The court relied mainly upon Bankers Trust to represent one side of the "conflict of authority," even though, as discussed below, many other courts have reached the same conclusion as the Bankers Trust court regarding the right to bring a declaratory judgment action in a jurisdiction with a direct action bar.[5]

---

prejudice of a direct action would be minimized." Peerless, 208 B.R. at 316. The Court also assumed that the claimant would be permitted to intervene in the declaratory judgment proceedings and "to vigorously contest [the insurer] on the coverage issue." Id. at 317. As the present case goes forward, the Court will be able to enter any orders necessary to prevent prejudice, including an order for separate trials. See, e.g., Eschle v. Eastern Freight Ways, Inc., 319 A.2d 786, 790 (N.J. Super. 1975), severing underlying liability issue and coverage issue for purposes of trial to prevent prejudice, and Christian v. Sizemore, 383 S.E.2d 810, 815 (W.Va. 1989), where the plaintiff agreed to separate trials.

While Travelers also points to the potential conflict between an insurer and an insured (see Travelers Mem. at 5), it makes no attempt to show that § 27-7-2 was intended to prevent such a conflict. See Miller, Peerless, and Collier v. Travelers Ins. Co., 197 A.2d 493, 496 (R.I. 1964), all relying solely upon the danger of prejudice. In any event, a conflict may arise only where, unlike the case at bar, an insurer actually undertakes its obligation to defend.

5 In addition to discussing Bankers Trust, Mendez briefly pointed to four cases on the opposing side. DeMent v. Nationwide Mut. Ins. Co., 544 S.E.2d 797 (N.C. Ct. App. 2001); St. Paul, 675 S.W.2d 665; Farmers, 862 P.2d 944; and All Around Transport, Inc. v. Continental Western Ins. Co., 931 P.2d 552 (Colo. Ct. App. 1996), which, like Farmers, was decided under Colorado law. As the Baxendale court and the PWIC Reply both rely on St. Paul and Farmers, those cases also were discussed previously. None really deal with the

**2. Other Jurisdictions Also Distinguish Between Direct Actions And Declaratory Judgments**

**a. Declaratory Judgment Permitted Where Direct Action Barred**

Morrow is consistent with the law in other jurisdictions, where courts distinguish between direct actions and declaratory judgments. As these out-of-state decisions show, the two types of cases are grounded in different theories. They are addressed to the actions of different parties. Moreover, a declaratory judgment action seeking a coverage determination does not prejudice the insurer in the underlying liability claim. As shown below, courts routinely acknowledge that a direct action would be barred by state law but go on to hold that the direct action bar does not impact an action seeking a declaratory judgment.

"[T]he general prohibition on direct action lawsuits is well-settled in Indiana...." City of South Bend v. Century Indemnity Co., 821 N.E.2d 5, 10 (Ind. Ct. App. 2005). However, in Community Action, 708 N.E.2d at 885, Wilson v. Continental. Cas. Co., 778 N.E.2d 849 (Ind. Ct. App. 2002), and South Bend the Indiana appellate court permitted a declaratory judgment action by a third-party claimant to go forward. As the court explained in Community Action:

> [O]ur result is not, as Farmers [the insurer] argues, contrary to this state's policy of prohibiting direct actions against an insurer where the injured party had no relationship with the insurer. ... Where the plaintiff is not suing the insurance company to establish that its insured committed a tort against the plaintiff, but rather is suing to establish whether the insurer can deny coverage or whether the insurance policy remained in effect, such a suit is not a direct action suit against an insurer.

---

issue squarely raised in Mendez, in Bankers Trust, and by Emhart here, i.e., whether a declaratory judgment action by a claimant against a liability insurer is a direct action under circumstances where a direct action would be barred. DeMent holds that a claimant may not bring a declaratory judgment for supplemental medical benefits, which the court construed as meaning reimbursement of funds actually paid by the insured, acting as a "good Samaritan," for a third party's emergency treatment, rather than sums for which the insured is liable to pay as a tortfeasor. DeMent, 544 S.E.2d at 801. Thus, no liability coverage was involved. St. Paul is a suit between two insurers. All Around Transport is not a declaratory judgment action at all. Farmers deals primarily with the proper scope of a declaratory judgment action and, as discussed in connection with Baxendale, the case is readily distinguishable because it involved an insurer who conceded that its policy covered the claim.

