# EXHIBIT D

STATE OF RHODE ISLAND
PROVIDENCE, SC.

SUPERIOR COURT

EMHART INDUSTRIES,
Plaintiff,

vs.

NEW ENGLAND CONTAINER COMPANY, INC., TRAVELERS CASUALTY & SURETY COMPANY and PROVIDENCE WASHINGTON INSURANCE COMPANY,
Defendants.

C.A. No. 06-6095

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS OBJECTION TO DEFENDANT PROVIDENCE WASHINGTON INSURANCE COMPANY'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

**INTRODUCTION**

Plaintiff, Emhart Industries, Inc. ("Emhart"), alleges that New England Container Company, Inc. ("NECC") is liable for costs that Emhart has incurred, and will continue to incur, in connection with the cleanup of environmental contamination at the Centredale Manor Superfund Site ("Site"). Emhart alleges that Providence Washington Insurance Co. ("PWIC") issued insurance policies to NECC ("PWIC Policies") that are applicable to the Emhart claim against NECC. It also alleges that NECC lacks assets, other than the PWIC Policies and insurance policies issued to NECC by Travelers Casualty and Surety Company ("Travelers"), to satisfy a judgment in Emhart's favor. Accordingly, Emhart has asserted claims for declaratory relief against the insurers in addition to its claims against NECC.

PWIC misunderstands the direct action statute and decisions of the Rhode Island Supreme Court concerning that statute. The direct action statute applies to prevent a tort

claimant from seeking to recover from the insurer on its underlying claim against the insured. The statute does not apply where, as here, the claim against the insurer is for declaratory relief concerning whether the insurance policies would provide coverage if the plaintiff were successful in the underlying claim against the insured. The distinction between the two types of claims was recognized by the Rhode Island Supreme Court in Mendez v. Brites, 849 A.2d 329, 331-32, n.2 (R.I. 2004) and Robinson v. Mayo, 849 A.2d 351, 353 n. 2 (R.I. 2004), yet PWIC ignores both decisions. Emhart does not seek a judgment that PWIC is liable for the conduct of NECC. It permissibly seeks a judgment that if it prevails on its claims against NECC, the PWIC insurance policies apply to those claims. Here, unlike most insurers in tort actions, PWIC does not acknowledge that its insurance policies provide coverage if NECC is liable to Emhart.

PWIC has moved to dismiss, pursuant to Rule 12(b)(6), the three counts asserted against it. The PWIC motion is predicated on two grounds, neither of which is meritorious. The PWIC argument that Emhart's claim are barred by the direct action statute, R.I. Gen. Laws, § 27-7-2, ignores decisions of the Rhode Island Supreme Court, either holding that a claim against an insurer for declaratory relief regarding the existence of coverage is not barred by the direct action statute (Morrow v. Norfolk & Dedham Mut. Fire Ins. Co., 661 A.2d 967 (R.I. 1995)) or recognizing the likelihood that such actions are not within the scope of the direct action statute (Mendez v. Brites, 849 A.2d 329, 331-32 n.2 (R.I. 2004); Robinson v. Mayo, 849 A.2d 351, 353 n.2 (R.I. 2004)). Decisions in other jurisdictions also recognize that direct action statutes do not bar claims for declaratory relief concerning insurance coverage. E.g., Bankers Trust Co. v. Old Republic Ins. Co., 959 F.2d 677, 682 (7th Cir. 1992); Harford Mut. Ins. Co. v. Woodfin Equities Corp., 687 A.2d 652, 658 (Md. 1997); Community Action of Greater Indianapolis, Inc. v. Indiana Farmers Mut. Ins. Co., 708 N.E.2d 882, 885 (Ind. Ct. App. 1999).

The PWIC argument that Emhart is not a third party beneficiary of the PWIC Policies, applicable only to one of the three counts against PWIC, is contrary to settled case law, recognizing that persons injured by an insured are intended beneficiaries of insurance policies. E.g., Flattery v. Gregory, 489 N.E.2d 1257, 1262 (Mass. 1986); Werrmann v. Aratusa, Ltd., 630 A.2d 302, 305-06 (N.J. Super. Ct. App. Div. 1993); Reagor v. Travelers Ins. Co., 415 N.E.2d 512, 514 (Ill. App. Ct. 1981). Further, there are fact questions concerning intent, based on insurance policy provisions and Rhode Island statutes, rendering this issue inappropriate for resolution on a motion to dismiss. The motion must be denied.[1]

**PROCEDURAL HISTORY**

In counts VI, VIII and X of the complaint, Emhart asserts claims against PWIC. Those counts seek declaratory and injunctive relief concerning the PWIC Policies, not recovery of money damages from PWIC. In Count VI, Emhart alleges that PWIC "has an obligation ... to satisfy NECC's obligations to Emhart with respect to the damages that Emhart will recover if it prevails against NECC..." (Complaint, ¶ 62) and that, as a claimant, it is an intended beneficiary of the PWIC Policies (Id., ¶ 64). In Count VIII, Emhart adds the allegation that in the absence of the indemnification benefits under the PWIC Policies, NECC "will be unable to satisfy a judgment for the money damages" that Emhart expects to obtain against NECC (Id., ¶ 75). Based on the additional allegations, Emhart seeks a declaration that PWIC has an obligation to preserve the indemnification benefits of the PWIC Policies until there is a determination as to whether those policies provide coverage for the Emhart claim against NECC (Count VIII) and an

1 The PWIC memorandum repeats arguments that PWIC asserted in a motion to dismiss the claims against it in a parallel action pending in the United States District Court for the District of Rhode Island, Emhart Industries, Inc. v. New England Container Co. et als. (United States District Court for the District of Rhode Island, C.A. No. 06-218-S). The PWIC motion in that action was argued and has not been decided. After the federal court took the PWIC motion to dismiss, and other motions to dismiss, under advisement, Emhart brought this action. Emhart did so as it seeks injunctive relief to ensure the continued availability of the benefits from the insurance policies. NECC asserted that the federal court lacked jurisdiction over the claims against it, thus raising the possibility that the substantive issues might be decided in state court.

injunction to prevent PWIC and NECC from entering into any agreement that would reduce the indemnification benefits of those insurance policies (Count X). In the absence of such relief, there is a risk that the proceeds of the PWIC Policies will become unavailable during the pendency of the Emhart action against NECC.

