# EXHIBIT E

STATE OF RHODE ISLAND
PROVIDENCE, SC.

SUPERIOR COURT

EMHART INDUSTRIES, INC.

Plaintiff,

v.

NEW ENGLAND CONTAINER COMPANY, INC., TRAVELERS CASUALTY & SURETY COMPANY and PROVIDENCE WASHINGTON INSURANCE COMPANY,

Defendants.

CIVIL ACTION NO. 06-6095

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF ITS OBJECTION TO DEFENDANT TRAVELERS CASUALTY & SURETY COMPANY'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

**INTRODUCTION**

Plaintiff, Emhart Industries, Inc. ("Emhart"), alleges that New England Container Company, Inc. ("NECC") is liable for costs that Emhart has incurred, and will continue to incur, in connection with the cleanup of environmental contamination at the Centredale Manor Superfund Site ("Site"). Emhart alleges that Travelers Casualty & Surety Co. ("Travelers") issued insurance policies to NECC ("Travelers Policies") that are applicable to the Emhart claim against NECC. It also alleges that NECC lacks assets, other than the Travelers Policies and insurance policies issued to NECC by Providence Washington Insurance Co. ("PWIC"), to satisfy a judgment in Emhart's favor. Accordingly, Emhart has asserted claims for declaratory relief against the insurers in addition to its claims against NECC.

Travelers has filed a motion to dismiss which repeats the same argument concerning the Rhode Island direct action statute, R.I. Gen. Laws, § 27-7-2, that the Court rejected in denying the motion to dismiss filed by PWIC (a copy of the transcript of the hearing and ruling on the

PWIC motion is attached as Exhibit A). As the portion of the Travelers motion addressing the direct action statute is similar to the argument advanced by PWIC, the portion of this memorandum addressing the direct action statute is similar to the discussion of that issue in the memorandum in opposition to the PWIC motion. The second basis of the Travelers motion, that a state court is prevented from exercising its jurisdiction due to the pendency of a parallel action in federal court, is contrary to settled law. The only cases that Travelers cites in support of its motion do not even involve parallel actions in federal and state court. See Elmasian v. Daley, 87 R.I. 431 (1958); Rosen v. Rosen, 404 A.2d 472 (R.I. 1979); and Synergy Methods, Inc. v. Heritage Sales Corp., 1985 WL 661651 (R.I. Super. June 18, 1985).

Travelers, like Providence Washington, misunderstands the direct action statute, and decisions of the Rhode Island Supreme Court concerning that statute. It also disregards this Court's recent decision on that issue. The direct action statute applies to prevent a tort claimant from seeking to recover from the insurer on its underlying claim against the insured. The statute does not apply where, as here, the claim against the insurer is for declaratory relief concerning whether the insurance policies would provide coverage if the plaintiff were successful in the underlying claim against the insured. The distinction between the two types of claims was recognized by the Rhode Island Supreme Court in Mendez v. Brites, 849 A.2d 329, 331-32 n.2 (R.I. 2004) and Robinson v. Mayo, 849 A.2d 351, 353 n.2 (R.I. 2004). However, Travelers misinterprets the holdings of both cases. Emhart does not seek a judgment that Travelers is liable for the conduct of NECC. It permissibly seeks a judgment that if it prevails on its claims against NECC, the Travelers insurance policies apply to those claims. Here, unlike most insurers in tort actions, Travelers does not acknowledge that its insurance policies provide coverage if NECC is liable to Emhart.

Travelers has moved to dismiss, pursuant to Rule 12(b)(6), the three counts asserted against it. The Travelers motion is predicated on two grounds, neither of which is meritorious. The Travelers argument that Emhart's claim is barred by the prior pending action doctrine is contrary to settled case law. See In re President and Fellows of Harvard College, 149 F.2d 69 (1st Cir. 1945)(holding that subsequently-filed parallel state court action did not bar the federal court from exercising jurisdiction); Eastland Savings Bank v. Raymond H. Reef, 1992 U.S. Dist. LEXIS 10178 C.A. No. 91-0623 B (D.R.I. June 16, 1992)(denying defendants' motion to dismiss based on the existence of a prior action pending in state court); De Primo v. Chiarelli, 2006 U.S. Dist. LEXIS 81388 Case No. 3:06cv500 (D. Conn. Nov. 7, 2006)(holding that the prior pending action doctrine does not apply to parallel cases in state and federal courts); Effros v. Nationwide Corp. Ohio, 12 Ohio St.3d 191, 465 N.E.2d 1309 (1984)(holding that filing parallel cases in federal and state jurisdictions does not trigger the prior pending action doctrine); Martin v. Bogs, 40 Ohio App.3d 121, 531 N.E.2d 1330 (1987)(holding that plaintiff was entitled to proceed in state court regardless of pendency of parallel action in federal court); Maleski v. DP Realty Trust, 653 A.2d 54 (Penn. Commw. Ct. 1995)(holding that dismissal of state court action was improper where federal court action had already been stayed, as this would deprive plaintiffs of a forum in which to pursue their action); Huff v. Valentine, 217 Ga.App. 310, 457 S.E.2d 249 (1995)(holding that the prior pendency of an action in federal court is not a bar to a parallel action in state court); Zaleha v. Rosholt, 129 Idaho 532, 927 P.2d 925 (1996)(holding that dismissal of state action was improper where the federal court had not yet exercised jurisdiction); and Alford v. Thornburg, 113 S.W.3d 575 (Tex. App. 2003)(holding that the pendency of a parallel action in federal court is not grounds for dismissing the subsequent state court

proceedings). Travelers did not pursue the argument that Emhart was not a third party beneficiary that Providence Washington unsuccessfully raised in its motion to dismiss.[1]

The Travelers argument that Emhart's claims are barred by the direct action statute, R.I. Gen. Laws, § 27-7-2, ignores decisions of the Rhode Island Supreme Court, either holding that a claim against an insurer for declaratory relief regarding the existence of coverage is not barred by the direct action statute (Morrow v. Norfolk & Dedham Mut. Fire Ins. Co., 661 A.2d 967 (R.I. 1995)) or recognizing the likelihood that such actions are not within the scope of the direct action statute (Mendez v. Brites, 849 A.2d 329, 331-32 n.2 (R.I. 2004); and Robinson v. Mayo, 849 A.2d 351, 353 n.2 (R.I. 2004)). Decisions in other jurisdictions also recognize that direct action statutes do not bar claims for declaratory relief concerning insurance coverage. See, e.g., Bankers Trust Co. v. Old Republic Ins. Co., 959 F.2d 677, 682 (7th Cir. 1992); Harford Mut. Ins. Co. v. Woodfin Equities Corp., 687 A.2d 652, 658 (Md. 1997); and Community Action of Greater Indianapolis, Inc. v. Indiana Farmers Mut. Ins. Co., 708 N.E. 2d 882, 885 (Ind. Ct. App. 1999). As both of the Travelers arguments fail, the motion to dismiss must be denied.

## PROCEDURAL HISTORY

In counts V, VII and IX of the Complaint, Emhart asserts claims against Travelers. Those counts seek declaratory and injunctive relief concerning the Travelers Policies, not recovery of money damages from Travelers. In Count V, Emhart alleges that Travelers "has an obligation . . .to satisfy NECC's obligations to Emhart with respect to the damages that Emhart will recover if it prevails against NECC. . ." (Complaint, ¶ 55). In Count VII, Emhart adds the allegation that in the absence of the indemnification benefits under the Travelers Policies, NECC "will be unable to satisfy a judgment for the money damages" that Emhart expects to obtain

1 The Emhart memorandum in opposition to the PWIC motion to dismiss demonstrates that the third party beneficiary argument is not meritorious.

against NECC (Id., ¶ 70). Based on the additional allegations, Emhart seeks a declaration that Travelers has an obligation to preserve the indemnification benefits of the Travelers Policies until there is a determination as to whether those policies provide coverage for the Emhart claim against NECC (Count VII) and an injunction to prevent Travelers and NECC from entering into any agreement that would reduce the indemnification benefits of those insurance policies (Count IX). In the absence of such relief, there is a risk that the proceeds of the Travelers Policies will become unavailable during the pendency of the Emhart action against NECC.

