UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

```
_____
                                 )
EMHART INDUSTRIES, INC.,         )
                                 )
     Plaintiff and Counterclaim  )
     Defendant,                  )
                                 )
     v.                          )   C.A. No. 06-218 S
                                 )
NEW ENGLAND CONTAINER COMPANY,   )
INC.; et al.,                    )
                                 )
     Defendants and Counterclaim )
     Plaintiffs.                 )
_____)
                                 )
EMHART INDUSTRIES, INC.,         )
                                 )
     Plaintiff and Counterclaim  )
     Defendant,                  )
                                 )
     v.                          )   C.A. No. 11-023 S
                                 )
UNITED STATES DEPARTMENT OF THE  )
AIR FORCE; et al.,               )
                                 )
     Defendants, Counterclaim    )
     Plaintiffs, and Third-Party )
     Plaintiffs,                 )
                                 )
     v.                          )
                                 )
BLACK & DECKER, INC.; et al.,    )
                                 )
     Third-Party Defendants.     )
_____)
```

## OPINION AND ORDER

WILLIAM E. SMITH, United States District Judge.

Before the Court are two motions for protective orders

filed by the United States, which is currently the

Defendant, Counterclaim Plaintiff and Third-Party Plaintiff in the above entitled action. The first motion seeks a protective order prohibiting the deposition of an Environmental Protection Agency ("EPA") attorney (ECF No. 169).[1] The second motion seeks a protective order preventing a Fed. R. Civ. P. 30(b)(6) deposition regarding the use of chemical herbicides at a Canadian military base in the 1960s (ECF No. 176). For the reasons set forth below, both motions are GRANTED.

I.   Background

This discovery flap flows from a longstanding dispute brought under the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA) between Emhart Industries, Inc. ("Emhart"),[2] New England Container Company, Inc. ("NECC"), the United States (the "Government" or "United States") and a slew of third parties.[3] The current case involves liability for the pollution and environmental remediation of the Centredale Manor Restoration Project Superfund Site (the "Site"), located in North Providence,

---

[1] Docket numbers reference C.A. No. 11-023 S.

[2] References to Emhart also refer to its corporate successor Black & Decker.

[3] Discovery related to these third parties has been stayed under the Fifth Revised Case Management Order. (ECF No. 211.)

Rhode Island.  The Site has allegedly been polluted with various hazardous substances, including 2, 3, 7, 8-Tetrachlorodibenzo-p-Dioxin, PCBs, volatile organic compounds, semi-volatile organic compounds, and metals.

The parties are in the midst of discovery, which of late has prompted a flurry of disputes between the Government and Emhart.  On July 12, 2013, Emhart served deposition notices on four EPA attorneys assigned to the present case, one attorney who had formerly been assigned to the case, and one paralegal assigned to the case.  Then, on July 22, 2013, Emhart served an additional 13 deposition notices, one of which was served on a former EPA attorney who had once been assigned to the instant case, but who is currently employed at a public interest group in Oregon.[4] Emhart explains it seeks to depose these individuals because they were identified by the Government as being "core" personnel with respect to the Site.  (See Emhart's Opp'n to Mot. for Protective Order 2, ECF. No. 184.)  After this Court made certain rulings during an August 1, 2013

---

[4] Emhart's issuance of deposition notices to the 12 other EPA employees is not in dispute.

conference, Emhart withdrew its deposition notices as to four EPA attorneys and one EPA paralegal.[5]

Emhart still seeks to depose Eve Vaudo, an EPA attorney who has worked on the case involving the Site from its inception. Emhart claims Vaudo "would be able to provide information concerning her discussions with representatives of Emhart, NECC, NECC's customers, other [potentially responsible persons] (including the governmental [potentially responsible persons]), the state agencies that previously addressed the Site, and other third parties." (Id. at 3.) Additionally, Emhart claims that Vaudo "will be able to provide additional information concerning the EPA's handling of the Site during the EPA proceedings and provide a better roadmap for discovery and potential sources of information, which might allow Emhart to further whittle down the list of potential EPA depositions in this matter." (Id.) Unclear what topics Emhart wished to inquire about with Ms. Vaudo, this Court requested Emhart provide a list of these topics.

In addition to continuing to depose individual fact witnesses, Emhart has issued a 30(b)(6) deposition notice to the Government. In pertinent part, that notice requests

---

[5] By withdrawing these notices, Emhart has rendered the Government's motion for a protective order with respect to these additional attorneys moot.

