```
                    UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF RHODE ISLAND
```

_____
                                   )
EMHART INDUSTRIES, INC.,            )
                                   )
     Plaintiff and Counterclaim    )
     Defendant,                    )
                                   )
     v.                            )   C.A. No. 06-218 S
                                   )
NEW ENGLAND CONTAINER COMPANY,     )
INC; et al.,                       )
                                   )
     Defendants and Counterclaim   )
     Plaintiffs.                   )
_____)
                                   )
EMHART INDUSTRIES, INC.,            )
                                   )
     Plaintiff and Counterclaim    )
     Defendant,                    )
                                   )
     v.                            )   C.A. No. 11-023 S
                                   )
UNITED STATES DEPARTMENT OF THE    )
AIR FORCE; et al.,                 )
                                   )
     Defendants, Counterclaim      )
     Plaintiffs, and Third-Party   )
     Plaintiffs,                   )
                                   )
     v.                            )
                                   )
BLACK & DECKER, INC.; et al.,      )
                                   )
     Third-Party Defendants.       )
_____)

## **MEMORANDUM AND ORDER**

WILLIAM E. SMITH, Chief Judge.

    Defendants, New England Container Co. and the United States Department of the Air Force (collectively, "Defendants"), have

filed motions in limine, seeking exclusion of a statement executed by Thomas Cleary ("Cleary Statement") on the ground that it is inadmissible hearsay. (ECF Nos. 452, 459.)[1] In opposition, Plaintiff, Emhart Industries, Inc., and Third-Party Defendant and Counterclaim Plaintiff, Black & Decker, Inc. (collectively, "Emhart"), assert that the Cleary Statement qualifies for admission under the residual exception to the hearsay rule, see Fed. R. Evid. 807. For the reasons that follow, Defendants' Motions are GRANTED.

I.  Background

The parties are familiar with the background of this case; consequently, only a brief sketch of the factual landscape is necessary to set the stage. Metro-Atlantic, Inc. ("Metro-Atlantic") operated a chemical manufacturing facility on a portion of the Centredale Manor Restoration Project Superfund Site ("Site") from 1940 to 1968. For a brief period in the mid-1960s, Metro-Atlantic manufactured hexachlorophene at the Site in accordance with a process invented and patented by Cleary. Cleary worked with Metro-Atlantic to get things up and running.

Several decades later, it was discovered that the Site was polluted with dioxin. Suspecting that Metro-Atlantic's manufacture of hexachlorophene was a culprit, the Environmental

---

[1] ECF numbers provided herein correspond with C.A. No. 06-218.

2

Protection Agency designated Emhart, Metro-Atlantic's corporate successor, a potentially responsible party for the cleanup costs associated with the Site. Soon after, Emhart sued its insurers to cover its cleanup and defense costs in Emhart Indus., Inc. v. Home Ins. Co., C.A. No. 02-53 ("Home Insurance"). Emhart deposed Cleary in the Home Insurance case.

Emhart initiated the instant case on May 11, 2006. In late February 2008, when Cleary was over 90 years old,[2] Emhart's attorneys and an organic chemist employed by Emhart's counsel telephoned Cleary, seeking clarification on certain aspects of Cleary's Home Insurance deposition ("Cleary Deposition") and his patented hexachlorophene-manufacturing process. This initial telephone conversation was followed by multiple additional telephone conferences in the ensuing weeks. These conversations culminated in the Cleary Statement, which was prepared by Emhart's attorneys and signed by Cleary on April 8, 2008.

On August 29, 2008, Emhart subpoenaed Cleary to compel his deposition, which had been noticed for September 8, 2008. Emhart later learned that Cleary had died sometime in July 2008. He was never deposed in this case.

In November 2011, Emhart produced the Cleary Statement to Defendants. Defendants now seek exclusion of the statement,

---

[2] Although the record is not clear on Cleary's precise age, Emhart represented at oral argument that Cleary was 94 years old at the time that the Cleary Statement was executed.

both at trial and in connection with any upcoming summary judgment motions.

II. Discussion

The Cleary Statement, an out-of-court statement that will be offered for the truth of the matters asserted therein, is hearsay. See Fed. R. Evid. 801(c). Emhart concedes as much, but insists that it qualifies for admission under Rule 807 of the Federal Rules of Evidence.

Rule 807(a) provides that a hearsay statement not specifically covered by the hearsay exceptions in Rules 803 and 804 is not barred by the hearsay rule where the following four requirements are met:

> (1) the statement has equivalent circumstantial guarantees of trustworthiness;
> (2) it is offered as evidence of a material fact;
> (3) it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts; and
> (4) admitting it will best serve the purposes of these rules and the interests of justice.

