UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| EMHART INDUSTRIES, INC., | ) |
| | ) |
|     Plaintiff, Cross-Plaintiff, | ) |
|     Third-Party Plaintiff, and | ) |
|     Counter-Defendant, | ) |
| | )   C.A. No. 06-218 WES |
|     v. | ) |
| | ) |
| NEW ENGLAND CONTAINER | ) |
| COMPANY, INC., ET AL., | ) |
| | ) |
|     Defendants, Counter- | ) |
|     Plaintiffs, and | ) |
|     Third-Party Plaintiffs. | ) |

| | |
|---|---|
| | ) |
| EMHART INDUSTRIES, INC., | ) |
| | ) |
|     Plaintiff, Cross-Plaintiff, | ) |
|     Third-Party Plaintiff, and | ) |
|     Counter-Defendant, | ) |
| | )   C.A. No. 11-023 WES |
|     v. | ) |
| | )   CONSOLIDATED |
| UNITED STATES DEPARTMENT OF THE | ) |
| AIR FORCE, ET AL., | ) |
| | ) |
|     Defendants, Counter- | ) |
|     Plaintiffs, Cross- | ) |
|     Plaintiffs, and Third-Party | ) |
|     Plaintiffs, | ) |
| | ) |
|     v. | ) |
| | ) |
| BLACK & DECKER INC., | ) |
| | ) |
|     Counter-Plaintiff, Cross- | ) |
|     Plaintiff, Third-Party | ) |
|     Plaintiff, and Third-Party | ) |
|     Defendant, | ) |
| | ) |
|     v. | ) |
| | ) |
| | ) |

```
A. HARRISON & CO., INC.; EASTERN    )
COLOR & CHEMICAL CO.; EASTERN       )
RESINS CORP.; EVANS PLATING         )
CORP.; GREYSTONE INC.; HENKEL       )
CORP.; HEXAGON METROLOGY, INC.;     )
INDUPLATE INC.; INDUPLATE           )
OPERATIONS, LLC; IVAX LLC,          )
                                    )
       Third-Party Defendants,      )
                                    )
       v.                           )
                                    )
BNS LLC; CNA HOLDINGS LLC;          )
CRANSTON PRINT WORKS CO.; DURO      )
TEXTILES LLC; ELI LILLY & CO.;      )
EXXON MOBIL CORP.; ORGANIC          )
DYESTUFFS CORP.; SEQUA CORP.;       )
TEKNOR APEX CO.; THE ORIGINAL       )
BRADFORD SOAP WORKS, INC.; UNION    )
OIL COMPANY OF CALIFORNIA,          )
                                    )
       Cross-Defendants,            )
                                    )
       v.                           )
                                    )
BASF CORP.,                         )
                                    )
       Cross-Defendant and Fourth-  )
       Party Plaintiff,             )
                                    )
       v.                           )
                                    )
ROHM AND HAAS COMPANY,              )
                                    )
       Fourth-Party Defendant.      )
```

## MEMORANDUM AND ORDER

Before the Court is Third-Party Defendant BNS LLC's ("BNS") Motion in Limine to Preclude Admission of or Reference to New England Container Company's ("NECC") August 22, 2002 Supplemental Response to CERCLA § 104(e) Information Requests ("104(e)

Motion"), ECF No. 1067, and BNS's Motion <u>in Limine</u> to Preclude Admission of or Reference to "Interview of Raymond Nadeau" and "Raymond Nadeau April 2, 2002" Interview Notes ("Nadeau Motion"), ECF No. 1068 (collectively, "Motions").[1]  For the following reasons, the Court DENIES the 104(e) Motion and GRANTS IN PART and DENIES IN PART the Nadeau Motion.