Community Action, 708 N.E.2d at 886 (citations omitted). In Wilson, the Indiana court set forth the strong public policy behind its ruling:

> We believe that allowing such declaratory actions will prevent the waste of parties' and judicial resources. All litigants will now be on the same footing in cases where insurance companies either deny coverage or defend under a reservation of rights. Equal ability to know whether a provable loss is subject to insurance indemnification will be a positive step toward settlement and will make litigation outcomes dispositive, collectible and credible. We believe Indiana's civil litigants deserve no less.

Wilson, 779 N.E.2d at 852. South Bend made clear that these public policy considerations are especially strong where, as here, the insured is no longer a functioning entity. See South Bend, 821 N.E.2d at 11.

As discussed, supra, the Seventh Circuit made the same point in Bankers Trust, 959 F.2d at 682, one of the cases cited by Community Action.[6] After stating that its "conclusion is not inconsistent with the refusal of most states to permit the victim of an insured injurer to sue the injurer's liability insurer directly," the court went on to distinguish between a tort suit against the insured, where the danger of prejudice would arise, and an action "to establish that [an]... insurance policy remains in force up to the policy limits." Bankers Trust, 959 F.2d at 682. Bankers Trust, in turn, looked to an Illinois decision, Reagor v. Travelers Ins. Co., 415 N.E.2d 512, 515 (Ill. App. Ct. 1980). There, the court noted that "the issue of coverage" raised in the declaratory judgment action was separate from "any question of the insured's liability." Since there was no danger of prejudice, it concluded that "our state's policy of prohibiting direct

6 Community Action also acknowledged Farmers, which is cited in Mendez and Baxendale and was discussed, supra, but declined to adopt what it deemed to be Colorado's minority view, stating that the "decision today [permitting a declaratory judgment] is consistent with decisions from other jurisdictions." Community Action, 708 N.E.2d at 885.

actions against an insurer before judgment has been rendered against the insured" was not implicated. Id.

Indiana and Illinois are not alone in holding that a claimant's declaratory judgment action is not a direct action, barred by statute or common law. Although a Maryland "tort claimant may not maintain a direct action against the defendant tortfeasor's liability insurer until there has been a determination of the insured's liability in the tort action," (Howard v. Montgomery Mut. Ins. Co., 805 A.2d 1167, 1175 (Md. App. 2002)), Maryland permits a claimant to bring a declaratory judgment action to determine coverage prior to entry of the underlying judgment so long as the issues would be appropriate to resolve if the action had been brought by the insurer or by the insured. Harford Mut. Ins. Co. v. Woodfin Equities Corp., 687 A.2d 652, 658-59 (Md. 1997); Howard, 805 A.2d at 1175-76. Thus, the Maryland courts "distinguished declaratory judgment suits from 'direct actions.'" Howard, 805 A.2d at 1176, citing Woodfin.

Where the insurers argued that Ohio's "statutory framework" regarding when "an injured party may proceed against a tortfeasor's insurer ... bars an action prior to obtaining a judgment against the insured," the court found that "statute inapposite" because it "bears no relation to a declaratory judgment" to determine coverage issues. Turner v. Romans, 1995 WL 767927, *2 (Ohio Ct. App. Dec. 26, 1995). As the Ohio courts explain, the "general rule" that "the injured person must obtain a judgment against the insured" had "been fine tuned, differentiating between an action for money damages and an action for declaratory relief." Anderson v. Cincinnati Ins. Co., 1987 WL 11033 at *5 (Ohio Ct. App. May 15, 1987); see also Cochenour v. Ferrin, 1992 WL 426461 (Ohio App. 5 Dist. Dec. 14, 1992).

The highest courts of West Virginia and Arkansas follow suit. Although, in West Virginia, the injured plaintiff could not institute "a direct action" seeking damages from an insurer until a judgment had been obtained against the insured, the West Virginia court held that the rule was not applicable when the claimant was seeking "a declaration that [the insurer] is required to provide insurance coverage to the defendants in the personal injury suit." Christian v. Sizemore, 383 S.E.2d 810, 812 (W.Va. 1989). In National Security Fire & Casualty Co. v. Poskey, 828 S.W.2d 836, 838 (Ark. 1992), the Arkansas court denied a petition for prohibition, filed by an insurer in a declaratory judgment action by a claimant seeking a ruling on coverage. While agreeing that "our direct action statute does not allow injured parties to sue their non-immune tortfeasors' insurance carriers directly until the injured party has obtained a judgment against the tortfeasor and the judgment remains uncollected after thirty days," the court held that "this is not a direct action ...." Poskey, 828 S.W.2d 836 at 838.