**ARGUMENT**

**A. As A Party Seeking Dismissal, PWIC Has A Heavy Burden**

PWIC seeks dismissal under Rule 12(b)(6). "'The standard for granting a motion to dismiss is a difficult one for the movant to meet.'" Toste Farm Corp. v. Hadbury, Inc., 798 A.2d 901, 905 (R.I. 2005) (quoting Pellegrino v. Rhode Island Ethics Commission, 788 A.2d 1119, 1123 (R.I. 2002)). The Toste Farm Court then explained why the standard is difficult for the movant to meet: "When ruling on a Rule 12(b)(6) motion, the trial justice must look no further than the complaint, assume that all allegations in the complaint are true, and resolve any doubts in a [non-movant's] favor. ...The motion may then only be granted if it appears beyond a reasonable doubt that a [non-movant] would not be entitled to relief under any conceivable set of facts." Id. (citations omitted). Application of that standard to the allegations of the complaint requires denial of the PWIC motion.

**B. The Direct Action Statute Does Not Bar A Declaratory Judgment**

Section 27-7-2 states that "[a]n injured party ... in his or her suit against the insured, shall not join the insurer as a defendant", but that the "insured party ... after having obtained judgment against the insured alone, may proceed on that judgment in a separate action against the insured ...." PWIC assumes, without analysis, that this provision applies to declaratory judgments, as well as to direct actions, but decisions which have considered this issue have ruled that direct action statutes do not apply to declaratory judgment actions.

**1. Rhode Island Distinguishes Between Direct Actions And Declaratory Judgments**

**a. Morrow And Doire Adopt The Distinction**

Rhode Island's Supreme Court recognizes the difference between a direct action and a declaratory judgment in the context of the direct action statute. In Morrow v. Norfolk & Dedham Mut. Fire Ins. Co., 661 A.2d 967 (R.I. 1995), the Court rejected the insurer's argument that the direct action statute precluded the claimant from bringing a declaratory judgment action seeking a coverage determination against the insurer. There the insured's son, who lived in the basement of his father's house, fell on a stairway and, when his father's insurer denied coverage for his injuries, he brought a declaratory judgment action against the insurer. The insurer argued that the son could not sue, relying upon § 27-7-2. In rejecting that argument, the Court distinguished between a direct action and a declaratory judgment action and held that the claimant could proceed with his declaratory judgment action against the insurer, saying:

> Although the statute cited by Norfolk prohibits naming an insurance company as a direct defendant in a tort liability action, there is nothing in the statute that precludes a declaration of rights between parties to an insurance contract. Consequently, we are of the opinion that the trial justice was correct when she determined that Robert possessed standing to bring this declaratory judgment action.

Morrow, 661 A.2d at 968. Thus, the Court affirmed the trial court's ruling on standing and held that the son was permitted to seek a declaration concerning coverage.

PWIC, at page 6 of its memorandum ("PWIC Mem."), erroneously construes Morrow as nothing more than a decision that permitted an insured to seek a declaratory judgment against his insurer. It apparently predicates its reading on the words, quoted above, "there is nothing in the statute that precludes a declaration of rights between parties to an insurance contract." When the quoted language is read in the context of the holding in Morrow, the PWIC interpretation is

incorrect. PWIC assumes that both the appellate court, and the trial court, in the decision affirmed on appeal, handed down two contradictory rulings on the same issue in the same case. Two issues were decided in Morrow. First, as noted above, the Court held that the son, who was the injured plaintiff, had standing to bring a declaratory judgment action against his father's insurer. Second, it held that the son's claim was covered by the insurance policy. The coverage issue in Morrow turned on whether the son was a "resident" of his father's household and, accordingly, an "insured" under the policy. The policy did not provide coverage for an injury to an "insured." The son argued that he was not an "insured," an argument that the Court accepted. Thus, the Court found that a person who was not an insured had standing to bring a declaratory judgment action against the insurer. Under PWIC's reading of Morrow, the Supreme Court held that the plaintiff was an insured for purposes of standing, but was not an insured for purposes of obtaining coverage.

The two rulings in Morrow are reconciled only if the Morrow court's ruling on standing is understood to rest upon the distinction between a declaratory judgment and a direct action, rather than upon the distinction between a claimant and an insured. The son denied he was an "insured" and his right to coverage was dependent upon his status as a "non-insured." Accordingly, the court's decision that he had a right to bring the declaratory judgment action turned upon his status as a claimant, rather than as an insured. Whatever ambiguity might be found if the language in the Court's opinion upon which PWIC relies is read in isolation, disappears when the entire decision is analyzed. Morrow indicates that a claimant who is barred from bringing a direct action against an insurer because he has not obtained a judgment against an insured may still seek a declaratory judgment against the insurer.

Doire v. Commerce Ins. Co., 692 A.2d 696 (R.I. 1997), draws the same distinction between direct actions and declaratory judgments. Essentially, Doire is the mirror image of Morrow. A party who had obtained a judgment against an insured brought a declaratory judgment action against the insurer, seeking money damages. The trial court dismissed, but the Rhode Island Supreme Court reversed on appeal. While it agreed that, under the circumstances, a declaratory judgment would not lie, it pointed to the claimant's right to bring a direct action seeking monetary relief and remanded for further proceedings. In both Morrow and Doire, the Supreme Court recognized the difference between a direct action under § 27-7-1 et seq. and an action seeking a declaratory judgment.

**b. Mendez And Robinson Recognize The Distinction**

The distinction between a direct action and a declaratory judgment was also recognized in Mendez v. Brites, 849 A.2d 329, 331-32 n.2 (R.I. 2004), a declaratory judgment action by a claimant to reform a liability policy. There the Court pointed to the rule, upon which PWIC relies, that "in Rhode Island and in most other jurisdictions, an injured party lacks standing to maintain a direct action for damages against a tortfeasor's insurer until and unless the injured party has secured a judgment against the tortfeasor." Id. at 331 n.2. However, Mendez declined to dismiss the complaint on the basis that the claimant filed a declaratory judgment rather than a direct action. Id. Instead it assumed arguendo that the claimant had standing. In the alternative, it relied upon the insured's standing since the insured had filed a cross-complaint against his insurer. Id. at 332 n.2.

While leaving the standing issue open, Mendez discussed it in a lengthy footnote. In dicta, and without mentioning Morrow, the Court looked to out-of-state sources and noted a "conflict of authority" as to whether a third-party could bring a declaratory judgment action at a

time when a direct action for damages would have been premature. Id. In the course of its discussion, Mendez cited Bankers Trust Co. v. Old Republic Ins. Co., 959 F.2d 677, 682 (7th Cir. 1992), and quoted extensively from the opinion. It referenced the Seventh Circuit's holding that "'the victim of an insured's tort, even though he is not a third party beneficiary of his injurer's insurance policy, has a legally protectable interest in that policy before he has reduced his tort claim to judgment.'" Mendez, 849 A.2d at 332 n.2. Mendez then looked to the rationale behind the Bankers Trust holding, again quoting from the decision:

> "Suppose that ... before [the injured party] could feasibly bring a tort suit, let alone obtain a judgment, the insurer declared the liability insurance policy void; and ... the insured had no other assets. Then a tort suit would be worthless unless the insured's victim could obtain a declaration that the policy was valid after all."