The allegations in this action parallel those in an action that Emhart commenced against NECC, Travelers and PWIC in the United States District Court for the District of Rhode Island, Emhart Industries, Inc. v. New England Container Co. et als (United States District Court for the District of Rhode Island, C.A. No. 06-218-S). Travelers filed a motion to dismiss in that action that raises the same issues regarding the direct action statute as it asserts in the motion at issue. In addition NECC filed a motion to dismiss, asserting that the federal court lacked jurisdiction over the claims against it, thus raising the possibility that the substantive issues might be decided in state court. The various motions to dismiss in the federal action were argued and have not been decided. After the federal court took the motions to dismiss under advisement, Emhart brought this action. Emhart did so as it seeks injunctive relief to ensure the continued availability of the benefits from the insurance policies. There was a risk that Emhart would not obtain relief on the merits in the federal action due to the unresolved issue about federal jurisdiction or that an injunction entered by a federal court not having jurisdiction would be a nullity and accordingly ineffective. As there was not complete diversity in the federal action, if the claims under federal law were dismissed, the federal court would not be required to exercise

jurisdiction over the pendent state law claims, and the federal judge has indicated that he is not likely do so (a copy of the transcript of proceedings in federal court is attached as Exhibit B)[2].

## ARGUMENT

### A. As A Party Seeking Dismissal, Travelers Has A Heavy Burden

Travelers seeks dismissal under Rule 12(b)(6). "The standard for granting a motion to dismiss is a difficult one for the movant to meet." Toste Farm Corp. v. Hadbury, Inc., 798 A.2d 901, 905 (R.I. 2005)(quoting Pellegrino v. Rhode Island Ethics Commission, 788 A.2d 1119, 1123 (R.I. 2002)). The Toste Farm Court then explained why the standard is difficult for the movant to meet: "When ruling on a Rule 12(b)(6) motion, the trial justice must look no further than the complaint, assume that all allegations in the complaint are true, and resolve any doubts in a [non-movant's] favor. . . .The motion may then only be granted if it appears beyond a reasonable doubt that a [non-movant] would not be entitled to relief under any conceivable set of facts." Id. (citations omitted). Application of that standard to the allegations of the complaint mandates denial of the Travelers motion.

### B. The Prior Pending Action Doctrine Does Not Bar Parallel State And Federal Actions

#### 1. Cases Have Allowed Simultaneous Actions In State And Federal Court

Travelers seeks to have this Court disregard its duty to hear a case brought before it merely because of a parallel action in federal court. Yet, it cites cases involving two overlapping actions in state court, not actions involving a state court action that parallels an action in federal court. See Elmasian v. Daley, 87 R.I. 431 (1958); Rosen v. Rosen, 404 A.2d 472 (R.I. 1979).

[2] "The practice I have followed consistently has been if, as a result of a motion to dismiss, the federal causes of action are dismissed early in the case, then I will not proceed. I won't hang onto the case just because these other claims were filed, supplemental claims." Ex. B at 50.

Rhode Island has yet to squarely address this issue. However, state courts that have considered the issue raised by Travelers have recognized that the pendency of a parallel action in federal court is not a basis for dismissal, particularly where, as here, the jurisdiction of the federal court has been questioned.[3]

In Efros v. Nationwide Corp., 12 Ohio St.3d 1309, 465 N.E.2d 1309, 1311 (1984), the Supreme Court of Ohio held that dismissal of a state action is not mandated due to a prior pending action in federal court. In explaining its decision, the court noted, "federal and state courts are separate and distinct jurisdictional sovereignties and are thus analogous to courts of different states." Id. (quoting Kline v. Burke Constr. Co., 260 U.S. 226 (1922)). Following Efros, in Martin v. Boggs, 40 Ohio App.3d 121, 531 N.E.2d 1330 (1987), the Court of Appeals of Ohio held that the plaintiff could maintain his state action for slander despite having previously filed an action in federal court based on the same factual allegations. Id. Additionally, the court rejected defendant's argument that jurisdiction notwithstanding, the court should dismiss the state lawsuit because "comity and judicial economy require that the entire action be resolved in federal court where jurisdiction first attached." Id.

Pennsylvania has also held that the prior pending action doctrine does not apply where one suit is in federal court and the other is filed in state court. In Maleski v. DP Realty Trust, 653 A.2d 54, 64 (Pa. Commw. Ct. 1995), the federal court had stayed proceedings, deferring to

---

3 While Emhart has opposed the challenge to the jurisdiction of the federal court, the issue remains open, and the federal court has not yet decided the motion to dismiss. The motion in federal court raises a very substantial issue as to whether the federal court has jurisdiction to decide the controversy. The issue involves interpretation of the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. § 9601 et seq. ("CERCLA") in view of the Supreme Court's decision in Cooper Industries, Inc. v. Aviall Services, Inc., 543 U.S. 157 (2004). Three circuit courts of appeals have decided the issue in a manner which would allow Emhart's federal claims against NECC to proceed. Water Reclamation District of Greater Chicago v. North American Galvanizing & Coatings, Inc., 2007 WL 102979 (7th Cir. Jan. 17, 2007); Atlantic Research Corp. v. United States, 459 F.3d 827 (8th Cir. 2006), cert. granted, 2007 WL 124673, 75 USLW 3236 (Jan. 19, 2007), Consolidated Edison Co. v. UGI Utilities, Inc., 423 F.3d 90 (2d Cir. 2005), pet. cert. filed, 74 USLW 3600. One court of appeals reached a contrary conclusion. E.I. DuPont De Nemours & Co. v. United States, 460 F.3d 515 (3d Cir. 2006), pet. cert. filed, 75 USLW 3296. Certiorari was granted in the Atlantic Research case and, accordingly, the issue is presently before the United States Supreme Court.

Pennsylvania state court to resolve complex issues of state law. Recognizing this, the state court declined to dismiss the case, noting that "to grant the defendants' preliminary objection on this ground would contravene the purpose of the District Court's stay, and in effect, would deprive the plaintiffs of a forum in which to pursue their action." Id. Similarly in Zaleha v. Rosholt, 129 Idaho 532, 534 (1996), the court declined to dismiss the state action where defendants were arguing before the federal court that it too should decline jurisdiction, and the federal court had not yet decided the jurisdictional issue. In the matter at hand, the federal court has not yet ruled on the pending motions to dismiss. However, if the federal court in the instant action were to dismiss the action before it and this Court were to grant the Travelers motion, Emhart would be deprived of a forum that will hear the merits of its claims.

The Georgia state courts have expressly held that "the general rule is that the pendency of a prior suit in a District Court of the United States is not a bar to a suit in a state court between the same parties for the same cause of action." Huff v. Valentine, 217 Ga.App. 310, 311, 457 S.E.2d 249, 250 (1995) (quoting Inter-Southern Life Ins. Co. v. McQuarie, 148 Ga. 233, 235 (1918)). Likewise, Texas courts have recognized that "[i]t is well settled that the mere pendency of an action in federal court involving the same parties and issues is not a reason for abating the subsequent state court proceeding." Alford v. Thornburg, 133 S.W.3d 575, 580 (Tex.App. 2003) (citing Williamson v. Tucker, 615 S.W.2d 881, 885-886 (Tex.Civ.App. 1981)).