4

that the Government produce a witness to provide "information regarding . . . the receipt, storage, testing, use, release, and/or disposal of tactical military herbicides in New Brunswick [, Canada]." This request seeks information about the use of tactical military herbicides at Base Gagetown, a Canadian military training facility where live-fire training occurs. (Decl. Daniel Procaccini, Ex. B 1, ECF No. 191.) In the 1950s, with the onset of the Cold War, the Canadian military determined it needed a large training area situated on the Atlantic side of Canada and created the base at Gagetown. (Id.) Gagetown measures 110,000 hectacres.[6] (Id.) Before becoming a military base, the property now known as Gagetown was heavily forested, and in the 1950s and 1960s, the Canadian military faced the task of clearing the property to create the training facility. (Id.)

In the mid-1960s, at the invitation of the Canadian government, the United States military tested tactical herbicides such as Agent Orange at Base Gagetown as part of that process. Personnel from the Biological Sciences Laboratory, Fort Detrick, Maryland and the Canadian Ministry of Defense were responsible for this work. (Decl.

---

[6] A hectacre is a term of measurement equaling 100 acres.

Daniel Procaccini, Ex. C 3, ECF No. 196-1.)   The testing consisted of chemicals being sprayed from an Army helicopter.   This helicopter took off from an air strip approximately 2 to 4 air miles from where the chemicals were applied.  (Id. at 7.)   The Army Aviation Detachment at Fort Monmouth, New Jersey loaned out the helicopter used in the testing operation.   (Id. at 9.)   A pilot from Fort Rucker, Alabama flew the helicopter during testing.   (Id.) No evidence to date ties Base Gagetown to the Site.

II.  Discussion

    A.   Deposition of EPA Counsel

    Rule 30 of the Federal Rules of Civil Procedure permits a party to "depose any person."   Fed. R. Civ. P. 30(a).   While this obviously includes opposing counsel, the practice of deposing opposing counsel has been described as "a negative development in the area of litigation, and one that should be employed only in limited circumstances." Shelton v. Am. Motors Corp., 805 F.2d 1323, 1327 (8th Cir. 1986).

    District Courts within the First Circuit have employed the test developed in Bogosian v. Woloohojian Realty Corp., 323 F.3d 55 (1st Cir. 2003), to address the depositions of counsel.   See Angela Adams Licensing, LLC v. Wal-Mart Stores, Inc., No. 2:11-cv-05-GZS, 2012 WL 752356, at *1 (D.

Me. March 7, 2012); Confederate Motors, Inc. v. Terny, Civil Action No. 11-10213-JGD, 2012 WL 612506, at *1 (D. Mass. Feb. 24, 2012); In re Tyco Int'l Ltd., MDL No. 2-md-1335-PB, 2007 WL 2682763, at *1 (D.N.H. Sept. 7, 2007). This test examines "whether (i) the subpoena was issued primarily for purposes of harassment, (ii) [whether] there are other viable means to obtain the same evidence, and (iii) to what extent the information sought is relevant, nonprivileged, and crucial to the moving party's case." Bogosian, 323 F.3d at 66.

At a hearing regarding these motions, the Court requested Emhart provide it with a list of topics it would seek to inquire about if a deposition were permitted. After careful review of these topics, the Court sees no reason to permit Ms. Vaudo's deposition, given her status as an attorney working on this case. The topics of inquiry provided by Emhart have been covered by voluminous document discovery to date, have been the subject of deposition testimony already taken in this case, or could be provided more easily by the deposition testimony of another witness in the future.[7]   Therefore, the Government's motion for a protective order of the deposition of Eve Vaudo is GRANTED.

---

[7]   The Court notes that the Government has made representations that it will make witnesses available for