Fed. R. Evid. 807(a). This rule "is 'to be used rarely, and in exceptional circumstances and applies only when certain exceptional guarantees of trustworthiness exist and when high degrees of probativeness and necessity are present.'" United States v. Awer, 502 F. Supp. 2d 273, 276 (D.R.I. 2007) (quoting United States v. Wright, 363 F.3d 237, 245 (3d Cir. 2004)).

4

Assessment of whether Rule 807's requirements are met in a given case "is a fact-specific inquiry," United States v. Trenkler, 61 F.3d 45, 57 (1st Cir. 1995), in which the totality of the circumstances must be examined; "[n]o single factor is dispositive," Brookover v. Mary Hitchcock Mem'l Hosp., 893 F.2d 411, 420 (1st Cir. 1990). Because this analysis "depends on judgment calls," United States v. Pagán-Santini, 451 F.3d 258, 264 (1st Cir. 2006), a district court is granted considerable discretion in conducting it, see Trenkler, 61 F.3d at 57. In this case, the Cleary Statement cannot surmount at least two of Rule 807's high hurdles: circumstantial guarantees of trustworthiness and probative value in relation to other evidence.

A. Circumstantial Guarantees of Trustworthiness

The requirement that the statement have equivalent circumstantial guarantees of trustworthiness is "the most important issue" in the Rule 807 analysis. Trenkler, 61 F.3d at 58. The requisite guarantees of trustworthiness must be "equivalent to those possessed by the other listed exceptions to the hearsay rule." Id.; see also United States v. Burdulis, 753 F.3d 255, 263 (1st Cir. 2014). This Court "must determine whether the totality of the circumstances surrounding the statement establish its reliability sufficiently enough to justify foregoing the rigors of in-court testimony (e.g., live

5

testimony under oath, cross-examination) that ordinarily guarantee trustworthiness." Trenkler, 61 F.3d at 58.

The Cleary Statement lacks the necessary circumstantial guarantees of trustworthiness for two main reasons. First, the circumstances surrounding the compilation and execution of the Cleary Statement undermine, rather than enhance, its reliability. Second, the Cleary Statement is inconsistent with the Cleary Deposition in important respects. Each reason is briefly discussed in turn.

1. Surrounding Circumstances

Several circumstances surrounding the formulation of the Cleary Statement are problematic. For starters, the Cleary Statement was prepared while litigation was in full swing and while Emhart was formulating its expert strategy. See Colasanto v. Life Ins. Co. of N. Am., 100 F.3d 203, 212 (1st Cir. 1996) (affirming "the district court's conclusion that the statements were suspect because litigation was in the wind when they were made"). Additionally, the involvement of Emhart's attorneys — to the exclusion of Defendants — in the preparation of the Cleary Statement undercuts its value; unsurprisingly, the culmination of the back-and-forth dialogue between Cleary and

Emhart's attorneys is highly favorable to Emhart.[3]  See Polansky v. CNA Ins. Co., 852 F.2d 626, 631 (1st Cir. 1988) (finding abuse of discretion in admitting a letter under Rule 807 because, inter alia, it "was merely a self-serving statement written by a representative of the party who seeks its admission to prove the truth of what the letter implicitly asserts").

Most importantly, Emhart elected to perpetuate Cleary's testimony in a manner that deprived Defendants of an opportunity for cross-examination.  To be sure, the absence of cross-examination is not determinative in the Rule 807 analysis.  See United States v. Zannino, 895 F.2d 1, 6 (1st Cir. 1990).  But, in this case, Emhart's failure to depose Cleary looms large. When this case commenced in 2006, Cleary was over 90 years old. Emhart knew from the Home Insurance case that he was an important witness, yet it waited nearly two years before reaching out to Cleary.  Moreover, when it finally did contact Cleary in late February 2008, Emhart did not promptly notice his deposition, but instead spent over a month compiling the Cleary Statement.  Even after the Cleary Statement was executed, Emhart waited almost five more months before seeking to depose Cleary. By that point, it was too late.

---

[3] This Court does not in any way suggest that Emhart engaged in any unethical or inappropriate conduct in connection with the Cleary Statement.

7

Although Cleary's death was untimely, it was hardly unforeseeable, and Emhart's choice to create the Cleary Statement — a process that excluded Defendants — in lieu of deposing Cleary — which would have afforded Defendants an opportunity for cross-examination — undermines the trustworthiness of the Cleary Statement. See Stokes v. City of Omaha, 23 F.3d 1362, 1366 (8th Cir. 1994) (finding abuse of discretion in the admission of an affidavit of a deceased affiant and remarking that the affiant's "death, although untimely, was not unexpected[;] [i]f [the proponent of the statement] had believed that [the affiant's] testimony was important to his case, then he should have deposed [the affiant]"). The absence of cross-examination is especially critical in this case because of the inconsistencies between the Cleary Statement and the Cleary Deposition, discussed infra, which Defendants had no opportunity to examine or clarify.