## I.    BACKGROUND

BNS's Motions concern the following documents, which were generated during the Environmental Protection Agency's ("EPA") investigation of the Centredale Manor Restoration Project Superfund Site ("Site"): NECC's August 22, 2002 Supplemental Response to the Environmental Protection Agency's ("EPA") CERCLA § 104(e) Information Requests ("104(e) Response"); a document titled "Interview of Raymond Nadeau" ("Interview Notes"); and a document titled "Raymond Nadeau April 2, 2002" ("Nadeau Notes").[2] 104(e) Motion 2-3; Nadeau Motion 2-4.  The first two documents contain statements about prior engagements between NECC and BNS's corporate predecessor, Brown and Sharpe Manufacturing Company ("Brown & Sharpe").  104(e) Mot. 4; Nadeau Mot. 4.  The Nadeau Notes, however, contain no reference to BNS or Brown & Sharpe. Nadeau Mot. Ex. 10, ECF No. 1068-10.

---

[1] All docket entries refer to the docket in C.A. No. 11-023.

[2] Raymond Nadeau is a former employee of NECC.  Nadeau Mot. 3.

BNS argues that the 104(e) Response, the Interview Notes, and the Nadeau Notes are inadmissible hearsay.  104(e) Motion 5-8; Nadeau Motion 4-6.  Further, BNS claims that the probative values of the documents are substantially outweighed by their prejudicial effect such that Emhart's experts should be precluded from relying on or referring to them.  104(e) Motion 8-9; Nadeau Motion 7-8.

In response, Plaintiffs Emhart Industries, Inc. and Black & Decker, Inc. (collectively, "Emhart") argue that the 104(e) Response and the Interview Notes are admissible under either the public records exception (Federal Rule of Evidence 803(8)) or the residual exception (Federal Rule of Evidence 807) to the rule against hearsay.  Emhart's Consolidated Opp'n BNS LLC's Mots. In Limine ("Emhart Opp'n") 11-15, ECF No. 1076.  With respect to the Nadeau Notes, Emhart submits that the admissibility of this document "is best evaluated in the context of" other pending motions before the Court.[3]  Id. at 1 n.1.  Further, Emhart asserts that its experts can rely on and reference the 104(e) Response and the Interview Notes under Federal Rule of Evidence 703.  Id. at 15-17.  Finally, to BNS's invocation of Federal Rule of Evidence

---

[3] The Court agrees with Emhart that the admissibility of the Nadeau Notes is more germane to other pending motions.  To the extent that the document is offered for the point that Brown & Sharpe supplied NECC with drums, however, the Court has no trouble finding the document inadmissible under Rule 803(8) or 807.

403, Emhart questions the Rule's applicability in a bench trial. Id. at 17-18; see 104(e) Mot. 8.

## II.   ANALYSIS

### A. Hearsay

Hearsay – an out-of-court statement offered to prove the truth of the matter asserted – is generally inadmissible, subject to several exceptions.  Fed. R. Evid. 801(c) & 802.  The parties do not dispute that the 104(e) Response and the Interview Notes constitute hearsay.  104(e) Mot. 6; Nadeau Mot. 4; see generally Emhart Opp'n.

#### 1. Public Records Exception

Under the public records exception, a hearsay statement may be admitted if it is "[a] record or statement of a public office" and

> it sets out: (i) the office's activities; (ii) a matter observed while under a legal duty to report, but not including, in a criminal case, a matter observed by law-enforcement personnel; or (iii) in a civil case or against the government in a criminal case, factual findings from a legally authorized investigation,

and "the opponent does not show that the source of information or other circumstances indicate a lack of trustworthiness."  Fed. R. Evid. 803(8).

Emhart argues that the documents qualify as public records because they "were produced in response to EPA requests for information pursuant to EPA's investigative authority under

5

CERCLA," and further, "EPA has incorporated [the documents] into the administrative record for the Site and made explicit factual findings based on their contents." Emhart Opp'n 11-12. Emhart cites two cases – United States v. Phoeun Lang, 672 F.3d 17 (1st Cir. 2012) and United States v. Davis, 826 F. Supp. 617 (D.R.I. 1993) – and argues that "[i]f EPA's factual findings are substantively admissible, under the logic of Lang and Davis, the documents underlying those factual findings (whose contents EPA has adopted) should be admissible as well." Id. at 12.