These courts are joined by the federal district court in Iowa, which stated that the state statute prohibited a direct action "until after judgment is obtained and an execution is returned unsatisfied" but construed the statute to apply to "an action for reimbursement from the policy," not "an action for determination of coverage under the policy prior to the injured party obtaining a judgment against the insured." Utica Mut. Ins. Co. v. Winmill Int'l, Inc., 50 F.Supp.2d 871, 874 (N.D. Iowa 1999) (emphasis in original). The federal district court in the District of Columbia did the same in Saylab v. Harford Mut. Ins. Co., 271 F.Supp.2d 112, 119 (D.D.C. 2003), where the claimants stated that "they are seeking a declaratory judgment on the scope of the insurance coverage only and not, at this time, arguing that Harford owes them any payment." Similarly, in Virginia a state trial court permitted a pre-judgment declaratory judgment action by a claimant to go forward after noting that the state supreme court had

permitted such an action without discussion. Martirosov v. Shenandoah Flight Service, Inc., 2003 WL 23312786 at *5-6 (Va. Cir. Ct. Mar. 2, 2003). More recently, the Fourth Circuit, relying on similar cases, opined that the Virginia direct action bar did not reach actions for a declaratory judgment. Miller v. August Mut. Ins. Co., 157 Fed. Appx 632, 637, n.5 (4th Cir. 2005).

Distinguishing between direct actions and declaratory judgments in a different context, New Mexico's highest court held that policy provisions preventing "suit against [the insurer] in the absence of a determination of liability on the part of the assured ... are inapplicable to an action ... which ... seeks only an interpretation of the contract between the parties." Baca v. New Mexico State Highway Dept., 486 P.2d 625, 629 (N.M. 1971). An Idaho court drew the same distinction, ruling that a policy provision pertaining to attorney's fees "is addressed only to direct actions against the insured for damages and is totally inapplicable where the action is for a declaration of rights under the policy itself." Foremost Ins. Co. v. Putzier, 606 P.2d 987, 993 (Idaho. 1980).

Had Rhode Island's Supreme Court in Morrow looked to out-of-state cases and had that court sought full briefing in Mendez, it would have found ample support for a rule that a direct action statute poses no barrier to an action by a claimant seeking a declaratory judgment against a liability insurer.

**b. Declaratory Judgment Not Direct Action For Diversity Purposes**

Cases applying state law, in which the courts found that declaratory judgment actions do not fall within a direct action provision, also are consistent with decisions construing 28 U.S.C. § 1332(c)(1), which limits federal diversity jurisdiction "in any direct action against the insurer of a policy or contract of liability insurance ... to which action the insured is not

joined as a party-defendant." An analogy between these jurisdictional cases and construction of the scope of a state's direct action statute is particularly apt since the federal law was prompted by, and focuses on, suits brought under such state provisions.[7]

The First Circuit was the first appellate court to construe § 1332(c)(1). In White v. U.S. Fidelity and Guaranty Co., 356 F.2d 746 (1st Cir. 1966), which was a declaratory judgment action, the Court held that the statute did not apply, emphasizing that Congress used the word "direct" rather than the word "any" to modify the word "action." White is commonly cited for the proposition that a declaratory judgment action is not a "direct action" for purposes of § 1332(c)(1). See, e.g. Dairyland Ins. Co. v. Makover, 654 F.2d 1120, 1124 (5th Cir. 1981); National Fire & Marine Ins. Co. v. Guy Management Corp., 1988 WL 36350 at *1 (E.D. Pa. 1988).

Decisions of the courts of appeals construing § 1332(c)(1) also discuss the types of cases encompassed by the term "direct action." Under the "universal rule" a "direct action" is where "the plaintiff is suing the tortfeasor's insurer, rather than suing the tortfeasor directly, on the issue of liability." Monahan v. American States Ins. Co., 75 Fed. Appx. 340, 343 (6th Cir. 2003). "[U]nless the cause of action against the insurance company is of such a nature that the liability sought to be imposed could be imposed against the insured, the action is not a direct action." Fortson v. St. Paul Fire and Marine Ins. Co., 750 F.2d 1157, 1159 (llth Cir. 1985).