Id. (ellipses in Mendez). These quotations emphasized the necessity for a declaratory judgment where, as here, there is a risk that insurance proceeds required to satisfy a potential future judgment would be lost in the absence of declaratory relief. Thus, Mendez recognized the strong policy reasons behind permitting a declaratory judgment action where a direct action would not lie.

While the Mendez discussion of Bankers Trust was predicated upon the Bankers Trust distinction between a direct action and a declaratory judgment, Mendez did not quote directly from the portion of the Bankers Trust opinion dealing with the direct action bar. In fact, Bankers Trust flatly held that the declaratory judgment "suit is not a direct action suit against an insurer" prohibited by state law. Bankers Trust, 959 F.2d at 682. The Seventh Circuit explained its holding in the following words:

> This conclusion is not inconsistent with the refusal of most states to permit the victim of an insured injurer to sue the injurer's liability insurer directly. The reason for that refusal, a reason wholly unengaged by a case such as this, is to protect the insurance company from the hostility of

> juries. [Citations omitted.] Anyway Bankers Trust is not suing [the insurer] to establish that LKA committed a tort against Bankers Trust, but only to establish that [the insurer's] insurance policy remains in force up to the policy limits.

Id. This rationale is equally applicable here. Emhart is not suing PWIC to establish NECC's liability to Emhart, but to establish that, if there is liability, the PWIC Policies provide coverage. As such, Emhart is not "join[ing] the insurer as a defendant" in its "suit against the insured," within the meaning of Section 27-7-2. It is proceeding with a separate claim against PWIC that involves different issues from the Emhart claim against NECC.

The Rhode Island Supreme Court revisited the issues discussed in the Mendez footnote when it handed down Robinson v. Mayo, 849 A.2d 351 (R.I. 2004), less than a week later. As in Mendez, the Robinson discussion was in dicta, was in a footnote, and did not mention Morrow. Robinson, 849 A.2d at 353, n.2. It noted that "no party in this case has briefed [the issue of standing] or invoked § 27-7-2 as a bar to plaintiff's joinder of [the insurer] as a party to this action." Id. It then "assumed arguendo, without deciding," that the claimant had standing. At the same time, it cited to the Mendez dicta, which discussed the "conflict of authority with respect to [an] injured party's right to bring a declaratory-judgment action against an insurer." Id. As the Robinson court stated directly, and the Mendez court stated somewhat more cryptically, the Court did not have the benefit of briefing by the parties in preparing the dicta set forth in its two lengthy footnotes. Mendez, 849 A.2d at 332, n.2; Robinson, 849 A.2d at 353 n.2. The Court relied mainly upon Bankers Trust to represent one side of the "conflict of authority," even though, as discussed in section 2, infra, many other courts have reached the same conclusion as the Bankers Trust court regarding the right to bring a declaratory judgment action in a jurisdiction with a direct action bar.

c. Providence Washington Relies On Inapposite Authority

Notwithstanding that Morrow, Mendez and Robinson recognize the critical distinction between direct actions and declaratory actions, PWIC fails to address the significance of that distinction and ignores Mendez and Robinson.

Instead, PWIC relies on Canavan v. Lovett, Schefrin and Harnett, 745 A.2d 173 (R.I. 2000) (PWIC Mem. at 4). That reliance is misplaced. Unlike the case at bar, the plaintiff in Canavan did not rely upon, and the courts did not consider, the distinction between a direct action against an insurer for damages and a declaratory judgment action against an insurer seeking a coverage determination. Further, in Canavan, unlike the instant action, the insurer agreed to defend and to pay $50,000 in indemnification benefits. 745 A.2d at 174. The insured asserted that the indemnification obligation was in excess of $50,000. As is discussed, infra, while a claimant has a right to bring a declaratory judgment action where, as here, the insurer denies an obligation to indemnify, that right does not extend to a dispute as to the amount of the indemnification obligation. E.g., Batteast v. Argonaut Ins. Co., 454 N.E.2d 706, 708 (Ill. App. Ct. 1983). PWIC quotes language in Canavan to the effect that the insurer had no fiduciary duty to the claimant. That language, which addressed the issue of whether a claimant had a cause of action for bad faith against a tortfeasor's insurer, is not relevant to the issue here presented.

Any suggestion that Canavan precludes a claimant from bringing a declaratory judgment action concerning the existence of coverage is conclusively rebutted by Mendez and Robinson. Those opinions, decided two years after Canavan, found that decision was not a sufficient basis for ruling that the direct action statute bars declaratory judgments concerning the existence of coverage. After citing Canavan, Robinson stated "the question of whether an injured party has standing to sue the insurer in a declaratory-judgment action seeking a ruling on the scope of the

policy's coverage, as in this case, is still unsettled." 849 A.2d at 353 n.2. Similarly, Mendez, after citing Canavan, noted that "[a]t least one other court, however, has held that an injured party can maintain a declaratory-judgment action against the alleged tort-feasor's insurer" and concluded, "[g]iven this conflict of authority" and the failure of the parties to brief the issue, to "assume, without deciding, that [the claimant] possessed the requisite standing to bring this declaratory-judgment action" against the insurer. 849 A.2d at 332, n.2.

Similarly, PWIC errs in relying on Baxendale v. Martin, 1997 WL 1051072 (R.I. Super. Aug. 14, 1997), and three cases cited in Baxendale (PWIC Mem. at 5-6). While the Baxendale Court stated that it relied upon a "close reading of Morrow" (1997 WL 1051072 at *2), that reading was confined to a single reference to "parties to an insurance contract" being entitled to seek a declaratory judgment, without regard to the Morrow decision as a whole. As discussed, supra, such an interpretation of Morrow cannot be reconciled with the holding of Morrow that the claimant had a right to a declaratory judgment against the insurer. The PWIC reliance on Baxendale is further flawed as the Court did not have the advantage of Robinson and Mendez, which were decided five years later by Rhode Island Supreme Court. Those decisions recognized that whether a claimant has a right of declaratory relief, rather than a direct claim for damages, against the tortfeasor's insurer could not be decided solely on the basis that the claim was brought against the insurer.