When the issue of parallel actions has been considered by the federal courts, it has long been recognized "that the pendency of an action in state court is no bar to proceedings concerning the same matter in Federal court having jurisdiction . . ." Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 817 (1976) (quoting McClellan v. Carland, 217 U.S. 268, 282 (1910)). The prior pending action bar to parallel lawsuits upon which

Travelers erroneously relies is only applicable when the two cases at issue have been filed in the same state court. See Elmasian v. Daley, 87 R.I. 431 (1958) and Rosen v. Rosen, 122 R.I. 6 (1979). This determinative distinction between the two types of concurrent actions has been squarely addressed and acknowledged by both the District Court for the District of Rhode Island and the First Circuit.

In Eastland Savings Bank v. Reef, 1992 U.S. Dist. LEXIS 10178 CA. No. 91-0623 B (D. R.I. June 16, 1992), the court rejected the defendants' argument that the suit against them should be dismissed because a substantially identical case had been filed in the state court. Quoting the Colorado River court's language, "as between state and federal courts, the rule is that 'the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction . . .'" Eastland Savings Bank v. Reef, 1992 U.S. Dist. LEXIS 10178 CA. No. 91-0623 B at *4 (D. R.I. June 16, 1992) (quoting Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 817 (1976) (quoting McClellan v. Carland, 217 U.S. 268, 282 (1910)). Specifically, the court squarely rejected defendants' argument that concurrent litigation would be inefficient and wasteful of judicial resources as grounds sufficient to warrant dismissal of the federal suit. "[S]uch inefficiency as results merely from a duplication of effort will not, by itself, justify the surrender of federal jurisdiction." Eastland Savings Bank, 1992 U.S. Dist. LEXIS 10178 at *6 (quoting Rojas-Hernandez v. Puerto Rico Elec. Power Auth., 925 F.2d 492, 496 (1st Cir. 1991)).

In re President and Fellows of Harvard College, 149 F.2d 69 (1st Cir. 1945), is particularly analogous to the present action. There, as here, plaintiffs filed lawsuits in both federal and state court. Plaintiffs first filed their lawsuit in federal court and then months later filed the state court action. The court recognized that the situation was substantively the same as

that contemplated in McClellan and accordingly held that both actions should continue. "[W]e think that the present case is in substance controlled by McClellan v. Carland. . ." Id. at 73. This is significant in that the court determined that the rule permitting parallel actions to proceed in federal and state court on substantively identical issues applies regardless of the order in which the actions were filed.

Other federal courts have similarly applied the McClellan/Colorado River rule in holding that the prior pending action doctrine is inapplicable where the lawsuits are filed in federal and state jurisdictions, rather than both actions being filed in state court. For example, in DePrimo v. Chiarelli, 2006 U.S. Dist. LEXIS 81388 Case No. 3:06cv500 (D. Conn. Nov. 7, 2006), the court denied defendants' motion to dismiss under the prior pending action doctrine where plaintiffs had previously filed an essentially identical lawsuit in Connecticut state court. The court explained, "instead of [applying] the prior pending action doctrine which would yield, nearly automatically, dismissal of this action in favor of an identical or substantially similar earlier-filed action, given that the prior pending action in this instance is a state action, the more appropriate analysis is . . . pursuant to Colorado River." Id. at *9.

Neither federal nor state court decisions hold that an action in state court may be dismissed due to the pendency of a parallel action in federal court, particularly where, as here, there is an issue as to whether the federal court has subject matter jurisdiction.

**2. Travelers Relies On Inapposite Authority**

The cases cited by Travelers fail to provide support for the proposition that the prior pending action doctrine should apply in this instance. In Elmasian v. Daley, 87 R.I. 431 (1958), the two suits at issue were both filed in this Court. Id. at 432. Likewise, in Rosen v. Rosen, 122 R.I. 6 (1979), the two matters submitted for the Court's consideration both originated in Rhode

Island Family Court. Id. at 7. Additionally, Travelers argues that at the very least the Court should stay the present proceedings "until the prior pending action has been determined or dismissed" ("Travelers Memo" at 6). However, the case it cites in support of this proposition, Synergy Methods, Inc. v. Heritage Sales Corp., 1985 WL 661651 No. CA. 83-2807 (R.I. Super. Ct. June 18, 1985), is an unpublished opinion in which the parallel actions had been filed in Maryland and Rhode Island state courts. As there was no federal case component being considered, this case is wholly irrelevant. Thus, as both the cases cited by Emhart and those cited by Travelers make abundantly clear, the prior pending action doctrine is not applicable in the present matter.

### C. The Direct Action Statute Does Not Bar A Declaratory Judgment

Section 27-7-2 states that "[a]n injured party . . . in his or her suit against the insured, shall not join the insurer as a defendant", but that the "insured party . . .after having obtained judgment against the insured alone, may proceed on that judgment in a separate action against the insured . . .." Travelers assumes, without analysis, that this provision applies to declaratory judgments, as well as to direct actions, but decisions which have considered this issue have ruled that direct action statutes do not apply to declaratory judgment actions. Most recently, on January 16, 2007 this Court denied a motion to dismiss brought by PWIC in this same action against Emhart premised on precisely the same issue of the direct action statute. The Court stated that the direct action statute was not an absolute bar to non-insureds seeking declaratory judgment. See Transcript attached as Exhibit A.

**1. Rhode Island Distinguishes Between Direct Actions And Declaratory Judgments**

**a. Morrow And Dire Adopt The Distinction**

Rhode Island's Supreme Court recognizes the difference between a direct action and a declaratory judgment in the context of the direct action statute. In Morrow v. Norfolk & Dedham Mut. Fire Ins. Co., 661 A.2d 967 (R.I. 1995), the Court rejected the insurer's argument that the direct action statute precluded the claimant from bringing a declaratory judgment action seeking a coverage determination against the insurer. There the insured's son, who lived in the basement of his father's house, fell on a stairway and, when his father's insurer denied coverage for his injuries, he brought a declaratory judgment action against the insurer. The insurer argued that the son could not sue, relying upon § 27-7-2. In rejecting that argument, the Court distinguished between a direct action and a declaratory judgment action and held that the claimant could proceed with his declaratory judgment action against the insurer, saying:

> Although the statute cited by Norfolk prohibits naming an insurance company as a direct defendant in a tort liability action, there is nothing in the statute that precludes a declaration of rights between parties to an insurance contract. Consequently, we are of the opinion that the trial justice was correct when she determined that Robert possessed standing to bring this declaratory judgment action.

Morrow, 661 A.2d at 968. Thus, the Court affirmed the trial court's ruling on standing and held that the son was permitted to seek a declaration concerning coverage.

Travelers erroneously construes Morrow as nothing more than a decision that permitted an insured to seek a declaratory judgment against his insurer. Travelers Mem. at 9. It apparently predicates its reading on the words, quoted above, "there is nothing in the statute that precludes a declaration of rights between parties to an insurance contract." When the quoted language is read in the context of the holding in Morrow, the Travelers interpretation is incorrect. Travelers

assumes that both the appellate court, and the trial court, in the decision affirmed on appeal, handed down two contradictory rulings on the same issue in the same case. Two issues were decided in Morrow. First, as noted above, the Court held that the son, who was the injured plaintiff, had standing to bring a declaratory judgment action against his father's insurer. Second, it held that the son's claim was covered by the insurance policy. The coverage issue in Morrow turned on whether the son was a "resident" of his father's household and, accordingly, an "insured" under the policy. The policy did not provide coverage for an injury to an "insured." The son argued that he was not an "insured," an argument that the Court accepted. Thus, the Court found that a person who was not an insured had standing to bring a declaratory judgment action against the insurer. Under Traveler's reading of Morrow, the Supreme Court held that the plaintiff was an insured for purposes of standing, but was not an insured for purposes of obtaining coverage.