B.   Motion  for  Protective  Order  with  Respect  to
Tactical Herbicides in New Brunswick, Canada

There  is  no  doubt  that  discovery  is  broad,  but  its
breadth  is  not  limitless.    The  Federal  Rules  of  Civil
Procedure  make  this  clear.    See  Oppenheimer  Fund,  Inc.  v.
Sanders,   437   U.S.   340,   351,   (1978)   (reasoning   that
"discovery,  like  all  matters  of  procedure,  has  ultimate  and
necessary  boundaries")  (quoting  Hickman v Taylor,  329  U.S.
495,  507  (1947)).    Under  the  federal  rules,  "discovery
falls  into  two  broad  categories:    matters  relevant  to  a
claim  or  defense  and  matters  more  generally  relevant  to  the
subject  matter  of  the  action."    Trombley  v.  Bank  of  Am.
Corp.,  636  F.  Supp.  2d  151,  153  (D.R.I.  2009).    When  a
party  seeks  discovery  on  these  more  generally  relevant
matters,  a  court  may  require  that  discovery  be  for  good
cause  shown.    Id.;  see also  Fed  R.  Civ.  P.  26(b)(1)  ("For
good  cause,  the  court  may  order  discovery  of  any  matter
relevant  to  the  subject  matter  involved  in  the  action.").

Emhart  dismisses  the  Government's  motion  simply
stating  that  relevance  is  not  a  proper  objection.    This
position,  however,  ignores  Fed.  R.  Civ.  P.  26(b)(1),  which
dictates  that  when  a  discovery  request  is  unrelated  to  a
claim  or  defense,  the  party  seeking  production  may  be

_____

additional questioning and the Court expects such testimony
will take place as necessary.

required to provide good reason for its request.  Emhart's position also overlooks decisions within this district. See Rhode Island Hosp. v. Leavitt, C.A. No. 06-260ML, 2007 WL 294026, at *3 (D.R.I. Jan. 26, 2007) (holding discovery that was not relevant to a claim or defense nor reasonably calculated to lead to the discovery of admissible evidence was not permitted).

"[W]hen an objection arises as to the relevance of discovery, 'the court would become involved to determine whether the discovery is relevant to the claims or defenses and, if not, whether good cause exists for authorizing it, so long as it is relevant to the subject matter of the action.'"  In re Subpoena to Witzel, 531 F.3d 113, 118 (1st Cir. 2008) (quoting Fed. R. Civ. P. 26, Advisory Committee Notes, 2000 Amendment).  Where a party does not address the good cause requirement and good cause is not apparent on the record, discovery should only be ordered if the discovery is relevant to a party's claims or defenses.  Id.

Emhart hinges its argument on the theory that the proximity of Base Gagetown to Otis Air Base and Naval Air Station Quonset Point imputes some relevance into the testing of herbicides in New Brunswick, Canada nearly 50 years ago.  Emhart then reasons, "[s]uffice it to say that Emhart expects to show that tactical military herbicides

9

were disposed of at the Site [and] that its claim is <u>not</u> restricted to the 4,800 drums delivered there from Otis and Quonset." (Emhart Objection to Gov't Mot. for Protective Order of 30(b)(6) Deposition 3, ECF No. 189). This case involves the pollution of a Site in North Providence, Rhode Island. The Government accuses Emhart of polluting the Site, while Emhart alleges the Government played a role in the pollution of it. Herbicide testing in Canada simply is not implicated by this case.

Emhart presents speculation and an assurance of what it will do in the future in an attempt to tie Base Gagetown to its claims and defenses or suggest that it is relevant to the subject matter generally. This endeavor falls flat. "Requested discovery is not relevant to the subject matter involved in a pending action if the inquiry is only based on the requesting party's mere suspicion or speculation." <u>Sirota v. Penske Truck Leasing Corp.</u>, No. C05-03296 SI, 2006 WL 708910 at *1 (N.D. Cal. Mar. 17, 2006) (citing <u>Micro Motion, Inc. v. Kane Steel Co.</u>, 894 F.2d 1318, 1324 (Fed. Cir. 1990)); <u>see also</u>, <u>Ameristar Jet Charter, Inc. v. Signal Composites, Inc.</u>, 244 F.3d 189, 193 (1st Cir. 2001) (holding that the Court would not permit the requesting party to go on a "'fishing expedition,' with the mere 'hope'" that it would obtain information it was seeking).

To date, Emhart's requests are not only speculative, but are belied by historical evidence. The aircraft responsible for the spraying was loaned out by a base in New Jersey, the unit studying the impact of the chemicals hailed from Maryland, and the location where the chemicals were applied was in Canada. Certainly if discovery points to a connection between Base Gagetown and the Site, Emhart could renew its push for discovery on these issues. To date, however, there is simply no connection between Base Gagetown and the case at issue.

III. Conclusion

For the reasons stated above, both of the Government's motions for protective order are GRANTED.

IT IS SO ORDERED.

/s/William E. Smith
William E. Smith
United States District Judge
Date: November 8, 2013