In light of these trustworthiness pitfalls, Emhart's assertions of reliability are unpersuasive. Emhart places great reliance on the degree to which the Cleary Statement was corroborated by the sworn statements of Emhart's attorneys who transcribed the telephone conferences with Cleary, the typed notes of the calls, and a prior draft of the Cleary Statement. However, these materials were created by Emhart — the proponent of the hearsay statement — while litigation was pending, so they

are entitled to little weight. Cf. Brookover, 893 F.2d at 413, 418 (affirming admission of the plaintiff's statement under the residual exception where it was corroborated by notes that the defendant's agent made shortly after the incident).

Similarly, Emhart's reliance on the fact that the Cleary Statement was signed under the penalties of perjury is unavailing. For one thing, "[a]n oath alone . . . is an inadequate safeguard to meet the requirement . . . that the statement have 'equivalent circumstantial guarantees of trustworthiness.'" Stokes, 23 F.3d at 1366-67 (quoting United States v. Fernandez, 892 F.2d 976, 981 (11th Cir. 1989)). For another thing, the Cleary Statement was not originally signed under the penalties of perjury; it was only after one of Emhart's attorneys noticed the absence of this language that Cleary was asked to execute a version of the Cleary Statement under the penalties of perjury, (see Decl. of Phillip C. Swain ¶¶ 5-6, ECF No. 474-13), and there is no indication that the significance of this belatedly-added language was explained to Cleary. This case, therefore, is unlike Furtado v. Bishop, 604 F.2d 80, 90-91 (1st Cir. 1979), where the First Circuit upheld the district court's admission of an affidavit of a deceased affiant because the affiant was, as conceded by opposing counsel, an "eminent attorney" who "could not have failed to

9

appreciate the significance of the oath he took in executing the affidavit."

The sole remaining arrow in Emhart's reliability quiver is the fact that Cleary was neither a party to this litigation nor a person with a financial stake in the outcome. This fact does favor reliability, but, in light of the weighty considerations indicating a lack of trustworthiness, it cannot alone carry the day. In sum, this Court cannot say that "the totality of the circumstances surrounding the [Cleary Statement] establish its reliability sufficiently enough to justify foregoing the rigors of in-court testimony . . . that ordinarily guarantee trustworthiness." Trenkler, 61 F.3d at 58.

    2. Inconsistencies with Cleary Deposition

In addition to the unhelpful circumstances surrounding the creation and execution of the Cleary Statement, three inconsistencies between the statement and the Cleary Deposition further doom its admission under Rule 807. In his deposition, when asked how many times he visited the Site over the years, Cleary responded, "Oh, over a period of perhaps four or five years, maybe two or three times a year." (Cleary Deposition 92:2-92:5, ECF No. 474-2.) By contrast, Cleary declared in the Cleary Statement that, "[a]fter commercial operation started, I visited the [Metro-Atlantic] plant about once a week." (Cleary Statement ¶ 7, ECF No. 474-14.)

Additionally, the Cleary Statement is inconsistent with the Cleary Deposition with respect to Metro-Atlantic's storage of trichlorophenol ("TCP") at the Site. In his deposition, Cleary admitted that he did not know where the TCP was stored. (See Cleary Deposition 59:15-59:16.) However, the Cleary Statement asserts that the TCP "solution was transferred from the tanker [truck] directly into the reaction vessel." (Cleary Statement ¶ 11.)

Finally, the Cleary Statement and the Cleary Deposition appear to be inconsistent on the number of times that Nuchar, a charcoal-based decolorizing product, was used in the hexachlorophene-manufacturing process. The parties agree that it was used at the end of the process, and both the Cleary Statement and the Cleary Deposition support this agreement. (See Cleary Statement ¶¶ 5, 16; Cleary Deposition 41:1-41:11 (referring to the use of "special kinds of charcoal which absorb the color" at the end of the process).)