However, Lang and Davis are distinguishable from this case. In Lang, the First Circuit deemed a naturalization form filled out by the defendant admissible under the public records exception because the document was non-adversarial. Lang, 672 F.3d at 25 ("While it is true that criminal charges can result, if, as is the case here, false evidence is elicited on the form, criminal charges are not the primary purpose of the administrative proceedings surrounding an application for naturalization."). However, this discussion was in the context of Rule 803(8)(A)(ii)'s exclusion of, "in a criminal case, a matter observed by law-enforcement personnel," which is not relevant here.

In Davis, the court found a remedial investigation report admissible as a public record because the EPA was sufficiently involved in the development of the report. Davis, 826 F. Supp. at 621-22. Here, in contrast, there is no indication of the EPA's

6

involvement in the original development or writing of the Interview Notes or the 104(e) Response. Cf. Gould Elecs. Inc. v. Livingston Cnty. Rd. Comm'n, No. 17-11130, 2020 WL 6793335, at *11-13 (E.D. Mich. Nov. 19, 2020), aff'd, No. 20-2257, 2022 WL 1467650 (6th Cir. May 10, 2022) (collecting cases in which reports produced or overseen by EPA were admitted as public records). Lang is similarly distinguishable because of the involvement of the government official. See Lang, 672 F.3d at 20 (explaining the process of review of the naturalization form: "(1) an officer reviews the questions and answers with the applicant, (2) the applicant's responses are confirmed, (3) after the responses are confirmed, they are checked in red by the officer, and (4) the officer confirms that the signature on the N-445 matches the signature on the Certificate of Naturalization, which is signed before the ceremony").

Further, case law indicates that a third party's statement is not automatically admissible just because it is incorporated into a public record; rather, it must meet a hearsay exception on its own, assuming it is hearsay. United States v. Mackey, 117 F.3d 24, 28 (1st Cir. 1997) ("[H]earsay statements by third persons . . . are not admissible under [the public record] exception merely because they appear within public records."); Parsons v. Honeywell, Inc., 929 F.2d 901, 907 (2d Cir. 1991) ("It is well established that entries in a police report which result from the

officer's own observations and knowledge may be admitted but that statements made by third persons under no business duty to report may not." (quoting United States v. Pazsint, 703 F.2d 420, 424 (9th Cir. 1983))); Hernandez v. Colegio Y Noviciado Santa Maria Del Camino, Inc., 104 F. Supp. 3d 203, 206 (D.P.R. 2015) ("Fed. R. Evid. 803(8) is not a multilevel exception covering all hearsay contained in a public record." (citing Jordan v. Binns, 712 F.3d 1123, 1132 (7th Cir. 2013))). Here, Emhart does not demonstrate the admissibility of the documents under any other hearsay exception – aside from its arguments regarding the residual exception, which are addressed below.

Accordingly, the 104(e) Response and the Interview Notes are inadmissible under the public records exception.

### 2. Residual Exception

In the alternative, Emhart argues that the 104(e) Response and the Nadeau Interview Notes are admissible under the residual exception. The residual exception at Federal Rule of Evidence 807 permits the introduction of a hearsay statement "even if the statement is not admissible under a hearsay exception in Rule 803 or 804." Fed. R. Evid. 807(a). The Rule has two general requirements. First, the statement must be "supported by sufficient guarantees of trustworthiness — after considering the totality of circumstances under which it was made and evidence, if any, corroborating the statement." Id. 807(a)(1). Second, the

statement must be "more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts." Id. 807(a)(2). Relevant to the Motions at issue, the Court reads the latter requirement to mean that, if two statements are offered for the exact same point, only the more probative of the two may be admitted under the residual exception. See Emhart Indus., Inc. v. New England Container Co., No. CA 06-218 S, 2014 WL 5808390, at *5 (D.R.I. Nov. 7, 2014) ("A 'statement will be considered "more probative" if the court determines that the hearsay is relevant and reliable, and that no other evidence, or very little other evidence, is available on the same point.'" (quoting 5 Weinstein's Fed. Evid. § 807.03 [3] [a], at 807-25 (2d ed. 2014))). There is also a notice requirement. See Fed. R. Evid. 807(b).