7 Congress was particularly concerned with suits brought against insurers, rather than insureds, pursuant to statutes enacted in Louisiana and Wisconsin, which permitted virtually all claimants to bypass a suit against an insured and sue an insurer directly. Unlike a substantial number of insureds, most insurers are not citizens of the same state as the claimant. Before the amendment, such suits against insurers fell within federal diversity jurisdiction, thereby overloading the federal courts in the states involved. See White, 356 F.2d at 747-48. Rhode Island's direct action statute is of more limited scope than those in Louisiana and Wisconsin. Under Rhode Island law, a claimant may "proceed directly" against an insurer before obtaining a judgment against the insured where the insured is bankrupt, where the insured has died, or where the insured could not be served. See § 27-7-2 (remedies of injured party against insurer) and § 27-7-4 (direct action against insurer upon filing for bankruptcy). However, as the statute defines the circumstances when a direct action may be brought as well as the circumstances when a direct action is barred, it is the type of statute addressed by § 1332(c)(1).

Applying these principles, federal district courts routinely hold that declaratory judgment actions seeking coverage determinations are not "direct actions." See Saylab, 271 F.Supp.2d at 116; Weast v. Travelers Cas. and Surety Co., 7 F.Supp.2d 1129, 1133 (D. Nev. 1998); National Fire & Marine Ins. Co., 1988 WL 36350 at *1; Hepke v. Kilcoin, 279 F.Supp.2d 1089, 1092 (D. Neb. 2003). As the court stated in Weast, since "[p]laintiffs could not seek a judicial determination of their rights and duties under the Travelers policy against [the insured]," the claim was "not a direct action." Weast, 7 F.Supp.2d at 1133.

### 3. None Of The Cases Cited By Travelers Are On Point

Although, as discussed, supra, both Doire and Mendez distinguish between direct actions and declaratory judgments, Travelers relies on both cases without acknowledging the difference between the two types of actions. The other cases Travelers cites are inapposite as all parties agree that the suit was a direct action against the insurer. The plaintiff in Collier v. Travelers Ins. Co., 197 A.2d 493 (R.I. 1964), sued the tortfeasor's insurer directly, relying upon the "non est inventus" provision of § 27-7-2, which is applicable where the tortfeasor cannot be found. The issue in the case pertained to whether the claimant made a good faith effort to serve the tortfeasor before invoking § 27-7-2. Collier, 197 A.2d at 496. In holding that "good faith" was required, the court made clear that the prohibition of § 27-7-2 was aimed at preventing a claimant from suing the insurer (rather than the insured) for damages, thereby prejudicing the jury in the damage action. Id. The plaintiff in Clauson v. New England Ins. Co., 254 F.3d 331 (1st Cir. 2001), sued the insurer after judgment had entered against the insured. Therefore, no question regarding the statutory bar to direct actions was raised. In Canavan v. Lovett, Schefrin and Harnett, 745 A.2d 173 (R.I. 2000), the insurer argued, and the claimant apparently did not contest, that the requisites for a direct action were not met. Unlike the case at bar, the plaintiffs

in Collier, Clauson, and Canavan, did not rely upon, and the courts did not consider, the distinction between a direct action against an insurer for damages and a declaratory judgment action against an insurer seeking a coverage determination.

4. Summary

In Morrow, the Rhode Island Supreme Court permitted a claimant to bring a declaratory judgment action seeking a coverage determination, rejecting the insurer's argument that it was a direct action barred by statute. Morrow is controlling law. The holding in Morrow is buttressed by the Mendez court's detailed discussion of Bankers Trust, a case which the court viewed as a weighty precedent. Even if there is some ambiguity as to whether Morrow is directly on point, Rhode Island would follow the courts from other jurisdictions, construing direct action provisions or common law requirements similar to that in Rhode Island, which have recognized that direct action statutes and controlling direct action precedents do not apply to declaratory judgment actions. Were the Mendez court aware of this substantial body of law, which strongly reinforces Bankers Trust, and had it determined to address standing, there is a substantial likelihood that it would have held that a declaratory judgment is not within the scope of the direct action statute.

This is not a case where Emhart seeks to substitute Travelers (and PWIC) for NECC. Emhart is not attempting to bypass a suit against NECC to determine NECC's underlying liability to Emhart. Rather, this is the type of declaratory judgment action which an insured typically brings against its insurer. In the words of Weast, Emhart "could not seek a

judicial determination of [its] rights under the Travelers policy" by bringing an action against NECC. This declaratory judgment action is not a direct action. It is not barred by § 27-7-2.[8]

C. **Irreparable Injury Where Injunction Protects Future Payment**

Travelers also argues that Count XI, which seeks injunctive relief, should be dismissed because "only money is at stake." Travelers Mem. at 6. To be sure, where a party seeks an injunction to prevent an action, but, if that action takes place, the plaintiff can obtain complete relief through a monetary judgment, it is unlikely that irreparable injury will be established. That is not the case here. Travelers fails to distinguish between the situation where, if no injunction enters, a plaintiff can be made whole at some future date through money damages and the situation here where, in the absence of an injunction, there is a substantial risk that insufficient funds will be available to make the plaintiff whole.[9]

---

8 To the extent that Travelers adopts the standing arguments initially made by PWIC, those arguments were fully addressed by Emhart when it opposed PWIC's motion, which Emhart incorporates by reference herein. See PWIC Mem. and Emhart PWIC Obj.