It is worthy of note that PWIC cites Baxendale and Canavan, without discussing Robinson and Mayo, and has not provided any rationale for its argument that the direct action statute applies to declaratory judgment actions, as well as tort actions. That omission is telling in view of the statements from Banker's Trust, quoted in Mendez. Bankers Trust explained that a tort suit against an insured lacking sufficient assets to satisfy a judgment would be worthless

unless the claimant could obtain a declaration that the policy provided coverage. It also explained that the rationale for direct action statutes, preventing insurers from jury hostility, was inapplicable when the claimant sought a declaration that the policy provided coverage, rather than a money judgment against the insurer.[2] The closest PWIC comes to discussing a rationale is the speculative assertion that permitting a "tort claimant" to seek a declaratory judgment "to determine the maximum amount of coverage to which he would be entitled" might result in overburdening the courts (PWIC Mem. at 6). Here, the maximum amount of coverage is not the issue. Permitting declaratory relief concerning the existence of a coverage obligation is less likely to result in extensive litigation than permitting declaratory relief concerning the amount of coverage since insurers are not likely to contest the existence of coverage in a personal injury, malpractice or other negligence action.

The PWIC reliance on the decisions from other jurisdictions cited in Baxendale is unwarranted. None of those decisions address the issue here presented, whether a direct action statute precludes a claimant from asserting a declaratory judgment action concerning the existence of insurance coverage. Those decisions assume that a direct action statute does not bar coverage of a declaratory judgment claim against the insurer and address the scope of a permissible declaratory judgment claim. PWIC relies most heavily on Batteast v. Argonaut Ins. Co., 454 N.E.2d 706 (Ill. App. Ct. 1983). That decision specifically states that in the situation here presented, a dispute concerning whether the underlying claim is covered by the defendant's insurance policy, there is jurisdiction to decide the claimant's declaratory judgment claim against the insurer. In Batteast, the Court noted with approval its prior decision in Reagor v. Travelers

2 Since the insurance coverage claim and the tort claim involve different issues of fact and law, any possibility of prejudice could be addressed by separate trials, seriatim. See, e.g., Eschle v. Eastern Freight Ways, Inc., 319 A.2d 786, 790 (N.J. Super. 1975), severing underlying liability issue and coverage issue for purposes of trial to prevent prejudice, and Christian v. Sizemore, 383 S.E.2d 810, 815 (W.Va. 1989), where the plaintiff agreed to separate trials.

Ins. Co., 415 N.E.2d 512 (Ill. App. Ct. 1980), which held that claimants "were entitled to maintain the declaratory judgment action [against the defendant's insurer] to determine whether their claim was covered under the insurance policy", but refused "to extend Reagor to allow … judicial determination of the amount of coverage in a declaratory judgment action". 454 N.E.2d at 708. In Batteast, the insurer had defended the insured and participated in settlement negotiations with the claimant, but there was a dispute as to whether the policy provided coverage of $1,000,000 or $3,000,000. 454 N.E.2d at 707. Thus, Batteast holds that where, as here, the insurer denies that its policy provides coverage, the party asserting a claim against the insured does have a claim for declaratory relief against the insurer.

Similarly, Farmers Ins. Exchange v. District Court, 862 P.2d 944 (Colo. 1993), is also distinguishable from the case at bar because the sole issue was the amount of coverage provided by a defending insurer, not whether the insurer had a coverage obligation. There, the insurer asserted that its policy provided coverage of $25,000 and agreed to pay that amount in a settlement, but the plaintiff asserted that the policy limits were $100,000. 862 P.2d at 945. Essentially, the Farmers court declined the plaintiff's "request… to help her decide whether she should accept [the insurer's] settlement offer," which the Court construed as an inappropriate task for it to undertake. Id., at 948.

St. Paul Fire & Marine Ins. Co. v. Medical Protective Company of Fort Wayne, Indiana, 675 S.W.2d 665 (Mo. Ct. App. 1984), is inapposite. It is a suit between two insurers, not between a claimant and an insurer. The policyholder was not a party to the action and the Court did not know whether he made a claim under the second insurer's policy. 675 S.W.2d at 667.

Here, in contrast, NECC has asserted a claim under the PWIC Policies.[3] The question of whether a direct action bar prohibited a declaratory judgment action never arose.

### 2. Other Jurisdictions Also Distinguish Between Direct Actions And Declaratory Judgments

#### a. Declaratory Judgment Permitted Where Direct Action Barred

Morrow is consistent with the law in other jurisdictions, where courts distinguish between direct actions and declaratory judgments. As these out-of-state decisions show, the two types of cases are grounded in different theories and raise different issues of fact and law. Moreover, a declaratory judgment action seeking a coverage determination does not prejudice the insurer in the underlying liability claim. As shown below, courts routinely acknowledge that a direct action would be barred by state law, but go on to hold that the direct action bar does not impact an action seeking a declaratory judgment.

"[T]he general prohibition on direct action lawsuits is well-settled in Indiana...." City of South Bend v. Century Indemnity Co., 821 N.E.2d 5, 10 (Ind. Ct. App. 2005). However, in Community Action of Greater Indianapolis, Inc. v. Indiana Farmers Mut. Ins. Co., 708 N.E.2d 882, 885 (Ind. Ct. App. 1999), Wilson v. Continental Cas. Co., 778 N.E.2d 849 (Ind. Ct. App. 2002), and South Bend the Indiana appellate court permitted a declaratory judgment action by a third-party claimant to go forward. As the Court explained in Community Action:

> [O]ur result is not, as Farmers [the insurer] argues, contrary to this state's policy of prohibiting direct actions against an insurer where the injured party had no relationship with the insurer. ... Where the plaintiff is not suing the insurance company to establish that its insured committed a tort against the plaintiff, but rather is suing to establish whether the insurer can deny coverage or whether the insurance policy remained in effect, such a suit is not a direct action suit against an insurer.

---

[3] That claim is at issue in an action NECC filed in this Court, No 06-218. A copy of the complaint in that action is attached to the NECC motion to dismiss in this action, filed on December 18, 2006.

Community Action, 708 N.E.2d at 886 (citations omitted). In Wilson, the Indiana court set forth the strong public policy behind its ruling:

> We believe that allowing such declaratory actions will prevent the waste of parties' and judicial resources. All litigants will now be on the same footing in cases where insurance companies either deny coverage or defend under a reservation of rights. Equal ability to know whether a provable loss is subject to insurance indemnification will be a positive step toward settlement and will make litigation outcomes dispositive, collectible and credible. We believe Indiana's civil litigants deserve no less.