The two rulings in Morrow are reconciled only if the Morrow court's ruling on standing is understood to rest upon the distinction between a declaratory judgment and a direct action, rather than upon the distinction between a claimant and an insured. The son denied he was an "insured" and his right to coverage was dependent upon his status as a "non-insured." Accordingly, the court's decision that he had a right to bring the declaratory judgment action turned upon his status as a claimant, rather than as an insured. Whatever ambiguity might be found if the language in the Court's opinion upon which Travelers relies is read in isolation, disappears when the entire decision is analyzed. Morrow indicates that a claimant who is barred from bringing a direct action against an insurer because he has not obtained a judgment against an insured may still seek a declaratory judgment against the insurer.

b. Mendez And Robinson Recognize The Distinction

The distinction between a direct action and a declaratory judgment was also recognized in Mendez v. Brites, 849 A.2d 329, 331-332 n.2 (R.I. 2004), a declaratory judgment action by a claimant to reform a liability policy. There the Court pointed to the rule, upon which Travelers relies, that "in Rhode Island and in most other jurisdictions, an injured party lacks standing to maintain a direct action for damages against a tortfeasor's insurer until and unless the injured party has secured a judgment against the tortfeasor." Id. at 331 n.2. However, Mendez declined to dismiss the complaint on the basis that the claimant filed a declaratory judgment rather than a direct action. Id. Instead it assumed arguendo that the claimant had standing. In the alternative, it relied upon the insured's standing since the insured had filed a cross-complaint against his insurer. Id. at 332 n.2. While leaving the standing issue open, Mendez discussed it in a lengthy footnote. In dicta and without mentioning Morrow, the Court looked to out-of-state sources and noted a "conflict of authority" as to whether a third-party could bring a declaratory judgment action at a time when a direct action for damages would have been premature. Id. In the course of its discussion, Mendez cited Bankers Trust Co. v. Old Republic Ins. Co., 959 F.2d 677, 682 (7th Cir. 1992), and quoted extensively from the opinion. It referenced the Seventh Circuit's holding that "the victim of an insured's tort, even though he is not a third party beneficiary of his injurer's insurance policy, has a legally protectable interest in that policy before he has reduced his tort claim to judgment." Mendez, 849 A.2d at 332 n.2. Mendez then looked to the rationale behind the Bankers Trust holding, again quoting from the decision:

> "Suppose that . . . before [the injured party] could feasibly bring a tort suit, let alone obtain a judgment, the insurer declared the liability insurance policy void; and . . . the insured had no other assets. Then a tort suit would be worthless unless the insured's victim could obtain a declaration that the policy was valid after all."

Id. (ellipses in Mendez). These quotations emphasized the necessity for a declaratory judgment where, as here, there is a risk that insurance proceeds required to satisfy a potential future judgment would be lost in the absence of declaratory relief. Thus, Mendez recognized the strong policy reasons behind permitting a declaratory judgment action where a direct action would not lie.

While the Mendez discussion of Bankers Trust was predicated upon the Bankers Trust distinction between a direct action and a declaratory judgment, Mendez did not quote directly from the portion of the Bankers Trust opinion dealing with the direct action bar. In fact, Bankers Trust flatly held that the declaratory judgment "suit is not a direct action against an insurer" prohibited by state law. Bankers Trust, 959 F.2d at 682. The Seventh Circuit explained its holding in the following words:

> This conclusion is not inconsistent with the refusal of most states to permit the victim of an insured injurer to sue the injurer's liability insurer directly. The reason for that refusal, a reason wholly unengaged by a case such as this, is to protect the insurance company from the hostility of juries. [Citations omitted.] Anyway Bankers Trust is not suing [the insurer] to establish that LOA committed a tort against Bankers Trust, but only to establish that [the insurer's] insurance policy remains in force up to the policy limits.

Id. This rationale is equally applicable here. Emhart is not suing Travelers to establish NECC's liability to Emhart, but to establish that, if there is liability, the Travelers Policies provide coverage. As such, Emhart is not "join[in] the insurer as a defendant" in its "suit against the insured," within the meaning of Section 27-7-2. It is proceeding with a separate claim against PWIC that involves different issues from the Emhart claim against NECC.

The Rhode Island Supreme Court revisited the issues discussed in the Mendez footnote when it handed down Robinson v. Mayo, 849 A.2d 351 (R.I. 2004), less than a week later. As in

Mendez, the Robinson discussion was in dicta, was in a footnote, and did not mention Morrow. Robinson, 849 A.2d at 353, n.2. It noted that "no party in this case has briefed [the issue of standing] or invoked § 27-7-2 as a bar to plaintiff's joinder of [the insurer] as a party to this action." Id. It then "assumed arguendo, without deciding," that the claimant had standing. At the same time, it cited to the Mendez dicta, which discussed the "conflict of authority with respect to [an] injured party's right to bring a declaratory-judgment action against an insurer." Id. As the Robinson court stated directly, and the Mendez court stated somewhat more cryptically, the Court did not have the benefit of briefing by the parties in preparing the dicta set forth in its two lengthy footnotes. Mendez, 849 A.2d at 332, n.2; Robinson, 849 A.2d at 353 n.2. The Court relied mainly upon Bankers Trust to represent one side of the "conflict of authority," even though, as discussed in section 2, infra, many other courts have reached the same conclusion as the Bankers Trust court regarding the right to bring a declaratory judgment action in a jurisdiction with a direct action bar.

c. **Travelers Relies On Inapposite Authority**

Notwithstanding that Morrow, Mendez and Robinson recognize the critical distinction between direct actions and declaratory actions, Travelers fails to address the significance of that distinction and misconstrues Mendez and Robinson. Moreover, Travelers relies on Canavan v. Lovett, Schifrin and Harnett, 745 A.2d 173 (R.I. 2000). Travelers Mem. at 8. That reliance is misplaced. Unlike the case at bar, the plaintiff in Canavan did not rely upon, and the courts did not consider, the distinction between a direct action against an insurer for damages and a declaratory judgment action against an insurer seeking a coverage determination. Further, in Canavan, unlike the instant action, the insurer agreed to defend and to pay $50,000 in indemnification benefits. 745 A.2d at 174. The insured asserted that the indemnification

obligation was in excess of $50,000. As is discussed, infra, while a claimant has a right to bring a declaratory judgment action where, as here, the insurer denies an obligation to indemnify, that right does not extend to a dispute as to the amount of the indemnification obligation. See e.g., Batteast v. Argonaut Ins. co., 454 N.E.2d 706, 708 (Ill. App. Ct. 1983).

Any suggestion that Canavan precludes a claimant from bringing a declaratory judgment action concerning the existence of coverage is conclusively rebutted by Mendez and Robinson. Contrary to Travelers' assertion that these decisions "implicitly reject[ed] Emhart's view of the Morrow holding," (Travelers Mem. at 10), these opinions, decided two years after Canavan, unequivocally refute Travelers' position that Canavan stands for the proposition that declaratory judgment actions fall within the scope of the direct action statute. Rather, these decisions expressly found that Canavan was not a sufficient basis for ruling that the direct action statute bars declaratory judgments concerning the existence of coverage. After citing Canavan, Robinson stated "the question of whether an injured party has standing to sue the insurer in a declaratory-judgment action seeking a ruling on the scope of the policy's coverage, as in this case, is still unsettled." 849 A.2d at 353 n.2. Similarly, Mendez, after citing Canavan, noted that "[a]t least one other court, however, has held that an injured party can maintain a declaratory-judgment action against the alleged tort-feasor's insurer" and concluded, "[g]even this conflict of authority" and the failure of the parties to brief the issue, to "assume, without deciding, that [the claimant] possessed the requisite standing to bring this declaratory-judgment action" against the insurer. 849 A.2d at 332, n.2.