However, a discrepancy exists over whether Nuchar was used during the initial stage of the process, when the crude TCP was purified. In his deposition, Cleary suggested that Nuchar was used at this stage. When discussing "the phase of purifying the [TCP]," which took place at the very beginning of the process, he referred to a list of chemicals that were used to purify the TCP. (Cleary Deposition 50:14-50:15; see id. at 40:18-40:21,

48:13-48:20.) This list, which was marked as Exhibit 8 to the Cleary Deposition, (see id. at 48:13-49:2), bears the headings "Phase I" and "Purification Equipment"; it also is accompanied by a handwritten notation (presumably penned by Cleary) that explains that it is a "bill of materials for purification of trichlorophenol." (Ex. 7 to Pls.' Opp'n ("Exhibit 8 to the Cleary Deposition"), ECF No. 474-7.) Nuchar is one of the materials listed in Exhibit 8 to the Cleary Deposition. (See id.)

The deposition testimony, therefore, appears to indicate that Nuchar was used in the initial phase of the process when the TCP was purified. However, the Cleary Statement suggests otherwise. After discussing the use of Nuchar at the end of the hexachlorophene-manufacturing process, the Cleary Statement proclaims, "This is the only step where Nuchar was added." (Cleary Statement ¶ 16.) The Cleary Statement makes no mention of the use of Nuchar in the initial TCP purification phase.

Taken together, these inconsistencies further undermine the trustworthiness of the Cleary Statement. Even more troubling, the Cleary Statement makes no effort to reconcile these passages with the contrary testimony of the Cleary Deposition. Although Emhart attempts to demonstrate consistency between the Cleary Statement and the Cleary Deposition, these belated justifications are both wholly unpersuasive and beside the

point. The fact remains that Cleary – the declarant — made hearsay statements that are inconsistent with his prior deposition testimony, which was given under oath while Cleary was subject to cross-examination, and he offered no explanation in the Cleary Statement for these apparent inconsistencies. Because Cleary was not deposed in the present case, Defendants here never had the opportunity to cross-examine Cleary on these inconsistencies. As the proponent of the hearsay Cleary Statement, Emhart has failed to shoulder its burden of establishing trustworthiness.

 B. Probative Value in Relation to Other Evidence

In addition to requiring circumstantial guarantees of trustworthiness, Rule 807 also mandates that the hearsay statement be "more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts." Fed. R. Evid. 807(a)(3). A "statement will be considered 'more probative' if the court determines that the hearsay is relevant and reliable, and that no other evidence, or very little other evidence, is available on the same point." 5 Weinstein's Fed. Evid. § 807.03[3][a], at 807-25 (2d ed. 2014).

Emhart cannot satisfy the Rule 807(a)(3) requirement. It concedes that the Cleary Deposition is admissible in this case. (See Pl.'s Opp'n 14 n.9, 16, ECF No. 474.) The Cleary

Deposition, which explains the hexachlorophene-manufacturing process in detail, is at least as probative as the Cleary Statement on the points for which the statement is offered. This conclusion defeats Emhart's claim that the Cleary Statement is more probative than the deposition testimony. See Awer, 502 F. Supp. 2d at 276 ("[T]he conversations are not highly probative or necessary because [the declarant's] written statement, the best evidence of her assertions, is admissible. Allowing the conversations would be merely cumulative, and therefore inappropriate for admission under Rule 807.").

III. Conclusion

For the reasons articulated above, this Court determines that the Cleary Statement does not qualify for admission under Rule 807. It remains, therefore, inadmissible hearsay.[4] As

---

[4] In a last-ditch effort, Emhart argues that, because this case will be tried by this Court and not a jury, the evidence rules are relaxed such that this Court can "consider all relevant evidence and weigh its probative value in rendering a decision." (Pl.'s Opp'n 14, ECF No. 474.) Although Emhart's position is not wholly unsupported, see United States v. Raymond, 697 F.3d 32, 39 n.6 (1st Cir. 2012) (suggesting, in dicta, that "[i]t is at least arguable that, in a bench trial, a district court has wider latitude in the admission of Rule 404(b) evidence"), this Court declines to relax the hearsay rule to permit admission of the Cleary Statement. "The hearsay rule of course applies in bench trials[,]" 30B Charles Alan Wright et al., Fed. Practice & Proc. § 7031, at 333 n.1 (2011 Interim ed.); see also Broadcast Music, Inc. v. Xanthas, Inc., 855 F.2d 233, 238 (5th Cir. 1988), and this Court discerns no reason to excuse Emhart from its burden of satisfying Rule 807.

such, it cannot be admitted at trial or relied on at the summary judgment stage.[5]  Defendants' Motions are GRANTED.

IT IS SO ORDERED.

/s/ William E. Smith
_____
William E. Smith
Chief Judge
Date:  November 7, 2014

---

[5] This Court expresses no opinion at this juncture on whether Emhart's experts may permissibly rely on the Cleary Statement in forming their opinions.