### i. Legal Standard

The determination of whether a statement is supported by sufficient guarantees of trustworthiness "is completely fact driven." Brookover v. Mary Hitchcock Memorial Hosp., 893 F.2d 411, 420 (1st Cir. 1990). "No single factor is dispositive," id., and a court's application of the residual exception is reviewed for abuse of discretion, if not for clear error, see Bradley v. Sugarbaker, 891 F.3d 29, 33 n.2 (1st Cir. 2018). The First Circuit has advised, however, that courts should "admit evidence under the residual exception 'very rarely, and only in exceptional

9

circumstances.'"  Id. at 34 (quoting United States v. Benavente Gómez, 921 F.2d 378, 384 (1st Cir. 1990)).  Only if "the proffered evidence possesses circumstantial guarantees of trustworthiness equivalent to those possessed by the other listed exceptions to the hearsay rule" should a court admit that evidence under the residual exception.  Id. (internal quotation marks and citations omitted).  In other words, Rule 807 is not an unguarded trapdoor through which to pass hearsay statements into the courtroom.

### ii. Arguments

Emhart contends that the 104(e) Response and the Interview Notes are supported by sufficient guarantees of trustworthiness in light of the circumstances in which they were made and extrinsic corroborating evidence.  Those circumstances include that "both documents were prepared and submitted as part of a federal investigation, incorporated into the official administrative record for the Site, and their contents were adopted as factual findings by [the] EPA."  Emhart Opp'n 13.  Additionally, Emhart notes that the 104(e) Response was submitted under penalty of perjury, and while the same cannot be said for the Interview Notes, the 104(e) Response is based on "information provided by Raymond Nadeau consistent with the Interview Notes."  Id.  On the issue of corroboration, Emhart cites three pieces of extrinsic evidence. First, the documents are consistent with one another; second, they

are consistent with testimony from Vincent Buonanno[4] under oath; and third, they are consistent with findings from Phase III discovery, namely that Brown & Sharpe drums contained metal shavings and lubricating or cutting oils.  Id. at 2-4, 13-14. Emhart calls this "a key corroborating fact, as there is no indication that Nadeau or NECC could have known this information at the time the Interview Notes or the [104(e)] Response were created."  Id. at 1-2.

BNS counters that the documents are unreliable and are not trustworthy as required for admission under Rule 807(a)(1).  First, BNS notes that much information about the Interview Notes, including the author's identity and the circumstances of the underlying interview, is lacking.  Nadeau Mot. 4-6; BNS Reply 7-8, ECF No. 1080.  As for the 104(e) Response, BNS emphasizes that its signatory, Robert Baker,[5] testified that he had no personal knowledge of its contents.  104(e) Mot. 3; BNS Reply 6.  Rather, the 104(e) Response was based on discussions with Nadeau and Thomas Lussier[6] and a review of several documents, including a written statement from Nadeau to the EPA dated October 27, 2020.  104(e)

---

[4] Vincent Buonanno is NECC's former President and Owner. Nadeau Mot. 4.

[5] Robert Baker is NECC's former Vice-President of Operations.  104(e) Mot. 3.

[6] Thomas Lussier is a former NECC employee.  Emhart Opp'n 7.

Mot. Ex. 1, NECC Supp. Resp. (Aug. 22, 2002) ("104(e) Mot. Ex. 1") at 1, 14-15, ECF No. 1067-1.   It is unclear, however, whether Nadeau or Lussier provided the information about Brown & Sharpe, BNS Reply 8, and BNS argues that testimony from Nadeau and Lussier suggests that the 104(e) Response is inaccurate, id.; see Emhart Opp'n 8-9.   Furthermore, BNS notes that Baker identified Buonanno as "the person at NECC with the most knowledge regarding NECC's past activities," 104(e) Mot. 3, and Buonanno called the information contained in the 104(e) Response "imprecise" and stated that he "wouldn't have signed onto [it]," id. at 5 (quoting 104(e) Mot. Ex. 5, Buonanno Dep. (Oct. 22, 2008) at 88:13-14, 16-17, ECF No. 1067-5).   Finally, BNS argues that Emhart has not provided BNS notice of its intent to offer the documents at trial, as required for admission under Rule 807(b).   BNS Reply 10-11.