9 Travelers also briefly touches upon the factors other than irreparable injury that are considered in connection with a request for injunctive relief. See Travelers Mem. at 7, n.4. Regarding the merits, Travelers relies upon its argument that a corporation cannot "die" to establish that Emhart is not likely to succeed on the merits. As Emhart has shown in this memorandum and in its PWIC Objection, Emhart has a strong basis for claiming standing to seek a declaratory judgment against the insurers. Travelers makes no argument regarding the merits of Emhart's contention that the Travelers policies cover claims growing out of the environmental contamination at the Centredale Site and, of course, such an argument would be out of place in the context of this motion to dismiss.

On the other hand, Travelers apparently does contend that this Court may, at this time, definitively weigh the potential damage to Emhart, if an injunction does not enter, against the potential damage to Travelers, if it does. Emhart has alleged that "defendants would suffer little, if any, hardship" while Emhart would suffer "irreparable injury." Complaint at ¶ 100. Those allegations must be taken as true for purposes of Travelers' Rule 12(b)(6) motion. At this time, when the issue is not whether an injunction should enter but whether Emhart should have the opportunity to show that it is entitled to injunctive relief, it would be inappropriate to base a decision on which way the scale might tip.

Finally, Travelers looks to two cases, raising completely different issues, to show that any injunction "enjoining and restraining NECC and Travelers from entering into any agreement, other than in the ordinary course of business and for full and adequate consideration, that would reduce the indemnification benefits of the Travelers Policies" would violate "public policy" and the "freedom to contract." One, Computrol, Inc. v. Newtrend, L.P., 203 F.3d 1064 (8th Cir. 2000), is a contract action which has nothing whatsoever to do with the propriety of injunctive relief. In Martellini v. Little Angels Day Care, Inc., 847 A.2d 838 (R.I. 2004),

Emhart alleges that the Travelers policies would be required to satisfy a judgment against NECC in favor of Emhart and that "there is a risk that NECC and [Travelers] will take action, other than in the ordinary course of business for full and adequate consideration, to reduce the indemnification benefits" available under the policies so that such a judgment could not be satisfied (Complaint, ¶¶ 89-90). This is an allegation which must be accepted as true for purposes of a motion to dismiss under Rule 12(b)(6). In other words, Emhart seeks an injunction because of the substantial risk that, in the absence of an injunction, it will never receive the "money at stake."

One of the cases cited by Travelers, Foxboro Co. v. Arabian American Oil Co., 805 F.2d 34, 36 (1st Cir. 1986), provides a complete response to Travelers' argument. See Travelers Mem. at 6.[10] There, the First Circuit found no irreparable injury if a letter of credit were issued because the plaintiff later would have the opportunity "to seek recovery of [the sums allegedly owed it] through the contractually agreed upon forum." Id. In reaching this conclusion, it distinguished Itek Corp. v. First Nat'l Bank, 730 F.2d 19, 22 (1st Cir. 1984), where the honoring of a letter of credit had been enjoined because, due to the Iranian revolution, the plaintiff would have been unable to pursue a money remedy in the agreed upon forum. In the course of these decisions, the First Circuit set forth the following rule: "[w]e do not find irreparable injury where only money is at stake and where the plaintiff has a satisfactory remedy at law to recover the money at issue." Foxboro, 805 F.2d at 36 (emphasis supplied) (citing Itek, 730 F.2d at 22). While Travelers relies on the principle set forth in the first half of this rule, it

---

Rhode Island's Supreme Court enforced a restrictive covenant, which precluded business operations in private homes in a particular neighborhood. Neither of these cases bears upon whether the "freedom to contract" is implicated when a claimant seeks injunctive relief to protect the availability of insurance proceeds.

10 In the other injunction case cited by Travelers, K-Mart Corp. v. Oriental Plaza, Inc., 875 F.2d 907, 915 (1st Cir. 1989), an injunction was granted to protect the plaintiff against harm to its goodwill.

completely ignores the equally important principle, applicable in the instant action, which is set forth in the second half.