Wilson, 778 N.E.2d at 852. South Bend made clear that these public policy considerations are especially strong where, as here, the insured is no longer a functioning entity. See South Bend, 821 N.E.2d at 11.

As discussed, supra, the Seventh Circuit made the same point in Bankers Trust, one of the cases cited by Community Action. After stating that its "conclusion is not inconsistent with the refusal of most states to permit the victim of an insured injurer to sue the injurer's liability insurer directly," the Court went on to distinguish between a tort suit against the insured, where the danger of prejudice could arise, and an action "to establish that [an]… insurance policy remains in force up to the policy limits." Bankers Trust, 959 F.2d at 682. Bankers Trust, in turn, looked to Reagor, 415 N.E.2d at 515. There, the Court noted that "the issue of coverage" raised in the declaratory judgment action was separate from "any question of the insured's liability." Since there was no danger of prejudice, it concluded that "our state's policy of prohibiting direct actions against an insurer before judgment has been rendered against the insured" was not implicated. Id.

Indiana and Illinois are not alone in holding that a claimant's declaratory judgment action is not a direct action, barred by statute or common law. Although a Maryland "tort claimant may not maintain a direct action against the defendant tortfeasor's liability insurer until there has been

a determination of the insured's liability in the tort action" (Howard v. Montgomery Mut. Ins. Co., 805 A.2d 1167, 1175 (Md. App. 2002)), Maryland permits a claimant to bring a declaratory judgment action to determine coverage prior to entry of the underlying judgment so long as the issues would be appropriate to resolve if the action had been brought by the insurer or by the insured. Harford Mut. Ins. Co. v. Woodfin Equities Corp., 687 A.2d 652, 658-59 (Md. 1997). Thus, the Maryland courts "distinguished declaratory judgment suits from 'direct actions.'" Howard, 805 A.2d at 1176, citing Woodfin.

Where the insurers argued that Ohio's "statutory framework" regarding when "an injured party may proceed against a tortfeasor's insurer ... bars an action prior to obtaining a judgment against the insured," the Court found that "statute inapposite" because it "bears no relation to a declaratory judgment" to determine coverage issues. Turner v. Romans, 1995 WL 767927, *2 (Ohio Ct. App. Dec. 26, 1995). As the Ohio courts explain, the "general rule" that "the injured person must obtain a judgment against the insured" had "been fine tuned, differentiating between an action for money damages and an action for declaratory relief." Anderson v. Cincinnati Ins. Co., 1987 WL 11033 at *5 (Ohio Ct. App. May 15, 1987); see also Cochenour v. Ferrin, 1992 WL 426461 (Ohio App. 5 Dist. Dec. 14, 1992).

The highest courts of West Virginia and Arkansas follow suit. Although, in West Virginia, the injured plaintiff could not institute "a direct action" seeking damages from an insurer until a judgment had been obtained against the insured, the West Virginia court held that the rule was not applicable when the claimant was seeking "a declaration that [the insurer] is required to provide insurance coverage to the defendants in the personal injury suit." Christian v. Sizemore, 383 S.E.2d 810, 812 (W.Va. 1989). In National Security Fire & Casualty Co. v. Poskey, 828 S.W.2d 836, 838 (Ark. 1992), the Arkansas court denied a petition for prohibition,

filed by an insurer in a declaratory judgment action by a claimant seeking a ruling on coverage. While agreeing that "our direct action statute does not allow injured parties to sue their non-immune tortfeasors' insurance carriers directly until the injured party has obtained a judgment against the tortfeasor and the judgment remains uncollected after thirty days," the Court held that "this is not a direct action …." Id.

These courts are joined by the federal district court in Iowa, which explained that the state statute prohibited a direct action "until after judgment is obtained and an execution is returned unsatisfied," but construed the statute to apply to "an action for reimbursement from the policy," not "an action for determination of coverage under the policy prior to the injured party obtaining a judgment against the insured." Utica Mut. Ins. Co. v. Winmill Int'l, Inc., 50 F.Supp.2d 871, 874 (N.D. Iowa 1999) (emphasis in original). The federal district court in the District of Columbia did the same in Saylab v. Harford Mut. Ins. Co., 271 F.Supp.2d 112, 119 (D.D.C. 2003), where the claimants stated that "they are seeking a declaratory judgment on the scope of the insurance coverage only and not, at this time, arguing that Harford owes them any payment." Similarly, in Virginia a state trial court permitted a pre-judgment declaratory judgment action by a claimant to go forward after noting that the state supreme court had permitted such an action without discussion. Martirosov v. Shenandoah Flight Service, Inc., 2003 WL 23312786 at *5-6 (Va. Cir. Ct. March 2, 2003). More recently, the Fourth Circuit, relying on similar cases, opined that the Virginia direct action bar did not reach actions for a declaratory judgment. Miller v. August Mut. Ins. Co., 157 Fed. Appx 632, 637 n.5 (4th Cir. 2005).

Had the Rhode Island Supreme Court sought full briefing in either Mendez or Robinson, it would have found ample support for a rule that a direct action statute poses no barrier to an action by a claimant seeking a declaratory judgment against a liability insurer.

**b. Declaratory Judgment Is Not Direct Action For Diversity Purposes**

Cases applying state law, in which the courts found that declaratory judgment actions do not fall within a direct action provision, also are consistent with decisions construing 28 U.S.C. § 1332(c)(1), which limits federal diversity jurisdiction "in any direct action against the insurer of a policy or contract of liability insurance ... to which action the insured is not joined as a party-defendant." An analogy between these jurisdictional cases and construction of the scope of a state's direct action statute is particularly apt since the federal law was prompted by, and focuses on, suits brought under such state provisions.

The first appellate decision to construe section 1332(c)(1) was White v. U.S. Fidelity and Guaranty Co., 356 F.2d 746 (1st Cir. 1966). That case was a declaratory judgment action and the Court held that the statute did not apply, emphasizing that Congress used the word "direct" rather than the word "any" to modify the word "action." White is commonly cited for the proposition that a declaratory judgment action is not a "direct action" for purposes of section 1332(c)(1). See, e.g., Dairyland Ins. Co. v. Makover, 654 F.2d 1120, 1124 (5th Cir. 1981); National Fire & Marine Ins. Co. v. Guy Management Corp., 1988 WL 36350 at *1 (E.D. Pa. 1988).