Similarly, Travelers errs in relying on Biennale v. Martin, 1997 WL 1051072 (R.I. Super. Aug. 14, 1997). While the Biennale Court stated that it relied upon a "close reading of Morrow" (1997 WL 1051072 at *2), that reading was confined to a single reference to "parties to an

insurance contract" being entitled to seek a declaratory judgment, without regard to the Morrow decisions as a whole. As discussed, supra, such an interpretation of Morrow cannot be reconciled with the holding of Morrow that the claimant had a right to a declaratory judgment against the insurer. The Travelers reliance on Baxendale is further flawed as the Court did not have the advantage of Robinson and Mendez, which were decided five years later by the Rhode Island Supreme Court. Those decisions recognized that whether a claimant has a right of declaratory relief, rather than a direct claim for damages, against the tortfeasor's insurer could not be decided solely on the basis that the claim was brought against the insurer.

Travelers also cites the "legitimate public policy concerns . . including courts' concern 'to protect the insurance company against the well-known tendency of jurors to fail to consider the merits if a defendant . . . is insured.' Miller v. Metropolitan Cas. Ins. Co., 146 A. 412, 414 (R.I. 1929)." Travelers Mem. at 14. This Court, in considering the comparable argument raised by Providence Washington stated: I don't think the purpose behind that statute is also to mean that . . . if you bring a DJ action against a carrier to determine whether or not the policy extends benefits to a particular individual or extends benefits under the facts and circumstances of the particular case, I don't think the statute was enacted to mean that the DJ action could not have been brought under the same civil action number as the case against the insured" (Ex. A at 5). Furthermore, Travelers argues that prohibiting declaratory judgments of the sort sought by Emhart prevents the courts from being "besieged by coverage suits, brought by personal injury claimants who were not parties to, and lacked standing to seek a declaration of rights under, their adversaries' insurance contracts." Travelers Mem. at 14 (citing St. Paul Fire & Marine v. Med. Protective Co., 675 S.W.2d 665, 667 (Mo. App. 1984) *cited in* Baxendale at *2-3).

These concerns are entirely unengaged in the case at bar. In Bankers Trust, the court explained that the rationale for direct action statutes, preventing insurers from jury hostility, was inapplicable when the claimant sought a declaration that the policy provided coverage, rather than a money judgment against the insurer. The Travelers assertion that "[i]n either case, the jury learns that the defendant is insured" (Travelers Mem. at 14) is meritless. Since the insurance coverage claim and the tort claim involve different issues of fact and law, any possibility of prejudice could be addressed by separate trials, seriatim. See e.g., Eschle v. Eastern Freight Ways, Inc., 319 A.2d 786, 790 (N.J. Super. 1975), severing underlying liability issue and coverage issue for purposes of trial to prevent prejudice, and Christian v. Sizemore, 383 S.E.2d 810, 815 (W.Va. 1989) (the plaintiff agreed to separate trials). As to conserving judicial resources, permitting declaratory relief concerning the existence of a coverage obligation is less likely to result in extensive litigation than permitting declaratory relief concerning the amount of coverage since insurers are not likely to contest the existence of coverage in a personal injury, malpractice or other negligence action.

**2. Other Jurisdictions Also Distinguish Between Direct Actions And Declaratory Judgments**

**a. Declaratory Judgment Permitted Where Direct Action Barred**

Morrow is consistent with the law in other jurisdictions, where courts distinguish between direct actions and declaratory judgments. As these out-of-state decisions show, the two types of cases are grounded in different theories and raise different issues of fact and law. Moreover, a declaratory judgment action seeking a coverage determination does not prejudice the insurer in the underlying liability claim. As shown below, courts routinely acknowledge that a direct action would be barred by state law, but go on to hold that the direct action bar does not impact an action seeking a declaratory judgment.

"[T]he general prohibition on direct action lawsuits is well-settled in Indiana. . ." City of South Bend v. Century Indemnity Co., 821 N.E.2d 5, 10 (Ind. Ct. App. 2005). However, in Community Action of Greater Indianapolis, Inc. v. Indiana Farmers Mut. Ins. Co., 708 N.E.2d 882, 885 (Ind. Ct. App. 1999), Wilson v. Continental Cas. Co., 778 N.E.2d 849 (Ind. Ct. App. 2002), and South Bend, the Indiana appellate court permitted a declaratory judgment action by a third-party claimant to go forward. As the Court explained in Community Action:

> [O]ur result is not, as Farmers [the insurer] argues, contrary to this state's policy of prohibiting direct actions against an insurer where the injured party had no relationship with the insurer. . . . Where the plaintiff is not suing the insurance company to establish whether the insurer can deny coverage or whether the insurance policy remained in effect, such a suit is not a direct action suit against an insurer.

Community Action, 708 N.E.2d at 886 (citations omitted). In Wilson, the Indiana court set forth the strong public policy behind its ruling:

> We believe that allowing such declaratory actions will prevent the waste of parties' and judicial resources. All litigants will now be on the same footing in cases where insurance companies either deny coverage or defend under a reservation of rights. Equal ability to know whether a provable loss is subject to insurance indemnification will be a positive step toward settlement and will make litigation outcomes dispositive, collectible and credible. We believe Indiana's civil litigants deserve no less.

Wilson, 778 N.E.2d at 852. South Bend made clear that these public policy considerations are especially strong where, as here, the insured is no longer a functioning entity. See South Bend, 821 N.E.2d at 11.

As discussed, supra, the Seventh Circuit made the same point in Bankers Trust, one of the cases cited by Community Action. After stating that its "conclusion is not inconsistent with the refusal of most states to permit the victim of an insured injurer to sue the injurer's liability insurer directly", the court went on to distinguish between a tort suit against the insured, where

the danger of prejudice could arise, and an action "to establish that [an] . . .insurance policy remains in force up to the policy limits." Bankers Trust, 959 F.2d at 682.

Indiana and Illinois are not alone in holding that a claimant's declaratory judgment action is not a direct action, barred by statute at common law. Although a Maryland "tort claimant may not maintain a direct action against the defendant tortfeasor's liability insurer until there has been a determination of the insured's liability in the tort action" (Howard v. Montgomery Mut. Ins. Co., 805 A.2d 1167, 1175 (Md. App. 2002)), Maryland permits a claimant to bring a declaratory judgment action to determine coverage prior to entry of the underlying judgment so long as the issues would be appropriate to resolve if the action had been brought by the insurer or by the insured. Harford Mut. Ins. Co. v. Woodfin Equities Corp., 687 A.2d 652, 658-59 (Md. 1997). Thus, the Maryland courts "distinguished declaratory judgment suits from 'direct actions.'" Howard, 805 A.2d at 1176, citing Woodfin.

Where the insurers argued that Ohio's "statutory framework" regarding when "an injured party may proceed against a tortfeasor's insurer . . . bars an action prior to obtaining a judgment against the insured," the court found that "statute inapposite" because it "bears no relation to a declaratory judgment" to determine coverage issues. Turner v. Romans, 1995 WL 767927, *2 (Ohio Ct. App. Dec. 26, 1995). As the Ohio courts explain, the "general rule" that "the injured person must obtain a judgment against the insured" had "been fine tuned, differentiating between an action for money damages and an action for declaratory relief." Anderson v. Cincinnati Ins. Co., 1987 WL 11033 at *5(Ohio Ct. App. May 15, 1987); see also Cochenour v. Ferrin, 1992 WL 426461 (Ohio App. 5 Dist. Dec. 14, 1992).

The highest courts of West Virginia and Arkansas follow suit. Although, in West Virginia, the injured plaintiff could not institute "a direct action" seeking damages from an

insurer until a judgment had been obtained against the insured, the West Virginia court held that the rule was not applicable when the claimant was seeking "a declaration that [the insurer] is required to provide insurance coverage to the defendants in the personal injury suit." Christian v. Sizemore, 383 S.E.2d 810, 812 (W.Va. 1989). In Nat'l Security Fire & Cas. Co. v. Poskey, 828 S.W.2d 836, 838 (Ark. 1992), the Arkansas court denied a petition for prohibition filed by an insurer in a declaratory judgment action by a claimant seeking a ruling on coverage. While agreeing that "our direct action statute does not allow injured parties to sue their non-immune tortfeasors' insurance carriers directly until the injured party has obtained a judgment against the tortfeasor and the judgment remains uncollected after thirty days," the court held that "this is not a direct action . . . ." Id.