### iii. Assessment

The Court finds these documents meet the requirements for admission under the Rule 807 residual exception.   To begin, the Court observes that both documents contain double hearsay. Regarding the 104(e) Response, nested within Baker's statement that Brown & Sharpe supplied NECC with used drums are representations from another declarant, either Nadeau or Lussier, to that effect.   See 104(e) Mot. Ex. 1 at *2-3, *21.[7]   As for the

---

[7] Asterisks indicate CM/ECF-stamped page numbers.

Interview Notes, the written notes of the interview are statements separate and apart from those of the interview subject, Nadeau, who identified Brown & Sharpe as an NECC supplier. See generally Nadeau Mot. Ex. 9, Interview of Raymond Nadeau, ECF No. 1068-9. Although both documents contain hearsay within hearsay, neither is "excluded by the rule against hearsay if each part of the combined statements conform with an exception to the rule." Fed. R. Evid. 805. The Court must therefore test four statements in total — across two documents — against the requirements of Rule 807, albeit with an understanding that the analysis will overlap in several areas.

Starting with the requirements of Rule 807(a)(1), whether the outer-layer statement contained within each document is supported by sufficient guarantees of trustworthiness is a close question, especially with respect to the circumstances under which each statement was made. Neither Baker nor the author of the Interview Notes had personal knowledge of whether BNS supplied NECC with used drums. But this does not automatically preclude admission of either document. See United States v. Panzardi-Lespier, 918 F.2d 313, 316 (1st Cir. 1990) (describing "whether the witness testified about matters within his personal knowledge" as an "[a]dditional factor[] of reliability"). Moreover, Baker signed the 104(e) Response under penalty of perjury in accordance with 18 U.S.C. § 1001. 104(e) Mot. Ex. 1 at 17; see United States v. Slatten,

865 F.3d 767, 808 (D.C. Cir. 2017) ("[T]he threat of 18 U.S.C. § 1001 liability bolsters the trustworthiness of a declaration for the residual hearsay exception."). And although the same cannot be said for the Interview Notes, the notes were presumably taken by EPA personnel as part of a federal investigation, and furthermore, both the 104(e) Response and the Interview Notes were incorporated into the official administrative record for the Site and relied upon by the EPA to make explicit factual findings about the Site. Emhart Opp'n 11-12. On the other hand, weighing against trustworthiness is that the drafters of the 104(e) Response had an incentive to be overinclusive with respect to the list of NECC suppliers. See Beech Aircraft Corp. v. Rainey, 488 U.S. 153, 167 n.11 (1988) (referring to "possible bias when reports are prepared with a view to possible litigation" as one of several factors for assessing trustworthiness in the context of the public records exception). And then there is the fact that the author of the Interview Notes is unknown and the circumstances of the interview unclear.

If the trustworthiness inquiry under Rule 807(a)(1) were limited to assessing the circumstances under which a statement was made, BNS might have the better argument. It is not, however, and BNS has failed to discredit what appears to be compelling evidence that corroborates the statements in each document. Emhart's first example of extrinsic corroborating evidence is that the 104(e)