In the event of a settlement between Travelers and NECC "other than in the ordinary course of business and for full and adequate consideration" (Complaint ¶ 90), the policies will be unavailable and Emhart will have no "satisfactory remedy at law to recover the money at issue." Foxboro, 805 F.2d at 36. Both the First Circuit and the Rhode Island Supreme Court recognize that an injunction may issue when a plaintiff seeks to ensure the availability of certain assets under circumstances where, if the assets are dissipated, the right to a money remedy may be lost. See Teradyne, Inc. v. Mostek Corp., 797 F.2d 43, 53 (1st Cir. 1986); Kashmanian v. Rongione, 712 A.2d 865, 868-69 (R.I. 1998).

## IV. CONCLUSION

For the foregoing reasons, the Motion to Dismiss Complaint Against Travelers Casualty and Surety Company should be denied.

Respectfully submitted,

Emhart Industries, Inc.,
By Its Attorneys,

/s/ Craig M. Scott
Craig M. Scott (#4237)
Duffy Sweeney & Scott, Ltd.
One Turks Head Place, Suite 1200
Providence, RI 02903
(401) 455-0700
(401) 455-0701 (facsimile)
cscott@duffysweeney.com

Of Counsel:
Jack R. Pirozzolo
Richard L. Binder
Judith S. Ziss
Willcox, Pirozzolo & McCarthy
Professional Corporation
50 Federal Street
Boston, MA 02110
(617) 482-5470
(617) 423-1572 (facsimile)
jpirozzolo@wpmlaw.com

**CERTIFICATE OF SERVICE**

Todd D. White, Esq.
Jaime LaPorte, Esq.
Adler, Pollock & Sheehan, P.C.
One Citizens Plaza, 8th Floor
Providence, Rhode Island 02093-1345

R. Kelly Sheridan, Esq.
Jason C. Preciphs, Esq.
Roberts Carroll Feldstein & Peirce
10 Weybosset Street
Providence, RI 02903

I hereby certify that the within Memorandum of Law was filed through the ECF system on the 8th day of August, 2006, and will be sent electronically to the above-named counsel who are registered participants identified on the Notice of Electronic Filing and that I further caused counsel listed below to be served via First Class Mail:

John A. Nadas, Esq.
Eric Bradford Hermanson, Esq.
Julie C. Rising, Esq.
Choate, Hall & Stewart, LLP
Two International Place
Boston, Massachusetts 02110

/s/ Craig M. Scott

H:\Clients\Wilcox, Pirozzolo & McCarthy\Pleadings\Memo Opp Trav Mot Dismiss.doc

# TAB

# D

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| EMHART INDUSTRIES, INC.<br><br>Plaintiff,<br><br>v.<br><br>NEW ENGLAND CONTAINER COMPANY, INC., ET AL.,<br><br>Defendants. | ) | Civil Action No. 06-218 S |

**DEFENDANT TRAVELERS CASUALTY AND SURETY COMPANY'S REPLY TO PLAINTIFF'S OBJECTION TO MOTION TO DISMISS COMPLAINT**

Pursuant to Fed. R. Civ. P. 12(b) and U.S. Dist. Ct. R. 7(b), Defendant Travelers Casualty and Surety Company ("Travelers") submits the following reply ("Reply") to the Objection ("Objection") of Plaintiff Emhart Industries, Inc. ("Emhart") with respect to Travelers Motion to Dismiss Complaint ("Travelers Motion"). For the reasons set forth below and in the Memorandum previously submitted by Travelers ("Travelers Memorandum"), R.I. Gen. Laws § 27-7-2 bars Emhart from bringing this direct action suit against Travelers. Emhart has failed to set forth any compelling authority to the contrary, or to articulate why this Court should ignore the plain language of the Rhode Island statute prohibiting insurers from being named in suits against their policyholders.

**Summary**

Emhart's principal argument for denial of Travelers Motion is that declaratory judgments by third parties are not "direct actions" against insurers, and therefore are not

subject to R.I. Gen. Laws § 27-7-2. Conspicuously absent from Emhart's discussion, however, is any reference to the actual language of the Rhode Island statute at issue. In fact, the statutory language is flatly at odds with the argument Emhart makes.