Decisions of the courts of appeals construing section 1332(c)(1) also discuss the types of cases encompassed by the term "direct action." Under the "universal rule" a "direct action" is where "the plaintiff is suing the tortfeasor's insurer, rather than suing the tortfeasor directly, on the issue of liability." Monahan v. American States Ins. Co., 75 Fed. Appx. 340, 343 (6th Cir. 2003). "[U]nless the cause of action against the insurance company is of such a nature that the

liability sought to be imposed could be imposed against the insured, the action is not a direct action." Fortson v. St. Paul Fire and Marine Ins. Co., 750 F.2d 1157, 1159 (llth Cir. 1985). Applying these principles, federal district courts routinely hold that declaratory judgment actions seeking coverage determinations are not "direct actions." See Saylab, 271 F.Supp.2d at 116; Weast v. Travelers Cas. and Surety Co., 7 F.Supp.2d 1129, 1133 (D. Nev. 1998); National Fire & Marine Ins. Co., 1988 WL 36350 at *1; Hepke v. Kilcoin, 279 F.Supp.2d 1089, 1092 (D. Neb. 2003). As the Court stated in Weast, since "[p]laintiffs could not seek a judicial determination of their rights and duties under the Travelers policy against [the insured]," the claim was "not a direct action." Weast, 7 F. Supp.2d at 1133.

3. **Summary**

In Morrow, the Rhode Island Supreme Court permitted a claimant to bring a declaratory judgment action seeking a coverage determination, rejecting the insurer's argument that it was a direct action barred by statute. Morrow is controlling law. The holding in Morrow is buttressed by the Mendez court's detailed discussion of Bankers Trust, a case which the Court viewed as weighty precedent. Even if there is some ambiguity as to whether Morrow is directly on point, Rhode Island would follow the courts from other jurisdictions, which have recognized that statutory and common law bars to direct actions, comparable to § 27-7-2, do not apply to declaratory judgment actions. If the Court in Mendez or Robinson had determined to seek briefing regarding standing, there is a substantial likelihood that it would have held that a declaratory judgment is not within the scope of the direct action statute.

This is not a case where Emhart seeks to substitute PWIC for NECC. Emhart is not attempting to bypass a suit against NECC to determine NECC's underlying liability to Emhart. Rather, this is the type of declaratory judgment action which an insured typically brings against its insurer. In the words of Weast, Emhart "could not seek a judicial determination of [its] rights

under the [PWIC] policy" by bringing an action against NECC. This declaratory judgment action is not a direct action. It is not barred by § 27-7-2.

C. Emhart, As A Claimant Against NECC, Is A Third Party Beneficiary

1. Issues Of Fact Require Denial Of The Motion

PWIC correctly asserts that Rhode Island has been guided by the Restatement (Second) of Contracts ("Restatement") in determining whether a person or entity has the status of a "third party beneficiary" or "intended beneficiary"[4] to a contract. Forcier v. Cardello, 173 B.R. 973, 985 (D.R.I. 1994); see PWIC Mem. at 9. That issue turns on the "intent" of the contracting parties, an issue which may be resolved in Emhart's favor either on the basis of the PWIC Policies or on the basis of a more detailed analysis of facts concerning intent. The PWIC Policies are not before the Court, and PWIC has not provided the Court with information that is essential to determining whether Emhart is a third party beneficiary of the PWIC Policies. The failure of PWIC to support its motion with the policies is telling as the absence of the policies was argued as a ground for denying a similar PWIC motion in the federal court action.

Fischer v. United States Fid. & Guar. Co., 144 F. Supp. 315 (D.R.I. 1956), is directly on point. There, the Court denied a Rule 12(b)(6) motion, where a claim was asserted by an employee "as a third-party beneficiary of the contract of insurance made between the defendant [insurer] and his said employer." Id. at 316. The plaintiff alleged that "he is a member of a class for whose benefit the alleged contract between his employer and the defendant was made and as one of the beneficiaries of said contract he seeks to recover the benefit thereof." Id. Here, the allegations in paragraph 64 of the complaint are to the same effect. The Court refused "to

4 For purposes of the PWIC motion, there is no difference between the terms "intended beneficiary" and "third party beneficiary."

speculate as to the nature of the proof which he may present" and permitted the action to proceed. This Court should do the same in the case at bar.

### 2. The Restatement (Second) Of Contracts Requires An Analysis Of "Intent"

Under Section 302(1)(b) of the Restatement, a beneficiary is an "intended beneficiary" where "recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and ... the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance."[5] These principles "are applicable to both conditional and unconditional promises...." Restatement § 303. Thus, while the right to performance must await the fulfillment of the condition, the status of "intended beneficiary" is fixed before the promise becomes absolute.

Clearly, the status of "intended beneficiary" turns on "intent." However, "[i]t is not essential to the creation of a right in an intended beneficiary that he be identified when a contract containing the promise is made." Restatement § 308; see also Flattery v. Gregory, 489 N.E.2d 1257, 1262 (Mass. 1986). Moreover, it is not "necessary that the promisee's obligation to pay the beneficiary be in existence when the contract is made." Flattery, 489 N.E.2d at 1261 (citing Illustration 3 to Restatement § 302). PWIC acknowledges that, if Emhart is an "intended

---

[5] Section 302 of the Restatement provides:

(1) Unless otherwise agreed between promisor and promisee, a beneficiary of a promisee is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and either

(a) the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary; or

(b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.

(2) An incidental beneficiary is a beneficiary who is not an intended beneficiary.

beneficiary" of the insurance policies it issued to NECC, Emhart has standing as a third party beneficiary to assert claims against PWIC. PWIC Mem. at 8.

Evidence of the intent to benefit a claimant flows from applicable Rhode Island statutes. Rhode Island requires that "[e]very policy written insuring against liability for property damage ... shall contain provisions to the effect that the insurer shall be directly liable to the injured party ... to pay that party the amount of damages for which the insured is liable." R.I. Gen. Laws § 27-7-1. Thus, the insurer's direct liability is fixed before the underlying claim has been resolved even though the right to claim insurance proceeds directly from the insurer may not always accrue until a later time. Under certain circumstances, the claimant may assert its claim directly against the insurer before its underlying claim has been resolved. See, e.g., R.I. Gen. Laws § 27-7-2 (where the insured dies during the underlying proceedings or process in the underlying action is returned "non est inventus"); R.I. Gen. Laws § 27-7-2.4 ("whenever the alleged tortfeasor files for bankruptcy"). As the Court, when considering Rule 12(b)(6), is required to draw all inferences in favor of Emhart, it must infer that PWIC complied with the statutory requirement to include in its policy provisions for its direct liability to claimants.