These courts are joined by the federal district court in Iowa, which explained that the state statute prohibited a direct action "until after judgment is obtained and an execution is returned unsatisfied," but construed the statute to apply to "an action for reimbursement from the policy," not "an action for determination of coverage under the policy prior to the injured party obtaining a judgment against the insured." Utica Mut. Ins. Co. v. Winmill Int'l, Inc., 50 F.Supp.2d 871, 874 (N.D. Iowa 1999)(emphasis in original). The federal district court in the District of Columbia did the same in Saylab v. Harford Mut. Ins. Co., 271 F.Supp.2d 112, 119 (D.D.C. 2003), where the claimants stated that "they are seeking a declaratory judgment on the scope of the insurance coverage only and not, at this time, arguing that Harford owes them any payment." Similarly, in Virginia a state trial court permitted a pre-judgment declaratory judgment action by a claimant to go forward after noting that the state supreme court had permitted such an action without discussion. Martirosov v. Shenandoah Flight Service, Inc., 2003 WL 23312786 at *5-6 (Va. Cir. Ct. March 2, 2003). More recently, the Fourth Circuit,

relying on similar cases, opined that the Virginia direct action bar did not reach actions for declaratory judgment. Miller v. August Mut. Ins. Co., 157 Fed. Appx. 632, 637 n.5 (4th Cir. 2005).

Had the Rhode Island Supreme Court sought full briefing in either Mendez or Robinson, it would have found ample support for a rule that a direct action statute poses no barrier to an action by a claimant seeking a declaratory judgment against a liability insurer.

**b. Federal Courts Have Differentiated Between Declaratory Judgment And Direct Actions In Other Contexts**

Cases applying state law, in which the courts found that declaratory judgment actions do not fall within a direct action provision, also are consistent with decisions construing 28 U.S.C. § 1332(c)(1), which limits federal diversity jurisdiction "in any direct action against the insurer of a policy or contract of liability insurance . . to which action the insured is not joined as a party-defendant." An analogy between these jurisdictional cases and construction of the scope of a state's direct action statute is particularly apt since the federal law was prompted by, and focuses on, suits brought under such state provisions.

The first appellate decision to construe section 1332(c)(1) was White v. U.S. Fid. and Guar. Co., 356 F.2d 746 (1st Cir. 1966). That case was a declaratory judgment action and the Court held that the statute did not apply, emphasizing that Congress used the word "direct" rather than the word "any" to modify the word "action." White is commonly cited for the proposition that a declaratory judgment is not a "direct action" for purposes of section 1332(c)(1). See, e.g., Dairyland Ins. Co. v. Makover, 654 F.2d 1120, 1124 (5th Cir. 1981); Nat'l Fire & Marine Ins. Co. v. Guy Management Corp., 1988 WL 36350 at *1 (E.D. Pa. 1988).

Decisions of the courts of appeals construing section 1332(c)(1) also discuss the types of cases encompassed by the term "direct action." Under the "universal rule" a "direct action" is

where "the plaintiff is suing the tortfeasor's insurer, rather than suing the tortfeasor directly, on the issue of liability." Monahan v. American States Ins. Co., 75 Fed. Appx. 340, 343 (6th Cir. 2003). "[U]nless the cause of action against the insurance company is of such a nature that the liability sought to be imposed could be imposed against the insured, the action is not a direct action." Fortson v. St. Paul Fire and Marine Ins. Co., 750 F.2d 1157, 1159 (11th Cir. 1985). Applying these principles, federal district courts routinely held that declaratory judgment actions seeking coverage determinations are not "direct actions." See Saylab, 271 F.Supp.2d at 116; Weast v. Travelers Cas. and Surety Co., 7 F.Supp.2d 1129, 1133 (D. Nev. 1998); Nat'l Fire & Marine Ins. Co., 1998 WL 36350 at *1; Hepke v. Kilcoin, 279 F.Supp.2d 1089, 1092 (D.Neb. 2003). As the Court stated in Weast, since "[p]laintiffs could not seek a judicial determination of their rights and duties under the Travelers policy against [the insured]," the claim was "not a direct action." Weast, 7 F.Supp.2d at 1133.

**3. Summary**

In Morrow, the Rhode Island Supreme Court permitted a claimant to bring a declaratory judgment action seeking a coverage determination, rejecting the insurer's argument that it was a direct action barred by statute. Morrow is controlling law. The holding in Morrow is buttressed by the Mendez court's detailed discussion of Bankers Trust, a case which the court viewed as weighty precedent. Even if there is some ambiguity as to whether Morrow is directly on point, Rhode Island would follow the courts from other jurisdictions, which have recognized that statutory and common law bars to direct actions, comparable to § 27-7-2, do not apply to declaratory judgment actions. If the Court in Mendez or Robinson had determined to seek briefing regarding standing, there is a substantial likelihood that it would have held that declaratory judgment is not within the scope of the direct action statute.

This is not a case where Emhart seeks to substitute Travelers for NECC. Emhart is not attempting to bypass a suit against NECC to determine NECC's underlying liability to Emhart. Rather, this is the type of declaratory judgment action which an insured typically brings against its insurer. In the words of Weast, Emhart "could not seek a judicial determination of [its] rights under the [Travelers] policy" by bringing an action against NECC. This declaratory judgment action is not a direct action. It is not barred by § 27-7-2.

## CONCLUSION

For the foregoing reasons, the Travelers motion to dismiss the complaint should be denied.

Respectfully submitted,

Robert J. O'Keefe #6750
Rachelle R. Green #5870
Duffy Sweeny & Scott, Ltd.
One Turks Head Place, Suite 1200
Providence, RI 02903
(401) 455-0700
(491) 455-0701 (facsimile)

Of Counsel:
Jack R. Pirozzolo
Richard L. Binder
Foley Hoag LLP
115 Seaport Boulevard
Boston, MA 02210
(617) 832-1000
(617) 832-7000 (facsimile)

**CERTIFICATE OF SERVICE**

I hereby certify that on the 6th day of February, 2007, I caused a true copy of *Plaintiff's Memorandum in Support of its Objection to Defendant Travelers Casualty & Surety Company's Motion to Dismiss Plaintiff's Complaint* to be served by first class mail, postage prepaid, on the following:

Todd D. White, Esq.
Jaime LaPorte, Esq.
Adler, Pollock & Sheehan, P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02093-1345

R. Kelly Sheridan, Esq.
Jason C. Preciphs, Esq.
Roberts Carroll Feldstein & Peirce
10 Weybosset Street
Providence, RI 02903

Eric Bradford Hermanson, Esq.
Choate, Hall & Stewart
Two International Place
Boston, MA 02110

James W. Ryan, Esq.
Partridge Snow & Hahn, LLP
180 South Main Street
Providence, RI 02903

John F.X. Peloso, Jr., Esq.
Robinson & Cole
695 East Main Street
Stamford, CT 06450

# EXHIBIT A

STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

PROVIDENCE, SC. SUPERIOR COURT

EMHART INDUSTRIES :
:
Vs. : PC 2006-6095
:
NEW ENGLAND CONTAINER, et al :

MOTION TO DISMISS

HEARD BEFORE

THE HONORABLE JUSTICE PATRICIA A. HURST

JANUARY 16, 2007

APPEARANCES:

ROBERT J. O'KEEFE, ESQUIRE
-and-
JACK A. PIROZZOLO, ESSQUIRE . . . FOR THE PLAINTIFF

TODD D. WHITE, ESQUIRE . . . . . . FOR THE DEFENDANT
(Providence Washington Insurance)

SUSAN L. INMAN
COURT REPORTER

JANUARY 6, 2007, A.M. SESSION

THE COURT: Emhart vs. New England.