Response and Interview Notes are consistent with each other. Emhart Opp'n 13-14. Assuming that the documents were created independently of one another, the consistency between them weighs in favor of their trustworthiness. Emhart further notes that the documents are consistent with Buonanno's 2013 deposition testimony, in which he identified Brown & Sharpe as an NECC supplier. Id. at 14. But as BNS points out, he did this only after reviewing the 104(e) Response, and although he described Brown & Sharpe as one of the "companies that [he] remember[ed]," when judged against his earlier inconsistent deposition testimony, this piece of corroborating evidence is not particularly strong. BNS Reply 7; Emhart Opp'n Ex. G, Buonanno Dep. (May 15, 2013) at 173:14-15, ECF No. 1076-7. Far more compelling, however, is what Emhart learned about Brown & Sharpe's operations during Phase III discovery. Multiple former Brown & Sharpe employees testified under oath that its drums contained similar if not identical residue to that described in both the 104(e) Response and the Interview Notes. Emhart Opp'n 2-4. The Court deems this a strong indicator of trustworthiness, and one to which BNS has offered no response. In short, the Court finds that the outer-layer statement within each document is supported by sufficient guarantees of trustworthiness, as required under Rule 807(a)(1).

As for the hearsay statements nested within each document, the Court finds them sufficient as well for the purposes of Rule

15

807(a)(1).  Regardless of whether the 104(e) Response identified Brown & Sharpe as an NECC supplier according to information from Nadeau or from Lussier, it is reasonable to assume that the information was based on matters within the actual declarant's personal knowledge.  So too with respect to the Interview Notes. And although the nested statements lack some indicia of reliability that the outer-layer statements possess, the former were nonetheless made within the context of the EPA's investigation into NECC, of which both Nadeau and Lussier were former employees. Emhart Opp'n 7-9.  Finally, the same extrinsic corroborating evidence applies to the nested statements in both documents as it does to the respective outer-layer statements.  Accordingly, the Court finds that Rule 807(a)(1) does not preclude the admission of either document — despite that each document contains double hearsay — when offered for the point that Brown & Sharpe supplied NECC with drums.

The next question the Court must consider is whether each statement is "more probative on the point for which it is offered than any other evidence that [Emhart] can obtain through reasonable efforts."  Fed. R. Evid. 807(a)(2).  As mentioned above, the Court reads Rule 807(a)(2) to mean that if two statements are offered for the exact same point, only one of them is admissible under the residual exception.  According to this reading, if Emhart offers both the 104(e) Response and the Interview Notes for the general

point that Brown & Sharpe supplied NECC with drums, then the less probative of the two is inadmissible under Rule 807. Emhart may, however, offer each document for different points. The 104(e) Response states, for example, that Brown & Sharpe drums contained both metal shavings and lubricating or cutting oils, whereas the Interview Notes mention only metal shavings; and while the 104(e) Response contains no information about the number of drums that NECC received from Brown & Sharpe, according to the Interview Notes, "Nadeau stated that he would pick up 40-50 used drums" from Brown & Sharpe "about every six months." See Emhart Opp'n Ex. A, Interview of Raymond Nadeau at 4, ECF No. 1076-1; Ex. C, 104(e) Response at *21, ECF No. 1076-3. In short, it is possible for both documents to come in under the residual exception.

On the substantive requirements of Rule 807(a)(2), BNS has not shown that Emhart, through reasonable efforts, could have obtained evidence more probative on the points for which the 104(e) Response and the Interview Notes may be offered. Other evidence obtained throughout the course of this litigation is less likely to settle the question of whether BNS supplied NECC with drums, and if so, what those drums may have contained and how often they were deposited. In other statements available to the parties, including those contained in affidavits and deposition or trial testimony, Nadeau recalled fewer companies from which he picked up drums for NECC than are named in the Interview Notes. But in none

of those statements was he asked about Brown & Sharpe, nor did he ever claim to provide an exhaustive list.  Quite the opposite.  In one statement, for example, he admitted that "[t]here [were] additional companies, whose names [he could not] recall."  Nadeau Mot. Ex. 6, Affidavit at *7, ECF No. 1068-6.  Furthermore, the Court hesitates to fault Emhart for not seeking evidence during earlier phases of this case that is more directly responsive to the question of whether Brown & Sharpe and other third parties supplied NECC with drums.  The Court does not read the "reasonable efforts" language in Rule 807(a)(2) to require a CERCLA defendant in a multiphase case like this to conduct wide-ranging discovery during the liability phase with an eye toward future claims against prospective third-party defendants.  Add to this the fact that Nadeau is unavailable, and the Court is satisfied that Emhart could not have obtained, through reasonable efforts, evidence more probative on the points for which the documents may be offered.