R.I. Gen. Laws § 27-7-2 provides (with certain exceptions not relevant here) that "[a]n injured party, . . . in his or her suit against the insured, shall not join the insurer as a defendant." R.I. Gen. Laws § 27-7-2 (2002). The statutory prohibition is clear and unequivocal. Contrary to Emhart's suggestion, the statute does not distinguish between cases in which an insurer is joined as a declaratory judgment defendant, and those in which a party simply "claim[s] damages from the insurer,"[1] and Emhart has pointed to nothing in the legislative history that hints at such a distinction.

Nor has Emhart cited any Rhode Island case law that would support its proposed construction of the Rhode Island statute. Although Emhart cites Morrow v. Norfolk & Dedham Mutual Fire Ins. Co., 661 A.2d 968 (R.I. 1995) for the broad proposition that a "declaratory judgment action by an injured party [is] not a direct action prohibited by the statute,"[2] at least two subsequent Rhode Island Supreme Court cases have implicitly rejected this broad reading of Morrow, holding that a claimant's right to seek a declaratory judgment is, at most, "unsettled" under Rhode Island law. See *infra* pp. 4 - 5. Interestingly, Emhart consigns to a footnote[3] the one Rhode Island case that has addressed the issue squarely, Baxendale v. Martin, 1997 WL 1051072 (R.I. Super. Aug. 14, 1997), which held

---

1 See Emhart Mem. in Supp. of its Objection to Travelers Mot. to Dismiss. ("Opp. Mem."), at 2.

2 See Emhart Objection, p. 1.

3 See Emhart Mem., p. 10 n. 3.

that R.I. Gen. Laws § 27-7-2 *did* apply to declaratory judgment suits, and explicitly rejected the broad reading of Morrow that Emhart now seeks to persuade this Court to adopt.

**DISCUSSION**

## I. Rhode Island Law Bars Emhart's Claims.

In construing R.I. Gen. Laws § 27-7-2, this Court must begin, of course, with the plain language of the statute. By its terms, the statute broadly prohibits an insurer from being joined as a defendant in an action against the insurer's policyholder:

> An injured party, or in the event of the injured party's death, the party entitled to sue for that death, in his or her suit against the insured, ***shall not join the insurer as a defendant.*** If the officer serving any process against the insured shall return that process "non-est inventus", or where before suit has been brought . . . the insured has died, or where a suit is pending against an insured in his or her own name and the insured has died prior to judgment, . . . the injured party, and in the event of that party's death, the party entitled to sue for that death, may proceed directly against the insurer. The injured party, or in the event of that party's death, the party entitled to sue for that death, after having obtained judgment against the insured alone, may proceed on that judgment in a separate action against the insurer . . . . R.I. Gen. Laws § 27-7-2 (emphasis added).

Contrary to Emhart's interpretation, the statute does not distinguish between actions for damages and actions for declaratory judgment. It bars all suits in which an insurer is "joined as a defendant," except in certain limited circumstances, not applicable here. Since the statute is "free from ambiguity and expresses a plain and sensible meaning," see Chalou v. LaPierre, 443 A.2d 1241, 1241 (R.I. 1982), 'the meaning so expressed [should] be presumed to be the one intended by the Legislature.'" Id.; see also Canavan v. Lovett, Schefrin & Harnett, 745 A.2d 173, 174-75 (R.I. 2000).

A. Morrow Does Not Govern This Case.

In an effort to avoid the Rhode Island statute, Emhart claims that "the Rhode Island Supreme Court held, in Morrow v. Norfolk & Dedham Mut. Fire Ins. Co., 661 A.2d 967, 968 (R.I. 1995), that a declaratory judgment action by an injured party was not a direct action prohibited by the statute."[4] However, Emhart misreads Morrow. The plaintiff in Morrow was the policyholder's son, who was injured in his father's home. The plaintiff then filed a claim under his father's policy. The insurer rejected the claim, "on the basis that [the plaintiff] was considered a resident of [the policyholder's] household and he therefore had the status of an insured." 661 A.2d at 968.

On review, the Rhode Island Supreme Court concluded – not surprisingly – that the plaintiff had standing to challenge the insurer's denial directly: "There is nothing in the statute that precludes a declaration of rights between parties to an insurance contract." 661 A.2d at 968. In the instant case, by contrast, no party has alleged that Emhart is a "party" to the Travelers Policies, or that it "has the status of an insured." The facts that underlay the Supreme Court's decision in Morrow simply are not present in this case.[5] See also Baxendale, 1997 WL 1051072 (construing Morrow), discussed *infra* pp. 5 - 6.