Separate and apart from any impact of state law, evidence of intent to benefit a claimant is demonstrated by a clause contained in general liability policies written during the relevant period (the early to mid-1980's). These policies incorporate the following provision:

> Any person or organization ... who has secured such judgment or written agreement shall thereafter be entitled to recover under this policy to the extent of the insurance afforded by this policy.

See, e.g., Indiana Lumbermen's Mutual Ins. Co. v. Champion, 343 S.E.2d 15, 18 (N.C. Ct. App. 1986) (language from policy issued in 1981); Clark v. Simon, 1992 WL 354098, at *1-2 (Del. Super. Ct. Nov. 9, 1992) (language from policy covering incident in 1984); see also Clougherty v. Royal Ins. Co., 232 A.2d 610, 613 (R.I. 1967) (quoting from earlier policy). Such a clause,

which recognizes the claimant's right to proceed directly against the insurer, would satisfy Rhode Island's statutory requirement.

Count VI may not be dismissed pursuant to Rule 12(b)(6) without giving Emhart the opportunity to obtain discovery to establish that the policies at issue contain this language or similar language. The statute and the typical policy language are independent bases of demonstrating a clear intention that persons who assert a potentially covered claim against the insured have a right to proceed directly against the insurer for a determination as to whether the policy covers the claim. Intent to benefit a claimant injured by the insured is inherent in a liability insurance policy. There may be a question as to when the right to assert a direct claim accrues. There is no question as to the right to proceed with such a claim.

### 3. Cases Have Found Claimants Are Third Party Beneficiaries

Massachusetts, like Rhode Island, follows the Restatement in determining whether a party is a third party beneficiary under a contract. Flattery, 489 N.E.2d at 1260-61. Massachusetts courts hold that a claimant is a third party beneficiary of a contract between a tortfeasor and an insurance agent to procure insurance which would have covered the tortfeasor's liability to the claimant. In Flattery, the agent allegedly erred by failing to obtain the higher policy limits that the insured had directed it to procure. The Court relied upon a Massachusetts direct action statute similar to that in effect in Rhode Island.[6] That statute "display[ed] the Legislature's view that injured highway travelers are intended beneficiaries of optional automobile liability insurance." Id., at 1262.

6 That statute was narrower in scope than the Rhode Island statute as it addressed only injured highway travelers, while the Rhode Island statute is of more general application.

Then the Court turned to the "more important question" of "whether the contracting parties intended the injured party to be a beneficiary of their contract." It also answered that question in the affirmative:

> Applying the Restatement (Second) of Contracts principles discussed above, we conclude that the plaintiff was clearly an intended beneficiary of the alleged contract between [the agent] and the [insureds]. Logic alone argues to the same result. Although the owner of a motor vehicle may be motivated to obtain optional liability insurance coverage solely by a selfish interest to protect his assets, rather than by concern for the needs of parties negligently injured by him, the fact is that a motor vehicle owner achieves that protection by entering into a contract the very object of which is the payment, in whole or in part, of judgments against him.

Id. Thus, the claimant was an intended beneficiary of the policy.

The principles set forth in Flattery are not limited to the rights of those injured by motor vehicles. The same court reached the same result in Rae v. Air-Speed, Inc., 435 N.E.2d 628 (Mass. 1982), which involved worker's compensation coverage. Applying Section 302 of the Restatement, it set forth the principle that:

> when one person, for a valuable consideration, engages with another, by simple contract, to do some act for the benefit of a third, the latter, who would enjoy the benefit of the act, may maintain an action for the breach of such engagement.

Id. at 632-33 (quoting Brewer v. Dyer, 61 Mass. 337, 340 (1851)). The rationale that a claimant is a third party beneficiary of a contract to procure insurance applies with equal force to a claimant under an insurance policy that has been procured.

More recently, in O'Connell v. Reliance Ins. Co., 737 N.E.2d 13 (Mass. App. Ct. 2000), the Court held that a person who fell at a construction site was a third party beneficiary under the certificate of insurance issued to a government contractor. Although the Court pointed out that the insured had a contractual obligation to procure the insurance, Flattery had previously

held that, for third party beneficiary purposes, it did not matter whether the insurance was optional or required.

Other courts applying the Restatement have held that a claimant has third party beneficiary status. Reagor holds that "an injured person has rights under the policy which vest at the time of the occurrence giving rise to his injuries." 415 N.E.2d at 514. In Reagor, which involved a diving accident, the Court emphasized that "liability insurance is no longer considered merely a private matter between an insured and an insurer" and therefore "adopted[ed] the position that injured members of the general public are beneficiaries of liability insurance policies." Id. Similarly, in United Services Automobile Ass'n v. Simpson, 485 S.E.2d 337, 338, 340-41 (N.C. 1997), the Court held that the claimants were third party beneficiaries of the insurance policies between the tortfeasor and its insurer. In Werrmann v. Aratusa, Ltd., 630 A.2d 302, 305-06 (N.J. Super. Ct. App. Div. 1993), the Court cited Flattery, looked to the Restatement, and held that a restaurant patron was a third party beneficiary of the restaurant's insurance policy. In the Court's view, a general liability policy "is intended to provide a source of recovery for an innocent injured party who, because of the insolvency of the insured, would otherwise have no means of redress." Id. at 306. See also Allied Products Corp. v. ITT Industries, Inc., 2004 WL 635212, at *7 (N.D.Ill. March 31, 2004) (relying upon a policy provision permitting a person to "sue us to recover on ... a final judgment against an insured," which "give[s] injured .... claimants an interest in the policies").[7]

---

7 Third party beneficiary status under insurance policies is not confined to policies covering liability. Even where a policy provides first party coverage to a named insured, third parties may have direct rights against the insurer. The court in Dyess v. American Hardware Ins. Group, Inc. 709 So. 2d 447, 450-451 (Ala. 1998), held that a person test-driving a vehicle owned by an automobile dealership was a third party beneficiary under the uninsured motorist provisions of the dealership's policy. Although the insured and the insurer "did not intend for Dyess in particular to benefit from the policy, they did intend to benefit people in Dyess' situation." Id. at 452. See also Jones v. Poole, 579 N.W.2d 739 (Wis. Ct. App. 1998). Although the policy in Hickman v. Safeco Ins. Co. of America, 695 N.W.2d 365 (Minn. 2005), was between a lender and its insurer, the borrower was a third party beneficiary where the policy provided for

Atlantic Crane Service, Inc. v. S.G. Marino Crane Service, Inc., 2000 WL 1828270 (D. Md. Nov. 29, 2000), is similar to the case at bar in that the claimant sought insurance coverage of its contribution or indemnification claim against the insured. The underlying liability had not yet been determined and Marino, the claimant, sought a declaration for such sums as "may be adjudged against it" for damages caused by a crane it leased to the insured. Id. at *3. While here, contribution or indemnification is controlled by statute or by common law, in Atlantic Crane contribution or indemnification was contractual. However, the contractual right was set forth in an agreement between Marino and its lessee to which the insurer was not a party. Id. The insurance contract did not name Marino as an additional insured nor did it refer to Marino, either by name or by classification. It only provided coverage to the insured for "an insured contract." Id. The Court held that Marino was a third party beneficiary of the contract and was entitled to seek declaratory relief, finding an "intent to make the promise to the third party in fact if not in form." Id. at *5.