THE CLERK: Counsel identify yourselves for the record please.

MR. O'KEEFE: Good morning, your Honor, Robert O'Keefe, local counsel for Emhart. With me is Jack Pirozzolo admitted pro hac vice.

MR. WHITE: Good morning, your Honor, Todd White for defendant, Providence Washington Insurance Company.

THE COURT: Well, I thought the motion ought to be denied. It's a Rule 12 motion, so I'm cognizant of the standard. I can't say that there are no facts or circumstances under which an individual who is not a party to an insurance contract can bring a DJ action against the insurer. Depending on whether that individual is an intended beneficiary or not, for example, there can be standing. I recognize and know, I'm familiar with the general rules in Rhode Island that third parties don't have any standing. I think it's a good rule, but there are circumstances where they will have standing. That question is fact specific and it's also specific to the insurance policy. So, for purposes of Rule 12, I think the motion ought to be denied.

I will hear you on the motion though.

MR. WHITE: I think it's important to place this

particular matter in some historical context and the historical context is this:

This same lawsuit that is before you has been filed in Federal Court before Judge Smith, exact same suit, exact same motion to dismiss. It was argued November 13th. Judge Smith took it under advisement and has not made a decision on it. We are to go back to court in the next few days and he wants to have a status conference. I suspect one of the things he's interested in is if the parties are close to resolving this matter before he digs into it and decides what to do on this motion. We have that pending action, parallel action, filed over there.

In light of that, there was also a second lawsuit filed by New England Container against my client, Providence Washington Insurance Company, and Traveler's in this Court in the summer for exactly what Emhart is seeking right now, a declaration of its obligations of Providence Washington and Traveler's to defend them. So, now we have to defend ourselves in Federal Court before Judge Smith, we've got a State court action that is pending right now, we've got the exact same action before you.

THE COURT: I guess all bases are covered.

MR. WHITE: I think all bases are covered.

Absolutely.

When we received the third action which is in State court, we argued 27-7-2 applies. And, in this particular context, the exact language of the statute, the plain language of the statute, is precisely what is here. And, I will get to the facts that the --

THE COURT: I don't know that. There weren't even copies of the insurance contract appended to the motion, which, of course, would take me to a Rule 56 standard.

MR. WHITE: Right, and for purposes right now, we just want to argue what the statute says, and I'll be able to show why the cases that the plaintiff is relying on are not contemplated within the statute itself.

THE COURT: And, you may be a hundred percent correct, but the question is whether beyond a reasonable doubt there are no facts or circumstances under which an individual or entity who is not a party to an insurance contract has the right or the interest or the standing to bring the claim.

MR. WHITE: Not, your Honor, when they've decided that they'll also file against New England Container. I would agree, there may be facts and circumstances when they file a DJ action against New England Container's insured separately, but the statute expressly says, "An injured party, or, in the event of that party's death,

the party entitled to sue for that death, in his or her suit against the insured..." They have brought the action against New England Container. That's the insured. "...shall not join the insurer as a defendant."

This is 100 percent within the realm of that statute. Had they filed an action against Providence Washington and maybe Traveler's, but not against the insured, there is --

THE COURT: So, what you're saying is shame on them for having not filed yet another lawsuit with just the DJ action in it? That doesn't make any sense. I appreciate the thrust of the statute, but I think the thrust of the statute is to make sure that when -- and I'll really oversimplify just for purposes of illustration -- that when I sue the other driver for rear-ending my car and now I have a neck injury, I'm not going to bring in or name as a defendant the insurance company. And, I think this probably harkens back to the olden days when, if somebody by mistake uses the word "insurance" in front of the jury, nobody said a word. They just folded up their notebooks and all the lawyers left the room because they knew it was an automatic mistrial. This whole thing was to keep the insurers out and to keep plaintiffs from trying to get leverage on the carrier directly and keeping this whole idea of insurance out of the

courtroom. I think that's probably the genesis of that litigation. It's to keep the proper party named and in the system and in front of the jury.

When you include -- I don't think -- strike that. What I'm getting at is, I don't think the purpose behind that statute is also to mean that, oh, gosh, if you're bringing a DJ action against a carrier to determine whether or not the policy extends benefits to a particular individual or extends benefits under the facts and circumstances of the particular case, I don't think the statute was enacted to mean that that DJ action could not have been brought under the same civil action number as the case against the actual insured.

And, this takes me right back to the question of Rule 12 and this policy and the standing to bring a DJ claim against the carrier. I can't say that there aren't some facts, depending on what's in the policy, that might allow standing. I'm not sure I like the word "standing," but I'll use it for lack of a better word. So, that's where I am.

Can I hear you on this? Whoever is arguing.

MR. PIROZZOLO: Well, your Honor has essentially made our argument.

THE COURT: Well, I read the papers.

MR. PIROZZOLO: Yes, your Honor, our brief cites the

cases. I totally agree with your Honor's analysis. I would be repeating to say anything more. But, if your Honor wishes to hear more --

THE COURT: That's the best you can do, counselor. I'm going to deny the motion.

MR. O'KEEFE: Thank you, your Honor.

MR. PIROZZOLO: Thank you, your Honor.

* * * * *

C E R T I F I C A T I O N

I, SUSAN L. INMAN, hereby certify that the succeeding pages, 1 through 6, are a true and accurate transcript of my stenographic notes.

Susan L. Inman
Susan L. Inman
Court Reporter

# EXHIBIT B

EMHART V NEW ENGLAND

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| * * * * * * * * * * * * | * CIVIL ACTION |
| EMHART | * 06-218 |
| | * |
| VS. | * NOVEMBER 13, 2006 |
| | * |
| NEW ENGLAND CONTAINER CORPORATION | * PROVIDENCE, RI |
| * * * * * * * * * * * * | * |

HEARD BEFORE THE HONORABLE WILLIAM E. SMITH
DISTRICT JUDGE

(DEFENDANTS MOTION TO DISMISS AND MOTION FOR JUDGMENT
ON THE PLEADINGS)

APPEARANCES:

FOR THE PLAINTIFF:

JACK PIROZZOLO, ESQ. and
RICHARD L. BINDER, ESQ.
Foley & Hoag LLP
Seaport World Trade Center West
155 Seaport Blvd.
Boston, MA 02110-2600
(617) 832-1250

CRAIG M. SCOTT, ESQ.
Duffy, Sweeney & Scott, Ltd.
One Turks Head Place
Suite 1200
Providence, RI 02903
(401) 455-0700

Proceeding reported and produced by computer-aided stenography

D

2

APPEARANCES: (Continued)

EMHART V NEW ENGLAND

FOR THE DEFENDANT
New England Container: JAMES W. RYAN, ESQ.
Partridge, Snow & Hahn LLP
180 South Main Street
Providence, RI 02903
(401) 861-8210

JOHN F.X. PELOSO, JR., ESQ.
Robinson & Cole, LLP
695 East Main St.
Stamford, CT 06901
(203) 462-7500

FOR THE DEFENDANT
Providence Washington: TODD D. WHITE, ESQ.
Adler, Pollock & Sheehan, P.C.
One Citizens Plaza
8th Floor
Providence, RI 02903
(401) 274-7200

FOR THE DEFENDANT
Travelers Casualty &
Surety Company: ERIC BRADFORD HERMANSON, ESQ.
Choate, Hall & Stewart, LLP
Two International Place
Boston, MA 02110
(617) 248-5000

R. KELLY SHERIDAN, ESQ.
Roberts, Carroll, Feldstein &
Peirce
10 Weybosset St.
Providence, RI 02903
(401) 521-7000

Court Reporter: Anne M. Clayton, RPR
One Exchange Terrace
Providence, RI 02903

Proceeding reported and produced by computer-aided stenography

3

THE COURT: Good morning. I apologize for being a little bit late this morning. We have a delegation of five judges from Russia visiting, and they're going to be here for the entire week, and this morning was the chance to meet them and have a cup of tea or

coffee. That's kind of a time-consuming process when they don't speak any English, and we don't speak any Russian. So that's the reason why I'm a bit late.