A final Rule 807(a)(2) question concerns the fact that both documents contain double hearsay.  To the extent that highly probative statements on the supplier status of Brown & Sharpe are nested within outer-layer statements contained in the documents, then those outer-layer statements are highly probative as well.  In conclusion, the Court finds that Rule 807(a)(2) does not preclude the admission of either document if they are not offered for the exact same point.

Finally, BNS argues that neither document is admissible under the residual exception "because Emhart has not given BNS notice of its intent to use the documents at trial." BNS Reply 11. Under Rule 807(b), a proponent must give an adverse party written notice before trial of its "intent to offer the statement — including its substance and the declarant's name — so that the party has a fair opportunity to meet it." Fed. R. Evid. 807(b). If pre-trial written notice is not provided, the statement may still come in at trial "if the court, for good cause, excuses a lack of earlier notice." Id.

The Court finds that Emhart's Consolidated Opposition to BNS's Motions satisfies the written-notice requirement of Rule 807(b). In a written memorandum filed nearly four weeks before trial, Emhart argued that both documents are admissible under the residual exception. This goes above and beyond the standard reflected in the relevant caselaw. See United States v. Rouco, 765 F.2d 983, 994 (11th Cir. 1985) (characterizing three days pre-trial as "ample notice"); United States v. Burdulis, 753 F.3d 255, 264 (1st Cir. 2014) (holding that specific notice of intent to use Rule 807 as a basis for admission is not required); F.T.C. v. Kitco of Nev., Inc., 612 F. Supp. 1282, 1294 (D. Minn. 1985) (finding motion in limine requesting admission of specific statements at trial satisfied notice requirement). Simply put, if Emhart offers these documents at trial, BNS will not be caught off guard.

Accordingly, the Court finds that the 104(e) Response and the Interview Notes are admissible under the residual exception at Rule 807.

**B. Rule 403**

BNS argues that the 104(e) Response — but not the Interview Notes — should be excluded under Federal Rule of Evidence 403 because it "contains incorrect information that has the strong potential to confuse or mislead the factfinder." 104(e) Mot. 8. This argument is unavailing.

Rule 403 provides that a "court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Notably, BNS raises the specter of only the first two or three of these dangers, but not the latter three. This being a bench trial, the Court is not concerned about the factfinder getting confused or misled. See Gulf States Utils. Co. v. Ecodyne Corp., 635 F.2d 517, 519 (5th Cir. 1981) ("Excluding relevant evidence in a bench trial because it is cumulative or a waste of time is clearly a proper exercise of the judge's power, but excluding relevant evidence on the basis of 'unfair prejudice' is a useless procedure."). The Court therefore rejects BNS's Rule 403 argument.

**C. Rule 703**

Because the 104(e) Response and the Interview Notes are admissible under Rule 807 if not offered for the exact same point, the Court does not address BNS's Rule 703 argument.

**III.  CONCLUSION**

For the foregoing reasons, BNS's Motion in Limine to Preclude Admission of or Reference to NECC's August 22, 2002 Supplemental Response to CERCLA § 104(e) Information Requests, ECF No. 1067, is DENIED, and BNS's Motion in Limine to Preclude Admission of or Reference to "Interview of Raymond Nadeau" and "Raymond Nadeau April 2, 2002" Interview Notes, ECF No. 1068, is GRANTED IN PART and DENIED IN PART.  The 104(e) Response dated August 22, 2002, and the document titled "Interview of Raymond Nadeau" may be admitted under the residual exception at Rule 807 if they are not offered for the same point.  The document titled "Raymond Nadeau April 2, 2002" shall be excluded to the extent that it is offered to prove that Brown & Sharpe supplied NECC with drums.


IT IS SO ORDERED.

_William E. Smith_
William E. Smith
District Judge
Date: October 2, 2024