---

4 Opp., pp. 1-2.

5 In addition to Morrow, Emhart cites Doire v. Commerce Insurance Co., 692 A.2d 696, 696-97 (R.I. 1997), to suggest that a declaratory judgment may be treated differently from a direct action for damages for purposes of § 27-7-2. In fact, the plaintiff in Doire had already obtained a default judgment against the insured prior to filing a declaratory judgment suit against the insurer. See 692 A.2d at 696-97. Although the Court found that the declaratory judgment action was improper, it allowed the case to proceed because the plaintiff met one of the express conditions on which direct actions are permitted by § 27-7-2. See R.I. Gen. Laws § 27-7-2 ("The injured party...after having obtained judgment against the insured alone, may proceed on that judgment in a separate action against the insurer..."). In the present case, by contrast, Emhart does not – and cannot – allege that it has "obtained judgment against the insured alone."

### B. Other Rhode Island Cases Also Fail To Support Emhart's Direct-Action Argument

At least two subsequent Rhode Island Supreme Court cases confirm that – contrary to Emhart's current position – Morrow did *not* hold "a declaratory judgment action by an injured party was not . . . prohibited by the statute." In Robinson v. Mayo, 849 A.2d 351 n.2 (R.I. 2004), the Rhode Island Supreme Court – implicitly rejecting Emhart's view of the Morrow holding – described a claimant's right to seek a declaratory judgment against an insurer as being, at best, "unsettled" under Rhode Island law. In Mendez v. Brites, 849 A.2d 329 n.2 (R.I. 2004), the Court went further, noting that""[m]ost courts would hold that the absence of privity of contract between an injured-party claimant and the alleged tortfeasor's insurer bars not only a direct damages action but also a declaratory-judgment action against that insurer." Tellingly, neither case made any reference to Morrow – an omission that is all but incomprehensible if Morrow had, in fact, held (as Emhart argues) "that a declaratory judgment action by an injured party was not a direct action prohibited by the statute."

Ultimately, the Court in both Mendez and Robinson found it unnecessary to decide whether R.I. Gen. Laws § 27-7-2 barred the plaintiffs' declaratory judgment suit, because the Court found, in both cases, that the insurer had waived the right to invoke the Rhode Island statutory bar.[6] As a result, the Courts in Robinson and Mendez went on to muse about the purported "conflict in authority" from other jurisdictions, where Rhode Island's direct action statute did not apply. But the Courts' lengthy discussion of this alleged

[6] See Robinson, 849 A.2d at 332 n.2 (noting that "no party in this case has briefed this issue to us or invoked § 27-7-2 as a bar to plaintiff's joinder of the Trust as a party"); Mendez, 849 A.2d at 333 n.2 (noting, again, that "no party in this case [had] properly has briefed and argued" the issue; and finding that the insurer had waived the protection of § 27-7-2, in any event, by submitting to a cross-complaint by its policyholder).

conflict, in both Robinson and Mendez, is mere dictum. The Courts' musings have little or no application to the instant case, where Travelers has timely briefed and argued – and has in no way waived – its rights under the Rhode Island statute.

Interestingly, Emhart relegates to a footnote its discussion of the one Rhode Island case, Baxendale, 1997 WL at 1051072, that squarely addresses the scope of Morrow's holding and the application of R.I. Gen. Laws § 27-7-2 to an action for declaratory judgment.[7] Considering a plaintiff's motion to add a defendant's insurers as declaratory judgment defendants, in an action against a policyholder for damages, Judge Gibney in Baxendale addressed and rejected the precise argument made by Emhart in this case – that § 27-7-2 should be construed to "exempt declaratory judgments from [the statute's] purview on the ground that the declaratory judgment is distinguishable from a tort liability action." 1997 WL at 1051072 at * 2. With respect to Morrow, Judge Gibney wrote:

> [A] close reading of Morrow reveals that the Rhode Island Supreme Court further qualified the declaration of rights to mean those rights 'between parties to an insurance contract.' Morrow, plaintiff son of the insured[,] brought a claim directly against his . . . father's insurer for injuries the son had sustained during a fall on the covered premises. The insurance company denied the claim on the ground that [the] plaintiff was not a third party but an actual insured who thus was precluded from recovery under the terms of the policy . . . . The insurance company was a party to a contract under which an actual claim had been made by plaintiff whom the company alleged was an actual insured party . . . . In the instant case, the plaintiff is not an alleged party to the insurance contract, and, thus, the principle set out in Morrow does not apply.

---

[7] See Opp. Mem., p. 10 n. 3.