Emhart has alleged in Count VI that it is a third party beneficiary of the insurance policies between PWIC and NECC and, as the cases discussed here show, it is entitled to the opportunity to proceed with that count.

**4. The Cases Cited By PWIC Are Inapposite**

PWIC errs in suggesting that under Rhode Island law, a claimant cannot be a third party beneficiary of an insurance contract. None of the Rhode Island cases it cites suggest such a rule. It relies primarily on cases that do not even involve insurance policies. In Sousa v. Town of Coventry, 774 A.2d 812 (R.I. 2001), and Meyer v. City of Newport, 844 A.2d 148 (R.I. 2004), the Court simply held that a member of the general public does not have standing to challenge a

certain payments to the borrower. Relying on Restatement principles, the court found the requisite "intent." Id. at 369-71.

government contract. The Meyer plaintiffs, who sought to void Newport's agreement to limit access to a certain wharf, "failed to demonstrate a personalized injury distinct from that of the community as a whole." Id. at 151. Where the Sousa plaintiffs missed the deadline for challenging a building permit, the Court held that "there is no support for the proposition that, in the circumstances that existed here, an individual who is not a party to a contract" may seek to void it or have it declared unenforceable. 774 A.2d at 815 n.4 (emphasis supplied). Standing of a member of the public to void a governmental contract is far different from standing of a claimant to seek a determination concerning the scope of coverage of the insurance policy that will provide funds to satisfy its claim.

Forcier raises the question of when third parties may claim damages from an accountant. The Court held that the debenture holders were not third party beneficiaries because the record failed to show that the accountant and its client intended that the third parties would receive the accountant's work. 173 B.R. at 986-87. Here, in contrast, a primary purpose of a liability insurance policy is to pay a claimant damages for which the insured is liable. Unlike the accountant whose work product was delivered to its client, an insurer is not called upon to perform at all until someone makes a claim against an insured. A claimant seeking coverage under an insurance policy is neither remote to the purposes of the policy nor a surprise to the insurer. The standing issue in each of the Rhode Island decisions cited by PWIC is readily distinguishable.

PWIC also cites Employers Mut. Cas. Co. v. Pires, 723 A.2d 295 (R.I. 1999), a declaratory judgment action by an insurer against its insured, for the proposition that "third-party standing to enforce a contract extends equally to circumstances involving insurance agreements." See PWIC Mem. at 9. PWIC's reliance upon this case is misplaced. Although the insurer in

Pires also named the claimant (Id. at 297), no issue regarding the claimant's standing arose. The insured filed counterclaims and opposed the insurer's summary judgment motion while the claimant apparently remained passive, and the claimant's standing was unchallenged. Pires, at least implicitly, stands for the proposition that the claimant has standing in an insurance coverage case.

The out-of-state cases cited by PWIC are easily distinguishable as well. In Klamath Water Users Protective Ass'n v. Patterson, 204 F.3d 1206 (9th Cir. 2000), the Court relied upon a Restatement provision pertaining specifically to government contracts and pointed to contract language indicating that irrigators did not have enforceable rights to water impounded by a multipurpose dam over which the federal government had ultimate control. Id. at 1211-12. Denman v. Peoples Heritage Bank, Inc., 704 A.2d 411 (Me. 1998), which denied a pedestrian standing to claim under a snow removal contract, and Anderson v. Regents of the University of California, 554 N.W.2d 509 (Wis. 1996), which involved tourists claiming the right to Rose Bowl tickets under a ticket-distribution agreement intended to prevent scalping, are simply examples of plaintiffs too remote to be entitled to standing. St. Paul Fire Marine v. Med. Protective Co., 675 S.W.2d 665, 667 (Mo. Ct. App. 1984), which involved a dispute between two insurers who issued policies to the same party, does not discuss whether a claimant is an intended beneficiary of a liability insurance policy. It does not even address either the Restatement or intent. In Farmers Ins. Co. v. Miller, 926 S.W.2d 104, 107 (Mo. Ct. App. 1996), the claimants asserted that they were in privity with the insureds, not that they were third party beneficiaries under the insurance policies. None of these cases assist the Court in dealing with the narrow standing issue raised here.

**CONCLUSION**

For the foregoing reasons, the PWIC motion to dismiss the complaint should be denied.

Respectfully submitted,

Rachelle R. Green

Robert J. O'Keefe #6750
Rachelle R. Green #5870
Duffy Sweeney & Scott, Ltd.
One Turks Head Place, Suite 1200
Providence, RI 02903
(401) 455-0700
(401) 455-0701 (facsimile)

Of Counsel:
Jack R. Pirozzolo
Richard L. Binder
Foley Hoag LLP
155 Seaport Boulevard
Boston, MA 02210
(617) 832-1000
(617) 832-7000 (facsimile)

**CERTIFICATE OF SERVICE**

I hereby certify that on the 2nd of January, 2007, I caused a true copy of *Plaintiff's Memorandum of Law in Support of its Objection to Defendant Providence Washington Insurance Company's Motion to Dismiss Plaintiff's Complaint* to be served by first class mail, postage prepaid, on the following:

Todd D. White, Esq.
Jaime LaPorte, Esq.
Adler, Pollock & Sheehan, P.C.
One Citizens Plaza, 8th Floor
Providence RI 02093-1345

R. Kelly Sheridan, Esq.
Jason C. Preciphs, Esq.
Roberts Carroll Feldstein & Peirce
10 Weybosset Street
Providence RI 02903

Eric Bradford Hermanson, Esq.
Choate, Hall & Stewart
Two International Place
Boston MA 02110

James W. Ryan, Esq.
Partridge Snow & Hahn, LLP
180 South Main Street
Providence RI 02903

John F.X. Peloso, Jr., Esq.
Robinson & Cole
695 East Main Street
Stamford CT 06450