So let's begin by having counsel identify themselves for the record beginning with plaintiff.

MR. SCOTT: Good morning, your Honor. Craig Scott for the plaintiff, Emhart Industries. With me is Mr. Pirozzolo and Mr. Binder, whose pro hac motions are pending.

THE COURT: Defendants?

MR. HERMANSON: Good morning, your Honor. Eric Hermanson for Travelers Casualty.

MR. WHITE: Good morning, your Honor. Todd White for Providence-Washington Insurance Company.

MR. RYAN: James Ryan for New England Container, and Mr. Peloso is also present, your Honor. He's got a pro hac vice application pending.

MR. SHERIDAN: Kelly Sheridan for the Travelers.

THE COURT: All right. How do you wish to proceed here? There's several motions, all defendants'

4

motions.

You all want to argue and then plaintiffs respond to all of them or take them one at a time? How do you want to do it?

MR. PIROZZOLO: If they argue and we respond, I think that makes sense to me, your Honor.

THE COURT: Okay. Then let's do it that way, and would you like -- Travelers, you stood up, so do you want to go first?

MR. HERMANSON: I'm happy to go first.

THE COURT: All right. Go ahead.

MR. HERMANSON: Your Honor, I'm hoping I can be at least somewhat brief here. Unlike Illinois and Indiana and Maryland and various other jurisdictions that are identified in Emhart's brief, Rhode Island has a statute that speaks directly to the controversy that's before your Honor this morning. The statute is Rhode Island General Laws 27-7-2 and it says, and I quote, (Reading:) That an injured party in its suit against the insured shall not join the insurer as defendant, period, full stop.

The statute then goes on and talks about a couple of specific circumstances where an insurer may be joined as a defendant. None of those circumstances are at issue today.

5

The statute is plain, unambiguous, it's clear on its face. It doesn't distinguish between declaratory judgment claims and claims for damages against an insurance company.

It arises, this is from the Miller case in 1929, it arises from the concern of the Legislature, the Rhode Island Legislature to protect insurers from prejudice and to protect their policyholders from the prejudice that would arise if an insurer was required to sit at defense table with the policyholder as the policyholder's liability was being determined before a jury.

I think Travelers position in this case is

consistent with the plain language of that statute. It's consistent with the legislative concerns that led to that statute being adopted, and I think it's -- I think it's compelling on statutory language. In Judge Selya's words, one need go no further.

THE COURT: Does it cover, and what authority is there that says it covers declaratory judgment actions as well as direct?

MR. HERMANSON: For authority, your Honor, first I think the statutory language is its own authority, but I would also refer the Court to the Baxendale ruling, Judge Gibney's ruling in the Superior Court in

6

Rhode Island.

THE COURT: Why is that binding on this Court? Judge Gibney, as much as I admire her, is a State Superior Court judge, and aren't we operating under the Federal Declaratory Judgment Act here?

MR. HERMANSON: Absolutely, your Honor. Judge Gibney's ruling is only persuasive authority for this Court. I would submit it's very persuasive authority given the attention and the detail that Judge Gibney put into the Baxendale ruling.

THE COURT: What were the factual circumstances in that case?

MR. HERMANSON: Baxendale was a medical malpractice, actually a psychiatric malpractice suit. The plaintiff in Baxendale sued her psychiatrist for tort damages arising out of a sexual liaison that the two of them had during a patient relationship. The

psychiatrist's malpractice insurers went to Federal Court to try to get a declaratory judgment as to coverage for that case. That federal action was stayed.

The patient then went back into the Rhode Island Superior Court and tried to amend her complaint to sue the malpractice insurers alongside the psychiatrist in the case, the same situation as here, your Honor, the



insurers sitting at defense table with their policyholder as liability was being determined.

And Judge Gibney in Baxendale basically said you can't do that under the Rhode Island statute. 27-7-2 speaks to this. And the Morrow case, on which Emhart rests its briefs in this action, doesn't apply. Morrow does not move this case or that case from the statutory language of 27-7-2.

And then Judge Gibney went on, and she had an alternate holding, which was that even if the parties were properly before me, I would not entertain my equitable discretion to entertain this case. This is not an appropriate case for me to be hearing for any number of reasons.

But her threshold question was whether 27-7-2 applied. And I think a fair reading of Baxendale is that Judge Gibney found that it did.

THE COURT: Aren't the factual circumstances in this case quite different, because here we have an insured, New England Container, that's no longer a going concern, that's gone through -- haven't they gone

into some sort of bankruptcy proceeding or something?

MR. HERMANSON: No, your Honor, I don't think that's true as a factual matter, and I don't find it in the Complaint either.



What I do find in the Complaint and what I understand to be factual, the case is that New England Container is no longer an operating company. Its parent has gone through bankruptcy proceedings, but it has left New England Container as a fully-funded entity, which, as I understand it, and this is outside the record, as I understand it is looking for new business opportunities to enter.

THE COURT: So you're saying that they have plenty of access to fulfill any judgment that might occur as a result of this? Is that what you're saying? I was under the impression -- and I may not have it exactly right. Maybe it's the parent that's in bankruptcy, but I was under the impression that that wasn't the case.

MR. HERMANSON: Your Honor, I'm not sure. I'm not sure I can speak to or that the record speaks to the extent of New England Container's assets. I'm not sure that they're funded to the extent of hundreds and hundreds of millions of dollars, no.

I do understand that they're not insolvent, and I'm told that they're under no threat of becoming insolvent in the near future.

THE COURT: So whatever that situation is, isn't the problem that is envisioned here is that there would

be some type of settlement or even, I suppose, a consent judgment, something that would greatly reduce the liability of New England Container, which would then, in turn, substantially reduce the resources available to Emhart as the entity which really owns the whole liability relating to this site?

And if that's the case, I mean, isn't that really the point of a declaratory judgment action is to try to get out in front of that sequence of events that may occur?

MR. HERMANSON: Let me make sure I understand. The question is whether New England Container's management might do something that was against the company's self-interest in terms of reaching a settlement with Travelers?

THE COURT: Sure. Depends what you mean by against the company's self-interest, but what if, given whatever the financial situation is of New England Container or its parent, and I don't know the details of it, but they were to agree to settle any claims that New England Container had against its insurers for X dollars, far below what might be available under those policies. Doesn't that leave Emhart high and dry?

MR. HERMANSON: If it's a fair, rational business settlement between the insurance company that



wrote a policy and the policyholder that purchased a policy, and it results in, say, pulling a number out of

a hat, 50 cents on a dollar being available under policy coverage to account for policy defenses, I really think that that is a settlement that has taken place between two parties at arm's length under a contract they had with each other. I guess I'm having trouble understanding how Emhart, as is an interested party but a stranger to the contract, would want to get in front of that process, complicate that process, derail the possibility of a settlement that's amenable to the parties whose contract is at issue.

Now, I say that, your Honor, as far as I know, there have been no really meaningful settlement discussions between New England Container and Travelers as of this time, so I think we're speaking somewhat in hypotheticals here, but I would imagine that if New England Container and Travelers were to reach a mutually agreeable compromise of their dispute with one another, all parties acting reasonably and in their economic self-interest, that, yes, Emhart would be bound by that, but that Emhart should be bound that. Emhart shouldn't seize control of that process and take the Court into yet another round of coverage litigation in this courtroom.

11

THE COURT: Okay.

MR. HERMANSON: Your Honor, the statute is clear on its face, but if the Court is interested, I can discuss some of the other cases that Emhart mentions.

THE COURT: Sure.

MR. HERMANSON: Emhart seems to rest its case on